

**Daniel M. Silver**
Partner
T. 302-984-6331
F. 302-691-1260
dsilver@mccarter.com

McCarter & English, LLP
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE 19801-3717
www.mccarter.com

June 7, 2021

**VIA CM/ECF**
Chief Judge Leonard P. Stark
U.S. District Court for the District of Delaware
J. Caleb Boggs Federal Building
844 North King Street
Unit 26, Room 6124
Wilmington, DE 19801-3555

Re: *In re Entresto (Sacubitril/Valsartan) Patent Litigation,*
C.A. Nos. 20-md-2930-LPS, 19-1979-LPS, 19-2021-LPS, 19-2053-LPS, 20-74-LPS, 20-415-LPS, 20-445-LPS, 21-229-LPS

Dear Chief Judge Stark,

We write on behalf of Plaintiff Novartis Pharmaceuticals Corporation ("NPC") to address the parties' dispute over the quantity of samples of Entresto® (sacubitril/valsartan) finished drug product. 20-md-2930, D.I. 260, 261.

As to the parties' dispute over the quantity of samples of Entresto® API, Defendants have requested that NPC produce 68 grams of Entresto® API. Although the API is not in the possession, custody or control of NPC, NPC has been working voluntarily with a separate, non-party foreign Novartis entity that does have possession, custody or control of the API, so that Defendants would not have to undertake onerous third-party discovery of that non-party foreign entity. Today, NPC confirmed that that entity is able to satisfy Defendants' demand for 68 grams of Entresto® API. NPC thus offered Defendants that amount this afternoon. At the time this letter was filed with the Court, NPC has not yet heard back from Defendants as to whether they have accepted NPC's offer. However, NPC believes that its offer resolves the parties' dispute over API.

NPC has also offered Defendants 17 bottles of finished product; Defendants have refused that amount and instead seek 102 bottles of finished product. That amount is duplicative, excessive and unduly burdensome. NPC thus respectfully requests that Defendants' request be denied, and that the Court instruct Defendants to accept the quantity offered by NPC.

**Background**

Paragraph 9.i of the Scheduling Order in this case (D.I. 102) requires that Defendants "coordinate activities to reduce duplicative and cumulative discovery that is common to all Defendants." Defendants have ignored that directive with respect to their requests for samples from NPC. In

ME1 36695876v.1

June 7, 2021
Page 2

their request for production ("RFP") no. 99, Defendants requested "[s]amples (for each Defendant Group, at least 60 tablets in an unopened bottle from each of at least two different representative lots of each dosage strength (i.e., 24/26 mg; 49/51 mg; and 97/103 mg)) of Entresto." Defendants' RFP 99 thus seeks a total of 102 bottles of finished product (17 Defendant Groups X 2 lots X 3 bottles).

In its responses to Defendants' RFPs, NPC objected to Defendants' RFP 99 as "overly broad and seeking information that is neither relevant to any issue in this action, nor proportional to the needs of the case or reasonably calculated to lead to the discovery of admissible evidence." Notwithstanding those objections, NPC on April 29, 2021 offered Defendants a common sample of one 60-tablet bottle for each dosage strength of finished product (24/26 mg, 49/51 mg, and 97/103 mg). Exh. A, pp. 24-25. During a May 6, 2021 meet-and-confer, Defendants rejected NPC's offer of a common sample of finished product.

On May 10, 2021, NPC offered each Defendant Group one 60-tablet bottle of 49/51 mg dosage strength finished product, for a total of 17 bottles. *Id.*, pp. 11-12. On May 18, 2021, Defendants rejected NPC's offer of one bottle of 49/51 mg dosage strength finished product to each Defendant Group. *Id.*, pp. 9-10. Defendants brought the dispute to the attention of the Court on June 4, 2021. D.I. 260.

**Argument**

While NPC does not now dispute that samples of its finished product may be relevant, Defendants' request for 102 bottles of finished product should be denied for the following reasons.[1]

1. Defendants have failed to explain their need for 102 bottles of finished product. And Defendants have failed to explain why NPC's offer of 17 bottles of 49/51 mg finished product to each Defendant is insufficient.

2. NPC expects that Defendants will argue that the 49/51 mg finished product is not representative of the 24/26 mg and 97/103 mg finished products. However, as NPC offered to Defendants this afternoon, NPC is willing to represent that the 49/51 mg finished product is representative of the 24/26 mg and 97/103 mg finished products in terms of their physical and chemical characteristics (except for the amounts of the ingredients in the tablets and the size

---

[1] It is unclear whether Defendants have reduced the requested quantity to one bottle of each dosage strength from one lot of finished product per Defendant Group. *See* Exh. A, p. 18. However, that quantity would amount to a total 51 bottles of finished product (17 Defendant Groups X 1 lot X 3 bottles). That quantity is still duplicative and excessive.

and physical appearance of the tablets), if that will resolve the parties' dispute over the quantity of finished product samples. If Defendants are not satisfied with that representation, then Defendants are free to purchase the 24/26 mg and 97/103 mg dosage strength Entresto® finished products on the open market—as all generic drug manufacturers do in connection with the comparative testing required by their ANDAs.

3. While NPC appreciates that confidentiality concerns may prevent each Defendant Group from sharing samples of its own accused products with the other Defendant Groups, those same confidentiality concerns do not apply to the Entresto® finished product. There is no reason why Defendants—in accordance with paragraph 9.i. of the Scheduling Order—cannot coordinate with one another to eliminate the need for 17 Defendant Groups to have to test all three dosage strengths of the Entresto® finished product 17 different times.

4. Defendants' request to NPC for 102 bottles of Entresto® finished product on its face is excessive and burdensome. Unlike Defendants, none of whom have a sacubitril/valsartan product on the market, Entresto® is manufactured and distributed for the purpose of treating heart failure patients. Any samples of Entresto® finished product that are produced to Defendants must come from stock currently dedicated for patient use. The 102 bottles of finished product that Defendants seek (totaling 6120 tablets) amount to more than a years' worth of medication for eight heart failure patients. And while NPC is no stranger to Hatch-Waxman litigation, NPC rarely has encountered a situation in which multiple defendants have demanded samples from NPC as *plaintiff/patentee*—let alone in the quantities Defendants here seek.

For the foregoing reasons, Defendants' request for 102 bottles of finished product should be denied.

Respectfully submitted,

*/s/ Daniel M. Silver*

Daniel M. Silver (#4758)

cc: Counsel of Record (via CM/ECF and electronic mail)