HEYMAN ENERIO
GATTUSO & HIRZEL LLP
PRACTICING THE ART OF LAW

300 Delaware Avenue • Suite 200 • Wilmington, Delaware 19801
Tel: (302) 472.7300 • Fax: (302) 472.7320 • www.hegh.law

DD: (302) 472-7311
Email: dgattuso@hegh.law

June 7, 2021

**VIA CM/ECF**
The Honorable Leonard P. Stark
United States District Court
For the District of Delaware
844 North King Street
Wilmington, DE 19801

    Re:    *In re Entresto (Sacubitril/Valsartan) Patent Litigation*, C.A. No. 20-md-2930 (LPS)

Dear Chief Judge Stark:

    This firm, together with Parker Poe Adams & Bernstein, LLP, represents Defendant Crystal Pharmaceutical (Suzhou) Co., Ltd. ("Crystal Pharma").

    This letter addresses a discovery dispute on behalf of all of the Defendants[1] in the MDL litigation regarding Novartis's refusal to produce to each Defendant Group sufficient samples of its sacubitril/valsartan API and Entresto® product and related documentation. On September 17, 2020, Defendants requested samples of Novartis's sacubitril/valsartan API and Entresto® product and documentation associated with the samples (Defendants' Joint Request for Production Nos. 99, 100, 101, 102).[2] Novartis initially refused to produce the samples, asserting that they are neither relevant nor proportional to the needs of the case. Defendants tried to negotiate with Novartis in good faith to come to an agreement, but to no avail. Most recently, Novartis offered only to produce (1) to each related Defendant group, one bottle of 60 tablets for only one of the three dosage strengths of Entresto®;[3] and (2) 10 g of API to be divided among all 17 Defendant Groups.[4] These amounts are insufficient as the material is relevant to questions of infringement

---

[1] Alkem Laboratories Ltd., Torrent Pharma, Inc., Torrent Pharmaceuticals, Ltd., Aurobindo Pharma Ltd., Aurobindo Pharma USA Inc., Biocon Limited, Biocon Pharma Limited, Biocon Pharma, Inc., Alembic Pharmaceuticals Limited, Dr. Reddy's Laboratories, Ltd., Dr. Reddy's Laboratories, Inc., Hetero USA, Inc., Hetero Labs Ltd., Hetero Labs Ltd. Unit III, Laurus Labs Limited, Laurus Generics Inc., Lupin Atlantis Holdings, S.A., Lupin Limited, Lupin Inc., Lupin Pharmaceuticals, Inc., MSN Laboratories Private Limited, MSN Life Sciences Pvt. Ltd., MSN Pharmaceuticals Inc., Macleods Pharmaceuticals Ltd., Macleods Pharma USA, Inc., Mylan Pharmaceuticals Inc., Nanjing Noratech Pharmaceutical Co., Limited, Novugen Pharma (Malaysia) Sdn. Bhd., Teva Pharmaceuticals USA, Inc., Zydus Pharmaceuticals (USA) Inc., and Cadila Healthcare Limited (with Crystal Pharma, collectively, "Defendants")

[2] For the Court's reference, the relevant portions of Novartis's Responses to Defendants' First Set of Joint Requests for Production are attached as Exhibit 1.

[3] Novartis is asserting infringement as to each dosage strength and is unwilling to limit its claims to the single strength that it is offering to produce.

[4] A little more than one hour before this letter was due pursuant to this Court's Order, Novartis made a new proposal for production of 2 g from 2 separate lots of API (so 4 g of API total) to each Defendant group while maintaining its proposed production of only one dosage strength of finished product along with an accompanying representation relating to the representative nature of that finished dosage form to other dosage strengths. Given the number of Defendants and the short time prior to the joint letter submission, Defendants were not able to confer amongst themselves and provide a joint response to Novartis's proposal prior to submission of this letter. Defendants have notified Novartis that they will confer among themselves and revert to Novartis as soon as possible.

and validity with regard to at least the two hemipentahydrate patents, U.S. Patent Nos. 8,877,938 ("the '938 patent") and U.S. Patent No. 9,388,134 ("the '134 patent"). Thus, Defendants request that Novartis produce to each Defendant group: (1) one, 60-count bottle of tablets, representative of each dosage strength; and (2) 3 g of a representative batch of API.

The samples are relevant in assessing Novartis's assertions of infringement through comparison of Defendants' ANDA products to Novartis's commercial product because Novartis asserts that the commercial product is the claimed hemipentahydrate. Indeed, Novartis asserts that the commercial product is an embodiment of the '938 patent, which Novartis admits is limited to substantially pure hemipentahydrate. Additionally, samples of Novartis's sacubitril/valsartan API and Entresto® product relate to Novartis's allegations of nexus between the claims and objective considerations of non-obviousness asserted by Novartis.

Based on Novartis's proposal to produce some samples to Defendants, it appears that Novartis has abandoned its lack-of-relevance argument and is only asserting a burden argument. Novartis, however, sued 17 Defendant groups in this multidistrict litigation. With respect to infringement, the various Defendant groups' interests are not aligned as various groups use different APIs and have different ANDA products, and each Defendant does not know the confidential properties of the other Defendants' APIs and products. Because the material is relevant to Defendants' ability to defend against Novartis's infringement claims, each Defendant group should receive sufficient samples to conduct its own testing on Novartis's API and all strengths of Novartis's product.

**Infringement**

Tests conducted on Novartis's alleged commercial embodiment of the patents-in-suit are relevant to assess its claims of infringement. In the present case, the claims of the '938 and '134 patents are directed to a hemipentahydrate. To establish infringement, regardless of the Court's ultimate decision on claim construction, Novartis must demonstrate that each Defendant group's product contains the particular hemipentahydrate. In many cases involving solid-state forms, the infringement analyses compare the accused material to a reference material. Here, Novartis will seek to establish that the accused material is an embodiment of the claims. Indeed, Novartis has already asserted that Entresto® includes an embodiment of the claims. Accordingly, Defendants seek production of the samples to provide each group with a reference sample for comparison to assess and potentially rebut Novartis's allegations of infringement.

*Glaxo Group Ltd. v. TorPharm*, 153 F.3d 1366 (Fed. Cir. 1998), well illustrates the relevance of a reference sample. *Glaxo* dealt with allegations of infringement of a solid-state form patent, and, in that case, the Federal Circuit determined that comparison of an accused product to a reference standard that is covered by a claim can, in appropriate circumstances, be relevant to infringement. *Id.* at 1373; *see also Adams Respiratory Therapeutics, Inc. v. Perrigo Co.,* 616 F.3d 1283, 1289 (2010). Since Novartis is asserting that its product and API are covered by the claims, each Defendant is entitled to production of an appropriate amount of the dosage forms and the API for use as a reference standard to defend against individual charges of infringement.

**Objective Considerations and Nexus**

Samples of the Entresto® product and API are also relevant to Novartis's allegations of nexus between Entresto® and alleged objective considerations of non-obviousness. *See, e.g., Astellas US LLC v. Apotex Inc.*, C.A. No. 18-1675-CFC-CJB, D.I. 550 at *2-*3 (D. Del. Nov. 4, 2020) (ordering production of Plaintiffs' samples because they were relevant at least to the nexus question). "For objective evidence of secondary considerations to be accorded substantial weight, its proponent must establish a nexus between the evidence and the merits of the claimed invention." *In re Kao*, 639 F.3d 1057, 1068 (Fed. Cir. 2011) (quoting *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1246 (Fed. Cir. 2010)). "[I]f the marketed product embodies the claimed features, and is coextensive with them, then a nexus is presumed and the burden shifts to the party asserting obviousness to present evidence to rebut the presumed nexus." *Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120, 1130 (Fed. Cir. 2000).

For Novartis to establish its alleged objective considerations of non-obviousness relating to the Entresto® product, the product must embody the claims. This is the flip side of the earlier argument. Defendants are permitted to test Novartis's assertions that its products and API actually contain the claimed hemipentahydrate as part of their invalidity case. Larger amounts of samples are needed to provide sufficient material for both types of testing.

Because Novartis uses commercial quantities of both its product and its API and must continually replenish its commercial stock, and because the samples are relevant for at least the reasons illustrated above, Novartis has no basis to refuse to produce sufficient samples of its Entresto® product and API to each Defendant. Defendants respectfully request that the Court order Novartis to produce the requested samples.

Respectfully,

/s/ *Dominick T. Gattuso*

Dominick T. Gattuso (#3630)

cc:   Clerk of the Court (via hand delivery)
      All Counsel of Record (via electronic mail)