# Joint Appendix



US011058667B2

(12) **United States Patent**
Rizkala et al.

(10) Patent No.: **US 11,058,667 B2**
(45) **Date of Patent:** **Jul. 13, 2021**

(54) **SACUBITRIL–VALSARTAN DOSAGE REGIMEN FOR TREATING HEART FAILURE**

(71) Applicant: **Novartis AG**, Basel (CH)

(72) Inventors: **Adel Remond Rizkala**, East Brunswick, NJ (US); **Victor Chengwei Shi**, Mendham, NJ (US); **Fabian Chen**, Englewood Cliffs, NJ (US)

(73) Assignee: **Novartis AG**, Basel (CH)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **15/572,399**

(22) PCT Filed: **May 9, 2016**

(86) PCT No.: **PCT/IB2016/052633**
§ 371 (c)(1),
(2) Date: **Nov. 7, 2017**

(87) PCT Pub. No.: **WO2016/181284**
PCT Pub. Date: **Nov. 17, 2016**

(65) **Prior Publication Data**
US 2018/0125820 A1     May 10, 2018

**Related U.S. Application Data**

(60) Provisional application No. 62/159,703, filed on May 11, 2015.

(51) **Int. Cl.**
*A61K 31/41*     (2006.01)
*A61K 31/225*     (2006.01)
*A61P 9/04*     (2006.01)

(52) **U.S. Cl.**
CPC ............ *A61K 31/41* (2013.01); *A61K 31/225* (2013.01); *A61P 9/04* (2018.01); *A61K 2300/00* (2013.01)

(58) **Field of Classification Search**
CPC .. A61K 31/41; A61K 31/225; A61K 2300/00; A61P 9/04
See application file for complete search history.

(56) **References Cited**

FOREIGN PATENT DOCUMENTS

WO     WO-2014029848 A1 *  2/2014  .......... A61K 31/194

OTHER PUBLICATIONS

NCT01922089—version from Nov. 20, 2013 (v3) retrieved Jul. 16, 2018 (Year: 2013).*

Kobalava et al., "First Experience with Concomitant ATI and Neprilysin (NEP 24.11) Inhibition with LCZ696 in Patients with Chronic Heart Failure", Circulation, vol. 122, No. 21 (supplement), A19278, Nov. 23, 2010 (Nov. 23, 2010).

McMurray et al., "Dual angiotensin receptor and neprilysin inhibition as an alternative to angiotensin-converting enzyme inhibition in patients with chronic systolic heart failure: rationale for and design of the Prospective comparison of ARNI with ACEI to Determine Impact", European Journal of Heart Failure, vol. 15, No. 9, Apr. 5, 2013 (Apr. 5, 2013)., pp. 1062-1073.

McMurray et al., "Angiotensin-Neprilysin Inhibition versus Enalapril in Heart Failure", New England Journal of Medicine, vol. 371, No. 11, Sep. 11, 2014 (Sep. 11, 2014), pp. 993-1004.

Gu et al., "Pharmacokinetics and pharmacodynamics of LCZ696, a novel dual-acting angiotensin receptor-neprilysin inhibitor (ARNi)", Journal of Clinical Pharmacology, vol. 50, No. 4, Apr. 1, 2010 (Apr. 1, 2010), pp. 401-414.

Kario et al., "LCZ696, a First-in-Class Angiotensin Receptor-Neprilysin Inhibitor: The First Clinical Experience in Patients With Severe Hypertension", The Journal of Clinical Hypertension. vol. 18, No. 4, Sep. 24, 2015 (Sep. 24, 2015), pp. 308-314.

Anonymous: "Entresto Prescribing Information", Aug. 1, 2015 (Aug. 1, 2015) [Retrieved from the Internet: URL: ttps://www. pharma.us.novartis.com/sites/www.pharma.us.novartis.com/files/ entresto.pdf] [retrieved on Jun. 16, 2016] See section 2.1: Dosing [retrieved on Jun. 16, 2016].

Anonymous:"Safety and Tolerability of Initiating LCZ696 in Heart Failure Patients—Full Text View—ClinicalTrials.gov", Aug. 12, 2013 (Aug. 12, 2013), [Retrieved from the Internet: URL:https:// clincaltrials.gov/jct2/show/NCT01922089?term=NCT01922089 &rank=1] [retrieved on Jun. 16, 2016].

Solomon, et al., "The angiotensin receptor neprilysin inhibitor LCZ696 in heart failure with preserved ejection fraction: a phase 2 double-blind randomised controlled trial", Lancet, 380:1387-95. 2012.

Senni et al., "Initiating sacubitril/valsartan (LCZ696) in heart failure: results of Titration, a double-blind, randomized comparison of two uptitration regimens", including Supplemental Appendix p. 1-9, European Journal of Heart Failure (May 12, 2016) 18, 1193-1202.

Entresto Dosing and Titration Guide (2019).
Entresto Prescribing information (Jul. 2015).
Entresto Dosing and Titration Guide (2017).
Entresto Dosing and Titration Guide (2015).
Entresto Dosing and Safety, https://www.entrestohcp.com/dosing-and-safety (2020).

"Titration study confirms LCZ696 safe and tolerated in clinical practice. More than 70% of HFrEF patients achieved the target dose", European Society of Cardiology Press release (May 23, 2015).

Brauser, "Titration: Two LCZ696 Dosing Regimens Appear Safe, Tolerable for Range of HFrEF Patients", Medscape (May 25, 2015).

* cited by examiner

*Primary Examiner* — Sarah Pihonak
*Assistant Examiner* — Jason Deck
(74) *Attorney, Agent, or Firm* — Meghan S. Adams

(57) **ABSTRACT**

The present invention relates to sacubitril-valsartan dosage regimens for the treatment of heart failure in a patient.

**19 Claims, 1 Drawing Sheet**



US 11,058,667 B2

1

# SACUBITRIL-VALSARTAN DOSAGE REGIMEN FOR TREATING HEART FAILURE

## RELATED APPLICATIONS

This application is a national stage application, filed under 35 U.S.C. § 371, of International Application No. PCT/IB2016/052633, filed May 9, 2016, which claims priority to and the benefit of U.S. Provisional Application No. 62/159,703, filed May 11, 2015, the entire contents of each of which are incorporated herein by reference in their entireties.

## FIELD OF THE INVENTION

The present invention relates to novel methods and pharmaceutical compositions for the treatment of heart failure in a patient, in particular to a regimen for treating heart failure which comprises administering to a patient in need thereof a twice-daily target dose of an Angiotensin Receptor Neprilysin inhibitor (ARNi) or of a combination of an Angiotensin Receptor Blocker (ARB) with a Neutral Endopeptidase inhibitor (NEPi) or with a NEPi pro-drug, wherein said target dose is reached after a titration with an initial lower twice-daily dose of said ARNI increasing to the twice daily target dose from about 2 to about 8 weeks.

## BACKGROUND OF THE INVENTION

Chronic heart failure (CHF) is a major public health problem characterized by significant mortality, frequent hospitalization, and poor quality of life, with an overall prevalence that is increasing throughout the world. In the United States (US) alone, approximately 5 million patients have heart failure (HF) and there are over half a million newly diagnosed cases annually. In Europe, the prevalence of HF is between 2 and 3%, and that in the elderly is estimated between 10 to 20%.

Medical therapies targeted at improving outcomes in HF with a low LVEF have been well studied over the past two decades, leading to an improvement in survival as well as a decrease in morbidity, mostly in the form of decrease in re-hospitalization for HF. These medical therapies include angiotensin converting enzyme (ACE) inhibitors, angiotensin receptor blockers (ARBs), β-blockers and mineralocorticoid antagonists.

However, despite advances in pharmacological (and device) therapies, the outlook remains poor. Overall 50% of patients die within 4 years, and 40% of patients admitted to hospital with HF die or are readmitted within 1 year. Thus, HF still represents a major cause of cardiac mortality and morbidity with a clear need for better therapy.

LCZ696 is a first-in-class, angiotensin receptor neprilysin inhibitor (ARNI) being developed for the treatment of CHF. Following ingestion, LCZ696 provides systemic exposure to sacubitril (AHU377; (2R,4S)-5-biphenyl-4-yl-4-(3-carboxy-propionylamino)-2-methyl-pentanoic acid ethyl ester, also named N-(3-carboxy-1-oxopropyl)-(4S)-(p-phenylphenylmethyl)-4-amino-2R-methylbutanoic acid ethyl ester), a neprilysin (neutral endopeptidase 24.11, NEP) inhibitor (NEPi) and valsartan, an ARB, in a 1:1 molar ratio. AHU377 is further metabolized via esterases to the active NEPi, LBQ657. Neprilysin degrades biologically active natriuretic peptides (NPs), including atrial natriuretic peptide (ANP), B-type natriuretic peptide (BNP) and C-type natriuretic peptide (CNP). The effects of NEP inhibition are attributed to the enhanced effects of biologically active NPs. NPs,

2

acting through the second messenger cyclic guanosine monophosphate, have potent natriuretic and vasodilator properties, inhibit the activity of the renin-angiotensin-aldosterone system (RAAS), lower sympathetic drive and have anti-fibrotic and anti-hypertrophic effects. Angiotensin receptor blockade is specific and competitive at the angiotensin type 1 (AT1) receptor, which mediates the deleterious effects of angiotensin II on the cardiovascular system. LCZ696, through its dual mode of action, potentiates NPs via NEP inhibition while inhibiting the RAS via AT1 receptor blockade. Both of these mechanisms are considered to act in a complementary and additive manner to improve the morbidity and mortality of HF patients.

The clinical efficacy of LCZ696 in reducing the cardiovascular death and hospitalizations due to HF in HF-rEF patients was assessed in the LCZ696B2314 PARADIGM-HF study. The PARADIGM-HF study incorporated a single-blind, active run-in phase that was designed to assure a large proportion of patients will maintain target dose study drug during the long term study. Patients entered a single-blind active run-in in which they received enalapril 10 mg bid, followed by LCZ696 100 mg bid, and then LCZ696 200 mg bid. Patients must tolerate the study target dose of enalapril (10 mg bid) and the study target dose of LCZ696 (200 mg bid) for at least 2 weeks in order to be randomized. However, the active run-in phase included in the PARADIGM-HF study design (the sequential use of enalapril followed by LCZ696) provided limited information on how the physician should initiate the LCZ696 therapy in clinical practice, in particular for those patients who are currently on the low dose of ACEIs or ARBs, or ACEI/ARB-naïve patients.

Accordingly there was a need to provide guidance on dosing and up-titration of LCZ696 (sacubitril and valsartan in a 1:1 molar ratio).

The compounds and pharmaceutical compositions disclosed herein include novel drug candidates potentially useful for the treatment of hypertension and/or heart failure. Such compounds or pharmaceutical compositions have been previously disclosed in WO 2003/059345, WO 2007/056546, WO 2009/061713 as well as WO2014029848, which are herein incorporated by reference.

## SUMMARY OF THE INVENTION

Surprisingly, it has been shown with a regimen for treating heart failure which comprises administering to a patient in need thereof a twice-daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio (e.g. LCZ696), wherein said target dose is reached after a titration with an initial twice-daily dose of at least 50 mg of sacubitril and valsartan in a 1:1 molar ratio increasing to the twice daily target dose of 200 mg of from about 2 to about 8 weeks, the target dose can be safely reached in the large majority of the patients.

The treatment success rate with sacubitril and valsartan in a 1:1 molar ratio (e.g. LCZ696) was even more improved if patients taking lower doses of ACEIs/ARBs (i.e., the low RAAS stratum) were up-titrated more gradually than patients who were taking higher doses of ACEIs/ARBs. The treatment success rate was 10% higher (85%) for patients in the low RAAS stratum given gradual up-titration over 6 weeks compared to those given condensed up-titration over 3 weeks. This difference was due to hypotension, hyperkalemia and renal dysfunction in most cases. On the other hand, surprisingly, there was no difference in the treatment success rate for high RAAS stratum patients, regardless of the rate of up-titration (3 weeks vs. 6 weeks).

US 11,058,667 B2

3                                                                    4

Accordingly, the present invention, in a first embodiment relates to a regimen for treating heart failure which comprises administering to a patient in need thereof a twice-daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio, wherein said target dose is reached after a titration with an initial twice-daily dose of at least 50 mg of sacubitril and valsartan in a 1:1 molar ratio increasing to the twice daily target dose of 200 mg of from about 2 to about 8 weeks.

In one embodiment thereof, the patient is a human patient.

In another embodiment thereof, the compound of formula (I) is trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl)propionate-(S)-3'-methyl-2'-(pentanoyl{2''-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate] hemipentahydrate (LCZ696).

In another embodiment, the present invention relates to a regimen for treating heart failure which comprises administering to a patient in need thereof a twice-daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio, wherein said dose is reached after a titration with a twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by a twice daily dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter, and wherein the twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient not taking an angiotensin-converting enzyme (ACE) inhibitor or an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

In another embodiment, the present invention relates to a regimen for treating heart failure which comprises administering to a patient in need thereof a twice-daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio, wherein said dose is reached after a titration with a twice daily starting dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter and wherein the twice daily starting dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient taking higher doses of an angiotensin-converting enzyme (ACE) inhibitor or of an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

In another embodiment, the present invention relates to a twice-daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio for use in the treatment of heart failure in a patient, wherein said dose is reached after a titration with an initial twice-daily dose of at least 50 mg of sacubitril and valsartan in a 1:1 molar ratio increasing to the twice daily target dose of 200 mg for from about 2 to about 8 weeks.

In another embodiment, the present invention is directed to the use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient, wherein the medicament comprises a twice-daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio which is reached after a titration with an initial twice-daily dose of at least 50 mg of sacubitril and valsartan in a 1:1 molar ratio increasing to the twice daily target dose of 200 mg for from about 2 to about 8 weeks.

BRIEF DESCRIPTION OF THE DRAWINGS

FIG. **1** shows the study design for the multi-center, randomized, double-blind, parallel-group study conducted to evaluate the safety and tolerability of LCZ696 comparing two up-titration regimens in both outpatients and hospitalized patients (inpatients) with HFrEF.

Definitions

Throughout this specification and in the claims that follow, the following terms are defined with the following meanings, unless explicitly stated otherwise.

The term "prevention" refers to prophylactic administration to a healthy subject to prevent the development of the conditions mentioned herein. Moreover, the term "prevention" means prophylactic administration to patients being in a pre-stage of the conditions to be treated.

The term "treatment" is understood the management and care of a patient for the purpose of combating the disease, condition or disorder.

The term "therapeutically effective amount" refers to an amount of a drug or a therapeutic agent that will elicit the desired biological and/or medical response of a tissue, system or an animal (including man) that is being sought by a researcher or clinician.

The terms "patient" include, but are not limited to, humans, dogs, cats, horses, pigs, cows, monkeys, rabbits and mice. The preferred patients are humans.

The terms "administration of" and or "administering a" compound should be understood to mean providing a compound of the invention or a pharmaceutically acceptable salt or ester thereof, or a pro-drug thereof to a subject in need of treatment. The administration of the composition of the present invention in order to practice the present methods of therapy is carried out by administering a therapeutically effective amount of the compounds in the composition to a subject in need of such treatment or prophylaxis. The need for a prophylactic administration according to the methods of the present invention is determined via the use of well-known risk factors. The effective amount of an individual compound is determined, in the final analysis, by the physician in charge of the case, but depends on factors such as the exact disease to be treated, the severity of the disease and other diseases or conditions from which the patient suffers, the chosen route of administration, other drugs and treatments which the patient may concomitantly require, and other factors in the physician's judgment.

The term "prophylactically effective amount" as used herein means the amount of the active compounds in the composition that will elicit the biological or medical response in a tissue, system, subject, or human that is being sought by the researcher, veterinarian, medical doctor or other clinician, to prevent the onset of a disease characterized and/or manifested by atrial enlargement and/or remodeling.

The term "pharmaceutically acceptable", as used herein, refers to those compounds, materials, compositions and/or dosage forms, which are, within the scope of sound medical judgment, suitable for contact with the tissues of mammals, especially humans, without excessive toxicity, irritation, allergic response and other problem complications commensurate with a reasonable benefit/risk ratio.

The New York Heart Association (NYHA) classification grades the severity of heart failure symptoms as one of four functional classes. The NYHA classification is widely used in clinical practice and in research because it provides a standard description of severity that can be used to assess response to treatment and to guide management. The New York Heart Association functional classification based on severity of symptoms and physical activity:

US 11,058,667 B2

5

Class I: No limitation of physical activity. Ordinary physical activity does not cause undue breathlessness, fatigue, or palpitations.

Class II: Slight limitation of physical activity. Comfortable at rest, but ordinary physical activity results in undue breathlessness, fatigue, or palpitations.

Class III: Marked limitation of physical activity. Comfortable at rest, but less than ordinary physical activity results in undue breathlessness, fatigue, or palpitations.

Class IV: Unable to carry on any physical activity without discomfort. Symptoms at rest can be present. If any physical activity is undertaken, discomfort is increased.

Choice of endpoints: Cardiovascular death and heart failure hospitalization both reflect disease-specific endpoints related to progressive worsening of the heart failure syndrome, and experienced by patients with systolic heart failure. These endpoints can be modified by treatments improving this condition, which has generally proved to be the case with drugs such as ACEIs, aldosterone antagonists, and β-blockers as well as devices for cardiac resynchronization therapy.

In the context of the present invention, the term "sacubitril and valsartan in a 1:1 molar ratio" refers to an Angiotensin Receptor Neprilysin inhibitor (ARNi) which is

a) trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxy-carbonyl-1-butylcarbamoyl)propionate-(S)-3'-methyl-2'-(pentanoyl{2"-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate] hemipentahydrate (LCZ696), or

b) a combination comprising a therapeutically effective amount of a 1:1 molar ratio of
(i) valsartan or a pharmaceutically acceptable salt thereof; and
(ii) sacubitril or a pharmaceutically acceptable salt thereof.

### DETAILED DESCRIPTION OF THE INVENTION

This invention has shown based on the clinical trial TITRATION (see Example section) that the large majority of patients initiated on a treatment with sacubitril and valsartan in a 1:1 molar ration achieved and maintained the target dose of 200 mg twice daily without any dose interruption or down-titration over 12 weeks. More patients who were naïve to previous ACE inhibitor or ARB therapy or on low-dose therapy (equivalent to <10 mg enalapril/day) were able to achieve and maintain the 200 mg target dose when up-titrated over 6 weeks versus 3 weeks.

Accordingly, the present invention relates to the following:

Methods of Treatment

#### Embodiment 1

The invention encompasses a regimen for treating heart failure which comprises administering to a patient in need thereof a twice-daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio, wherein said target dose is reached after a titration with an initial twice-daily dose of at least 50 mg of sacubitril and valsartan in a 1:1 molar ratio increasing to the twice daily target dose of 200 mg of from about 2 to about 8 weeks.

The invention is further described in the following embodiments, numbered 2 to 20:

2. A regimen for treating heart failure according to embodiment 1, wherein said dose is reached after a titration

6

with a twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by a twice daily dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

3. A regimen for treating heart failure according to embodiment 2, wherein said dose is reached after a titration with a twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 3 weeks, followed by a twice daily dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for about 3 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

4. A regimen for treating heart failure according to embodiment 1, wherein said dose is reached after a titration of a twice daily starting dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

5. A regimen for treating heart failure according to embodiment 4, wherein said dose is reached after a titration of a twice daily starting dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for about 2 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

6. A regimen for treating heart failure according to embodiment 2 or 3, wherein the twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient not taking an angiotensin-converting enzyme (ACE) inhibitor or an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

7. A regimen for treating heart failure according to embodiment 2, wherein the twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient taking low doses of an angiotensin-converting enzyme (ACE) inhibitor or of an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

8. A regimen for treating heart failure according to embodiment 7, wherein the lower dose of an ACEI or ARB is equivalent to <10 mg of enalapril per day.

9. A regimen for treating heart failure according to embodiment 1, wherein said titration mitigates a risk selected from hypotension, hyperkalemia, and renal adverse events.

10. A regimen for treating heart failure according to embodiment 4 or 5, wherein the twice daily starting dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient taking higher doses of an angiotensin-converting enzyme (ACE) inhibitor or of an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

11. A regimen for treating heart failure according to embodiment 10, wherein the higher dose of an ACEI or ARB is equivalent to ≥10 mg of enalapril per day.

12. A regimen for treating heart failure according to embodiment 1, wherein the patient suffers from chronic systolic heart failure with reduced ejection fraction.

13. A regimen for treating heart failure according to embodiment 1, wherein the patient is a human patient.

14. A regimen for treating heart failure according to embodiment 1, wherein the patient has at least one of the following characteristics
i) heart failure of NYHA class II, III or IV,

7

ii) an elevated plasma BNP or NT-proBNP level, preferably a plasma BNP ≥100 pg/mL (or NT-proBNP ≥400 pg/mL), more preferably a plasma BNP ≥150 pg/mL or NT-proBNP ≥600 pg/mL, and

iii) a reduced ventricular ejection fraction (LVEF) of ≤40%, preferably ≤35%.

15. A regimen for treating heart failure according to embodiment 1, wherein the patient suffers from chronic heart failure classified as NYHA class II, III or IV and has systolic dysfunction, preferably wherein the patient has a reduced left ventricular ejection fraction (LVEF) of ≤35%.

16. A regimen for treating heart failure according to embodiment 1, wherein sacubitril and valsartan in a 1:1 molar ratio are delivered in the form of the compound trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl)propionate-(S)-3'-methyl-2'-(pentanoyl{2''-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate]hemipentahydrate (LCZ696).

17. A regimen for treating heart failure according to embodiment 1, wherein sacubitril and valsartan in a 1:1 molar ratio are delivered in the form of a pharmaceutical composition comprising

(i) valsartan or a pharmaceutically acceptable salt thereof; and

(ii) sacubitril or a pharmaceutically acceptable salt thereof,

18. A regimen for treating heart failure according to embodiment 1, wherein the patient receives a base treatment with a stable dose of a beta-blocker, an aldosterone antagonists, and/or a diuretic.

19. A regimen for treating heart failure according to embodiment 1, wherein the patient has to stop taking the angiotensin receptor blocker (ARB) or the ACE inhibitor at least 36 hours prior to taking the medicament.

20. A regimen for treating heart failure according to embodiment 1, wherein

a) the 50 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 24 mg sacubitril and 26 mg valsartan,

b) the 100 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 49 mg sacubitril and 51 mg valsartan, and

c) the 200 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 97 mg sacubitril and 103 mg valsartan.

In another embodiment of the foregoing, the patient is a human patient.

In another embodiment of the foregoing, the patient suffering from chronic systolic heart failure, in particular the patient with chronic systolic heart failure with reduced ejection fraction, has at least one of the following characteristics:

i) heart failure of NYHA class II, III or IV,

ii) an elevated plasma BNP or NT-proBNP level, preferably a plasma BNP ≥100 pg/mL (or NT-proBNP ≥400 pg/mL), more preferably a plasma BNP ≥150 pg/mL or NT-proBNP ≥600 pg/mL, and

iii) a reduced left ventricular ejection fraction (LVEF) of ≤40%, preferably ≤35%.

In addition, the patient might be characterized by one or more of the following:

iv) prior hospitalization for heart failure within the last 12 months,

v) a stable ACE inhibitor or ARB at dose ≥enalapril 10 mg daily+beta-blocker (unless contraindicated or intolerant)+aldosterone antagonist (as indicated),

vi) systolic blood pressure ≥95 mm Hg,

8

vii) eGFR ≥30 ml/min/1.73 m² and

viii) serum K ≤5.4 mEq/L.

In another embodiment of the foregoing, the patient has heart failure classified as NYHA class II, III or IV and has systolic dysfunction. In another embodiment the patient has heart failure classified as NYHA class II. In a further embodiment, the patient has heart failure classified as NYHA class II with systolic dysfunction and has a reduced left ventricular ejection fraction (LVEF) of ≤35%.

All the aforementioned embodiments for the methods of protection and treatment according to the present invention are equally applicable to

the use of a compound of formula (I) or of the combination (i)/(ii) as defined herein for the manufacture of a medicament for use according to the present invention,

the use of a compound of formula (I) or of the combination (i)/(ii) as defined herein according to the present invention,

a compound of formula (I) or of the combination (i)/(ii) as defined herein for use according to the present invention,

the pharmaceutical compositions comprising a compound of formula (I) or of the combination (i)/(ii) as defined herein for the use according to the present invention,

the use of the pharmaceutical compositions comprising a compound of formula (I) or of the combination (i)/(ii) as defined herein according to the present invention and

the use of the pharmaceutical compositions comprising a compound of formula (I) or of the combination (i)/(ii) as defined herein for the manufacture of a medicament for use according to the present invention.

Some of these aspects are further described in more detail below, but this description should not be construed as limiting.

Compound or Combination for Use

In a separate aspect, the present invention is directed to the following embodiment 20:

A twice-daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio for use in the treatment of heart failure in a patient, wherein said dose is reached after a titration with an initial twice-daily dose of at least 50 mg of sacubitril and valsartan in a 1:1 molar ratio increasing to the twice daily target dose of 200 mg for from about 2 to about 8 weeks.

The invention is further described in the following embodiments, numbered 22 to 40:

22. The twice-daily target dose of embodiment 21 for use in the treatment of heart failure in a patient, wherein said dose is reached after a titration with a twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by a twice daily dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

23. The twice-daily target dose of embodiment 22 for use in the treatment of heart failure in a patient, wherein said dose is reached after a titration with a twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 3 weeks, followed by a twice daily dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for about 3 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

24. The twice daily target dose of embodiment 21 for use in the treatment of heart failure in a patient, wherein said dose is reached after a titration of a twice daily starting dose

US 11,058,667 B2

9

of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

25. The twice daily target dose of embodiment 24 for use in the treatment of heart failure in a patient, wherein said dose is reached after a titration of a twice daily starting dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for about 2 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

26. The twice daily target dose of embodiment 22 or 23 for use in the treatment of heart failure in a patient, wherein the twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient not taking an angiotensin-converting enzyme (ACE) inhibitor or an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

27. The twice daily target dose of embodiment 22 for use in the treatment of heart failure in a patient, wherein the twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient taking low doses of an angiotensin-converting enzyme (ACE) inhibitor or of an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

28. The twice daily target dose of embodiment 27 for use in the treatment of heart failure in a patient, wherein the lower dose of an ACEI or ARB is equivalent to ≤10 mg of enalapril per day.

29. The twice daily target dose of embodiment 21 for use in the treatment of heart failure in a patient, wherein said titration mitigates a risk selected from hypotension, hyperkalemia, and renal adverse events.

30. The twice daily target dose of embodiment 4 or 5 for use in the treatment of heart failure in a patient, wherein the twice daily starting dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient taking higher doses of an angiotensin-converting enzyme (ACE) inhibitor or of an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

31. The twice daily target dose of embodiment 30 for use in the treatment of heart failure in a patient, wherein the higher dose of an ACEI or ARB is equivalent to ≥10 mg of enalapril per day.

32. The twice-daily target dose of any one of the preceding embodiments 21 to 31 for use in the treatment of heart failure in a patient, wherein the patient suffers from chronic systolic heart failure with reduced ejection fraction.

33. The twice-daily target dose of any one of the preceding embodiments 21 to 31 for use in the treatment of heart failure in a patient, wherein the patient is a human patient.

34. The twice-daily target dose of any one of the preceding embodiments 21 to 31 for use in the treatment of heart failure in a patient, wherein the patient has at least one of the following characteristics
i) heart failure of NYHA class II, III or IV,
ii) an elevated plasma BNP or NT-proBNP level, preferably a plasma BNP ≥100 pg/mL (or NT-proBNP ≥400 pg/mL), more preferably a plasma BNP ≥150 pg/mL or NT-proBNP ≥600 pg/mL, and
iii) a reduced left ventricular ejection fraction (LVEF) of ≤40%, preferably ≤35%.

35. The twice-daily target dose of any one of the preceding embodiments 21 to 31 for use in the treatment of heart failure in a patient, wherein the patient suffers from chronic heart failure classified as NYHA class II, III or IV and has

10

systolic dysfunction, preferably wherein the patient has a reduced left ventricular ejection fraction (LVEF) of ≤35%.

36. The twice-daily target dose of any one of the preceding embodiments 21 to 31 for use in the treatment of heart failure in a patient, wherein sacubitril and valsartan in a 1:1 molar ratio are delivered in the form of the compound trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl)propionate-(S)-3'-methyl-2'-(pentanoyl{2''-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino) butyrate] hemipentahydrate (LCZ696).

37. The twice-daily target dose of any one of the preceding embodiments 21 to 31 for use in the treatment of heart failure in a patient, wherein sacubitril and valsartan in a 1:1 molar ratio are delivered in the form of a pharmaceutical composition comprising
(i) valsartan or a pharmaceutically acceptable salt thereof; and
(ii) sacubitril or a pharmaceutically acceptable salt thereof,

38. The twice-daily target dose of any one of the preceding embodiments 21 to 31 for use in the treatment of heart failure in a patient, wherein the patient receives a base treatment with a stable dose of a beta-blocker, an aldosterone antagonists, and/or a diuretic.

39. The twice-daily target dose of any one of the preceding embodiments 21 to 31 for use in the treatment of heart failure in a patient, wherein the patient has to stop taking the angiotensin receptor blocker (ARB) or the ACE inhibitor at least 36 hours prior to taking the medicament.

40. The twice-daily target dose of any one of the preceding embodiments 21 to 31 for use in the treatment of heart failure in a patient, wherein
a) the 50 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 24 mg sacubitril and 26 mg valsartan,
b) the 100 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 49 mg sacubitril and 51 mg valsartan, and
c) the 200 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 97 mg sacubitril and 103 mg valsartan.

Use for the Manufacture of a Medicament

In a separate aspect, the present invention is directed to the following embodiment 41:

41. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient, wherein the medicament comprises a twice-daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio which is reached after a titration with an initial twice-daily dose of at least 50 mg of sacubitril and valsartan in a 1:1 molar ratio increasing to the twice daily target dose of 200 mg for from about 2 to about 8 weeks.

The invention is further described in the following embodiments, numbered 42 to 61:

42. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to embodiment 41, wherein said target dose is reached after a titration with a twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by a twice daily dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

43. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to embodiment 42, wherein

US 11,058,667 B2

11

said target dose is reached after a titration with a twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 3 weeks, followed by a twice daily dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for about 3 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

44. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to embodiment 41, wherein said target dose is reached after a titration of a twice daily starting dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

45. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to embodiment 44, wherein said target dose is reached after a titration of a twice daily starting dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for about 2 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

46. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to embodiment 42 or 43, wherein the twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient not taking an angiotensin-converting enzyme (ACE) inhibitor or an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

47. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to embodiment 42 or 43, wherein the twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient taking low doses of an angiotensin-converting enzyme (ACE) inhibitor or of an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

48. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to embodiment 47, wherein the lower dose of an ACEI or ARB is equivalent to ≤10 mg of enalapril per day.

49. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to embodiment 41, wherein said titration mitigates a risk selected from hypotension, hyperkalemia, and renal adverse events.

50. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to embodiment 44 or 45, wherein the twice daily starting dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient taking higher doses of an angiotensin-converting enzyme (ACE) inhibitor or of an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

51. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to embodiment 50, wherein the higher dose of an ACEI or ARB is equivalent to ≥10 mg of enalapril per day.

52. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to any one of the preceding embodiments 41 to 51, wherein the patient suffers from chronic systolic heart failure with reduced ejection fraction.

12

53. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to any one of the preceding claims 41 to 51, wherein the patient is a human patient.

54. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to any one of the preceding embodiments 41 to 51, wherein the patient has at least one of the following characteristics

i) heart failure of NYHA class II, III or IV,
ii) an elevated plasma BNP or NT-proBNP level, preferably a plasma BNP ≥100 pg/mL (or NT-proBNP ≥400 pg/mL), more preferably a plasma BNP ≥150 pg/mL or NT-proBNP ≥600 pg/mL, and
iii) a reduced left ventricular ejection fraction (LVEF) of ≤40%, preferably ≤35%.

55. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to any one of the preceding embodiments 41 to 51, wherein the patient suffers from chronic heart failure classified as NYHA class II, III or IV and has systolic dysfunction, preferably wherein the patient has a reduced left ventricular ejection fraction (LVEF) of ≤35%.

56. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to any one of the preceding embodiments 41 to 51, wherein sacubitril and valsartan in a 1:1 molar ratio are delivered in the form of the compound trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl)propionate-(S)-3'-methyl-2'-(pentanoyl{2"-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino) butyrate] hemipentahydrate (LCZ696).

57. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to any one of the preceding embodiments 41 to 51, wherein sacubitril and valsartan in a 1:1 molar ratio are delivered in the form of a pharmaceutical composition comprising

(i) valsartan or a pharmaceutically acceptable salt thereof; and
(ii) sacubitril or a pharmaceutically acceptable salt thereof,

58. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to any one of the preceding embodiments 41 to 51, wherein the patient receives a base treatment with a stable dose of a beta-blocker, an aldosterone antagonists, and/or a diuretic.

59. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to any one of the preceding embodiments 41 to 51, wherein the patient receives base treatment with a stable dose of a beta-blocker and optionally an aldosterone antagonist.

60. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to any one of the preceding embodiments 41 to 51, wherein the patient has to stop taking the angiotensin receptor blocker (ARB) or the ACE inhibitor at least 36 hours prior to taking the medicament.

61. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to any one of the preceding embodiments 41 to 51, wherein

US 11,058,667 B2

13

a) the 50 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 24 mg sacubitril and 26 mg valsartan,

b) the 100 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 49 mg sacubitril and 51 mg valsartan, and

c) the 200 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 97 mg sacubitril and 103 mg valsartan.

Compounds and Combinations and Pharmaceutical Compositions for Use According to the Invention

The "sacubitril and valsartan in a 1:1 molar ratio" of the invention used in the aforementioned methods is provided in the form of

a) the compound trisodium [3-((1S,3R)-1-biphenyl-4-yl-methyl-3-ethoxycarbonyl-1-butylcarbamoyl)propionate-(S)-3'-methyl-2'-(pentanoyl{2"-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate] hemipentahydrate (LCZ696), or

b) a pharmaceutical composition comprising a 1:1 molar ratio of

(i) valsartan or a pharmaceutically acceptable salt thereof; and

(ii) of sacubitril or a pharmaceutically acceptable salt thereof.

Sacubitril is the INN for N-(3-carboxy-1-oxopropyl)-(4S)-(p-phenylphenylmethyl)-4-amino-2R-methylbutanoic acid ethyl ester. This is a prodrug for (2R,4S)-5-biphenyl-4-yl-4-(3-carboxy-propionyl amino)-2-methyl-pentanoic acid.

In a preferred embodiment, the compound trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl)propionate-(S)-3'-methyl-2'-(pentanoyl{2"-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate] hemipentahydrate is present in crystalline form.

In another embodiment, the combination comprises a 1:1 molar ratio

(i) of valsartan; and

(ii) of sacubitril or a pharmaceutically acceptable salt thereof, such as sodium or calcium salt.

In a preferred embodiment, the invention encompasses a pharmaceutical composition for use comprising a therapeutically effective amount of trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl)propionate-(S)-3'-methyl-2'-(pentanoyl{2"-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate] hemipentahydrate (Compound LCZ696). Such compounds and pharmaceutical compositions have been previously disclosed in WO2007/056546 and WO 2009/061713, whose preparative teachings are incorporated herein by reference.

In a further embodiment of the invention, the pharmaceutical compositions for use according to the present invention comprise trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl) propionate-(S)-3'-methyl-2'-(pentanoyl{2"-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}butyrate] hemipentahydrate (LCZ696) and deliver upon administration the NEP inhibitor pro-drug sacubitril and the angiotensin receptor blocker valsartan together to the patient.

In one embodiment of the invention for all of its uses, the pharmaceutical composition comprises the NEP inhibitor pro-drug sacubitril, namely N-(3-carboxy-1-oxopropyl)-(4S)-p-phenylphenylmethyl)-4-amino-2R-methylbutanoic acid ethyl ester or the NEP inhibitor N-(3-carboxy-1-oxo-propyl)-(4S)-p-phenylphenylmethyl)-4-amino-(2R)-methylbutanoic acid, or pharmaceutically acceptable salts thereof, and the Angiotensin Receptor Blocker valsartan or

14

a pharmaceutically acceptable salt thereof. Such combinations are for example disclosed within international patent application WO 2003/059345, which is herewith incorporated by reference.

In one embodiment, the pharmaceutical composition comprises the NEP inhibitor pro-drug sacubitril, namely N-(3-carboxy-1-oxopropyl)-(4S)-p-phenylphenylmethyl)-4-amino-(2R)-methylbutanoic acid ethyl ester or the NEP inhibitor N-(3-carboxy-1-oxopropyl)-(4S)-p-phenylphenyl-methyl)-4-amino-(2R)-methylbutanoic acid, or pharmaceutically acceptable salts thereof, and the Angiotensin Receptor Blocker valsartan or a pharmaceutically acceptable salt thereof, in a 1:1 molar ratio.

(i) Valsartan or (S)—N-valeryl-N-{[2'-(1H-tetrazole-5-yl)-biphenyl-4-yl]-methyl}-valine) or a pharmaceutically acceptable salt thereof that can be purchased from commercial sources or can be prepared according to known methods, such as described in U.S. Pat. No. 5,399,578 and EP 0443983, whose preparative teachings are incorporated by reference herein. Valsartan may be used in certain embodiments of the invention in its free acid form, as well as in any suitable salt form. Depending upon the circumstance, esters or other derivatives of the carboxylic grouping may be employed as well as salts and derivatives of the tetrazole grouping.

(ii) sacubitril, namely N-(3-carboxy-1-oxopropyl)-(4S)-(p-phenylphenylmethyl)-4-amino-2R-methylbutanoic acid ethyl ester, or (2R,4S)-5-biphenyl-4-yl-4-(3-carboxy-propionyl amino)-2-methyl-pentanoic acid can be prepared by known methods such as described in U.S. Pat. No. 5,217,996 which is herein incorporated by reference.

The corresponding active ingredient or a pharmaceutically acceptable salt thereof may also be used in the form of a hydrate or include other solvents used for crystallization.

The pharmaceutical compositions according to the invention can be prepared in a manner known per se and are those suitable for enteral, such as oral or rectal, and parenteral administration to mammals (warm-blooded animals), including man, comprising a therapeutically effective amount of the pharmacologically active compound, alone or in combination with one or more pharmaceutically acceptable carriers, especially suitable for enteral or parenteral application.

The pharmaceutical preparations of the invention contain, for example, from about 0.1% to about 100%, e.g. 80% or 90%, or from about 1% to about 60%, of the active ingredient. The term "about" or "approximately", as used herein in each instance, shall have the meaning of within 10%, more preferably within 5%, of a given value or range.

Pharmaceutical preparations according to the invention for enteral or parenteral administration are, e.g., those in unit dose forms, such as sugar-coated tablets, tablets, capsules, bars, sachets, granules, syrups, aqueous or oily suspensions or suppositories and furthermore ampoules. These are prepared in a manner known per se, e.g. by means of conventional mixing, granulating, sugar-coating, dissolving or lyophilizing processes. Thus, pharmaceutical preparations for oral use can be obtained by combining the active ingredient with solid carriers, if desired granulating a mixture obtained, and processing the mixture or granules, if desired or necessary, after addition of suitable excipients to give tablets or sugar-coated tablet cores.

Tablets may be formed from the active compound with fillers, for example calcium phosphate; disintegrating agents, for example maize starch, lubricating agents, for example magnesium stearate; binders, for example microcrystalline cellulose or polyvinylpyrrolidone and other

US 11,058,667 B2

15

optional ingredients known in the art to permit tabletting the mixture by known methods. Similarly, capsules, for example hard or soft gelatin capsules, containing the active compound with or without added excipients, may be prepared by known methods. The contents of the capsule may be formulated using known methods so as to give sustained release of the active compound.

Other dosage forms for oral administration include, for example, aqueous suspensions containing the active compound in an aqueous medium in the presence of a non-toxic suspending agent such as sodium carboxymethylcellulose, and oily suspensions containing the active compounds in a suitable vegetable oil, for example *arachis* oil.

The active compound may be formulated into granules with or without additional excipients. The granules may be ingested directly by the patient or they may be added to a suitable liquid carrier (e.g. water) before ingestion. The granules may contain disintegrants, e.g. an effervescent pair formed from an acid and a carbonate or bicarbonate salt to facilitate dispersion in the liquid medium.

The dosage of the active ingredient of the composition will, of course, vary with the nature of the severity of the condition to be treated and with the particular compound in the composition and its route of administration. It will also vary according to the age, weight and response of the individual patient.

In the embodiments where the pharmaceutical composition comprises trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl) propionate-(S)-3'-methyl-2'-(pentanoyl{2"-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate]hemipentahydrate (LCZ696) in the pharmaceutical compositions for use in the context of the present invention, the unit dose of the therapeutic agents sacubitril and valsartan together will be in the range from about 1 to about 1000 mg, such as 40 mg to 400 mg (e.g., 50 mg, 100 mg, 200 mg, 400 mg) per day. Alternatively lower doses may be given, for example doses of 0.5 to 100 mg; 0.5 to 50 mg; or 0.5 to 20 mg per day. As explanatory note, a unit dose of 100 mg LCZ696 delivering 100 mg of the two agents sacubitril and valsartan corresponds to 113.1 mg of trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl) propionate-(S)-3'-methyl-2'-(pentanoyl{2"-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate]hemipentahydrate. Correspondingly, a unit dose of 200 mg requires 226.2 mg, and a unit dose of 400 mg requires 452.4 mg of trisodium [3-((1 S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl) propionate-(S)-3'-methyl-2'-(pentanoyl{2"-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate]hemipentahydrate.

Dosages of the sum of the individual compounds (i)/(ii) in the combination of the pharmaceutical composition will be in the range from about 1 to about 1000 mg, such as 40 mg to 400 mg and include but are not limited to 5 mg, 20 mg, 25 mg, 40 mg, 50 mg, 80 mg, 100 mg, 200 mg, 400 mg, 800 mg and 1000 mg. Such dosages for compounds (i)/(ii) can be considered therapeutically effective amounts or dosage strengths. Ratios for the amount of each compound in the pharmaceutical composition are preferably in the about 1:1 molar ratio to achieve an optimal renal protection while still providing cardiovascular benefits. In preferred embodiments, the dosages of the individual compounds (i)/(ii) correspond to the same molecular amounts as in a pharmaceutical composition comprising a 50 mg, 100 mg, 200 mg or 400 mg dose of LCZ696. E.g. a 200 mg dose of LCZ696 corresponds approximately to 103 mg valsartan and 97 mg of sacubitril Pharmaceutical compositions containing a com-

16

pound of formula (I) (such as compound LCZ696), or compounds (i)/(ii) can be administered any number of times per day, i.e. once a day (q.d.), twice (b.i.d.), three times, four time, etc. in an immediate release formation or less frequently as an extended or sustained release formation. Preferably the pharmaceutical composition is administered twice daily (b.i.d.). Corresponding doses may be taken, for example, in the morning, at mid-day or in the evening.

The following example is illustrative, but does not serve to limit the scope of the invention described herein.

EXAMPLE

A multicenter, randomized, double-blind, parallel group study to assess the safety and tolerability of initiating LCZ696 in heart failure patients comparing two titration regimens.

Study Drug LCZ696:

LCZ696 refers to the supramolecular complex trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl) propionate-(S)-3'-methyl-2'-(pentanoyl{2"-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate] hemipentahydrate. This compound and pharmaceutical compositions thereof have been previously disclosed in WO2007/056546 and WO 2009/061713, whose preparative teachings are incorporated herein by reference.

LCZ696 is a first-in-class angiotensin receptor neprilysin inhibitor that comprises the molecular moieties of the NEP (neutral endopeptidase EC 3.4.24.11) inhibitor pro-drug sacubitril (INN, also known as AHU377 and N-(3-carboxy-1-oxopropyl)-(4S)-p-phenylphenylmethyl)-4-amino-(2R)-methylbutanoic acid ethyl ester) and the angiotensin receptor blocker valsartan as a single compound. Sacubitril is metabolized by enzymatic cleavage to LBQ657 (N-(3-carboxy-1-oxopropyl)-(4S)-p-phenylphenylmethyl)-4-amino-(2R)-methylbutanoic acid), the active inhibitor of neutral endopeptidase, which is the major enzyme responsible for the breakdown of atrial natriuretic peptides.

Overall Study Design

This was a multicenter, randomized, double-blind, parallel group study to assess the safety and tolerability of initiating LCZ696 in heart failure patients (New York Heart Association [NYHA] class II-IV) with reduced ejection fraction defined by a left ventricular ejection fraction (LVEF)≤35%. Up-titration regimens of 3-weeks or 6-weeks to the LCZ696 target dose of 200 mg bid were evaluated. The study consisted of two main phases: (1) open-label LCZ696 run-in phase lasting approximately one week, and (2) double-blind randomized phase lasting approximately 11 weeks. Patients enrolled were stratified based on the pre-study level of RAAS inhibition (high/low).

Study Objectives

Primary Objectives

To characterize the safety and tolerability of initiating LCZ696 in HFrEF patients with 3-week and 6-week up-titration regimens over 12 weeks based on reported adverse events and laboratory assessments.

Secondary Objectives

The secondary objectives were:

To evaluate the proportion of patients in the two treatment groups who achieved treatment success, defined as those achieving and maintaining LCZ696 200 mg bid without any dose interruption or down-titration over 12 weeks.

To evaluate the proportion of patients who tolerate a regimen of LCZ696 200 mg bid for at least 2 weeks

US 11,058,667 B2

17

18

leading to study completion, regardless of previous dose interruption or down-titration.

Study Design

This was a multi-center, randomized, double-blind, parallel-group study conducted to evaluate the safety and tolerability of LCZ696 comparing two up-titration regimens in both outpatients and hospitalized patients (inpatients) with HFrEF.

Patients were stratified based on the level of RAAS inhibition as follows:

High RAAS stratum: Patients receiving >160 mg of valsartan or >10 mg total daily dose of enalapril, or equivalent doses of other ARBs/ACEIs, respectively, at screening

Low RAAS stratum: Patients receiving ≤160 mg of valsartan or ≤10 mg total daily dose of enalapril, or equivalent doses of other ARBs/ACEIs, respectively, at screening. This stratum also included patients who were not on an ACEI or an ARB 4 weeks prior to screening (i.e., ACEI/ARB-naïve patients)

At least 25% (but not more than 50%) of the randomized patients were planned to be in the low RAAS inhibition stratum. Patients hospitalized for decompensated HF were allowed to enter either the low or high RAAS inhibition stratum, corresponding to the most recent tolerated ACEI or ARB dose they had received during their hospitalization.

This study consisted of three phases: see FIG. **1**.

(1) Screening phase lasting approximately one week;

(2) Open-label LCZ696 run-in phase lasting approximately one week (Day 1 to 5); and

(3) Randomized phase lasting approximately 11 weeks

Screening Phase

At Visit 1, during the screening phase, all patients who had provided their written informed consent were evaluated for eligibility to enter the study. Left ventricular ejection fraction (LVEF) measurements required for eligibility were based on locally obtained echocardiograms, MUGA (multigated acquisition) scans, CT (computerized tomography) scans, MRI (magnetic resonance imaging) scans, or ventricular angiographies performed within the prior 12 months, provided no subsequent measurements were >35%. If a LVEF measurement from the prior 12 months was not available, the patient could enter the trial based on a LVEF ≤35% obtained during the screening phase, i.e., before start of study medication intake. If a patient had an implanted cardiac resynchronization therapy (CRT) device, the LVEF value used to qualify for the study had to be obtained by at least three months after device implantation.

Both inpatients and outpatients were eligible for participation in this study. Patients who met all the eligibility criteria at screening were eligible to enter the open-label LCZ696 run-in phase and proceed to Visit 2 to start receiving the study medication. Patients who had been using ACEIs had to stop these medications under the supervision of the study investigator, and enter a 36-hour ACEI-free washout period before they attended their Visit 2.

Open-Label LCZ696 Run-in Phase

Patients who met all the entry criteria and completed the ACEI-free washout period (if required) attended Visit 2 within approximately one week after Visit 1. At Visit 2, patients began taking open-label LCZ696 50 mg bid. Eligible hospitalized patients also took the study medication while they were still in the hospital and before they were discharged. Patients took the study medication in addition to their background HF therapy, except for ACEIs and ARBs, which were replaced by the study medication.

Patients were asked to return after 5±2 days to attend Visit 3/777 (Randomization visit).

Randomized Phase

At Visit 3/777, safety and tolerability of LCZ696 50 mg bid was assessed (see table below). Patients, who could not tolerate LCZ696 50 mg bid per the criteria listed in the Table, were to be discontinued from the study and considered as run-in failures.

TABLE

| Safety criteria that must be met at Visits 3 to 6 in order to avoid treatment failure | |
|---|---|
| Parameter | Requirement |
| Potassium level | ≤5.4 mmol/L |
| Kidney function | eGFR ≥30 mL/min/1.73 m² eGFR reduction ≤35% compared to Screening value |
| Blood pressure | No symptomatic hypotension and SBP ≥95 mmHg |
| Adverse events (AEs) or conditions | No postural symptoms or any AEs that preclude continuation according to the investigator's judgment |

Patients who successfully completed the open-label run-in and tolerated LCZ696 50 mg bid were to be randomized to receive double-blind LCZ696 at one of the two different titration schemes in a 1:1 ratio: they could be up-titrated to 200 mg bid over the following two weeks (Condensed titration) or they could be up-titrated to 200 mg bid over the following five weeks (Conservative titration).

At Visit 3/777, patients randomized to the condensed up-titration arm were up-titrated to LCZ696 100 mg bid, while patients randomized to the conservative up-titration arm continued to receive LCZ696 50 mg bid.

Two weeks after Visit 3/777, at Visit 4, the patients who were judged by the investigator to be tolerant of the study medication per the safety criteria in the Table were up-titrated to the next dose level; those in the condensed up-titration arm received LCZ696 200 mg bid and those in the conservative up-titration arm received LCZ696 100 mg bid.

Patients returned three weeks later to attend Visit 5. Patients who were judged by the investigator to be tolerant of the study medication per the safety criteria in the Table further continued on the titration plan as outlined in above; patients in the condensed up-titration arm continued to receive LCZ696 200 mg bid, while patients in the conservative up-titration arm were up-titrated to LCZ696 200 mg bid.

Patients returned three weeks later to attend Visit 6. Patients who were judged by the investigator to be tolerant of the study medication per the safety criteria in the Table continued to receive LCZ696 200 mg bid and were asked to return three weeks later to attend Visit 778/End of Study (EoS) to undergo the final safety evaluations.

Patients who were deemed by the investigator to require dose reduction or interruption in study medication dosing at any post-randomization visit (despite modification of concomitant medications) were considered as treatment failures. They were switched to open-label LCZ696 at a dose level at the discretion of the investigator. Treatment failure patients were expected to attend the remaining study visits according to schedule and their doses were modified based on the investigator's judgment with the overall goal of achieving and maintaining the target dose (LCZ696 200 mg bid) for at least two uninterrupted weeks and until Visit 778/EoS.

19

Throughout the randomized phase, patients took the study medication in addition to their background HF therapy, except for ACEIs and ARBs, which were replaced by the study medication itself. Every attempt was made to maintain patients on the assigned study medication throughout the trial.

At each visit, the patients' medication compliance as well as safety and tolerability of the study medication was assessed, including, but not limited to, signs and symptoms of hypotension, elevated potassium level, and decreased renal function. If, however, in the opinion of the investigator, the patient could not tolerate the assigned study medication, the investigator could consider if the non-disease-modifying medications (e.g., CCBs, diuretics, nitrates, a-blockers) could be reduced to manage tolerability before declaring the patient to be a treatment failure and subsequently switching him/her to open-label study medication. The investigator was also allowed to adjust doses of other disease-modifying medications if they were believed to be the most likely cause of the adverse effects.

Patients

Written informed consent was obtained before any assessment was performed.

Patients eligible for inclusion in this study must have fulfilled all of the following criteria listed below:

1. Males and/or females of at least 18 years of age, who were either inpatients or outpatients

2. Diagnosis of chronic heart failure (CHF) NYHA class II-IV.

3. Left ventricular ejection fraction (LVEF)≦35% at screening (any local measurement made within the past 12 months using echocardiography, MUGA, CT scanning, MRI, or ventricular angiography was acceptable, provided no subsequent measurement was >35%).

4. Meeting one of the following criteria:
   ACEI/ARB naïve patients, i.e., not on an ACEI or ARB for at least 4 weeks before screening.
   For outpatients who were being treated with ACEI or ARB, dose had to be stable dose for at least 2 weeks before screening.
   For hospitalized patients (inpatients), being on no ACEI/ ARB or on a tolerated dose of an ACEI or an ARB at screening.

5. Patients treated with a β-blocker, unless contraindicated or not tolerated (reason had to be documented in absence of that medication).

6. An aldosterone antagonist was also to be considered in all patients, taking account of renal function, serum potassium and tolerability. If given, the dose of aldosterone antagonist was to be optimized according to guideline recommendations and patient tolerability. Other evidence-based therapy for HF was also to be considered, e.g., cardiac resynchronization therapy and an implantable cardioverter-defibrillator in selected patients, as recommended by guidelines.

Treatment Arms

Patients were assigned to one of the following two treatment arms in a ratio of 1:1 as described below:
   Condensed up-titration: up-titration of LCZ696 from 50 mg bid to 200 mg bid over three weeks (including the run-in phase).
   Conservative up-titration: up-titration of LCZ696 from 50 mg bid to 200 mg bid over six weeks (including the run-in phase).

REFERENCE

The study design and procedures can be found under www.clinicaltrials.gov, study number NCT01922089, which is herewith incorporated by reference.

20

Results

Summary:

Among the randomized patients and excluding those who discontinued due to non-AE related reasons, 81% achieved the target LCZ696 200 mg bid dose without any down-titration or dose interruption over the entire 12-week study period, and 85% were on the LCZ696 200 mg bid target dose for at least 2 weeks before study completion. The most common reasons for dose adjustment/interruption or permanent discontinuation were AEs related to hypotension, renal dysfunction or hyperkalemia.

During the randomized period, a higher proportion of low RAAS stratum patients achieved the LCZ696 200 mg bid target dose and had no dose adjustment/interruption over 12 weeks if they were up-titrated more gradually. Eight-five percent (85%) of patients who were ACEI/ARB naïve or receiving prior low levels of RAAS therapy and up-titrated over 6 weeks achieved the target dose of LCZ696 200 mg bid and had no dose adjustment/interruption over 12 weeks compared with 74% of patients up-titrated over 3 weeks. This difference was due to fewer AEs related to hypotension, renal dysfunction or hyperkalemia. Eighty-three percent (83%) of patients receiving prior high levels of RAAS therapy achieved the LCZ696 200 mg bid target dose without any dose adjustment/interruption over 12 weeks, with no difference due to the rate of up-titration (3 vs. 6 weeks). There was no major difference between the uptitration regimens in the treatment success rate among the ACEI/ARB-naïve patients.

CONCLUSION

Across both run-in and randomized periods, the proportion of patients who achieved the target dose of LCZ696 200 mg bid without any dose adjustment or interruption over 12 weeks was 76% if discontinuations due to non-AE reasons are excluded and 70% based on the total number of patients receiving at least one dose of study medication.

In the low dose stratum, the rate of treatment success was higher when LCZ696 was uptitrated more gradually.

The invention claimed is:

1. A regimen for treating chronic heart failure with reduced ejection fraction, which comprises administering to a human patient in need thereof a twice-daily target dose of 200 mg of sacubitril or a pharmaceutically acceptable salt thereof with valsartan or a pharmaceutically acceptable salt thereof, which are provided to the human patient in a 1:1 molar ratio, wherein the twice daily target dose of 200 mg corresponds to 97 mg of sacubitril and 103 mg of valsartan;

   wherein the twice daily target dose 200 mg is reached after a titration with a twice daily starting dose of 50 mg of sacubitril or the pharmaceutically acceptable salt thereof together with valsartan or the pharmaceutically acceptable salt thereof, which are provided to the human patient in a 1:1 molar ratio, for from about 3 weeks to about 4 weeks, wherein the twice daily starting dose of 50 mg corresponds to 24 mg of sacubitril and 26 mg of valsartan, followed by a twice daily dose of 100 mg of sacubitril or the pharmaceutically acceptable salt thereof together with valsartan or the pharmaceutically acceptable salt thereof, which are provided to the human patient in a 1:1 molar ratio, for from about 3 weeks to about 4 weeks, wherein the twice daily dose of 100 mg corresponds to 49 mg of sacubitril and 51 mg of valsartan, followed by the twice daily target dose of 200 mg thereafter; and

   wherein:

21

(i) the twice daily starting dose of 50 mg is for use in a human patient neither taking an angiotensin-converting enzyme (ACE) inhibitor nor taking an angiotensin II receptor blocker (ARB) before initiating treatment with sacubitril or the pharmaceutically acceptable salt thereof and valsartan or the pharmaceutically acceptable salt thereof, or

(ii) the twice daily starting dose of 50 mg is for use in a human patient taking a low dose of an angiotensin-converting enzyme (ACE) inhibitor or a low dose of an angiotensin II receptor blocker (ARB) before initiating treatment with sacubitril or the pharmaceutically acceptable salt thereof and valsartan or the pharmaceutically acceptable salt thereof, wherein the low dose of the ACE inhibitor or the low dose of the ARB is equivalent to a dose of <10 mg of enalapril per day.

**2**. The regimen for treating chronic heart failure according to claim **1**, wherein the twice daily target dose of 200 mg is reached after the titration with the twice daily starting dose of 50 mg for about 3 weeks, followed by the twice daily dose of 100 mg for about 3 weeks, followed by the twice daily target dose of 200 mg thereafter.

**3**. The regimen for treating chronic heart failure according to claim **1**, wherein the human patient has to stop taking the ARB or the ACE inhibitor at least 36 hours before initiating the treatment with sacubitril or the pharmaceutically acceptable salt thereof and valsartan or the pharmaceutically acceptable salt thereof.

**4**. The regimen for treating chronic heart failure according to claim **1**, wherein the human patient has an elevated plasma BNP of ≥100 pg/mL or NT-proBNP of ≥400 pg/mL.

**5**. The regimen for treating chronic heart failure according to claim **1**, wherein the human patient has an elevated plasma BNP of ≥150 pg/mL or NT-proBNP of ≥600 pg/mL.

**6**. The regimen for treating chronic heart failure according to claim **1**, wherein the human patient has a reduced left ventricular ejection fraction (LVEF) of ≤35%.

**7**. A regimen for treating chronic heart failure with reduced ejection fraction, which comprises administering to a human patient in need thereof a twice-daily target dose of 200 mg of sacubitril or a pharmaceutically acceptable salt thereof together with valsartan or a pharmaceutically acceptable salt thereof, which are provided to the human patient in a 1:1 molar ratio, wherein the twice daily target dose of 200 mg corresponds to 97 mg of sacubitril and 103 mg of valsartan;

wherein the twice daily target dose of 200 mg is reached after a titration with a twice daily starting dose of 50 mg of sacubitril or the pharmaceutically acceptable salt thereof together with valsartan or the pharmaceutically acceptable salt thereof, which are provided to the human patient in a 1:1 molar ratio, for from about 2 weeks to about 4 weeks, wherein the twice daily starting dose of 50 mg corresponds to 24 mg of sacubitril and 26 mg of valsartan, followed by a twice daily dose of 100 mg of sacubitril or the pharmaceutically acceptable salt thereof together with valsartan or the pharmaceutically acceptable salt thereof, which are provided to the human patient in a 1:1 molar ratio, for from about 2 weeks to about 4 weeks, wherein the twice daily target dose of 100 mg corresponds to 49 mg of sacubitril and 51 mg of valsartan, followed by the twice daily target dose of 200 mg thereafter, and wherein said titration to the target dose occurs over a period of at least about 6 weeks; and

wherein:

22

(i) the twice daily starting dose of 50 mg is for use in a human patient neither taking an angiotensin-converting enzyme (ACE) inhibitor nor taking an angiotensin II receptor blocker (ARB) before initiating treatment with sacubitril or the pharmaceutically acceptable salt thereof and valsartan or the pharmaceutically acceptable salt thereof, or

(ii) the twice daily starting dose of 50 mg is for use in a human patient taking a low dose of an angiotensin-converting enzyme (ACE) inhibitor or a low dose of an angiotensin II receptor blocker (ARB) before initiating treatment with sacubitril or the pharmaceutically acceptable salt thereof and valsartan or the pharmaceutically acceptable salt thereof, wherein the low dose of the ACE inhibitor or the low dose of the ARB is equivalent to a dose of <10 mg of enalapril per day.

**8**. The regimen for treating chronic heart failure according to claim **7**, wherein the twice daily target dose is reached after the titration with the twice daily starting dose of 50 mg for about 3 weeks, followed by the twice daily dose of 100 mg for about 3 weeks, followed by the twice daily target dose of 200 mg thereafter.

**9**. The regimen for treating chronic heart failure according to claim **7**, wherein the human patient has an elevated plasma BNP of ≥100 pg/mL or NT-proBNP of ≥400 pg/mL.

**10**. The regimen for treating chronic heart failure according to claim **7**, wherein the human patient has an elevated plasma BNP of ≥150 pg/mL or NT-proBNP of ≥600 pg/mL.

**11**. The regimen for treating chronic heart failure according to claim **7**, wherein the human patient has a reduced left ventricular ejection fraction (LVEF) of ≤35%.

**12**. The regimen for treating chronic heart failure according to claim **7**, wherein the human patient has to stop taking the ARB or the ACE inhibitor at least 36 hours before initiating the treatment with sacubitril or the pharmaceutically acceptable salt thereof and valsartan or the pharmaceutically acceptable salt thereof.

**13**. The regimen for treating chronic heart failure according to claim **1**, wherein the twice daily starting dose of 50 mg is for use in the human patient taking the low dose of the ACE inhibitor or the low dose of the ARB before initiating the treatment with sacubitril or the pharmaceutically acceptable salt thereof and valsartan or the pharmaceutically acceptable salt thereof.

**14**. The regimen for treating chronic heart failure according to claim **13**, wherein the low dose of the ACE inhibitor or the low dose of the ARB is equivalent to the dose of <10 mg of enalapril per day.

**15**. The regimen for treating chronic heart failure according to claim **7**, wherein the twice daily starting dose of 50 mg is for use in the human patient taking the low dose of the ACE inhibitor or the low dose of the ARB before initiating the treatment with sacubitril or the pharmaceutically acceptable salt thereof and valsartan or the pharmaceutically acceptable salt thereof.

**16**. The regimen for treating chronic heart failure according to claim **15**, wherein the low dose of the ACE inhibitor or the low dose of the ARB is equivalent to the dose of <10 mg of enalapril per day.

**17**. The regimen for treating chronic heart failure according to claim **7**, wherein a first week of the at least about 6 weeks is 5±2 days.

**18**. The regimen for treating chronic heart failure according to claim **1**, wherein sacubitril or the pharmaceutically acceptable salt thereof together with valsartan or the pharmaceutically acceptable salt thereof are provided to the human patient in a 1:1 molar ratio by administering to the

US 11,058,667 B2

23

24

human patient a compound trisodium [3-((1S,3R)-1-biphe-nyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl)propi-onate-(S)-3'-methyl-2'-(pentanoyl{2''-(tetrazol-5-ylate)bi-phenyl-4'- ylmethyl}amino)butyrate] hemipentahydrate (LCZ696).

**19**. The regimen for treating chronic heart failure accord-ing to claim **7**, wherein sacubitril or the pharmaceutically acceptable salt thereof together with valsartan or the phar-maceutically acceptable salt thereof are provided to the human patient in a 1:1 molar ratio by administering to the human patient a compound trisodium [3-((1S,3R)-1-biphe-nyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl)propi-onate-(S)-3'-methyl-2'- (pentanoyl{2''-(tetrazol-5-ylate)bi-phenyl-4'-ylmethyl}amino)butyrate] hemipentahydrate (LCZ696).

\* \* \* \* \*

UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

| | | |
|---|---|---|
| PATENT NO. | : 11,058,667 B2 | Page 1 of 1 |
| APPLICATION NO. | : 15/572399 | |
| DATED | : July 13, 2021 | |
| INVENTOR(S) | : Rizkala et al. | |

It is certified that error appears in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

On the Title Page

Item [56] REFERENCES CITED:
"WO-2014029848" should read --WO 2014/029848--.

In the Specification

Column 5:
Line 20, "3-blockers" should read --β-blockers--.

Column 15:
Line 67, "sacubitril Pharmaceutical" should read --sacubitril. ¶Pharmaceutical--.

Column 19:
Line 14, "a-blockers)" should read --α-blockers)--.

In the Claims

Column 20:
Line 46, "thereof with" should read --thereof together with--; and
Line 50, "dose 200" should read --dose of 200--.

Column 21:
Line 16, "< 10 mg" should read --≤ 10 mg--; and
Line 62, "twice daily target dose of 100 mg" should read --twice daily dose of 100 mg--.

Column 22:
Line 16, "< 10 mg" should read --≤ 10 mg--.

Signed and Sealed this
Thirty-first Day of August, 2021

Drew Hirshfeld
*Performing the Functions and Duties of the*
*Under Secretary of Commerce for Intellectual Property and*
*Director of the United States Patent and Trademark Office*

PTO/AIA/14 (11-15)
Approved for use through 04/30/2017. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | PAT056901-US-PCT |
| | Application Number | |

| Title of Invention | SACUBITRIL-VALSARTAN DOSAGE REGIMEN FOR TREATING HEART FAILURE |

The application data sheet is part of the provisional or nonprovisional application for which it is being submitted. The following form contains the bibliographic data arranged in a format specified by the United States Patent and Trademark Office as outlined in 37 CFR 1.76.
This document may be completed electronically and submitted to the Office in electronic format using the Electronic Filing System (EFS) or the document may be printed and included in a paper filed application.

## Secrecy Order 37 CFR 5.2:

☐ Portions or all of the application associated with this Application Data Sheet may fall under a Secrecy Order pursuant to 37 CFR 5.2 (Paper filers only. Applications that fall under Secrecy Order may not be filed electronically.)

## Inventor Information:

**Inventor 1** [Remove]
Legal Name

| Prefix | Given Name | Middle Name | Family Name | Suffix |
| --- | --- | --- | --- | --- |
| | Adel | Remond | RIZKALA | |

Residence Information (Select One) ◉ US Residency ◯ Non US Residency ◯ Active US Military Service

| City | East Brunswick | State/Province | NJ | Country of Residence | US |

Mailing Address of Inventor:

| Address 1 | Novartis Pharmaceuticals Corporation |
| Address 2 | One Health Plaza |
| City | East Hanover | | State/Province | NJ |
| Postal Code | 07936 | Country | US |

**Inventor 2** [Remove]
Legal Name

| Prefix | Given Name | Middle Name | Family Name | Suffix |
| --- | --- | --- | --- | --- |
| | Victor | Chengwei | SHI | |

Residence Information (Select One) ◉ US Residency ◯ Non US Residency ◯ Active US Military Service

| City | Mendham | State/Province | NJ | Country of Residence | US |

Mailing Address of Inventor:

| Address 1 | Novartis Pharmaceuticals Corporation |
| Address 2 | One Health Plaza |
| City | East Hanover | | State/Province | NJ |
| Postal Code | 07936 | Country | US |

**Inventor 3** [Remove]
Legal Name

| Prefix | Given Name | Middle Name | Family Name | Suffix |
| --- | --- | --- | --- | --- |
| | Fabian | | CHEN | |

Residence Information (Select One) ◉ US Residency ◯ Non US Residency ◯ Active US Military Service

PTO/AIA/14 (11-15)
Approved for use through 04/30/2017. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | PAT056901-US-PCT |
|---|---|---|
| | Application Number | |

| Title of Invention | SACUBITRIL-VALSARTAN DOSAGE REGIMEN FOR TREATING HEART FAILURE |
|---|---|

| City | Englewood Cliffs | State/Province | NJ | **Country of Residence** | US |
|---|---|---|---|---|---|

**Mailing Address of Inventor:**

| Address 1 | Novartis Pharmaceuticals Corporation | | |
|---|---|---|---|
| Address 2 | One Health Plaza | | |
| City | East Hanover | State/Province | NJ |
| Postal Code | 07936 | Country | US |

All Inventors Must Be Listed - Additional Inventor Information blocks may be generated within this form by selecting the Add button.   [ Add ]

## Correspondence Information:

Enter either Customer Number or complete the Correspondence Information section below.
For further information see 37 CFR 1.33(a).

| ☐ **An Address is being provided for the correspondence Information of this application.** | | |
|---|---|---|
| Customer Number | 01095 | |
| Email Address | | [ Add Email ]  [ Remove Email ] |

## Application Information:

| Title of the Invention | SACUBITRIL-VALSARTAN DOSAGE REGIMEN FOR TREATING HEART FAILURE | | |
|---|---|---|---|
| Attorney Docket Number | PAT056901-US-PCT | **Small Entity Status Claimed** | ☐ |
| Application Type | Nonprovisional | | |
| Subject Matter | Utility | | |
| Total Number of Drawing Sheets (if any) | 1 | **Suggested Figure for Publication (if any)** | |

## Filing By Reference:

Only complete this section when filing an application by reference under 35 U.S.C. 111(c) and 37 CFR 1.57(a). Do not complete this section if application papers including a specification and any drawings are being filed. Any domestic benefit or foreign priority information must be provided in the appropriate section(s) below (i.e., "Domestic Benefit/National Stage Information" and "Foreign Priority Information").

For the purposes of a filing date under 37 CFR 1.53(b), the description and any drawings of the present application are replaced by this reference to the previously filed application, subject to conditions and requirements of 37 CFR 1.57(a).

| Application number of the previously filed application | Filing date (YYYY-MM-DD) | Intellectual Property Authority or Country |
|---|---|---|
| | | |
| | | |

## Publication Information:

| ☐ | Request Early Publication (Fee required at time of Request 37 CFR 1.219) |
|---|---|
| ☐ | **Request Not to Publish.** I hereby request that the attached application not be published under 35 U.S.C. 122(b) and certify that the invention disclosed in the attached application **has not and will not** be the subject of an application filed in another country, or under a multilateral international agreement, that requires publication at eighteen months after filing. |

EFS Web 2.2.12

PTO/AIA/14 (11-15)
Approved for use through 04/30/2017. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | PAT056901-US-PCT |
| | Application Number | |
| Title of Invention | SACUBITRIL-VALSARTAN DOSAGE REGIMEN FOR TREATING HEART FAILURE | |

## Representative Information:

Representative information should be provided for all practitioners having a power of attorney in the application. Providing this information in the Application Data Sheet does not constitute a power of attorney in the application (see 37 CFR 1.32). Either enter Customer Number or complete the Representative Name section below. If both sections are completed the customer Number will be used for the Representative Information during processing.

| Please Select One: | ● Customer Number | ○ US Patent Practitioner | ○ Limited Recognition (37 CFR 11.9) |
| Customer Number | 01095 | | |

## Domestic Benefit/National Stage Information:

This section allows for the applicant to either claim benefit under 35 U.S.C. 119(e), 120, 121, 365(c), or 386(c) or indicate National Stage entry from a PCT application. Providing benefit claim information in the Application Data Sheet constitutes the specific reference required by 35 U.S.C. 119(e) or 120, and 37 CFR 1.78.
When referring to the current application, please leave the "Application Number" field blank.

| Prior Application Status | | | Remove |
| Application Number | Continuity Type | Prior Application Number | Filing or 371(c) Date (YYYY-MM-DD) |
| | a 371 of international | PCT/IB2016/052633 | 2016-05-09 |
| Prior Application Status | | | Remove |
| Application Number | Continuity Type | Prior Application Number | Filing or 371(c) Date (YYYY-MM-DD) |
| PCT/IB2016/052633 | Claims benefit of provisional | 62/159703 | 2015-05-11 |

Additional Domestic Benefit/National Stage Data may be generated within this form by selecting the **Add** button.

## Foreign Priority Information:

This section allows for the applicant to claim priority to a foreign application. Providing this information in the application data sheet constitutes the claim for priority as required by 35 U.S.C. 119(b) and 37 CFR 1.55. When priority is claimed to a foreign application that is eligible for retrieval under the priority document exchange program (PDX)[i] the information will be used by the Office to automatically attempt retrieval pursuant to 37 CFR 1.55(i)(1) and (2). Under the PDX program, applicant bears the ultimate responsibility for ensuring that a copy of the foreign application is received by the Office from the participating foreign intellectual property office, or a certified copy of the foreign priority application is filed, within the time period specified in 37 CFR 1.55(g)(1).

PTO/AIA/14 (11-15)
Approved for use through 04/30/2017. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | PAT056901-US-PCT |
|---|---|---|
| | Application Number | |

| Title of Invention | SACUBITRIL-VALSARTAN DOSAGE REGIMEN FOR TREATING HEART FAILURE |
|---|---|

| | Remove |
|---|---|

| Application Number | Country[i] | Filing Date (YYYY-MM-DD) | Access Code[i] (if applicable) |
|---|---|---|---|
| | | | |

Additional Foreign Priority Data may be generated within this form by selecting the Add button.

## Statement under 37 CFR 1.55 or 1.78 for AIA (First Inventor to File) Transition Applications

☐ This application (1) claims priority to or the benefit of an application filed before March 16, 2013 and (2) also contains, or contained at any time, a claim to a claimed invention that has an effective filing date on or after March 16, 2013.
NOTE: By providing this statement under 37 CFR 1.55 or 1.78, this application, with a filing date on or after March 16, 2013, will be examined under the first inventor to file provisions of the AIA.

PTO/AIA/14 (11-15)
Approved for use through 04/30/2017. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | PAT056901-US-PCT |
| | Application Number | |
| Title of Invention | SACUBITRIL-VALSARTAN DOSAGE REGIMEN FOR TREATING HEART FAILURE | |

## Authorization or Opt-Out of Authorization to Permit Access:

When this Application Data Sheet is properly signed and filed with the application, applicant has provided written authority to permit a participating foreign intellectual property (IP) office access to the instant application-as-filed (see paragraph A in subsection 1 below) and the European Patent Office (EPO) access to any search results from the instant application (see paragraph B in subsection 1 below).

Should applicant choose not to provide an authorization identified in subsection 1 below, applicant **must opt-out** of the authorization by checking the corresponding box A or B or both in subsection 2 below.

**NOTE**: This section of the Application Data Sheet is **ONLY** reviewed and processed with the **INITIAL** filing of an application. After the initial filing of an application, an Application Data Sheet cannot be used to provide or rescind authorization for access by a foreign IP office(s). Instead, Form PTO/SB/39 or PTO/SB/69 must be used as appropriate.

**1. Authorization to Permit Access by a Foreign Intellectual Property Office(s)**

A. **Priority Document Exchange (PDX)** - Unless box A in subsection 2 (opt-out of authorization) is checked, the undersigned hereby **grants the USPTO authority** to provide the European Patent Office (EPO), the Japan Patent Office (JPO), the Korean Intellectual Property Office (KIPO), the State Intellectual Property Office of the People's Republic of China (SIPO), the World Intellectual Property Organization (WIPO), and any other foreign intellectual property office participating with the USPTO in a bilateral or multilateral priority document exchange agreement in which a foreign application claiming priority to the instant patent application is filed, access to: (1) the instant patent application-as-filed and its related bibliographic data, (2) any foreign or domestic application to which priority or benefit is claimed by the instant application and its related bibliographic data, and (3) the date of filing of this Authorization. See 37 CFR 1.14(h)(1).

B. **Search Results from U.S. Application to EPO** - Unless box B in subsection 2 (opt-out of authorization) is checked, the undersigned hereby **grants the USPTO authority** to provide the EPO access to the bibliographic data and search results from the instant patent application when a European patent application claiming priority to the instant patent application is filed. See 37 CFR 1.14(h)(2).

The applicant is reminded that the EPO's Rule 141(1) EPC (European Patent Convention) requires applicants to submit a copy of search results from the instant application without delay in a European patent application that claims priority to the instant application.

**2. Opt-Out of Authorizations to Permit Access by a Foreign Intellectual Property Office(s)**

☐ A. Applicant **DOES NOT** authorize the USPTO to permit a participating foreign IP office access to the instant application-as-filed. If this box is checked, the USPTO will not be providing a participating foreign IP office with any documents and information identified in subsection 1A above.

☐ B. Applicant **DOES NOT** authorize the USPTO to transmit to the EPO any search results from the instant patent application. If this box is checked, the USPTO will not be providing the EPO with search results from the instant application.

**NOTE:** Once the application has published or is otherwise publicly available, the USPTO may provide access to the application in accordance with 37 CFR 1.14.

PTO/AIA/14 (11-15)
Approved for use through 04/30/2017. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | PAT056901-US-PCT |
|---|---|---|
| | Application Number | |
| Title of Invention | SACUBITRIL-VALSARTAN DOSAGE REGIMEN FOR TREATING HEART FAILURE | |

## Applicant Information:

Providing assignment information in this section does not substitute for compliance with any requirement of part 3 of Title 37 of CFR to have an assignment recorded by the Office.

**Applicant   1**

If the applicant is the inventor (or the remaining joint inventor or inventors under 37 CFR 1.45), this section should not be completed. The information to be provided in this section is the name and address of the legal representative who is the applicant under 37 CFR 1.43; or the name and address of the assignee, person to whom the inventor is under an obligation to assign the invention, or person who otherwise shows sufficient proprietary interest in the matter who is the applicant under 37 CFR 1.46. If the applicant is an applicant under 37 CFR 1.46 (assignee, person to whom the inventor is obligated to assign, or person who otherwise shows sufficient proprietary interest) together with one or more joint inventors, then the joint inventor or inventors who are also the applicant should be identified in this section.

[ Clear ]

( • ) Assignee          ( ) Legal Representative under 35 U.S.C. 117          ( ) Joint Inventor

( ) Person to whom the inventor is obligated to assign.          ( ) Person who shows sufficient proprietary interest

If applicant is the legal representative, indicate the authority to file the patent application, the inventor is:

| Name of the Deceased or Legally Incapacitated Inventor: | |
|---|---|

If the Applicant is an Organization check here.          ☒

| Organization Name | Novartis AG |
|---|---|

**Mailing Address Information For Applicant:**

| Address 1 | Lichtstrasse 35 | | |
|---|---|---|---|
| Address 2 | | | |
| City | Basel | State/Province | |
| Country | CH | Postal Code | CH-4056 |
| Phone Number | | Fax Number | |
| Email Address | pip_inbox.phchbs@novartis.com | | |

Additional Applicant Data may be generated within this form by selecting the Add button.

## Assignee Information including Non-Applicant Assignee Information:

Providing assignment information in this section does not substitute for compliance with any requirement of part 3 of Title 37 of CFR to have an assignment recorded by the Office.

PTO/AIA/14 (11-15)
Approved for use through 04/30/2017. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | PAT056901-US-PCT |
|---|---|---|
| | Application Number | |

| Title of Invention | SACUBITRIL-VALSARTAN DOSAGE REGIMEN FOR TREATING HEART FAILURE |
|---|---|

**Assignee    1**

Complete this section if assignee information, including non-applicant assignee information, is desired to be included on the patent application publication. An assignee-applicant identified in the "Applicant Information" section will appear on the patent application publication as an applicant. For an assignee-applicant, complete this section only if identification as an assignee is also desired on the patent application publication.

If the Assignee or Non-Applicant Assignee is an Organization check here. ☐

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | | | | |

**Mailing Address Information For Assignee including Non-Applicant Assignee:**

| Address 1 | |
|---|---|
| Address 2 | |

| City | | State/Province | |
|---|---|---|---|
| Country | | Postal Code | |
| Phone Number | | Fax Number | |
| Email Address | |

Additional Assignee or Non-Applicant Assignee Data may be generated within this form by selecting the Add button.

## Signature:

NOTE: This Application Data Sheet must be signed in accordance with 37 CFR 1.33(b). **However, if this Application Data Sheet is submitted with the INITIAL filing of the application and either box A or B is not checked in subsection 2 of the "Authorization or Opt-Out of Authorization to Permit Access" section, then this form must also be signed in accordance with 37 CFR 1.14(c).**

This Application Data Sheet must be signed by a patent practitioner if one or more of the applicants is a **juristic entity** (e.g., corporation or association). If the applicant is two or more joint inventors, this form must be signed by a patent practitioner, all joint inventors who are the applicant, or one or more joint inventor-applicants who have been given power of attorney (e.g., see USPTO Form PTO/AIA/81) on behalf of all joint inventor-applicants.

See 37 CFR 1.4(d) for the manner of making signatures and certifications.

| Signature | /David Kurlandsky/ | | | Date (YYYY-MM-DD) | 2017-11-06 |
|---|---|---|---|---|---|
| First Name | David | Last Name | Kurlandsky | Registration Number | 41505 |

Additional Signature may be generated within this form by selecting the Add button.

PTO/AIA/14 (11-15)
Approved for use through 04/30/2017. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | PAT056901-US-PCT |
|---|---|---|
| | Application Number | |

| Title of Invention | SACUBITRIL-VALSARTAN DOSAGE REGIMEN FOR TREATING HEART FAILURE |
|---|---|

This collection of information is required by 37 CFR 1.76. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 23 minutes to complete, including gathering, preparing, and submitting the completed application data sheet form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

## REMARKS/ARGUMENTS

The foregoing amendments to the specification is to place the abstract on a separate sheet. The amendments to the claims are to place the claims in better form and remove multiple dependencies. No new matter has been added. Should the Examiner have any questions, please contact the undersigned attorney.

Respectfully submitted,

/David Kurlandsky/

Novartis Pharmaceuticals Corporation
One Health Plaza, Bldg. 101
East Hanover, NJ 07936
+18627785806

David Kurlandsky
Attorney for Applicant
Reg. No. 41,505

Date: November 6, 2017

<u>Amendments to the Claims:</u>

This listing of claims will replace all prior versions, and listings, of claims in the application:

<u>Listing of Claims:</u>

Claim 1 – 61:  (canceled)

62. A regimen for treating heart failure which comprises administering to a patient in need thereof a twice-daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio, wherein said target dose is reached after a titration with a twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by a twice daily dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter, and wherein

(i) the twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient not taking an angiotensin-converting enzyme (ACE) inhibitor or an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan, or

(ii) the twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient taking low doses of an angiotensin-converting enzyme (ACE) inhibitor or of an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

63. A regimen for treating heart failure according to claim 62, wherein said dose is reached after a titration with a twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 3 weeks, followed by a twice daily dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for about 3 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

64. A regimen for treating heart failure according to claim 62, wherein the lower dose of an ACEI or ARB is equivalent to < 10 mg of enalapril per day.

65. A regimen for treating heart failure according to claim 62, wherein said titration mitigates a risk selected from hypotension, hyperkalemia, and renal adverse events.

66. A regimen for treating heart failure according to claim 62, wherein the patient suffers from chronic systolic heart failure with reduced ejection fraction.

67. A regimen for treating heart failure according to claim 62, wherein the patient is a human patient.

68. A regimen for treating heart failure according to claim 62, wherein the patient has at least one of the following characteristics

  i) heart failure of NYHA class II, III or IV,

  ii) an elevated plasma BNP or NT-proBNP level, preferably a plasma BNP ≥100 pg/mL (or NT-proBNP ≥400 pg/mL), more preferably a plasma BNP ≥150 pg/mL or NT-proBNP ≥600 pg/mL, and

  iii) a reduced left ventricular ejection fraction (LVEF) of ≤40%, preferably ≤35%.

69. A regimen for treating heart failure according to claim 62, wherein the patient suffers from chronic heart failure classified as NYHA class II, III or IV and has systolic dysfunction, preferably wherein the patient has a reduced left ventricular ejection fraction (LVEF) of ≤35%.

70. A regimen for treating heart failure according to claim 62, wherein sacubitril and valsartan in a 1:1 molar ratio are delivered in the form of the compound trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl)propionate-(S)-3'-methyl-2'-(pentanoyl{2''-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate] hemipentahydrate (LCZ696).

71. A regimen for treating heart failure according to claim 62, wherein sacubitril and valsartan in a 1:1 molar ratio are delivered in the form of a pharmaceutical composition comprising

  (i)    valsartan or a pharmaceutically acceptable salt thereof; and

  (ii)   sacubitril or a pharmaceutically acceptable salt thereof.

72. A regimen for treating heart failure according to claim 62, wherein the patient receives a base treatment with a stable dose of a beta-blocker, an aldosterone antagonists, and/ or a diuretic.

73. A regimen for treating heart failure according to claim 62, wherein the patient has to stop taking the angiotensin receptor blocker (ARB) or the ACE inhibitor at least 36 hours prior to taking the medicament.

74. A regimen for treating heart failure according to claim 62, wherein

a) the 50 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 24 mg sacubitril and 26 mg valsartan,

b) the 100 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 49 mg sacubitril and 51 mg valsartan, and

c) the 200 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 97 mg sacubitril and 103 mg valsartan.

**Abstract:**

The present invention relates to sacubitril-valsartan dosage regimens for the treatment of heart failure in a patient.

<u>**Amendments to the Specification:**</u>

A copy of the abstract is herein provided on the following separate sheet.

CASE PAT056901-US-PCT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

IN RE PCT NATIONAL STAGE APPLICATION OF

Rizkala, Adel Remond et al.

INTERNATIONAL APPLICATION NO:  PCT/IB2016/052633

FILED:  May 09, 2016

U.S. APPLICATION NO:  Not Yet Known

35 USC §371 DATE:  Herewith

FOR:  SACUBITRIL-VALSARTAN DOSAGE REGIMEN FOR TREATING
        HEART FAILURE

Commissioner for Patents
PO Box 1450
Alexandria, VA 22313-1450

PRELIMINARY AMENDMENT

Sir:

Prior to the examination of the above-referenced patent application, please enter the following preliminary amendments.

**Amendments to the Specification** begin on page 2 of this paper.

**Amendments to the Claims** are reflected in the listing of the claims which begins on page 4 of this paper.

**Remarks/Arguments** begin on page 7 of this paper.

PAT056901-US-PSP

**Figure 1:**



PAT056901-US-PSP

**Claims:**

1. A regimen for treating heart failure which comprises administering to a patient in need thereof a twice-daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio, wherein said target dose is reached after a titration with an initial twice-daily dose of at

5    least 50 mg of sacubitril and valsartan in a 1:1 molar ratio increasing to the twice daily target dose of 200 mg of from about 2 to about 8 weeks.

2. A regimen for treating heart failure according to claim 1, wherein said dose is reached after a titration with a twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by a twice daily dose of 100

10   mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

3. A regimen for treating heart failure according to claim 2, wherein said dose is reached after a titration with a twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1

15   molar ratio for from about 2 weeks to about 3 weeks, followed by a twice daily dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for about 3 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

4. A regimen for treating heart failure according to claim 1, wherein said dose is reached after a titration of a twice daily starting dose of 100 mg of sacubitril and valsartan in a 1:1

20   molar ratio for from about 2 weeks to about 4 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

5. A regimen for treating heart failure according to claim 4, wherein said dose is reached after a titration of a twice daily starting dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for about 2 weeks, followed by the twice daily target dose of 200 mg of

25   sacubitril and valsartan in a 1:1 molar ratio thereafter.

6. A regimen for treating heart failure according to claim 2 or 3, wherein the twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient not taking an angiotensin-converting enzyme (ACE) inhibitor or an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

30   7. A regimen for treating heart failure according to claim 2, wherein the twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient taking low doses of an angiotensin-converting enzyme (ACE) inhibitor or of an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

PAT056901-US-PSP

8. A regimen for treating heart failure according to claim 7, wherein the lower dose of an ACEI or ARB is equivalent to < 10 mg of enalapril per day.

9. A regimen for treating heart failure according to claim 1, wherein said titration mitigates a risk selected from hypotension, hyperkalemia, and renal adverse events.

5   10. A regimen for treating heart failure according to claim 4 or 5, wherein the twice daily starting dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient taking higher doses of an angiotensin-converting enzyme (ACE) inhibitor or of an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

10   11. A regimen for treating heart failure according to claim 10, wherein the higher dose of an ACEI or ARB is equivalent to ≥ 10 mg of enalapril per day.

12. A regimen for treating heart failure according to claim 1, wherein the patient suffers from chronic systolic heart failure with reduced ejection fraction.

13. A regimen for treating heart failure according to claim 1, wherein the patient is a
15   human patient.

14. A regimen for treating heart failure according to claim 1, wherein the patient has at least one of the following characteristics

      i) heart failure of NYHA class II, III or IV,

      ii) an elevated plasma BNP or NT-proBNP level, preferably a plasma BNP ≥100
20            pg/mL (or NT-proBNP ≥400 pg/mL), more preferably a plasma BNP ≥150
         pg/mL or NT-proBNP ≥600 pg/mL, and

      iii) a reduced left ventricular ejection fraction (LVEF) of ≤40%, preferably ≤35%.

15. A regimen for treating heart failure according to claim 1, wherein the patient suffers from chronic heart failure classified as NYHA class II, III or IV and has systolic dysfunction,
25   preferably wherein the patient has a reduced left ventricular ejection fraction (LVEF) of ≤35%.

16. A regimen for treating heart failure according to claim 1, wherein sacubitril and valsartan in a 1:1 molar ratio are delivered in the form of the compound trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl)propionate-(S)-3'-
30   methyl-2'-(pentanoyl{2''-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate]
hemipentahydrate (LCZ696).

PAT056901-US-PSP

17. A regimen for treating heart failure according to claim 1, wherein sacubitril and valsartan in a 1:1 molar ratio are delivered in the form of a pharmaceutical composition comprising

      (i)     valsartan or a pharmaceutically acceptable salt thereof; and

5       (ii)    sacubitril or a pharmaceutically acceptable salt thereof,

18. A regimen for treating heart failure according to claim 1, wherein the patient receives a base treatment with a stable dose of a beta-blocker, an aldosterone antagonists, and/ or a diuretic.

19. A regimen for treating heart failure according to claim 1, wherein the patient has to
10 stop taking the angiotensin receptor blocker (ARB) or the ACE inhibitor at least 36 hours prior to taking the medicament.

20. A regimen for treating heart failure according to claim 1, wherein

     a) the 50 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 24 mg sacubitril and 26 mg valsartan,

15      b) the 100 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 49 mg sacubitril and 51 mg valsartan, and

     c) the 200 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 97 mg sacubitril and 103 mg valsartan.

21. A twice-daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio for
20 use in the treatment of heart failure in a patient, wherein said dose is reached after a titration with an initial twice-daily dose of at least 50 mg of sacubitril and valsartan in a 1:1 molar ratio increasing to the twice daily target dose of 200 mg for from about 2 to about 8 weeks.

22. The twice-daily target dose of claim 21 for use in the treatment of heart failure in a
25 patient, wherein said dose is reached after a titration with a twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by a twice daily dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

30 23. The twice-daily target dose of claim 22 for use in the treatment of heart failure in a patient, wherein said dose is reached after a titration with a twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 3 weeks, followed by a twice daily dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for

PAT056901-US-PSP

about 3 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

24. The twice daily target dose of claim 21 for use in the treatment of heart failure in a patient, wherein said dose is reached after a titration of a twice daily starting dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

25. The twice daily target dose of claim 24 for use in the treatment of heart failure in a patient, wherein said dose is reached after a titration of a twice daily starting dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for about 2 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

26. The twice daily target dose of claim 22 or 23 for use in the treatment of heart failure in a patient, wherein the twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient not taking an angiotensin-converting enzyme (ACE) inhibitor or an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

27. The twice daily target dose of claim 22 for use in the treatment of heart failure in a patient, wherein the twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient taking low doses of an angiotensin-converting enzyme (ACE) inhibitor or of an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

28. The twice daily target dose of claim 27 for use in the treatment of heart failure in a patient, wherein the lower dose of an ACEI or ARB is equivalent to < 10 mg of enalapril per day.

29. The twice daily target dose of claim 21 for use in the treatment of heart failure in a patient, wherein said titration mitigates a risk selected from hypotension, hyperkalemia, and renal adverse events.

30. The twice daily target dose of claim 4 or 5 for use in the treatment of heart failure in a patient, wherein the twice daily starting dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient taking higher doses of an angiotensin-converting enzyme (ACE) inhibitor or of an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

PAT056901-US-PSP

31. The twice daily target dose of claim 30 for use in the treatment of heart failure in a patient, wherein the higher dose of an ACEI or ARB is equivalent to ≥ 10 mg of enalapril per day.

32. The twice-daily target dose of any one of the preceding claims 21 to 31 for use in the treatment of heart failure in a patient, wherein the patient suffers from chronic systolic heart failure with reduced ejection fraction.

33. The twice-daily target dose of any one of the preceding claims 21 to 31 for use in the treatment of heart failure in a patient, wherein the patient is a human patient.

34. The twice-daily target dose of any one of the preceding claims 21 to 31 for use in the treatment of heart failure in a patient, wherein the patient has at least one of the following characteristics

      i) heart failure of NYHA class II, III or IV,

      ii) an elevated plasma BNP or NT-proBNP level, preferably a plasma BNP ≥100 pg/mL (or NT-proBNP ≥400 pg/mL), more preferably a plasma BNP ≥150 pg/mL or NT-proBNP ≥600 pg/mL, and

      iii) a reduced left ventricular ejection fraction (LVEF) of ≤40%, preferably ≤35%.

35. The twice-daily target dose of any one of the preceding claims 21 to 31 for use in the treatment of heart failure in a patient, wherein the patient suffers from chronic heart failure classified as NYHA class II, III or IV and has systolic dysfunction, preferably wherein the patient has a reduced left ventricular ejection fraction (LVEF) of ≤35%.

36. The twice-daily target dose of any one of the preceding claims 21 to 31 for use in the treatment of heart failure in a patient, wherein sacubitril and valsartan in a 1:1 molar ratio are delivered in the form of the compound trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl)propionate-(S)-3'-methyl-2'-(pentanoyl{2''-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate] hemipentahydrate (LCZ696).

37. The twice-daily target dose of any one of the preceding claims 21 to 31 for use in the treatment of heart failure in a patient, wherein sacubitril and valsartan in a 1:1 molar ratio are delivered in the form of a pharmaceutical composition comprising

      (i)    valsartan or a pharmaceutically acceptable salt thereof; and

      (ii)   sacubitril or a pharmaceutically acceptable salt thereof,

38. The twice-daily target dose of any one of the preceding claims 21 to 31 for use in the treatment of heart failure in a patient, wherein the patient receives a base treatment with a stable dose of a beta-blocker, an aldosterone antagonists, and/ or a diuretic.

PAT056901-US-PSP

39. The twice-daily target dose of any one of the preceding claims 21 to 31 for use in the treatment of heart failure in a patient, wherein the patient has to stop taking the angiotensin receptor blocker (ARB) or the ACE inhibitor at least 36 hours prior to taking the medicament.

5    40. The twice-daily target dose of any one of the preceding claims 21 to 31 for use in the treatment of heart failure in a patient, wherein

> a) the 50 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 24 mg sacubitril and 26 mg valsartan,
>
> b) the 100 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to
10   49 mg sacubitril and 51 mg valsartan, and
>
> c) the 200 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 97 mg sacubitril and 103 mg valsartan.

41. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient, wherein the medicament
15   comprises a twice-daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio which is reached after a titration with an initial twice-daily dose of at least 50 mg of sacubitril and valsartan in a 1:1 molar ratio increasing to the twice daily target dose of 200 mg for from about 2 to about 8 weeks.

42. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a
20   medicament for the treatment of heart failure in a patient according to claim 41, wherein said target dose is reached after a titration with a twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by a twice daily dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by the twice daily target dose of 200 mg of
25   sacubitril and valsartan in a 1:1 molar ratio thereafter.

43. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to claim 42, wherein said target dose is reached after a titration with a twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 3 weeks,
30   followed by a twice daily dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for about 3 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

44. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to claim 41, wherein

PAT056901-US-PSP

said target dose is reached after a titration of a twice daily starting dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

5    45. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to claim 44, wherein said target dose is reached after a titration of a twice daily starting dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for about 2 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

10   46. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to claim 42 or 43, wherein the twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient not taking an angiotensin-converting enzyme (ACE) inhibitor or an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and
15   valsartan.

47. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to claim 42 or 43, wherein the twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient taking low doses of an angiotensin-converting enzyme (ACE)
20   inhibitor or of an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

48. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to claim 47, wherein the lower dose of an ACEI or ARB is equivalent to < 10 mg of enalapril per day.

25   49. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to claim 41, wherein said titration mitigates a risk selected from hypotension, hyperkalemia, and renal adverse events.

50. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a
30   medicament for the treatment of heart failure in a patient according to claim 44 or 45, wherein the twice daily starting dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient taking higher doses of an angiotensin-converting enzyme (ACE) inhibitor or of an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

PAT056901-US-PSP

51. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to claim 50, wherein the higher dose of an ACEI or ARB is equivalent to ≥ 10 mg of enalapril per day.

52. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a
5   medicament for the treatment of heart failure in a patient according to any one of the preceding claims 41 to 51, wherein the patient suffers from chronic systolic heart failure with reduced ejection fraction.

53. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to any one of the
10   preceding claims 41 to 51,, wherein the patient is a human patient.

54. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to any one of the preceding claims 41 to 51,, wherein the patient has at least one of the following characteristics

15        i) heart failure of NYHA class II, III or IV,

          ii) an elevated plasma BNP or NT-proBNP level, preferably a plasma BNP ≥100
             pg/mL (or NT-proBNP ≥400 pg/mL), more preferably a plasma BNP ≥150
             pg/mL or NT-proBNP ≥600 pg/mL, and

          iii) a reduced left ventricular ejection fraction (LVEF) of ≤40%, preferably ≤35%.

20   55. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to any one of the preceding claims 41 to 51, wherein the patient suffers from chronic heart failure classified as NYHA class II, III or IV and has systolic dysfunction, preferably wherein the patient has a reduced left ventricular ejection fraction (LVEF) of ≤35%.

25   56. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to any one of the preceding claims 41 to 51, wherein sacubitril and valsartan in a 1:1 molar ratio are delivered in the form of the compound trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl)propionate-(S)-3'-methyl-2'-(pentanoyl{2''-(tetrazol-5-
30   ylate)biphenyl-4'-ylmethyl}amino)butyrate] hemipentahydrate (LCZ696).

57. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to any one of the preceding claims 41 to 51, wherein sacubitril and valsartan in a 1:1 molar ratio are delivered in the form of a pharmaceutical composition comprising

PAT056901-US-PSP

       (i)     valsartan or a pharmaceutically acceptable salt thereof; and

       (ii)    sacubitril or a pharmaceutically acceptable salt thereof,

58. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to any one of the preceding claims 41 to 51,, wherein the patient receives a base treatment with a stable dose of a beta-blocker, an aldosterone antagonists, and/ or a diuretic.

59. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to any one of the preceding claims 41 to 51, wherein the patient receives base treatment with a stable dose of a beta-blocker and optionally an aldosterone antagonist.

60. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to any one of the preceding claims 41 to 51, wherein the patient has to stop taking the angiotensin receptor blocker (ARB) or the ACE inhibitor at least 36 hours prior to taking the medicament.

61. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to any one of the preceding claims 41 to 51, wherein

      a) the 50 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 24 mg sacubitril and 26 mg valsartan,

      b) the 100 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 49 mg sacubitril and 51 mg valsartan, and

      c) the 200 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 97 mg sacubitril and 103 mg valsartan.

U̲NITED S̲TATES P̲ATENT AND T̲RADEMARK O̲FFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 15/572,399 | 11/07/2017 | Adel Remond Rizkala | PAT056901-US-PCT | 1063 |

1095        7590        07/25/2018
NOVARTIS PHARMACEUTICAL CORPORATION
INTELLECTUAL PROPERTY DEPARTMENT
ONE HEALTH PLAZA 433/2
EAST HANOVER, NEW JERSEY 07936-1080
UNITED STATES OF AMERICA

| EXAMINER |
|---|
| DECK, JASON A |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1627 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 07/25/2018 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

phip.patents@novartis.com

PTOL-90A (Rev. 04/07)

| *Office Action Summary* | Application No. 15/572,399 | Applicant(s) Rizkala et al. |
|---|---|---|
| | Examiner JASON A DECK | Art Unit 1627 | AIA Status Yes |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☑ Responsive to communication(s) filed on <u>11/7/17</u>.
   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2a) ☐ This action is **FINAL.**       2b) ☑ This action is non-final.

3) ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims***

5) ☑ Claim(s) <u>62-74</u> is/are pending in the application.
   5a) Of the above claim(s) _____ is/are withdrawn from consideration.

6) ☐ Claim(s) _____ is/are allowed.

7) ☑ Claim(s) <u>62-74</u> is/are rejected.

8) ☐ Claim(s) _____ is/are objected to.

9) ☐ Claim(s) _____ are subject to restriction and/or election requirement

* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to **PPHfeedback@uspto.gov.**

**Application Papers**

10) ☐ The specification is objected to by the Examiner.

11) ☑ The drawing(s) filed on <u>11/7/17</u> is/are:  a) ☑ accepted or  b) ☐ objected to by the Examiner.
   Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
   Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12) ☑ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
   **Certified copies:**
   a) ☑ All    b) ☐ Some**    c) ☐ None of the:
   1. ☐ Certified copies of the priority documents have been received.
   2. ☐ Certified copies of the priority documents have been received in Application No. _____.
   3. ☑ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☑ Notice of References Cited (PTO-892)

2) ☑ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b) Paper No(s)/Mail Date _____.

3) ☐ Interview Summary (PTO-413) Paper No(s)/Mail Date _____.

4) ☐ Other: _____.

### Notice of Pre-AIA or AIA Status

The present application, filed on or after March 16, 2013, is being examined

under the first inventor to file provisions of the AIA.

## DETAILED ACTION

Claims 1-61 are cancelled.  Claims 62-74 are pending.

### Priority

This application is a 371 of PCT/IB2016/052633 05/09/2016,

PCT/IB2016/052633 has PRO 62/159,703 05/11/2015.

### Claim Rejections - 35 USC § 112

The following is a quotation of 35 U.S.C. 112(b):
(b)  CONCLUSION.—The specification shall conclude with one or more claims particularly
pointing out and distinctly claiming the subject matter which the inventor or a joint inventor
regards as the invention.

The following is a quotation of 35 U.S.C. 112 (pre-AIA), second paragraph:
The specification shall conclude with one or more claims particularly pointing out and distinctly
claiming the subject matter which the applicant regards as his invention.

Claims 62-74 are rejected under 35 U.S.C. 112(b) or 35 U.S.C. 112 (pre-AIA),

second paragraph, as being indefinite for failing to particularly point out and distinctly

claim the subject matter which the inventor or a joint inventor, or for pre-AIA the

applicant regards as the invention.

The term "low doses of an angiotensin-converting enzyme (ACE) inhibitor" in

claim 62 is a relative term which renders the claim indefinite.  The term "low doses" is

not defined by the claim, the specification does not provide a standard for ascertaining

the requisite degree, and one of ordinary skill in the art would not be reasonably

apprised of the scope of the invention.  While the specification defines what a low dose

would be for enalapril, it does not give any guidance as to what would be considered a

low dose for any other ACE inhibitor, thus making the metes and bounds of the claim

unclear.

Claims 63-74 are rejected for depending from a rejected base claim.


Claims 68 and 69 are rejected under 35 U.S.C. 112(b) or 35 U.S.C. 112 (pre-

AIA), second paragraph, as being indefinite for failing to particularly point out and

distinctly claim the subject matter which the inventor or a joint inventor, or for pre-AIA

the applicant regards as the invention.

A broad range or limitation together with a narrow range or limitation that falls

within the broad range or limitation (in the same claim) is considered indefinite, since

the resulting claim does not clearly set forth the metes and bounds of the patent

protection desired.  See MPEP § 2173.05(c).  Note the explanation given by the Board

of Patent Appeals and Interferences in *Ex parte Wu*, 10 USPQ2d 2031, 2033 (Bd. Pat.

App. & Inter. 1989), as to where broad language is followed by "such as" and then

narrow language.  The Board stated that this can render a claim indefinite by raising a

question or doubt as to whether the feature introduced by such language is (a) merely

exemplary of the remainder of the claim, and therefore not required, or (b) a required

feature of the claims.  Note also, for example, the decisions of *Ex parte Steigewald*, 131

USPQ 74 (Bd. App. 1961); *Ex parte Hall*, 83 USPQ 38 (Bd. App. 1948); and *Ex parte

Hasche*, 86 USPQ 481 (Bd. App. 1949).

Application/Control Number: 15/572,399                                    Page 4
Art Unit: 1627

In the present instance, claim 68 recites the broad recitation "elevated plasma BNP", and the claim also recites "preferably a plasma BNP ≥ 100 pg/ml" and "more preferably a plasma BNP ≥ 150 pg/ml" which are the narrower statements of the range/limitation.

In the present instance, claim 68 further recites the broad recitation "ejection fraction (LVEF) of ≥40%", and the claim also recites "preferably ≥35" which is the narrower statement of the range/limitation.

In the present instance, claim 69 recites the broad recitation "chronic heart failure classified as NYHA class II, III, or IV and has systolic dysfunction" and the claim also recites "preferably wherein the patient has a reduced left ventricular ejection fraction (LVEF) of ≤35%" which is the narrower statement of the range/limitation.


Claims 70 and 71 are rejected under 35 U.S.C. 112(b) or 35 U.S.C. 112 (pre-AIA), second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which the inventor or a joint inventor, or for pre-AIA the applicant regards as the invention.

Claim 70 recites the limitation trisodium and hemipentahydrate.  There is insufficient antecedent basis for these limitations in the claim.

Claim 71 recites the limitation "or a pharmaceutically acceptable salt thereof". There is insufficient antecedent basis for this limitation in the claim.

### *Claim Rejections - 35 USC § 103*

In the event the determination of the status of the application as subject to AIA 35 U.S.C. 102 and 103 (or as subject to pre-AIA 35 U.S.C. 102 and 103) is incorrect, any correction of the statutory basis for the rejection will not be considered a new ground of rejection if the prior art relied upon, and the rationale supporting the rejection, would be the same under either status.

The following is a quotation of 35 U.S.C. 103 which forms the basis for all obviousness rejections set forth in this Office action:

> A patent for a claimed invention may not be obtained, notwithstanding that the claimed invention is not identically disclosed as set forth in section 102, if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains. Patentability shall not be negated by the manner in which the invention was made.

The factual inquiries set forth in *Graham v. John Deere Co.*, 383 U.S. 1, 148 USPQ 459 (1966), that are applied for establishing a background for determining obviousness under 35 U.S.C. 103 are summarized as follows:

1. Determining the scope and contents of the prior art.

2. Ascertaining the differences between the prior art and the claims at issue.

3. Resolving the level of ordinary skill in the pertinent art.

4. Considering objective evidence present in the application indicating obviousness or nonobviousness.

Claims 62-74 are rejected under 35 U.S.C. 103 as being unpatentable over McMurray et al. (John J. V. McMurray et al., Dual angiotensin receptor and neprilysin inhibition as an alternative to angiotensin converting enzyme inhibition in patients with chronic systolic heart failure: rationale for and design of the Prospective comparison of

ARNI with ACEI to Determine Impact on Global Mortality and morbidity in Heart Failure

trial (PARADIGM-HF), European Journal of Heart Failure (2013) 15, 1062–1073; of

record) in view of the NCT01922089 clinical trial (NCT01922089 – version from

November 20, 2013 (v3) retrieved 7/16/18; hereinafter the 'clinical trial').

The instant claims are generally drawn to a method of treating heart failure

comprising administering a twice daily dose of 50 mg of sacubitril and valsartan, e.g.

LCZ696 (related to claims 70 and 71) in a 1:1 molar ratio twice-daily for about 2-3

weeks, a twice daily dose of 100 mg for about 3 weeks, and then a twice daily dose of

200 mg (related to claim 63), wherein the starting dose of 50 mg is for a patient not

taking or taking low doses of an angiotensin-converting enzyme (ACE) inhibitor or an

angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and

valsartan, wherein the lower dose of an ACEI or ARB is equivalent to < 10 mg of

enalapril per day (related to claim 64), wherein said titration mitigates a risk selected

from hypotension, hyperkalemia, and renal adverse events (related to claim 65),

wherein the patient suffers from chronic systolic heart failure with reduced ejection

fraction (related to claim 66), in a human (related to claim 67), wherein the patient has

at least one of the following characteristics: i) heart failure of NYHA class II, III, or IV, ii)

an elevated plasma BNP or NT-proBNP level, preferably a plasma BNP ≥ 100 pg/ml (or

NT-proBNP ≥ 400 pg/mL), more preferably a plasma BNP ≥ 150 pg/ml or NT-proBNP ≥

600 pg/rnL, and iii) a reduced left ventricular ejection fraction (LVEF) of ≤40%,

preferably ≤35% (related to claim 68), wherein the patient suffers from chronic heart

failure classified as NYHA class II, III, or IV and has systolic dysfunction, preferably

wherein the patient has a reduced left ventricular ejection fraction (LVEF) of ≤35%

(related to claim 69), wherein the patient receives a base treatment with a stable dose

of a beta-blocker and/or an aldosterone antagonist (related to claim 72), wherein the

patient has to stop taking the angiotensin receptor blocker (ARB) or the ACE inhibitor at

least 36 hours prior to taking the medicament (related to claim 73), and wherein a) the

50 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 24 mg

sacubitril and 26 mg valsartan, b) the 100 mg dose of sacubitril and valsartan in a 1:1

molar ratio corresponds to 49 mg sacubitril and 51 mg valsartan, and c) the 200 mg

dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 9 7 mg sacubitril and

103 mg valsartan (related to claim 74).

McMurray et al. discloses the treatment of heart failure (see, for example, the title

and the whole document) in humans with reduced ejection fraction (see, for example,

Trial design and methods, pg. 1063), NYHA class II–IV symptoms (see, for example,

the methods), plasma BNP ≥150 pg/mL or NT-proBNP ≥600 pg/mL (see, for example,

Patients, pg. 1063), a LVEF ≤ 35% (see, for example, Patients, pg. 1063), and/or

systolic heart failure (i.e. systolic dysfunction; see, for example, Perspectives, pg. 1063)

comprising administering LCZ696 (see, for example, the methods) in an escalation

titration from 100 to 200 mg b.i.d. (i.e. 100-200 mg twice a day; see, for example, the

Methods) in patients that were taking 10 mg enalapril (i.e. a low dose of the claimed

ACE inhibitor; see, for example, the Methods) but had stopped a day prior (see

particularly Randomization to double-blind treatment, pg. 1064).  McMurray et al.

discloses that the LCZ696 was titrated from 100 mg b.i.d. for 1–2 weeks and then the

dose was up-titrated to 200 mg b.i.d. (see, for example, LCZ696 active run-in period,

pg. 1064).  McMurray et al. further discloses that the patients were monitored for

adverse events such as hyperkalemia, symptomatic hypotension, etc., and that the

titration of the drug can be adjusted to improve patient outcome (see particularly

Monitoring of safety and tolerability during double-blind period, pg. 1064), that the

patients can be treated with beta-blockers (see, for example, Patients, pg. 1063), and

that aldosterone antagonists should be considered (see, for example, Patients, pg.

1063).

McMurray et al. does not specifically disclose the titration of LCZ696 beginning

from 50 mg.

The clinical trial discloses titration of LCZ696 in heart failure patients with

reduced ejection fraction escalating 50 mg/100 mg/200 mg bid over 3-6 weeks (i.e. 50

mg for about 3 weeks and 100 mg for about 3 weeks; see, for example, Arms and

Interventions).

It would have been obvious to one of ordinary skill in the art to titrate LCZ696

escalating 50 mg/100 mg/200 mg bid for about 2-3 and 3 weeks, respectively, at the

time of the instant filing.

One of ordinary skill would have been motivated to start at 50 mg in the method

of McMurray et al. because those of skill in the art know that up-titrating some

medications improves patient compliance and patient outcome, and the prior art

teaches that the drug used by McMurray et al. was one of those drugs.  Further, the

prior art teaches preferred up-titration amounts and schedules, including the instantly

claimed up-titration scheme.  One of ordinary skill in the art would have treated heart

failure by administering LCZ696 in an escalating dose of 50 mg/100 mg/200 mg b.i.d.

for about 2-3 and 3 weeks, respectively, during the routine optimization of the method of

Application/Control Number: 15/572,399                                   Page 9
Art Unit: 1627

McMurray et al., and would have done so with a reasonable expectation of success in

making an improved method for the treatment of heart failure.  Further, where the

general conditions of a claim are disclosed in the prior art, it is not inventive to discover

the optimum or workable ranges by routine experimentation; *In re Aller,* 220 F.2d 454,

456, 105 USPQ 233, 235 (CCPA 1955).  The normal desire of scientists or artisans to

improve upon what is already generally known provides the motivation to determine

where in a disclosed set of percentage ranges is the optimum combination of

percentages; *Peterson,* 315 F.3d at 1330, 65 USPQ2d at 1382.


### Double Patenting

The nonstatutory double patenting rejection is based on a judicially created

doctrine grounded in public policy (a policy reflected in the statute) so as to prevent the

unjustified or improper timewise extension of the "right to exclude" granted by a patent

and to prevent possible harassment by multiple assignees. A nonstatutory double

patenting rejection is appropriate where the conflicting claims are not identical, but at

least one examined application claim is not patentably distinct from the reference

claim(s) because the examined application claim is either anticipated by, or would have

been obvious over, the reference claim(s). See, e.g., *In re Berg*, 140 F.3d 1428, 46

USPQ2d 1226 (Fed. Cir. 1998); *In re Goodman*, 11 F.3d 1046, 29 USPQ2d 2010 (Fed.

Cir. 1993); *In re Longi*, 759 F.2d 887, 225 USPQ 645 (Fed. Cir. 1985); *In re Van Ornum*,

686 F.2d 937, 214 USPQ 761 (CCPA 1982); *In re Vogel*, 422 F.2d 438, 164 USPQ 619

(CCPA 1970); *In re Thorington*, 418 F.2d 528, 163 USPQ 644 (CCPA 1969).

A timely filed terminal disclaimer in compliance with 37 CFR 1.321(c) or 1.321(d) may be used to overcome an actual or provisional rejection based on nonstatutory double patenting provided the reference application or patent either is shown to be commonly owned with the examined application, or claims an invention made as a result of activities undertaken within the scope of a joint research agreement. See MPEP § 717.02 for applications subject to examination under the first inventor to file provisions of the AIA as explained in MPEP § 2159. See MPEP §§ 706.02(l)(1) - 706.02(l)(3) for applications not subject to examination under the first inventor to file provisions of the AIA. A terminal disclaimer must be signed in compliance with 37 CFR 1.321(b).

The USPTO Internet website contains terminal disclaimer forms which may be used. Please visit www.uspto.gov/patent/patents-forms. The filing date of the application in which the form is filed determines what form (e.g., PTO/SB/25, PTO/SB/26, PTO/AIA/25, or PTO/AIA/26) should be used. A web-based eTerminal Disclaimer may be filled out completely online using web-screens. An eTerminal Disclaimer that meets all requirements is auto-processed and approved immediately upon submission. For more information about eTerminal Disclaimers, refer to www.uspto.gov/patents/process/file/efs/guidance/eTD-info-I.jsp.

Claims 62-74 are provisionally rejected on the ground of nonstatutory double patenting as being unpatentable over claims 46-49 and 52-59 of copending Application No. 14/914,005 (reference application). Although the claims at issue are not identical, they are not patentably distinct from each other.  Both the instant and the copending claims are generally drawn to the treatment of patients with heart failure via the

Application/Control Number: 15/572,399                                        Page 11
Art Unit: 1627

administration of LCZ696.  The subtle differences, e.g. the dosing, are result

determinate variables that those of skill in the art know to adjust, therefore the claims

are obvious variants of each other.

This is a provisional nonstatutory double patenting rejection because the

patentably indistinct claims have not in fact been patented.


### Conclusion

Claims 1-61 are cancelled.  Claims 62-74 are rejected.  No claim is allowed.

Any inquiry concerning this communication or earlier communications from the

examiner should be directed to whose telephone number is (571)270-5753.  The

examiner can normally be reached on M-F 10-6.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, SREENIVASAN (PADDY) PADMANABHAN can be reached on (571)272-

0629.  The fax phone number for the organization where this application or proceeding

is assigned is 571-273-8300.

Application/Control Number: 15/572,399                                    Page 12
Art Unit: 1627

      Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/JASON A DECK/
Examiner, Art Unit 1627

/SARAH PIHONAK/
Primary Examiner, Art Unit 1627

Docket No.: PAT056901-US-PCT
(PATENT)

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent Application of:
Adel Remond RIZKALA et al.

Application No.: 15/572,399                          Confirmation No.: 1063

Filed: November 7, 2017                              Art Unit: 1627

For: SACUBITRIL-VALSARTAN DOSAGE                    Examiner: Jason A. Deck
    REGIMEN FOR TREATING HEART FAILURE

*Via EFS*
Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

## AMENDMENT IN RESPONSE TO NON-FINAL OFFICE ACTION

This paper is in response to the Non-Final Office Action mailed on July 25, 2018 ("Office Action") in the above-identified application.  With the payment of the requisite fees for a three-month extension of time, a response is due on or before January 25, 2019.

Applicant also submits herewith an Information Disclosure Statement for the Examiner's consideration.

Applicants believe that no further fees are due in connection with this filing.  However, the Commissioner is authorized to charge any fees that may be due, or credit any overpayment to Deposit Account No. 50-4409, Reference No.: PAT056901-US-PCT.

**Amendments to the Claims** are reflected in the listing of claims, which begins on page 2 of this paper.

**Remarks/Arguments** begin on page 7 of this paper.

## AMENDMENTS TO THE CLAIMS

This listing of claims will replace all prior versions, and listings, of claims in the application:

**Listing of Claims:**

1.- 61.  (Cancelled)

62.     (Currently Amended) A regimen for treating heart failure which comprises administering to a patient in need thereof a twice-daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio, wherein sacubitril and valsartan in a 1:1 molar ratio are delivered in the form of the compound trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl)propionate-(S)-3`-methyl-2`-(pentanoyl{2``-(tetrazol-5-ylate)biphenyl-4`-ylmethyl}amino)butyrate] hemipentahydrate (LCZ696);

wherein said target dose is reached after a titration with a twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio for from about [[2]]3 weeks to about 4 weeks, followed by a twice daily dose of 100 mg of sacubitril, and valsartan in a 1:1 molar ratio for from about [[2]]3 weeks to about 4 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter, wherein said titration mitigates a risk selected from hypotension, hyperkalemia, and renal adverse events as compared to titration over a shorter time period;[[,]] and

wherein:

(i) the twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient [[not]]neither taking an angiotensin-converting enzyme (ACE) inhibitor nor taking an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan, or

(ii) the twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient taking a low dose[[s]] of an angiotensin-converting enzyme (ACE) inhibitor or a low dose of an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan, wherein the low dose of the ACE inhibitor or ARB is equivalent to a dose of < 10 mg of enalapril per day.

63.     (Currently Amended) [[A]]The regimen for treating heart failure according to claim 62, wherein said dose is reached after a titration with a twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio for ~~from about 2 weeks to~~ about 3 weeks, followed by a twice daily dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for about 3 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

64-65.  (Cancelled)

66.     (Currently Amended) [[A]]The regimen for treating heart failure according to claim 62, wherein the patient suffers from chronic systolic heart failure with reduced ejection fraction.

67.     (Currently Amended) [[A]]The regimen for treating heart failure according to claim 62, wherein the patient is a human patient.

68.     (Currently Amended) [[A]]The regimen for treating heart failure according to claim 62, wherein the patient has at least one of the following characteristics

    i) heart failure of NYHA class II, III or IV,

    ii) an elevated plasma BNP or NT-proBNP level, ~~preferably a plasma BNP ≥100 pg/mL (or NT-proBNP ≥400 pg/mL), more preferably a plasma BNP ≥150 pg/mL or NT-proBNP ≥600 pg/mL,~~ and

    iii) a reduced left ventricular ejection fraction (LVEF) of ≤40%~~, preferably ≤35%~~.

69.     (Currently Amended) [[A]]The regimen for treating heart failure according to claim 62, wherein the patient suffers from chronic heart failure classified as NYHA class II, III or IV and has systolic dysfunction~~, preferably wherein the patient has a reduced left ventricular ejection fraction (LVEF) of ≤35%~~.

70-72.  (Cancelled)

73.     (Currently Amended) [[A]]The regimen for treating heart failure according to claim 62, wherein the patient has to stop taking the angiotensin receptor blocker (ARB) or the ACE inhibitor at least 36 hours prior to taking the medicament.

74.    (Currently Amended) [[A]]The regimen for treating heart failure according to claim 62, wherein:

      a) the 50 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 24 mg sacubitril and 26 mg valsartan,

      b) the 100 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 49 mg sacubitril and 51 mg valsartan, and

      c) the 200 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 97 mg sacubitril and 103 mg valsartan.

75.    (New) The regimen for treating heart failure according to claim 68, wherein the patient has an elevated plasma BNP of $\geq$100 pg/mL or NT-proBNP of $\geq$400 pg/mL.

76.    (New) The regimen for treating heart failure according to claim 68, wherein the patient has an elevated plasma BNP of $\geq$150 pg/mL or NT-proBNP of $\geq$600 pg/mL.

77.    (New) The regimen for treating heart failure according to claim 68, wherein the patient has a reduced left ventricular ejection fraction (LVEF) of $\leq$35%.

78.    (New)  A regimen for treating heart failure which comprises administering to a patient in need thereof a twice-daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio, wherein sacubitril and valsartan in a 1:1 molar ratio are delivered in the form of the compound trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl)propionate-(S)-3`-methyl-2`-(pentanoyl{2``-(tetrazol-5-ylate)biphenyl-4`-ylmethyl}amino)butyrate] hemipentahydrate (LCZ696);

      wherein said target dose is reached after a titration with a twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by a twice daily dose of 100 mg of sacubitril, and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter, wherein said titration to the target dose occurs over a period of at least 6 weeks and said titration mitigates a risk selected from hypotension, hyperkalemia, and renal adverse events as compared to titration over a shorter time period; and

wherein:

(i) the twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient neither taking an angiotensin-converting enzyme (ACE) inhibitor nor taking an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan, or

(ii) the twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient taking a low dose of an angiotensin-converting enzyme (ACE) inhibitor or a low dose of an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan, wherein the low dose of the ACE inhibitor or ARB is equivalent to a dose of < 10 mg of enalapril per day.

79.     (New) The regimen for treating heart failure according to claim 78, wherein said dose is reached after a titration with a twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio for about 3 weeks, followed by a twice daily dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for about 3 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

80.     (New) The regimen for treating heart failure according to claim 78, wherein the patient suffers from chronic systolic heart failure with reduced ejection fraction.

81.     (New) The regimen for treating heart failure according to claim 78, wherein the patient is a human patient.

82.     (New) The regimen for treating heart failure according to claim 78, wherein the patient has at least one of the following characteristics

i) heart failure of NYHA class II, III or IV,

ii) an elevated plasma BNP or NT-proBNP level, and

iii) a reduced left ventricular ejection fraction (LVEF) of $\leq 40\%$.

83.     (New) The regimen for treating heart failure according to claim 82, wherein the patient has an elevated plasma BNP of $\geq 100$ pg/mL or NT-proBNP of $\geq 400$ pg/mL.

84.     (New) The regimen for treating heart failure according to claim 82, wherein the patient has an elevated plasma BNP of ≥150 pg/mL or NT-proBNP of ≥600 pg/mL.

85.     (New) The regimen for treating heart failure according to claim 82, wherein the patient has a reduced left ventricular ejection fraction (LVEF) of ≤35%.

86.     (New) The regimen for treating heart failure according to claim 78, wherein the patient suffers from chronic heart failure classified as NYHA class II, III or IV and has systolic dysfunction.

87.     (New) The regimen for treating heart failure according to claim 78, wherein the patient has to stop taking the angiotensin receptor blocker (ARB) or the ACE inhibitor at least 36 hours prior to taking the medicament.

88.     (New) The regimen for treating heart failure according to claim 78, wherein:

a) the 50 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 24 mg sacubitril and 26 mg valsartan,

b) the 100 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 49 mg sacubitril and 51 mg valsartan, and

c) the 200 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 97 mg sacubitril and 103 mg valsartan.

## REMARKS

Upon entry of the current amendments, claims 62, 63, 66-69, and 73-88 are pending in this application.  Claims 75-88 are added. Claims 64, 65, and 70-72, are cancelled and claims 1-61 were previously cancelled. Support for the new claims and amendments can throughout the application as filed. No new matter has been added.  Applicants reserve the right to pursue the canceled subject matter in one or more continuing applications.

## Rejection under 35 USC § 112, First Paragraph

Claims 62-74 are rejected under 35 U.S.C. § 112(b) or 35 U.S.C. § 112 (pre-AIA), second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which the inventor or a joint inventor, or for pre-AIA the applicant regards as the invention. *See* Office Action at pages 2-3. Specifically, the Examiner alleges that the term "low doses of an angiotensin-converting enzyme (ACE) inhibitor" in claim 62 is a relative term which renders the claim indefinite because the term "low doses" is not defined by the claim, the specification does not provide a standard for ascertaining the requisite degree, and one of ordinary skill in the art would not be reasonably apprised of the scope of the invention. *See id.* Applicant respectfully disagrees. Claims 64, 65, and 70-72 have been cancelled rendering the rejection as to them moot. Without acquiescence and for the sole purpose of expediting prosecution, Applicant has amended claim 62 to recite "wherein the lower dose of an ACE inhibitor or ARB is equivalent to < 10 mg of enalapril per day". Applicant submits that as amended, claim 62, as well as claims 63, 66-69, and 73-74, which depend directly or indirectly from claim 62, are definite and respectfully requests withdrawal of the rejection.

Claim 68 is rejected under 35 U.S.C. § 112(b) or 35 U.S.C. § 112 (preAIA), second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which the inventor or a joint inventor, or for pre-AIA the applicant regards as the invention. *See* Office Action at pages 3-4. Specifically, the Examiner alleges that broad range or limitation together with a narrow range or limitation that falls within the broad range or limitation (in the same claim) is considered indefinite, since the resulting claim does not clearly set forth the metes and bounds of the patent protection desired. *See id.* According to the Examiner, claim 68 recites both the broad recitation "elevated plasma BNP", and the narrower recitations "preferably a plasma BNP ≥100 pg/ml" and "more preferably a plasma BNP ≥150

pg/ml" which are the narrower statements of the range/limitation. *See id.* Applicant respectfully disagrees. Without conceding that the Examiner's position is correct, and for the sole purpose of expediting prosecution, Applicant has deleted the narrower recitations "preferably a plasma BNP ≥100 pg/mL (or NT-proBNP ≥400 pg/mL), more preferably a plasma BNP ≥150 pg/mL or NT-proBNP ≥600 pg/mL" from claim 68. Thus, the rejection is rendered moot. Withdrawal of the rejection is respectfully requested.

Claim 68 is rejected under 35 U.S.C. § 112(b) or 35 U.S.C. § 112 (preAIA), second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which the inventor or a joint inventor, or for pre-AIA the applicant regards as the invention. *See* Office Action at pages 3-4. Specifically, the Examiner alleges that broad range or limitation together with a narrow range or limitation that falls within the broad range or limitation (in the same claim) is considered indefinite, since the resulting claim does not clearly set forth the metes and bounds of the patent protection desired. *See id.* According to the Examiner, claim 68 recites both the broad recitation "ejection fraction (LVEF) of ≤40%", and the narrower recitation "preferably ≤35" which is the narrower statement of the range/limitation. *See id.* Without conceding that the Examiner's position is correct, and for the sole purpose of expediting prosecution, Applicant has deleted the narrower recitation "preferably ≤35%" from claim 68. Thus, the rejection is rendered moot. Withdrawal of the rejection is respectfully requested.

Claim 69 is rejected under 35 U.S.C. § 112(b) or 35 U.S.C. § 112 (preAIA), second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which the inventor or a joint inventor, or for pre-AIA the applicant regards as the invention. *See* Office Action at pages 3-4. Specifically, the Examiner alleges that broad range or limitation together with a narrow range or limitation that falls within the broad range or limitation (in the same claim) is considered indefinite, since the resulting claim does not clearly set forth the metes and bounds of the patent protection desired. *See id.* According to the Examiner, claim 69 recites both the broad recitation "chronic heart failure classified as NYHA class II, Ill, or IV and has systolic dysfunction" and the narrower recitation "preferably wherein the patient has a reduced left ventricular ejection fraction (LVEF) of ≤35%" which is the narrower statement of the range/limitation. *See id.* Without conceding that the Examiner's position is correct, and for the sole purpose of expediting prosecution, Applicant has deleted the narrower recitation "preferably wherein the patient has a reduced left ventricular ejection

fraction (LVEF) of ≤35%" from claim 69. Thus, the rejection is rendered moot. Withdrawal of the rejection is respectfully requested.

Claim 70 is rejected under 35 U.S.C. § 112(b) or 35 U.S.C. § 112 (preAIA), second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which the inventor or a joint inventor, or for pre-AIA the applicant regards as the invention. *See* Office Action at pages 3-4. Specifically, the Examiner asserts that claim 70 recites the limitation trisodium and hemipentahydrate and there is insufficient antecedent basis for these limitations in the claim. *See id.* For the sole purpose of expediting prosecution, claim 70 has been cancelled rendering the rejection as to it moot. Accordingly, Applicant respectfully requests withdrawal of this rejection.

Claim 71 is rejected under 35 U.S.C. § 112(b) or 35 U.S.C. § 112 (preAIA), second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which the inventor or a joint inventor, or for pre-AIA the applicant regards as the invention. *See* Office Action at pages 3-4. Specifically, the Examiner alleges that claim 71 recites the limitation "or a pharmaceutically acceptable salt thereof" and that there is insufficient antecedent basis for this limitation in the claim. *See id.* For the sole purpose of expediting prosecution, claim 71 has been cancelled rendering the rejection as to it moot. Accordingly, Applicant respectfully requests withdrawal of this rejection.

## Claim Rejections-35 U.S.C. § 103

Claims 62-74 are rejected under 35 U.S.C. § 103 as being unpatentable over McMurray, J. J. V., et al., ("Dual angiotensin receptor and neprilysin inhibition as an alternative to angiotensin converting enzyme inhibition in patients with chronic systolic heart failure: rationale for and design of the Prospective comparison of ARNI with ACEI to Determine Impact on Global Mortality and morbidity in Heart Failure trial (PARADIGM-HF) ", Eur. J. Heart Fail., Vol. 15, No. 9, 2013, p 1062-1073, "McMurray") in view of NCT01922089 (clinical trial, November 20, 2013 (v3), "NCT01922089"). *See* Office Action at pages 5-6. Specifically, the Examiner asserts that McMurray discloses the treatment of heart failure in humans with reduced ejection fraction, NYHA class II-IV symptoms, plasma BNP ≥150 pg/ml or NT-proBNP ≥600 pg/ml, a LVEF ≤ 35%, and/or systolic heart failure comprising administering lCZ696 in an escalation titration from 100 to 200 mg b.i.d. in patients that were taking 10 mg enalapril but had stopped a day prior. The Examiner further asserts that McMurray discloses that LCZ696 was

titrated from 100 mg b.i.d. for 1-2 weeks and then the dose was up-titrated to 200 mg b.i.d., that the patients were monitored for adverse events (i.e., hyperkalemia, symptomatic hypotension, etc., that the titration of the drug can be adjusted to improve patient outcome, that the patients can be treated with beta-blockers, and that aldosterone antagonists should be considered.

The Examiner admits that McMurray does not specifically disclose the titration of LCZ696 beginning from 50 mg but that the NCT01922089 discloses titration of LCZ696 in heart failure patients with reduced ejection fraction escalating 50 mg/100 mg/200 mg bid over 3-6 weeks. Thus, according to the Examiner, it would have been obvious to one of ordinary skill in the art to treat heart failure by administering LCZ696 in an escalating dose of 50 mg/100 mg/200 mg b.i.d. for about 2-3 and 3 weeks, respectively, by using routine optimization of the method of McMurray and would have done so with a reasonable expectation of success in making an improved method for the treatment of heart failure. *See id.* at pages 7-9. Applicant respectfully disagrees.

Claims 64, 65, and 70-72 have been cancelled rendering the rejection as to them moot.

Amended claim 1 is directed to a regimen for treating heart failure which comprises administering to a patient in need thereof a twice-daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio (i.e., LCZ696),  wherein said target dose is reached after a titration with a twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 3 weeks to about 4 weeks, followed by a twice daily dose of 100 mg of sacubitril, and valsartan in a 1:1 molar ratio for from about 3 weeks to about 4 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter, wherein said titration mitigates a risk selected from hypotension, hyperkalemia, and renal adverse events as compared to titration over a shorter time period in a patient neither taking an angiotensin-converting enzyme (ACE) inhibitor nor taking an angiotensin II receptor blocker (ARB) or patient taking a low dose of an angiotensin-converting enzyme (ACE) inhibitor or an angiotensin II receptor blocker (ARB) (i.e., a dose equivalent to a dose of < 10 mg of enalapril per day) before initiating the treatment with sacubitril and valsartan.

McMurray teaches treatment of heart failure comprising administering LCZ696 to patients taking a stable dose of an ACEI or an ARB, said stable dose equivalent to a *minimum* of 10 mg/day of enalapril, where the target dose of 200 mg b.i.d of LCZ696 is reached after

titration of LCZ696 starting at a dose of 100 mg b.i.d. for 1-2 weeks and then up-titrating to the
target dose of 200 mg b.i.d.  McMurray does not teach or suggest treatment of heart failure in
patients *not taking* an ACEI or an ARB or taking a *low dose* of an ACEI or an ARB (i.e., a dose
equivalent to a dose of < 10 mg of enalapril per day). Nor does McMurray teach or suggest the
titration of LCZ696 to the target dose over a period of about 6 weeks to about 8 weeks (i.e., a
twice daily dose of 50 mg for from about 3 weeks to about 4 weeks and a twice daily dose of
100 mg for from about 3 weeks to about 4 weeks = about 6 weeks to about 8 weeks over the
entire titration period) starting from a dose of 50 mg b.i.d. or that said titration mitigates a risk
selected from hypotension, hyperkalemia, and renal adverse events as compared to titration over
a shorter time period. As pointed out above, claim 1, as amended, is directed to the treatment of
heart failure comprising administering a target dose of 200 mg b.i.d. of LCZ696 in patients not
taking an ACEI or an ARB or taking a low dose of an ACEI or an ARB after titration of
LCZ696 to the target dose over a period of about 6 weeks to about 8 weeks starting at a dose of
50 mg of LCZ696, wherein said titration mitigates the risk of hypotension, hyperkalemia, and/or
renal adverse events as compared to titration to the target dose over a shorter time period.  Thus,
McMurray fails to teach or suggest the claimed invention to a skilled artisan.

Nor does NCT01922089 cure the deficiencies of McMurray. NCT01922089 teaches a
study to evaluate the safety and tolerability of LCZ696 in heart failure patients comprising
administering 200 mg b.i.d. of LCZ696 to *any* patient (i.e., including patients not taking an
ACEI or an ARB and patients taking any dose (i.e., low and high dose) of an ACEI or an ARB),
wherein the target dose of LCZ696 is reached after titration of LCZ696 to the target dose over a
period of either 3 weeks (condensed = reaching target dose over 3 weeks) or 6 weeks
(conservative = reaching target dose over 6 weeks) starting at a dose of 50 mg b.i.d.
NCT01922089 does not teach or suggest a specific treatment regimen for starting the treatment
of heart failure in patients who are *not taking* an ACEI or an ARB or taking a *low dose* of an
ACEI or an ARB. Nor does NCT01922089 teach or suggest the titration of LCZ696 to the target
dose over an extended period of about 6 weeks to about 8 weeks starting at a dose of 50 mg of
LCZ696 or that said titration mitigates the risk of hypotension, hyperkalemia, and/or renal
adverse events as compared to titration to the target dose over a shorter time period.

Notably, Applicants have discovered that the treatment success rate with sacubitril and
valsartan in a 1:1 molar ratio was higher in patients not taking an ACEI/ARB or taking a low

dose of an ACEI/ARB (i.e., the low RAAS stratum) when the dose was up-titrated more gradually (i.e., over 6-8 weeks) than in patients who were taking higher doses (i.e., doses equivalent to a dose of $\geq$ 10 mg of enalapril per day) of ACEIs/ARBs (i.e., high RAAS stratum patients). In fact, the treatment success rate was 10% higher (85%) for patients in the low RAAS stratum given gradual up-titration over 6 weeks compared to those given condensed up-titration over 3 weeks. This success rate being due to a 10% reduction in hypotension, hyperkalemia, and renal dysfunction. On the other hand, surprisingly, there was no difference in the treatment success rate for high RAAS stratum patients, regardless of the rate of up-titration (3 weeks vs. 6 or more weeks).

Neither McMurray nor NCT01922089 teach or suggest titration over a minimum of 6 weeks to mitigate the risk of hypotension, hyperkalemia, and/or renal adverse events in a patient neither taking an ACEI nor taking an ARB or patient taking the equivalent dose of < 10 mg of enalapril per day of an ACEI inhibitor or an ARB before initiating the treatment with sacubitril and valsartan. Thus, the instantly claimed invention is not obvious over the McMurray and/or NCT01922089, and the rejection should be withdrawn.

**New claims 75-88**

New claims 75-77 each depend directly or indirectly from claim 62.  Thus, for at least the same foregoing reasons, these new claims are also patentable over the cited references.

For at least the same foregoing reasons, new claim 78 as well as claims 79-88, which depend directly or indirectly from claim 78, are also patentable over the cited references.

It is submitted that claims 75-88 are also in condition for allowance.

**Claim Rejections-Double Patenting**

Claims 62-74 are provisionally rejected on the ground of nonstatutory obviousness-type double patenting as being unpatentable over claims over claims 46-49 and 52-59 of copending U.S. Application No. 14/914,005. *See* Office Action at pages 9-11.

Claims 64, 65, and 70-72 have been cancelled rendering the rejection as to them moot.

Applicant respectfully requests that this rejection as applied to claims 62, 63, 66-69, and 73-74, be held in abeyance until an indication of allowable subject matter forth.  Upon such indication, Applicants will consider filing a Terminal Disclaimer over the above application, if appropriate.

Application No.15/572,399                    14                    Docket No.: PAT056901-US-PCT
Amendment dated January 25, 2019

## <u>CONCLUSION</u>

In view of the above amendment, Applicants believe that the pending application is in condition for allowance.  Should any questions or issues arise concerning this application, the Examiner is encouraged to contact the undersigned at the telephone number provided below.


Dated: <u>January 25, 2019</u>                    Respectfully submitted,

                                                 Electronic signature: <u>/Judith D. Kuntz/</u>
                                                 Judith D. Kuntz, J.D., Ph.D.
                                                 Registration No.: 71,649

                                                 Novartis Institutes for Biomedical Research, Inc.
                                                 700 Main Street
                                                 Cambridge, Massachusetts  02139
                                                 (617) 871-8034
                                                 Attorney For Applicant

# UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 15/572,399 | 11/07/2017 | Adel Remond Rizkala | PAT056901-US-PCT | 1063 |

1095          7590          05/01/2019
NOVARTIS PHARMACEUTICAL CORPORATION
INTELLECTUAL PROPERTY DEPARTMENT
ONE HEALTH PLAZA 433/2
EAST HANOVER, NJ 07936-1080

| EXAMINER |
|---|
| DECK, JASON A |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1627 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 05/01/2019 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

phip.patents@novartis.com

| *Office Action Summary* | Application No. 15/572,399 | Applicant(s) Rizkala et al. | |
|---|---|---|---|
| | Examiner JASON A DECK | Art Unit 1627 | AIA (FITF) Status Yes |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
- Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☑ Responsive to communication(s) filed on <u>1/25/19</u>.
  ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2a) ☑ This action is **FINAL.**  2b) ☐ This action is non-final.

3) ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims***

5) ☑ Claim(s) <u>62-63,66-69 and 73-88</u> is/are pending in the application.
  5a) Of the above claim(s) _____ is/are withdrawn from consideration.

6) ☐ Claim(s) _____ is/are allowed.

7) ☑ Claim(s) <u>62-63,66-69 and 73-88</u> is/are rejected.

8) ☐ Claim(s) _____ is/are objected to.

9) ☐ Claim(s) _____ are subject to restriction and/or election requirement

* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to **PPHfeedback@uspto.gov.**

**Application Papers**

10) ☐ The specification is objected to by the Examiner.

11) ☐ The drawing(s) filed on _____ is/are:  a) ☐ accepted or  b) ☐ objected to by the Examiner.
  Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
  Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
  **Certified copies:**
  a) ☐ All  b) ☐ Some**  c) ☐ None of the:
    1. ☐ Certified copies of the priority documents have been received.
    2. ☐ Certified copies of the priority documents have been received in Application No. _____.
    3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☑ Notice of References Cited (PTO-892)
2) ☑ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b) Paper No(s)/Mail Date _____.

3) ☐ Interview Summary (PTO-413) Paper No(s)/Mail Date _____.
4) ☐ Other: _____.

### Notice of Pre-AIA or AIA Status

The present application, filed on or after March 16, 2013, is being examined under the first inventor to file provisions of the AIA.

## DETAILED ACTION

### Status of the Application

This Office Action is in response to Applicant's arguments filed on 1/25/19. Claim(s) 1-61, 64, 65, and 70-72 are cancelled.  Claim(s) 75-88 are new. Claim(s) 62, 63, 66-69, and 73-88 are pending.  Claim(s) 62, 63, 66-69, and 73-88 are examined herein.

Applicant's amendments to the claims have rendered the 112 rejections of the last Office action moot, therefore hereby withdrawn.

Applicant's amendments to the claims have rendered the 103 rejections of the last Office action moot, therefore hereby withdrawn.

Applicant's desire to hold the double patenting rejection over copending application 14/914,005 in abeyance is acknowledged. The rejection(s) of the last Office Action are maintained for reasons of record and repeated below for Applicant's convenience.

An updated search has been performed, the following new rejections will now apply.

### Double Patenting

The nonstatutory double patenting rejection is based on a judicially created doctrine grounded in public policy (a policy reflected in the statute) so as to prevent the

Application/Control Number: 15/572,399                                           Page 3
Art Unit: 1627

unjustified or improper timewise extension of the "right to exclude" granted by a patent

and to prevent possible harassment by multiple assignees. A nonstatutory double

patenting rejection is appropriate where the conflicting claims are not identical, but at

least one examined application claim is not patentably distinct from the reference

claim(s) because the examined application claim is either anticipated by, or would have

been obvious over, the reference claim(s). See, e.g., *In re Berg*, 140 F.3d 1428, 46

USPQ2d 1226 (Fed. Cir. 1998); *In re Goodman*, 11 F.3d 1046, 29 USPQ2d 2010 (Fed.

Cir. 1993); *In re Longi*, 759 F.2d 887, 225 USPQ 645 (Fed. Cir. 1985); *In re Van Ornum*,

686 F.2d 937, 214 USPQ 761 (CCPA 1982); *In re Vogel*, 422 F.2d 438, 164 USPQ 619

(CCPA 1970); *In re Thorington*, 418 F.2d 528, 163 USPQ 644 (CCPA 1969).

 A timely filed terminal disclaimer in compliance with 37 CFR 1.321(c) or 1.321(d)

may be used to overcome an actual or provisional rejection based on nonstatutory

double patenting provided the reference application or patent either is shown to be

commonly owned with the examined application, or claims an invention made as a

result of activities undertaken within the scope of a joint research agreement. See

MPEP § 717.02 for applications subject to examination under the first inventor to file

provisions of the AIA as explained in MPEP § 2159.  See MPEP §§ 706.02(l)(1) -

706.02(l)(3) for applications not subject to examination under the first inventor to file

provisions of the AIA. A terminal disclaimer must be signed in compliance with 37 CFR

1.321(b).

 The USPTO Internet website contains terminal disclaimer forms which may be

used. Please visit www.uspto.gov/patent/patents-forms. The filing date of the application

in which the form is filed determines what form (e.g., PTO/SB/25, PTO/SB/26,

PTO/AIA/25, or PTO/AIA/26) should be used. A web-based eTerminal Disclaimer may

be filled out completely online using web-screens. An eTerminal Disclaimer that meets

all requirements is auto-processed and approved immediately upon submission. For

more information about eTerminal Disclaimers, refer to

www.uspto.gov/patents/process/file/efs/guidance/eTD-info-I.jsp.

Claims 62, 63, 66-69, and 73-88 are provisionally rejected on the ground of

nonstatutory double patenting as being unpatentable over claims 46-49 and 52-59 of

copending Application No. 14/914,005. Although the claims at issue are not identical,

they are not patentably distinct from each other.  Both the instant and the copending

claims are generally drawn to the treatment of patients with heart failure via the

administration of LCZ696.  The subtle differences, e.g. the dosing, are result

determinate variables that those of skill in the art know to adjust, therefore the claims

are obvious variants of each other.

This is a provisional nonstatutory double patenting rejection because the

patentably indistinct claims have not in fact been patented.


### *Response to Arguments*

The Applicant wishes to hold this rejection in abeyance.


### *New Rejections*

### *Claim Rejections - 35 USC § 103*

In the event the determination of the status of the application as subject to AIA 35

U.S.C. 102 and 103 (or as subject to pre-AIA 35 U.S.C. 102 and 103) is incorrect, any

correction of the statutory basis for the rejection will not be considered a new ground of

rejection if the prior art relied upon, and the rationale supporting the rejection, would be

the same under either status.

The following is a quotation of 35 U.S.C. 103 which forms the basis for all

obviousness rejections set forth in this Office action:

> A patent for a claimed invention may not be obtained, notwithstanding that the claimed
> invention is not identically disclosed as set forth in section 102, if the differences between the
> claimed invention and the prior art are such that the claimed invention as a whole would have
> been obvious before the effective filing date of the claimed invention to a person having
> ordinary skill in the art to which the claimed invention pertains. Patentability shall not be
> negated by the manner in which the invention was made.

The factual inquiries set forth in *Graham v. John Deere Co.*, 383 U.S. 1, 148

USPQ 459 (1966), that are applied for establishing a background for determining

obviousness under 35 U.S.C. 103 are summarized as follows:

1. Determining the scope and contents of the prior art.

2. Ascertaining the differences between the prior art and the claims at issue.

3. Resolving the level of ordinary skill in the pertinent art.

4. Considering objective evidence present in the application indicating

obviousness or nonobviousness.

Claims 62, 63, 66-69, and 73-88 are rejected under 35 U.S.C. 103 as being

unpatentable over McMurray et al. (John J. V. McMurray et al., Dual angiotensin

receptor and neprilysin inhibition as an alternative to angiotensin converting enzyme

inhibition in patients with chronic systolic heart failure: rationale for and design of the

Prospective comparison of ARNI with ACEI to Determine Impact on Global Mortality and

morbidity in Heart Failure trial (PARADIGM-HF), European Journal of Heart Failure

(2013) 15, 1062–1073; of record), in view of the NCT01922089 clinical trial

(NCT01922089 – version from November 20, 2013 (v3) retrieved 7/16/18; hereinafter

the 'clinical trial'; of record), and further in view of Schumacher et al. (WO 2014/029848

A1).

      The instant claims are generally drawn to a method of treating heart failure

comprising administering a twice daily dose of 50 mg of sacubitril and valsartan, e.g.

LCZ696 in a 1:1 molar ratio twice-daily for about 3 weeks (related to claims 63 and 78-

88), a twice daily dose of 100 mg for about 3 weeks, and then a twice daily dose of 200

mg, wherein the starting dose of 50 mg is for a patient not taking any, or taking doses

below, the equivalent dose of 10 mg of enalapril per day of an angiotensin-converting

enzyme (ACE) inhibitor or an angiotensin II receptor blocker (ARB) before initiating the

treatment with sacubitril and valsartan, wherein the lower dose of an ACEI or ARB is

equivalent to < 10 mg of enalapril per day (related to claim 64), wherein said titration

mitigates a risk selected from hypotension, hyperkalemia, and renal adverse events

(related to claims 62 and 78), wherein the patient suffers from chronic systolic heart

failure with reduced ejection fraction (related to claims 66 and 80)), in a human (related

to claims 67 and 81), wherein the patient has at least one of the following

characteristics: i) heart failure of NYHA class II, III, or IV, ii) an elevated plasma BNP or

NT-proBNP level (related to claims 68, 69, and 82), and iii) a reduced left ventricular

ejection fraction (LVEF) of ≤40% (related to claims 68 and 82), wherein the patient has

an elevated plasma BNP ≥ 100 pg/ml or NT-proBNP ≥ 400 pg/mL (related to claims 75

and 83), wherein the patient has an elevated plasma BNP ≥ 150 pg/ml or NT-proBNP ≥

600 pg/mL (related to claims 76 and 84), wherein the patient suffers from chronic heart

failure classified as NYHA class II, III, or IV and has systolic dysfunction (related to

claims 69 and 86), wherein the patient has a reduced left ventricular ejection fraction
(LVEF) of ≤35% (related to claims 77 and 85), wherein the patient has to stop taking the
angiotensin receptor blocker (ARB) or the ACE inhibitor at least 36 hours prior to taking
the medicament (related to claims 73 and 87), and wherein a) the 50 mg dose of
sacubitril and valsartan in a 1:1 molar ratio corresponds to 24 mg sacubitril and 26 mg
valsartan, b) the 100 mg dose of sacubitril and valsartan in a 1:1 molar ratio
corresponds to 49 mg sacubitril and 51 mg valsartan, and c) the 200 mg dose of
sacubitril and valsartan in a 1:1 molar ratio corresponds to 97 mg sacubitril and 103 mg
valsartan (related to claim 74 and 88).

McMurray et al. discloses the treatment of heart failure (see, for example, the title
and the whole document) in humans with reduced ejection fraction (see, for example,
Trial design and methods, pg. 1063), NYHA class II–IV symptoms (see, for example,
the methods), plasma BNP ≥150 pg/mL or NT-proBNP ≥600 pg/mL (see, for example,
Patients, pg. 1063), a LVEF ≤ 35% (see, for example, Patients, pg. 1063), and/or
systolic heart failure (i.e. systolic dysfunction; see, for example, Perspectives, pg. 1063)
comprising administering LCZ696 (see, for example, the methods) in an escalation
titration from 100 to 200 mg b.i.d. (i.e. 100-200 mg twice a day; see, for example, the
Methods) in patients that were taking 10 mg enalapril (i.e. a low dose of the claimed
ACE inhibitor; see, for example, the Methods) but had stopped a day prior (see
particularly Randomization to double-blind treatment, pg. 1064).  McMurray et al.
discloses that the LCZ696 was titrated from 100 mg b.i.d. for 1–2 weeks and then the
dose was up-titrated to 200 mg b.i.d. (see, for example, LCZ696 active run-in period,
pg. 1064).  McMurray et al. further discloses that the patients were monitored for

adverse events such as hyperkalemia, symptomatic hypotension, etc., and that the titration of the drug can be adjusted to improve patient outcome (see particularly Monitoring of safety and tolerability during double-blind period, pg. 1064), that the patients can be treated with beta-blockers (see, for example, Patients, pg. 1063), and that aldosterone antagonists should be considered (see, for example, Patients, pg. 1063).

McMurray et al. does not specifically disclose the titration of LCZ696 beginning from 50 mg.

Schumacher et al. discloses the treatment of heart failure with reduced ejection fraction (see, for example, claim 3 and the whole document) including with a left ventricular ejection fraction of ≤35% (see, for example, pg. 36 lines 9-19), comprising the administration of LCZ696 (see, for example, claim 22) and further discloses that the LCZ696 is administered in a run in period of 2-8 weeks (see, for example, pg. 31 lines 16-27, and Methods pg. 37) with doses of 50, 100, and 200 mg twice a day (see, for example, pg. 31 lines 16-27, and claim 24) in a time period of one or two weeks per step with an additional week if needed (i.e. 3 weeks per step; see, for example, pg. 31 lines 16-27).  Schumacher et al. additionally teaches that the run in times can potentially be longer for patients with no prior exposure or patients on low doses of ACEIs or ARBs (i.e. patients on the equivalent to < 10 mg of enalapril per day or none; see, for example, Methods pg. 37), that the treatment is useful for the treatment of patients with heart failure of NYHA class II, III, or IV, elevated plasma BNP, or NT-proBNP level ≥ 400 pg/mL (see, for example, pg. 36 lines 9-19, and pg. 30 lines 30-34), in patients with systolic heart failure (i.e. systolic dysfunction; see, for example, pg. 36 lines 21-27),

wherein the patient stops taking the ARB or the ACEI hours prior to taking the

medicament, and that the number of patients with hypotension, renal dysfunction, or

hyperkalaemia did not differ between the groups tested (see, for example, pg. 35 lines

9-11).

The clinical trial discloses titration of LCZ696 in heart failure patients with

reduced ejection fraction escalating 50 mg/100 mg/200 mg bid over 3-6 weeks (i.e. 50

mg for about 3 weeks and 100 mg for about 3 weeks; see, for example, Arms and

Interventions and the whole document).

It would have been obvious to one of ordinary skill in the art to titrate LCZ696

escalating 50 mg/100 mg/200 mg bid for about 2-3 and 3 weeks, respectively, in

conjunction with the claimed timings, limitations, and patient requirements.

at the time of the instant filing.

One of ordinary skill would have been motivated to start at 50 mg in the method

of McMurray et al. and to treat in the myriad claimed schedules, patient populations, etc.

because the prior art teaches that all of the claimed indications, sub-indications, and

additional patient population details are treatable with the claimed amount of the

claimed active agent, and further teach that the active agent should be administered in

a titration scheme that encompasses that instantly claimed in the same amount as

instantly claimed.  Those of skill in the art know that up-titrating some medications

improves patient compliance and patient outcome, and the prior art teaches that the it

was known that the instantly claimed drug was one of those.  Further, the prior art

teaches preferred up-titration amounts and schedules, including the instantly claimed

up-titration scheme, and teaches that it can, and should, be adjusted as the skilled

practitioner sees fit.  One of ordinary skill in the art would have treated heart failure by

administering LCZ696 in an escalating dose of 50 mg/100 mg/200 mg b.i.d. for about 2-

3 and 3 weeks, respectively, during the routine optimization of the method disclosed in

the prior art, and would have done so with a reasonable expectation of success in

making an improved method for the treatment of heart failure and all of the claimed sub-

populations.  Further, where the general conditions of a claim are disclosed in the prior

art, it is not inventive to discover the optimum or workable ranges by routine

experimentation; *In re Aller,* 220 F.2d 454, 456, 105 USPQ 233, 235 (CCPA 1955).  The

normal desire of scientists or artisans to improve upon what is already generally known

provides the motivation to determine where in a disclosed set of percentage ranges is

the optimum combination of percentages; *Peterson,* 315 F.3d at 1330, 65 USPQ2d at

1382.


### *Response to Arguments*

The rejection of record has been replaced herein with a new/modified rejection,

however for the sake of compact prosecution the Examiner will address the arguments

inasmuch as they might apply to the current rejection.

The Applicant argues "McMurray teaches treatment of heart failure comprising

administering LCZ696 to patients taking a stable dose of an ACEI or an ARB, said

stable dose equivalent to a minimum of 10 mg/day of enalapril".

This is not found persuasive.  While McMurray does disclose the use of enalapril,

the disclosure is not drawn to a "minimum" of 10 mg, and in fact has several discussions

of lower amounts including a discussion of titrating up to 10 mg.  Moreover, the point is

moot, as the amended rejection incorporates Schumacher et al. which teaches that the

treatment can be utilized for patients on low doses or no enalapril, or equivalent, and

that the timing should be adjusted accordingly.

The Applicant argues "Nor does McMurray teach or suggest the titration of

LCZ696 to the target dose over a period of about 6 weeks to about 8 weeks (i.e., a

twice daily dose of 50 mg for from about 3 weeks to about 4 weeks and a twice daily

dose of 100 mg for from about 3 weeks to about 4 weeks = about 6 weeks to about 8

weeks over the entire titration period) starting from a dose of 50 mg b.i.d. or that said

titration mitigates a risk selected from hypotension, hyperkalemia, and renal adverse

events as compared to titration over a shorter time period".

This is not found persuasive.  The disclosure of McMurray et al. was used in

conjunction with the clinical trial, and it is inappropriate to attack the references

individually when used together.  As stated in the prior Office action, the combined

disclosures teach that the administration of LCZ696 was known to work well in an up

titration scheme in two to three steps, taking as much as 6 weeks.  Those of skill in the

art would have recognized that the time and steps were result determinate variables

that the prior art taught to adjust as necessary, and would have done so.  Further, the

modified rejection included Schumacher et al. which specifically disclose that the time of

the steps can be extended by the skilled artisan.

The Applicant argues "[the prior art does not teach] that said titration mitigates

the risk of hypotension, hyperkalemia, and/or renal adverse events as compared to

titration to the target dose over a shorter time period."

This is not found persuasive.  As stated in the prior Office action, the prior art

recognized that these were potential issues and monitored for them; further, those of

skill in the art understand that slowing the rate of titration can reduce adverse effects

and improve patient compliance, as was stated in Schumacher et al.

Moreover, as claimed, the claimed mitigation is a resultant of the method of

administration, which is obvious in light of the teachings of the prior art.  Where the

claimed and prior art products are identical or substantially identical in structure or

composition, or are produced by identical or substantially identical processes, a prima

facie case of either anticipation or obviousness has been established. Thus, the

claiming of a new use, new function or unknown property which is inherently present in

the prior art does not necessarily make the claim patentable. *In re Best*, 562 F.2d 1252,

1254, 195 USPQ 430, 433 (CCPA 1977).


## *Double Patenting*

The nonstatutory double patenting rejection is based on a judicially created

doctrine grounded in public policy (a policy reflected in the statute) so as to prevent the

unjustified or improper timewise extension of the "right to exclude" granted by a patent

and to prevent possible harassment by multiple assignees. A nonstatutory double

patenting rejection is appropriate where the conflicting claims are not identical, but at

least one examined application claim is not patentably distinct from the reference

claim(s) because the examined application claim is either anticipated by, or would have

been obvious over, the reference claim(s). See, e.g., *In re Berg*, 140 F.3d 1428, 46

USPQ2d 1226 (Fed. Cir. 1998); *In re Goodman*, 11 F.3d 1046, 29 USPQ2d 2010 (Fed.

Application/Control Number: 15/572,399                                     Page 13
Art Unit: 1627

Cir. 1993); *In re Longi*, 759 F.2d 887, 225 USPQ 645 (Fed. Cir. 1985); *In re Van Ornum*,

686 F.2d 937, 214 USPQ 761 (CCPA 1982); *In re Vogel*, 422 F.2d 438, 164 USPQ 619

(CCPA 1970); *In re Thorington*, 418 F.2d 528, 163 USPQ 644 (CCPA 1969).

A timely filed terminal disclaimer in compliance with 37 CFR 1.321(c) or 1.321(d)

may be used to overcome an actual or provisional rejection based on nonstatutory

double patenting provided the reference application or patent either is shown to be

commonly owned with the examined application, or claims an invention made as a

result of activities undertaken within the scope of a joint research agreement. See

MPEP § 717.02 for applications subject to examination under the first inventor to file

provisions of the AIA as explained in MPEP § 2159.  See MPEP §§ 706.02(l)(1) -

706.02(l)(3) for applications not subject to examination under the first inventor to file

provisions of the AIA. A terminal disclaimer must be signed in compliance with 37 CFR

1.321(b).

The USPTO Internet website contains terminal disclaimer forms which may be

used. Please visit www.uspto.gov/patent/patents-forms. The filing date of the application

in which the form is filed determines what form (e.g., PTO/SB/25, PTO/SB/26,

PTO/AIA/25, or PTO/AIA/26) should be used. A web-based eTerminal Disclaimer may

be filled out completely online using web-screens. An eTerminal Disclaimer that meets

all requirements is auto-processed and approved immediately upon submission. For

more information about eTerminal Disclaimers, refer to

www.uspto.gov/patents/process/file/efs/guidance/eTD-info-I.jsp.

Claims 62, 63, 66-69, and 73-88 are provisionally rejected on the ground of

nonstatutory double patenting as being unpatentable over claims 1-20 of copending

Application/Control Number: 15/572,399                                    Page 14
Art Unit: 1627

Application No. 16/074,589. Although the claims at issue are not identical, they are not

patentably distinct from each other. Both the instant and the copending claims are

generally drawn to the treatment of patients with heart failure via the administration of

LCZ696. The copending application appears to be drawn to the treatment of a patient

sub-population of the instant claims, and is therefore an obvious variant.

This is a provisional nonstatutory double patenting rejection because the

patentably indistinct claims have not in fact been patented.


### Conclusion

Claim(s) 1-61, 64, 65, and 70-72 are cancelled. Claim(s) 62, 63, 66-69, and 73-

88 are rejected. No claim is allowed.

Applicant's amendment necessitated the new ground(s) of rejection presented in

this Office action. Accordingly, **THIS ACTION IS MADE FINAL**. See MPEP

§ 706.07(a). Applicant is reminded of the extension of time policy as set forth in 37

CFR 1.136(a).

A shortened statutory period for reply to this final action is set to expire THREE

MONTHS from the mailing date of this action. In the event a first reply is filed within

TWO MONTHS of the mailing date of this final action and the advisory action is not

mailed until after the end of the THREE-MONTH shortened statutory period, then the

shortened statutory period will expire on the date the advisory action is mailed, and any

extension fee pursuant to 37 CFR 1.136(a) will be calculated from the mailing date of

the advisory action. In no event, however, will the statutory period for reply expire later

than SIX MONTHS from the mailing date of this final action.

Application/Control Number: 15/572,399                                         Page 15
Art Unit: 1627

Any inquiry concerning this communication or earlier communications from the
examiner should be directed to JASON A DECK whose telephone number is (571)270-
5753. The examiner can normally be reached on M-F 10-6.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's
supervisor, SREENIVASAN (PADDY) PADMANABHAN can be reached on (571)272-
0629. The fax phone number for the organization where this application or proceeding
is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the
Patent Application Information Retrieval (PAIR) system. Status information for
published applications may be obtained from either Private PAIR or Public PAIR.
Status information for unpublished applications is available through Private PAIR only.
For more information about the PAIR system, see http://pair-direct.uspto.gov. Should
you have questions on access to the Private PAIR system, contact the Electronic
Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a
USPTO Customer Service Representative or access to the automated information
system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


/JASON A DECK/
Examiner, Art Unit 1627

/SARAH PIHONAK/
Primary Examiner, Art Unit 1627

Docket No.: PAT056901-US-PCT
(PATENT)

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent Application of:
Adel Remond ROZKALA

Application No.: 15/572,399                         Confirmation No.: 1063

Filed: November 7, 2017                             Art Unit: 1627

For:  SACUBITRIL-VALSARTAN DOSAGE              Examiner: Jason A. Deck
        REGIMEN FOR TREATING HEART FAILURE

*Via EFS*
Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

## RESPONSE TO FINAL OFFICE ACTION AND CONCURRENT REQUEST FOR CONTINUED EXAMINATION

This paper is in response to the Final Office Action mailed on May 1, 2019 ("Office Action") in the above-identified application.  With the payment of the requisite fees for a three-month extension of time, a response is due on or before November 1, 2019.

Applicant submits this paper in conjunction with a Request for Continued Examination under 37 CFR § 1.114, together with the fees required under 37 CFR § 1.17(e)(1). This paper constitutes a proper submission in accordance with 37 CFR § 1.114(c).

Applicants believe that no further fees are due in connection with this filing.  However, the Commissioner is authorized to charge any fees that may be due, or credit any overpayment to Deposit Account No. 50-4409, Reference No.: PAT056901-US-PCT.

**Amendments to the Claims** are reflected in the listing of claims, which begins on page 2 of this paper.

**Remarks/Arguments** begin on page 7 of this paper.

## AMENDMENTS TO THE CLAIMS

This listing of claims will replace all prior versions, and listings, of claims in the application:

**Listing of Claims:**

1.- 61.  (Cancelled)

62.  (Currently Amended) A regimen for treating heart failure <u>with reduced ejection fraction,</u> which comprises administering to a patient in need thereof a twice-daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio, wherein sacubitril and valsartan in a 1:1 molar ratio are delivered in the form of the compound trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl)propionate-(S)-3'-methyl-2'-(pentanoyl{2''-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate] hemipentahydrate (LCZ696);

wherein said target dose is reached after a titration with a twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 3 weeks to about 4 weeks, followed by a twice daily dose of 100 mg of sacubitril[[,]] and valsartan in a 1:1 molar ratio for from about 3 weeks to about 4 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter~~, wherein said titration mitigates a risk selected from hypotension, hyperkalemia, and renal adverse events as compared to titration over a shorter time period~~; and

wherein<u>:</u>

(i) the twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient neither taking an angiotensin-converting enzyme (ACE) inhibitor nor taking an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan, or

(ii) the twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient taking a low dose of an angiotensin-converting enzyme (ACE) inhibitor or a low dose of an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan, wherein the low dose of the ACE inhibitor or ARB is equivalent to a dose of < 10 mg of enalapril per day.

63.     (Previously Presented) The regimen for treating heart failure according to claim 62, wherein said dose is reached after a titration with a twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio for about 3 weeks, followed by a twice daily dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for about 3 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

64-65.  (Cancelled)

66.     (Previously Presented) The regimen for treating heart failure according to claim 62, wherein the patient suffers from chronic systolic heart failure with reduced ejection fraction.

67.     (Previously Presented) The regimen for treating heart failure according to claim 62, wherein the patient is a human patient.

68.     (Currently Amended) The regimen for treating heart failure according to claim 62, wherein the patient has at least one of: the following characteristics

        i) heart failure of NYHA class II, III or IV,

        ii) an elevated plasma BNP or NT-proBNP level, and

        iii) a reduced left ventricular ejection fraction (LVEF) of ≤40%.

69.     (Previously Presented) The regimen for treating heart failure according to claim 62, wherein the patient suffers from chronic heart failure classified as NYHA class II, III or IV and has systolic dysfunction.

70-72.  (Cancelled)

73.     (Previously Presented) The regimen for treating heart failure according to claim 62, wherein the patient has to stop taking the angiotensin receptor blocker (ARB) or the ACE inhibitor at least 36 hours prior to taking the medicament.

74.     (Previously Presented) The regimen for treating heart failure according to claim 62, wherein:

        a) the 50 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 24 mg sacubitril and 26 mg valsartan,

b) the 100 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 49 mg sacubitril and 51 mg valsartan, and

c) the 200 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 97 mg sacubitril and 103 mg valsartan.

75.     (Previously Presented) The regimen for treating heart failure according to claim 68, wherein the patient has an elevated plasma BNP of $\geq$100 pg/mL or NT-proBNP of $\geq$400 pg/mL.

76.     (Previously Presented) The regimen for treating heart failure according to claim 68, wherein the patient has an elevated plasma BNP of $\geq$150 pg/mL or NT-proBNP of $\geq$600 pg/mL.

77.     (Previously Presented) The regimen for treating heart failure according to claim 68, wherein the patient has a reduced left ventricular ejection fraction (LVEF) of $\leq$35%.

78.     (Currently Amended)  A regimen for treating heart failure with reduced ejection fraction, which comprises administering to a patient in need thereof a twice-daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio, wherein sacubitril and valsartan in a 1:1 molar ratio are delivered in the form of the compound trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl)propionate-(S)-3'-methyl-2'-(pentanoyl{2''-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate] hemipentahydrate (LCZ696);

wherein said target dose is reached after a titration with a twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by a twice daily dose of 100 mg of sacubitril[[,]] and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter, wherein said titration to the target dose occurs over a period of at least 6 weeks and said titration mitigates a risk selected from hypotension, hyperkalemia, and renal adverse events as compared to titration over a shorter time period; and

wherein:

(i) the twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient neither taking an angiotensin-converting enzyme (ACE) inhibitor nor

taking an angiotensin II receptor blocker (ARB) before initiating the treatment with
sacubitril and valsartan, or

(ii) the twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio
is for use in a patient taking a low dose of an angiotensin-converting enzyme (ACE)
inhibitor or a low dose of an angiotensin II receptor blocker (ARB) before initiating the
treatment with sacubitril and valsartan, wherein the low dose of the ACE inhibitor or
ARB is equivalent to a dose of < 10 mg of enalapril per day.

79.      (Previously Presented) The regimen for treating heart failure according to claim 78,
wherein said dose is reached after a titration with a twice daily starting dose of 50 mg of
sacubitril and valsartan in a 1:1 molar ratio for about 3 weeks, followed by a twice daily dose of
100 mg of sacubitril and valsartan in a 1:1 molar ratio for about 3 weeks, followed by the twice
daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

80.      (Previously Presented) The regimen for treating heart failure according to claim 78,
wherein the patient suffers from chronic systolic heart failure with reduced ejection fraction.

81.      (Previously Presented) The regimen for treating heart failure according to claim 78,
wherein the patient is a human patient.

82.      (Currently Amended) The regimen for treating heart failure according to claim 78,
wherein the patient has at least one of: ~~the following characteristics~~

i) heart failure of NYHA class II, III or IV,

ii) an elevated plasma BNP or NT-proBNP level, and

iii) a reduced left ventricular ejection fraction (LVEF) of ≤40%.

83.      (Previously Presented) The regimen for treating heart failure according to claim 82,
wherein the patient has an elevated plasma BNP of ≥100 pg/mL or NT-proBNP of ≥400 pg/mL.

84.      (Previously Presented) The regimen for treating heart failure according to claim 82,
wherein the patient has an elevated plasma BNP of ≥150 pg/mL or NT-proBNP of ≥600 pg/mL.

85.     (Previously Presented) The regimen for treating heart failure according to claim 82, wherein the patient has a reduced left ventricular ejection fraction (LVEF) of ≤35%.

86.     (Previously Presented) The regimen for treating heart failure according to claim 78, wherein the patient suffers from chronic heart failure classified as NYHA class II, III or IV and has systolic dysfunction.

87.     (Previously Presented) The regimen for treating heart failure according to claim 78, wherein the patient has to stop taking the angiotensin receptor blocker (ARB) or the ACE inhibitor at least 36 hours prior to taking the medicament.

88.     (Previously Presented) The regimen for treating heart failure according to claim 78, wherein:

> a) the 50 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 24 mg sacubitril and 26 mg valsartan,

> b) the 100 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 49 mg sacubitril and 51 mg valsartan, and

> c) the 200 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 97 mg sacubitril and 103 mg valsartan.

## REMARKS

Claims 62, 63, 66-69, and 73-88 are presented for examination, with claims 62 and 78 being in independent form.  The independent claims have been amended for further clarification.  Support for the amendment may be found, *inter alia*, in the specification at page 2, as well as in claims 66 and 80.  Claims 68 and 82 have been amended as to form.

No new matter has been added.  Favorable reconsideration of the claims is respectfully requested.

## Claim Rejection-35 U.S.C. § 103

Claims 62, 63, 66-69, and 73-88 are rejected under 35 U.S.C. § 103 as being allegedly unpatentable over McMurray, J. J. V., et al., ("Dual Angiotensin Receptor and Neprilysin Inhibition as an Alternative to Angiotensin Converting Enzyme Inhibition in Patients with Chronic Systolic Heart Failure: Rationale for and Design of the Prospective Comparison of ARNI with ACEI to Determine Impact on Global Mortality and Morbidity in Heart Failure Trial (PARADIGM-HF)", Eur. J. Heart Fail., Vol. 15, No. 9, 2013, p 1062-1073, "McMurray") in view of NCT01922089 (clinical trial, November 20, 2013 (v3), "NCT01922089") and WO 2014/029848 A1 ("Schumacher").  The grounds of rejection are respectfully traversed.

Prior to addressing the merits of the rejection, Applicant would like to review briefly certain features and advantages of the presently claimed invention.  That invention, in pertinent part, is related to a regimen for treating heart failure with reduced ejection fraction (HF-rEF) in which a twice-daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio (i.e., LCZ696) is administered to a patient in need of the treatment.

Specifically, the target dose is reached after a titration with a twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2-3 weeks to about 4 weeks, followed by a twice daily dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2-3 weeks to about 4 weeks, followed thereafter by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio.  Moreover, the patient undergoing this regimen is (i) neither taking an angiotensin-converting enzyme (ACE) inhibitor nor taking an angiotensin II receptor blocker (ARB) or (ii) taking a low dose of an angiotensin-converting enzyme (ACE) inhibitor or an angiotensin II receptor blocker (ARB) (i.e., a dose equivalent to a dose of < 10 mg of enalapril per day) before initiating the treatment with sacubitril and valsartan.

It has been unexpectedly found that the above-mentioned titration mitigates a risk from hypotension, hyperkalemia, and/or renal adverse events as compared to titration over a shorter time period (see, e.g., specification, p. 3, lines 5-13). This, clearly, is a significant advantage in a real-world treatment situation, where a patient suffering from potentially fatal condition can begin the treatment with LCZ696 without the need for pretreatment with an ACE inhibitor or an ARB and be subjected to a reduced risk of adverse events. Previously disclosed clinical trials related to the effectiveness of LCZ696 for the treatment of heart failure did not indicate that their subjects were dosed with less than 10 mg/day of enalapril before commencing administration of LCZ696 and are, therefore, not indicative or even reasonably predictive of the up-titration for the claimed patients.

McMurray discloses one such clinical trial in which LCZ696 was administered to a patient population that was taking a stable dose of an ACEI or an ARB equivalent to 10 mg b.i.d. (20 mg/day) of enalapril. Specifically, McMurray reports on the PARADIGM-HF study, which is discussed in the present application.

As mentioned in the specification:

> The PARADIGM-HF study incorporated a single-blind, active run-in phase that was designed to assure a large proportion of patients will maintain target dose study drug during the long term study. Patients entered a single-blind active run-in in which they received enalapril 10 mg bid, followed by LCZ696 100 mg bid, and then LCZ696 200 mg bid. Patients must tolerate the study target dose of enalapril (10 mg bid) and the study target dose of LCZ696 (200 mg bid) for at least 2 weeks in order to be randomized. However, the active run-in phase included in the PARADIGM-HF study design (the sequential use of enalapril followed by LCZ696) provided limited information on how the physician should initiate the LCZ696 therapy in clinical practice, in particular for those patients who are currently on the low dose of ACEIs or ARBs, or ACEI/ARB-naïve patients.
>
> Specification, p. 2, lines 14-24.

The same study is also referenced in Example 2 of Schumacher.

Thus, McMurray differs from the claimed invention in at least two important aspects:

(i)      the patient population to which the LCZ696 was administered; and

(ii)     the actual up-titration regimen (as already acknowledged in the Office Action).

Application No.15/572,399                    9                    Docket No.: PAT056901-US-PCT
Amendment dated October 30, 2019
After Final Office Action of March 25, 2013

With respect to the patient population, the Office Action alludes to McMurray mentioning "lower amounts including a discussion of titrating up to 10 mg" of enalapril. However, that "lower" amount is 5 mg b.i.d., which is 10 mg/day. Moreover, the potential use of the 5 mg b.i.d. amount of enalapril is "for patients currently treated with an ARB and for those taking a low dose of ACE inhibitor … <u>if the investigator was concerned that switching directly to enalapril 10 mg b.i.d. might not be tolerated</u> (e.g. because of hypotension, renal dysfunction, and/or hyperkalaemia). <u>These patients were up-titrated to enalapril 10 mg b.i.d. after 1–2 weeks</u>" (McMurray, p. 1064) (emphasis added). This is also evident in the PARADIGM-HF study schema shown in Fig. 1 of McMurray:



**Figure 1** PARADIGM-HF study schema.

Thus, LCZ696 in the PARADIGM-HF study reported in McMurray was administered <u>only</u> to those patients who had taken more than 10 mg/day of enalapril – it is that some of those patients required an enalapril run-in to reach 10 mg b.i.d. (20 mg/day), whereas others were already on that type of enalapril regimen or could directly start with 10 mg b.i.d. (20 mg/day) of enalapril.

With respect to the up-titration regimen, as already acknowledged in the Office Action, McMurray does not disclose starting with 50 mg b.i.d. of LCZ696, much less continuing with it for 2-4 weeks before switching to 100 mg b.i.d. of LCZ696 for 2-4 weeks, followed by 200 mg b.i.d. of LCZ696. McMurray shows a maximum of 2 weeks on LCZ696 before reaching the 200 mg b.i.d. dose.

NCT01922089 generally describes a study that was to be conducted for evaluating safety and tolerability of a 200 mg b.i.d. dose LCZ696 in heart failure patients.  NCT01922089 did not limit its subjects to those who were taking neither an ACE inhibitor nor an ARB, or were taking a low dose thereof as claimed.  Moreover, NCT01922089 does not indicate the duration of each stage of its up-titration schedule.  Instead, only individual doses and the total up-titration period are listed.

Moreover, as noted above, NCT01922089 refers to the evaluation of safety and tolerability of LCZ696, which is not tantamount to a disclosure of a treatment of a medical condition.  That said, NCT01922089 does not even indicate that safety and tolerability was shown, much less in the claimed patient population group.

As such, it is clear that NCT01922089 provides no guidance with respect to heart failure treatment, much less effectiveness thereof, that can be achieved by following its up-titration protocols.  Stated differently, there is no disclosure or suggestion that the regimen of the study described in NCT01922089 would be suitable for treating heart failure with reduced ejection fraction with a reasonable expectation of success, much less for the claimed patient population.  Moreover, as mentioned above, NCT01922089 does not teach the periods during which 50 mg b.i.d. and 100 mg b.i.d. doses of LCZ696 are administered before switching to 200 mg b.i.d.

The Office Action appears to have relied on Schumacher to fill in the apparent gaps in McMurray and NCT01922089.  Applicant, however, respectfully submits that not only does Schumacher fail to do so, the manner in which Schumacher is referenced is not consistent with what this publication discloses and how it would have been understood by those skilled in the art.

The Office Action refers to Example 1 in Schumacher for a teaching of a three-week up-titration step at a 50 mg b.i.d. dose of LCZ696 followed by a three-week up-titration step at 100 b.i.d. mg:

> Schumacher et al. discloses the treatment of heart failure with reduced ejection fraction (see, for example, claim 3 and the whole document) including with a left ventricular ejection fraction of ≤35% (see, for example, pg. 36 lines 9-19), comprising the administration of LCZ696 (see, for example, claim 22) and further discloses that the LCZ696 is administered in a run in period of 2-8 weeks (see, for example, pg. 31 lines 16-27, and Methods pg. 37) with doses of 50, 100, and 200 mg twice a day (see, for example, pg. 31 lines 16-27, and claim 24) in a time

period of one or two weeks per step <u>with an additional week if needed (i.e. 3 weeks per step; see, for example, pg. 31 lines 16-27)</u>.

Office Action, p. 8 (emphasis added).

However, the "an additional week" that "patients are allowed to stay on each titration dose" at the investigator's discretion does not refer to a hypothetical modification of the 2-4 week up-titration period mentioned by Schumacher at page 31, line 18.  Instead, it refers to the potential extension of the 1 week period at the 50 mg b.i.d. starting dose and of the 1 week period at the uptitrated 100 mg b.i.d. dose, i.e., this is a description of how the 2-4 week period mentioned at page 31, line 18, is calculated:

> Patients are on their starting dose for 1 week and titrated up to either LCZ696 100 mg twice daily or valsartan 80 mg twice daily for 1 week. The maximum LCZ696 dose achieves exposures similar to a dose of valsartan that provides comparable AT1 blockade. At the investigator's discretion, patients are allowed to stay on each titration dose for an additional week. All patients are then titrated to their final doses of LCZ696 200 mg twice daily or valsartan 160 mg twice daily, in addition to standard background therapy.

Moreover, the study in Example 1 in Schumacher is said to have "a 2-week, single-blind placebo run-in period, during which time they continue their background medications".  There is no indication that the subjects in that study did not take an ACEI or an ARB, or took the equivalent dose of less than 10 mg of enalapril per day of an ACEI inhibitor or an ARB before initiating the treatment with LCZ696.

The Office Action also alleges that Schumacher teaches that "those of skill in the art understand that slowing the rate of titration can reduce adverse effects and improve patient compliance" (Office Action, p. 12).  Applicant respectfully disagrees and submits that Schumacher makes no such statement and does not lead to this general "conclusion".

The Office Action refers to the statement in Example 3 of Schumacher at page 37, lines 29-30, that the Active Run-in Period is "longer for patients with no prior exposure or on low doses of ACEIs or ARBs" as an apparent reason for having a longer run-in period at each of the up-titration doses of the LCZ696 mentioned in Example 1 of Schumacher in the claimed patient population.  Notwithstanding the fact that Examples 1 and 3 pertain to entirely different clinical studies with different patient populations and purposes, the clinical study in Example 3 does not teach lengthening any part of the LCZ696 up-titration period even in its own clinical study.

Application No.15/572,399                    12                    Docket No.: PAT056901-US-PCT
Amendment dated October 30, 2019
After Final Office Action of March 25, 2013

Specifically, Example 3 in Schumacher pertains to the PARAGON-HF study (Schumacher, p. 37, line 25). Schumacher states that "[d]etailed study design and procedures" in connection with this study "can be found under www.clinicaltrials.gov, study number NCT0192071 1" (Schumacher, p. 38, lines 15-16).

The disclosure in NCT01920711 (at clinicaltrials.gov)[1] indicates that the Run-in Period in PARAGON-HF involved starting with valsartan at 80 mg b.i.d. for 1-2 weeks, followed by LCZ696 at 100 mg b.i.d. for 2-4 weeks, before going up to LCZ696 at 200 mg b.i.d. That is, the Run-in Period in Example 3 of Schumacher includes pre-treatment with 80 mg b.i.d. of valsartan, and there is no teaching of a modification of the LCZ696 up-titration period. Moreover, PARAGON-HF did not involve administration of LCZ696 at 50 mg b.i.d.

Applicant respectfully submits that the clinical studies referenced in McMurray, NCT01922089, and Schumacher do not provide information from which a discernable relationship may be drawn between the up-titration doses of LCZ696 and their relative duration in connection with the treatment of heart failure with reduced ejection fraction. This is even less so when comes to the patient population as claimed. Given that each one of these clinical studies had a distinctly different purpose[2] and involved different patient populations, it is not appropriate to mix and match their various components in an attempt to reconstruct the claimed regimen.

The Office Action alludes to "routine optimization of the method disclosed in the prior art" when it comes to treating heart failure by administering LCZ696 in an escalating dose of 50 mg/100 mg/200 mg b.i.d. (Office Action, p. 10). Applicant believes that it is abundantly clear from the above discussion that this is not the case. To the contrary, there is nothing "routine"[3] about the changes in dosing and up-titration stages of LCZ696 when it comes to heart failure treatment. McMurray, NCT01922089, and Schumacher do not provide any indication of how such changes could or would be reasonably expected to affect patients who suffer from this

---

[1] Copy provided for the Examiner's convenience as Appendix A.
[2] McMurray (PARADIGM-HF) – comparing the long-term efficacy and safety of enalapril and LCZ696 in patients with chronic symptomatic heart failure and reduced ejection fraction (HF-rEF).
NCT01922089 – assess the safety and tolerability of initiating LCZ696 in heart failure patients with reduced ejection fraction (HF-rEF) using conservative (reaching target dose over 6 weeks) and condensed (reaching target dose over 3 weeks) up-titration regimens.
Schumacher (Example 3 – PARAGON-HF) – evaluate the effect of LCZ696 compared to valsartan in the reduction of cardiovascular death and heart failure(HF) hospitalizations in patients with HF with preserved ejection fraction.
[3] In the context of M.P.E.P. 2144.05(II)(A).

condition, which is associated with the risk of cardiovascular death.  Simply put, the doses and the schedules used in up-titrating LCZ696 are not the "general conditions" of the type to which M.P.E.P. 2144.05(II)(A) refers when relying on the holding in *In re Aller,* 220 F.2d 454, 456, 105 USPQ 233, 235 (CCPA 1955) to apply the routine optimization theory.

Accordingly, Applicant respectfully submits that McMurray, NCT01922089, and Schumacher, whether they are considered separately or in any permissible combination, do not disclose or suggest the instant invention.  Thus, these references do not render unpatentable the present claims.

**Claim Rejections-Double Patenting**

Claims 62, 63, 66-69, and 73-88 are provisionally rejected on the ground of nonstatutory double patenting as being allegedly unpatentable over claims 46-49 and 52-59 of copending U.S. Patent Application No. 14/914,005 ("the '005 application") or over claims 1-20 of copending U.S. Patent Application No. 16/074,589 ("the '589 application").

Applicant respectfully requests that these rejections be held in abeyance until an indication of allowable subject matter. Upon such indication, Applicant will consider filing a Terminal Disclaimer over the above applications, if appropriate.

Application No.15/572,399                                14                        Docket No.: PAT056901-US-PCT
Amendment dated October 30, 2019
After Final Office Action of March 25, 2013

## CONCLUSION

On the basis of the foregoing amendments and remarks, Applicant respectfully submits that the pending claims are in condition for allowance.  Such action is respectfully requested.  If there are any questions regarding these amendments and remarks, the Examiner is encouraged to contact the undersigned at the telephone number provided below.

Dated:  October 30, 2019                    Respectfully submitted,

                                            Electronic signature:  /Judith D. Kuntz/
                                            Judith D. Kuntz, J.D., Ph.D.
                                            Registration No.: 71,649

                                            Novartis Institutes for Biomedical Research, Inc.
                                            700 Main Street
                                            Cambridge, Massachusetts  02139
                                            (617) 871-8034
                                            Attorney For Applicant



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

| | | |
|---|---|---|
| 1095 | 7590 | 06/22/2020 |

NOVARTIS PHARMACEUTICAL CORPORATION
INTELLECTUAL PROPERTY DEPARTMENT
ONE HEALTH PLAZA 433/2
EAST HANOVER, NJ 07936-1080

| EXAMINER |
|---|
| DECK, JASON A |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1627 | |

DATE MAILED: 06/22/2020

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 15/572,399 | 11/07/2017 | Adel Remond Rizkala | PAT056901-US-PCT | 1063 |

TITLE OF INVENTION: SACUBITRIL-VALSARTAN DOSAGE REGIMEN FOR TREATING HEART FAILURE

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | UNDISCOUNTED | $1000 | $0.00 | $0.00 | $1000 | 09/22/2020 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED.** THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED.** SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.

**HOW TO REPLY TO THIS NOTICE:**

I. Review the ENTITY STATUS shown above. If the ENTITY STATUS is shown as SMALL or MICRO, verify whether entitlement to that entity status still applies.

If the ENTITY STATUS is the same as shown above, pay the TOTAL FEE(S) DUE shown above.

If the ENTITY STATUS is changed from that shown above, on PART B - FEE(S) TRANSMITTAL, complete section number 5 titled "Change in Entity Status (from status indicated above)".

For purposes of this notice, small entity fees are 1/2 the amount of undiscounted fees, and micro entity fees are 1/2 the amount of small entity fees.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Maintenance fees are due in utility patents issuing on applications filed on or after Dec. 12, 1980. It is patentee's responsibility to ensure timely payment of maintenance fees when due. More information is available at www.uspto.gov/PatentMaintenanceFees.**

Page 1 of 3

PTOL-85 (Rev. 02/11)

**PART B - FEE(S) TRANSMITTAL**

Complete and send this form, together with applicable fee(s), by mail or fax, or via EFS-Web.

| By mail, send to: | Mail Stop ISSUE FEE<br>Commissioner for Patents<br>P.O. Box 1450<br>Alexandria, Virginia 22313-1450 | By fax, send to: | (571)-273-2885 |
|---|---|---|---|

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1 by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

1095          7590          06/22/2020

NOVARTIS PHARMACEUTICAL CORPORATION
INTELLECTUAL PROPERTY DEPARTMENT
ONE HEALTH PLAZA 433/2
EAST HANOVER, NJ 07936-1080

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being transmitted to the USPTO via EFS-Web or by facsimile to (571) 273-2885, on the date below.

_____ (Typed or printed name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 15/572,399 | 11/07/2017 | Adel Remond Rizkala | PAT056901-US-PCT | 1063 |

TITLE OF INVENTION: SACUBITRIL-VALSARTAN DOSAGE REGIMEN FOR TREATING HEART FAILURE

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | UNDISCOUNTED | $1000 | $0.00 | $0.00 | $1000 | 09/22/2020 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| DECK, JASON A | 1627 | 514-381000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-09 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list
(1) The names of up to 3 registered patent attorneys or agents OR, alternatively,
(2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____

2 _____

3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document must have been previously recorded, or filed for recordation, as set forth in 37 CFR 3.11 and 37 CFR 3.81(a). Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE

(B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) : ☐ Individual ☐ Corporation or other private group entity ☐ Government

4a. Fees submitted: ☐ Issue Fee ☐ Publication Fee (if required) ☐ Advance Order - # of Copies _____

4b. Method of Payment: *(Please first reapply any previously paid fee shown above)*

☐ Electronic Payment via EFS-Web  ☐ Enclosed check  ☐ Non-electronic payment by credit card (Attach form PTO-2038)

☐ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment to Deposit Account No. _____

5. **Change in Entity Status** (from status indicated above)

☐ Applicant certifying micro entity status. See 37 CFR 1.29

☐ Applicant asserting small entity status. See 37 CFR 1.27

☐ Applicant changing to regular undiscounted fee status.

NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.
NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.
NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

Authorized Signature _____   Date _____

Typed or printed name _____   Registration No. _____

PTOL-85 Part B (08-18) Approved for use through 01/31/2020          OMB 0651-0033          U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 15/572,399 | 11/07/2017 | Adel Remond Rizkala | PAT056901-US-PCT | 1063 |

| | | |
|---|---|---|
| 1095 | 7590 | 06/22/2020 |

NOVARTIS PHARMACEUTICAL CORPORATION
INTELLECTUAL PROPERTY DEPARTMENT
ONE HEALTH PLAZA 433/2
EAST HANOVER, NJ 07936-1080

| EXAMINER |
|---|
| DECK, JASON A |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1627 | |

DATE MAILED: 06/22/2020

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(Applications filed on or after May 29, 2000)

The Office has discontinued providing a Patent Term Adjustment (PTA) calculation with the Notice of Allowance.

Section 1(h)(2) of the AIA Technical Corrections Act amended 35 U.S.C. 154(b)(3)(B)(i) to eliminate the requirement that the Office provide a patent term adjustment determination with the notice of allowance. See Revisions to Patent Term Adjustment, 78 Fed. Reg. 19416, 19417 (Apr. 1, 2013). Therefore, the Office is no longer providing an initial patent term adjustment determination with the notice of allowance. The Office will continue to provide a patent term adjustment determination with the Issue Notification Letter that is mailed to applicant approximately three weeks prior to the issue date of the patent, and will include the patent term adjustment on the patent. Any request for reconsideration of the patent term adjustment determination (or reinstatement of patent term adjustment) should follow the process outlined in 37 CFR 1.705.

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85 (Rev. 02/11)

## OMB Clearance and PRA Burden Statement for PTOL-85 Part B

The Paperwork Reduction Act (PRA) of 1995 requires Federal agencies to obtain Office of Management and Budget approval before requesting most types of information from the public. When OMB approves an agency request to collect information from the public, OMB (i) provides a valid OMB Control Number and expiration date for the agency to display on the instrument that will be used to collect the information and (ii) requires the agency to inform the public about the OMB Control Number's legal significance in accordance with 5 CFR 1320.5(b).

The information collected by PTOL-85 Part B is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 30 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450. Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b) (2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:
1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

| *Notice of Allowability* | Application No. 15/572,399 | Applicant(s) Rizkala et al. | |
|---|---|---|---|
| | Examiner JASON A DECK | Art Unit 1627 | AIA (FITF) Status Yes |

**-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--**

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☑ This communication is responsive to <u>10/30/19</u>.
   - ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

3. ☑ The allowed claim(s) is/are <u>See Continuation Sheet</u>. As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see **http://www.uspto.gov/patents/init_events/pph/index.jsp** or send an inquiry to **PPHfeedback@uspto.gov**.

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
   **Certified copies:**
   - a) ☐ All    b) ☐ Some    *c) ☐ None of the:
     1. ☐ Certified copies of the priority documents have been received.
     2. ☐ Certified copies of the priority documents have been received in Application No. _____.
     3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

   * Certified copies not received: _____.

   Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ CORRECTED DRAWINGS (as "replacement sheets") must be submitted.
   - ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____.

   **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☐ Notice of References Cited (PTO-892)
2. ☐ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date _____.
3. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material _____.
4. ☑ Interview Summary (PTO-413), Paper No./Mail Date. _____.

5. ☐ Examiner's Amendment/Comment
6. ☑ Examiner's Statement of Reasons for Allowance
7. ☐ Other _____.

| /Jason Deck/ Examiner, Art Unit 1627 | /SARAH PIHONAK/ Primary Examiner, Art Unit 1627 |
|---|---|

Continuation of 3. The allowed claim(s) is/are: 62-63,66-69 and 73-88

### *Notice of Pre-AIA or AIA Status*

The present application, filed on or after March 16, 2013, is being examined

under the first inventor to file provisions of the AIA.

## DETAILED ACTION

### *Status of the Application*

This Office Action is in response to Applicant's arguments filed on 10/30/19.

Claim(s) 1-61, 64, 65, and 70-72 are cancelled.  Claim(s) 62, 63, 66-69, and 73-88 are

pending.

Applicant's amendments to the claims, arguments, and showing of unexpected

results has rendered the 103 rejections of the last Office action moot, therefore hereby

withdrawn.

Applicant's amendments to the claims, arguments, and showing of unexpected

results has rendered the double patenting rejections of the last Office action moot,

therefore hereby withdrawn.

## EXAMINER'S STATEMENT OF REASONS FOR ALLOWANCE

The following is an examiner's statement of reasons for allowance: while the prior

art recognized that the instant composition was useful to treat heart failure with reduced

ejection fraction in an up-titration scheme, the prior art does not specifically disclose all

of the particular details of the instantly claimed method.  The Applicant has argued that

"It has been unexpectedly found that the above-mentioned titration mitigates a risk from

hypotension, hyperkalemia, and/or renal adverse events as compared to titration over a

Application/Control Number: 15/572,399                                      Page 3
Art Unit: 1627

shorter time period" and shown in the instant disclosure that the treatment success rate

was even more improved if patients taking lower doses of ACEIs/ARBs (i.e., the low

RAAS stratum) were up-titrated more gradually than patients who were taking higher

doses of ACEIs/ARBs.  For example, "The treatment success rate was 10% higher

(85%) for patients in the low RAAS stratum given gradual up-titration over 6 weeks

compared to those given condensed up-titration over 3 weeks. This difference was due

to hypotension, hyperkalemia and renal dysfunction in most cases. On the other hand,

surprisingly, there was no difference in the treatment success rate for high RAAS

stratum patients, regardless of the rate of up-titration (3 weeks vs. 6 weeks)" (see, for

example, the instant specification at pg. 3 lines 5-13).

This improvement, specifically the combination resulting in the 10% higher

success rate due to hypotension, hyperkalemia and renal dysfunction adverse events,

which the instant inventors discovered via experimentation, would not have been readily

predictable and thus are not obvious over the prior art.

Any comments considered necessary by applicant must be submitted no later

than the payment of the issue fee and, to avoid processing delays, should preferably

accompany the issue fee.  Such submissions should be clearly labeled "Comments on

Statement of Reasons for Allowance."

### Conclusion

Claim(s) 1-61, 64, 65, and 70-72 are cancelled.  Claim(s) 62, 63, 66-69, and 73-

88 are allowed.

Application/Control Number: 15/572,399                                    Page 4
Art Unit: 1627

    Any inquiry concerning this communication or earlier communications from the
examiner should be directed to JASON A DECK whose telephone number is (571)270-
5753.  The examiner can normally be reached on M-F 10-6.

    If attempts to reach the examiner by telephone are unsuccessful, the examiner's
supervisor, SREENIVASAN (PADDY) PADMANABHAN can be reached on (571)272-
0629.  The fax phone number for the organization where this application or proceeding
is assigned is 571-273-8300.

    Information regarding the status of an application may be obtained from the
Patent Application Information Retrieval (PAIR) system.  Status information for
published applications may be obtained from either Private PAIR or Public PAIR.
Status information for unpublished applications is available through Private PAIR only.
For more information about the PAIR system, see http://pair-direct.uspto.gov.  Should
you have questions on access to the Private PAIR system, contact the Electronic
Business Center (EBC) at 866-217-9197 (toll-free).  If you would like assistance from a
USPTO Customer Service Representative or access to the automated information
system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/JASON A DECK/
Examiner, Art Unit 1627

/SARAH PIHONAK/
Primary Examiner, Art Unit 1627

| *Examiner-Initiated Interview Summary* | Application No. 15/572,399 | Applicant(s) Rizkala et al. | | |
|---|---|---|---|---|
| | Examiner JASON A DECK | Art Unit 1627 | AIA (First Inventor to File) Status Yes | Page 1 of 1 |

All participants (applicant, applicants representative, PTO personnel):

1. JASON A DECK (Examiner); Telephonic      2. Judith D. Kuntz (Attorney); Telephonic

**Date of Interview:** <u>10 June 2020</u>

**Brief Description of the main topic(s) of discussion:** Jason Deck called Judith Kuntz to discuss the disposition of the application.

---

### Issues Discussed:

**Item(s) under 35 U.S.C. 103:**
Jason Deck stated that the argued unexpected benefits appeared to be sufficient to overcome the rejections of record.

Some formalities and the most recent amendments to the claims were discussed, in general.

| /Jason Deck/ Examiner, Art Unit 1627 | /SARAH PIHONAK/ Primary Examiner, Art Unit 1627 |
|---|---|

**Applicant is reminded that a complete written statement as to the substance of the interview must be made of record in the application file. It is the applicants responsibility to provide the written statement, unless the interview was initiated by the Examiner and the Examiner has indicated that a written summary will be provided. See MPEP 713.04**
Please further see:
MPEP 713.04
Title 37 Code of Federal Regulations (CFR) § 1.133 Interviews, paragraph (b)
37 CFR § 1.2 Business to be transacted in writing

**Applicant recordation instructions:** It is not necessary for applicant to provide a separate record of the substance of interview.

**Examiner recordation instructions:** Examiners must summarize the substance of any interview of record. A complete and proper recordation of the substance of an interview should include the items listed in MPEP 713.04 for complete and proper recordation including the identification of the general thrust of each argument or issue discussed, a general indication of any other pertinent matters discussed regarding patentability and the general results or outcome of the interview, to include an indication as to whether or not agreement was reached on the issues raised.

Docket No.: PAT056901-US-PCT
(PATENT)

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent Application of:
Adel Remond RIZKALA

Application No.: 15/572,399      Confirmation No.: 1063

Filed: November 7, 2017      Art Unit: 1627

For:  SACUBITRIL-VALSARTAN DOSAGE      Examiner: Jason A. Deck
         REGIMEN FOR TREATING HEART FAILURE

**VIA EFS**
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

## AMENDMENT UNDER 37 C.F.R § 1.312

This paper is submitted in response to the Notice of Allowance mailed on June 22, 2020, in the above-identified application. Applicant submits the following amendments and remarks in connection with the above-identified application.

Applicant believes that no fee is due. However, the Commissioner is authorized to charge any fees that may be due in connection with this filing, or credit any overpayment of same, to Deposit Account No. 50-4409, Reference No.: PAT056901-US-PCT.

Please amend the above-identified application as follows:

**Amendments to the Claims** begin on page 2 of this document.

**Remarks/Arguments** begin on page 9 of this document.

Application No.: 15/572,399                2                Docket No.: PAT056901-US-PCT

## AMENDMENTS TO THE CLAIMS

This listing of claims will replace all prior versions of the claims and listing of the claims in the application:

**Listing of Claims:**

1-61.    (Cancelled)


62.    (Currently Amended) A regimen for treating heart failure with reduced ejection fraction, which comprises administering to a patient in need thereof a twice-daily target dose of 200 mg of sacubitril or a pharmaceutically acceptable salt thereof together with and valsartan or a pharmaceutically acceptable salt thereof, which are provided to the patient in a 1:1 molar ratio, wherein the twice daily target dose of 200 mg corresponds to 97 mg of sacubitril and 103 mg of valsartan in a 1:1 molar ratio are delivered in the form of the compound trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl)propionate-(S)-3'-methyl-2'-(pentanoyl{2''-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate] hemipentahydrate (LCZ696);

wherein the twice daily said target dose of 200 mg is reached after a titration with a twice daily starting dose of 50 mg of sacubitril or the pharmaceutically acceptable salt thereof and together with valsartan or the pharmaceutically acceptable salt thereof, which are provided to the patient in a 1:1 molar ratio, for from about 3 weeks to about 4 weeks, wherein the twice daily starting dose of 50 mg corresponds to 24 mg of sacubitril and 26 mg of valsartan, followed by a twice daily dose of 100 mg of sacubitril or the pharmaceutically acceptable salt thereof and together with valsartan or the pharmaceutically acceptable salt thereof, which are provided to the patient in a 1:1 molar ratio, for from about 3 weeks to about 4 weeks, wherein the twice daily dose of 100 mg corresponds to 49 mg of sacubitril and 51 mg of valsartan, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter; and

wherein:

(i) the twice daily starting dose of 50 mg ~~of sacubitril and valsartan in a 1:1 molar ratio~~ is for use in a patient neither taking an angiotensin-converting enzyme (ACE) inhibitor nor taking an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan, or

(ii) the twice daily starting dose of 50 mg ~~of sacubitril and valsartan in a 1:1 molar ratio~~ is for use in a patient taking a low dose of an angiotensin-converting enzyme (ACE) inhibitor or a low dose of an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan, wherein the low dose of the ACE inhibitor or ARB is equivalent to a dose of $\leq$[[$<$]] 10 mg of enalapril per day.

63.    (Currently Amended) The regimen for treating heart failure according to claim 62, wherein <u>the twice daily</u> ~~said~~ dose <u>of 200 mg</u> is reached after <u>the</u> ~~a~~ titration with <u>the</u> ~~a~~ twice daily starting dose of 50 mg ~~of  sacubitril and valsartan in a 1:1 molar ratio~~ for about 3 weeks, followed by ~~a~~ <u>the</u> twice daily dose of 100 mg ~~of sacubitril and valsartan in a 1:1 molar ratio~~ for about 3 weeks, followed by the twice daily target dose of 200 mg ~~of sacubitril and valsartan in a 1:1 molar ratio~~ thereafter.

64-65.  (Cancelled)

66.    (Previously Presented) The regimen for treating heart failure according to claim 62, wherein the patient suffers from chronic systolic heart failure with reduced ejection fraction.

67.    (Previously Presented) The regimen for treating heart failure according to claim 62, wherein the patient is a human patient.

68.    (Previously Presented) The regimen for treating heart failure according to claim 62, wherein the patient has at least one of:

    i)        heart failure of NYHA class II, III or IV,

    ii)       an elevated plasma BNP or NT-proBNP level, and

    iii)      a reduced left ventricular ejection fraction (LVEF) of ≤40%.

69.    (Previously Presented) The regimen for treating heart failure according to claim 62, wherein the patient suffers from chronic heart failure classified as NYHA class II, III or IV and has systolic dysfunction.

70-72. (Cancelled)

73.    (Previously Presented) The regimen for treating heart failure according to claim 62, wherein the patient has to stop taking the angiotensin receptor blocker (ARB) or the ACE inhibitor at least 36 hours prior to taking the medicament.

74.    (Cancelled)

75.    (Previously Presented) The regimen for treating heart failure according to claim 68, wherein the patient has an elevated plasma BNP of ≥100 pg/mL or NT-proBNP of ≥400 pg/mL.

76.    (Previously Presented) The regimen for treating heart failure according to claim 68, wherein the patient has an elevated plasma BNP of ≥150 pg/mL or NT-proBNP of ≥600 pg/mL.

77.    (Previously Presented) The regimen for treating heart failure according to claim 68, wherein the patient has a reduced left ventricular ejection fraction (LVEF) of ≤35%.

78.   (Currently Amended)  A regimen for treating heart failure with reduced ejection fraction, which comprises administering to a patient in need thereof a twice-daily target dose of 200 mg of sacubitril <u>or a pharmaceutically acceptable salt thereof together with</u> ~~and~~ valsartan <u>or a pharmaceutically acceptable salt thereof, which are provided to the patient</u> in a 1:1 molar ratio, wherein <u>the twice daily target dose of 200 mg corresponds to 97 mg of</u> sacubitril and <u>103 mg of</u> valsartan ~~in a 1:1 molar ratio are delivered in the form of the compound trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl)propionate-(S)-3'-methyl-2'-(pentanoyl{2''-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate] hemipentahydrate (LCZ696)~~;

wherein <u>the twice daily</u> ~~said~~ target dose <u>of 200 mg</u> is reached after a titration with a twice daily starting dose of 50 mg of sacubitril <u>or the pharmaceutically acceptable salt thereof together with</u> ~~and~~ valsartan <u>or the pharmaceutically acceptable salt thereof, which are provided to the patient</u> in a 1:1 molar ratio<u>,</u> for from about 2 weeks to about 4 weeks, <u>wherein the twice daily starting dose of 50 mg corresponds to 24 mg of sacubitril and 26 mg of valsartan,</u> followed by a twice daily dose of 100 mg of sacubitril <u>or the pharmaceutically acceptable salt thereof together with</u> ~~and~~ valsartan <u>or the pharmaceutically acceptable salt thereof, which are provided to the patient</u> in a 1:1 molar ratio<u>,</u> for from about 2 weeks to about 4 weeks, <u>wherein the twice daily dose of 100 mg corresponds to 49 mg of sacubitril and 51 mg of valsartan,</u> followed by the twice daily target dose of 200 mg ~~of sacubitril and valsartan in a 1:1 molar ratio~~ thereafter, <u>and</u> wherein said titration to the target dose occurs over a period of at least <u>about</u> 6 weeks; and

wherein:

(i) the twice daily starting dose of 50 mg ~~of sacubitril and valsartan in a 1:1 molar ratio~~ is for use in a patient neither taking an angiotensin-converting enzyme (ACE) inhibitor nor taking an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan, or

(ii) the twice daily starting dose of 50 mg ~~of sacubitril and valsartan in a 1:1 molar ratio~~ is for use in a patient taking a low dose of an angiotensin-converting enzyme (ACE) inhibitor or a low

dose of an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan, wherein the low dose of the ACE inhibitor or ARB is equivalent to a dose of ≤[[<]] 10 mg of enalapril per day.

79.    (Currently Amended) The regimen for treating heart failure according to claim 78, wherein the twice daily target said dose is reached after a titration with the a twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio for about 3 weeks, followed by the a twice daily dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for about 3 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

80.    (Previously Presented) The regimen for treating heart failure according to claim 78, wherein the patient suffers from chronic systolic heart failure with reduced ejection fraction.

81.    (Previously Presented) The regimen for treating heart failure according to claim 78, wherein the patient is a human patient.

82.    (Previously Presented) The regimen for treating heart failure according to claim 78, wherein the patient has at least one of:

    i)    heart failure of NYHA class II, III or IV,

    ii)    an elevated plasma BNP or NT-proBNP level, and

    iii)    a reduced left ventricular ejection fraction (LVEF) of ≤40%.

83.    (Previously Presented) The regimen for treating heart failure according to claim 82, wherein the patient has an elevated plasma BNP of ≥100 pg/mL or NT-proBNP of ≥400 pg/mL.

84.      (Previously Presented) The regimen for treating heart failure according to claim 82, wherein the patient has an elevated plasma BNP of ≥150 pg/mL or NT-proBNP of ≥600 pg/mL.

85.      (Previously Presented) The regimen for treating heart failure according to claim 82, wherein the patient has a reduced left ventricular ejection fraction (LVEF) of ≤35%.

86.      (Previously Presented) The regimen for treating heart failure according to claim 78, wherein the patient suffers from chronic heart failure classified as NYHA class II, III or IV and has systolic dysfunction.

87.      (Previously Presented) The regimen for treating heart failure according to claim 78, wherein the patient has to stop taking the angiotensin receptor blocker (ARB) or the ACE inhibitor at least 36 hours prior to taking the medicament.

88.      (Cancelled)

89.      (New) The regimen for treating heart failure according to claim 62, wherein the twice daily starting dose of 50 mg is for use in the patient taking the low dose of the angiotensin-converting enzyme (ACE) inhibitor or the low dose of an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan, and wherein the patient is a human patient.

90.      (New) The regimen for treating heart failure according to claim 89, wherein the low dose of the ACE inhibitor or ARB is equivalent to the dose of < 10 mg of enalapril per day.

91.      (New) The regimen for treating heart failure according to claim 78, wherein the twice daily starting dose of 50 mg is for use in the patient taking the low dose of the angiotensin-converting enzyme

(ACE) inhibitor or the low dose of an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan, and wherein the patient is a human patient.

92.      (New) The regimen for treating heart failure according to claim 91, wherein the low dose of the ACE inhibitor or ARB is equivalent to the dose of < 10 mg of enalapril per day.

93.      (New) The regimen for treating heart failure according to claim 78, wherein a first week of the at least about 6 weeks is 5±2 days.

94.      (New) The regimen for treating heart failure according to claim 62, wherein sacubitril or the pharmaceutically acceptable salt thereof together with valsartan or the pharmaceutically acceptable salt thereof are provided to the patient in a 1:1 molar ratio by administering to the patient a compound trisodium    [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl)propionate-(S)-3`-methyl-2`-(pentanoyl{2``-(tetrazol-5-ylate)biphenyl-4`-ylmethyl}amino)butyrate]    hemipentahydrate (LCZ696).

95.      (New) The regimen for treating heart failure according to claim 78, wherein sacubitril or the pharmaceutically acceptable salt thereof together with valsartan or the pharmaceutically acceptable salt thereof are provided to the patient in a 1:1 molar ratio by administering to the patient a compound trisodium    [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl)propionate-(S)-3`-methyl-2`-(pentanoyl{2``-(tetrazol-5-ylate)biphenyl-4`-ylmethyl}amino)butyrate]    hemipentahydrate (LCZ696).

Application No.: 15/572,399                     9                     Docket No.: PAT056901-US-PCT

## <u>REMARKS</u>

Claims 62, 63, 66-69, and 73-88 were allowed in the Notice of Allowance mailed on June 22, 2020 ("NOA") and are thus pending in the current application.

Applicant herewith submits an amendment under 37 C.F.R § 1.312 to amend the allowed claims 62, 63, 78, and 79 for further clarification, and/or to improve their form.

Upon entry of the amendments presented herein, claims 62, 63, 66-69, 73, 75-87, and 89-95 are pending. Claims 74 and 88 are cancelled herein and new claims 89-95 are added. Claims 1-61, 64, 65, and 70-72 were previously cancelled. Support for the new claims and amendments can may be found throughout the specification as filed.  No new matter is added.  Applicant submits that as amended the claims do not require an additional search or examination and respectfully requests reconsideration and entry of this amendment.

On the basis of the foregoing amendments and remarks, Applicant respectfully submits that the pending claims are in condition for allowance.  Such action is respectfully requested.  If there are any questions regarding these amendments and remarks, the Examiner is encouraged to contact the undersigned at the telephone number provided.

Dated:  <u>September 11, 2020</u>                     Respectfully submitted,


Electronic signature:  <u>/Judith D. Kuntz/</u>
Judith D. Kuntz, J.D., Ph.D.
Registration No.: 71,649

Novartis Institutes for Biomedical Research, Inc.
700 Main Street
Cambridge, Massachusetts  02139
(617) 871-8034
Attorney For Applicant

### UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 15/572,399 | 11/07/2017 | Adel Remond Rizkala | PAT056901-US-PCT | 1063 |

1095        7590        09/16/2020
NOVARTIS PHARMACEUTICAL CORPORATION
INTELLECTUAL PROPERTY DEPARTMENT
ONE HEALTH PLAZA 433/2
EAST HANOVER, NJ 07936-1080

| EXAMINER |
|---|
| DECK, JASON A |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1627 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 09/16/2020 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

phip.patents@novartis.com

PTOL-90A (Rev. 04/07)

| *Applicant-Initiated Interview Summary* | Application No. 15/572,399 | Applicant(s) Rizkala et al. | | |
|---|---|---|---|---|
| | Examiner JASON A DECK | Art Unit 1627 | AIA (First Inventor to File) Status Yes | Page 1 of 2 |

All participants (applicant, applicants representative, PTO personnel):

1. JASON A DECK (Examiner); Telephonic       2. Judith D. Kuntz (Attorney); Telephonic

**Date of Interview:** <u>11 September 2020</u>

**Claims Discussed:** Judith Kuntz wanted to discuss potential amendments to the claims.

**Amendment proposed:** Judith Kuntz wanted to discuss potential amendments to the claims.

---

### Issues Discussed:

**Proposed Amendments:**
Judith Kuntz wanted to discuss potential amendments to the claims to be submitted via 1.312 amendment.

The amendments were intended to clarify the claims and claimed scope without broadening the claims, but were fairly extensive. Because of this, Judy Kuntz wanted to discuss them prior to submission.

Jason Deck briefly perused the claims and commented that, while they would require in depth analysis when ultimately submitted, they appeared to be fine and would likely be entered.

**Attachment(s):** Proposed Amendments,

| /Jason Deck/<br>Examiner, Art Unit 1627 | |
|---|---|

**Applicant is reminded that a complete written statement as to the substance of the interview must be made of record in the application file. It is the applicants responsibility to provide the written statement, unless the interview was initiated by the Examiner and the Examiner has indicated that a written summary will be provided. See MPEP 713.04**
Please further see:
MPEP 713.04
Title 37 Code of Federal Regulations (CFR) § 1.133 Interviews, paragraph (b)
37 CFR § 1.2 Business to be transacted in writing

U.S. Patent and Trademark Office
PTOL-413/413b (Rev. 01/01/2015)                    **Interview Summary**                    Paper No. 20200911

**Applicant recordation instructions:** The formal written reply to the last Office action must include the substance of the interview. (See MPEP section 713.04). If a reply to the last Office action has already been filed, applicant is given a non-extendable period of the longer of one month or thirty days from this interview date, or the mailing date of this interview summary form, whichever is later, to file a statement of the substance of the interview.

**Examiner recordation instructions:** Examiners must summarize the substance of any interview of record. A complete and proper recordation of the substance of an interview should include the items listed in MPEP 713.04 for complete and proper recordation including the identification of the general thrust of each argument or issue discussed, a general indication of any other pertinent matters discussed regarding patentability and the general results or outcome of the interview, to include an indication as to whether or not agreement was reached on the issues raised.

Docket No.: PAT056901-US-PCT
(PATENT)

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent Application of:
Adel Remond RIZKALA

Application No.: 15/572,399                    Confirmation No.: 1063

Filed:  November 7, 2017                      Art Unit: 1627

For:  SACUBITRIL-VALSARTAN DOSAGE            Examiner: Jason A. Deck
       REGIMEN FOR TREATING HEART FAILURE

*VIA EFS*
**Mail Stop Issue Fee**
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

## **RESPONSE TO NOTICE TO FILE CORRECTED APPLICATION PAPERS**

This communication is submitted in response to the Notice to File Corrected Application Papers under 37 C.F.R. § 1.121 (the "Notice") mailed on August 3, 2020.  Without extension, this response is due on or before October 3, 2020. Applicant believes no fee is due. However, the Commissioner is hereby authorized to charge any additional fees that may be due or credit any overpayment of same to Deposit Account No. 50-4409, Attorney Reference No. PAT056901-US-PCT.

In response to the Notice, Applicant is submitting herewith a copy of the Notice, a marked-up substitute specification (excluding claims, abstract, and drawing) and a clean substitute specification (excluding claims, abstract, and drawing) in compliance with 37 C.F.R. §§1.52, 1.121(b)(3), and 1.125. The Notice states that there are drawings present in the application and referred to in the detailed description of the invention but the specification does not contain a brief description of the several view as required by 37 C.F.R 1.74 and 37 C.F.R 1.77 (b)(9). Applicant has amended the specification on page 4 only to add a brief description of Figure 1. Applicant has also amended the specification at page 1 to insert the "Related Applications" section to include a specific reference to the international application and priority application upon which the instant national stage application is based. The total number of pages

Application No.: 15/572,399                 2                 Docket No.: PAT056901-US-PCT

of the clean substituted specification is 27 pages. No new matter is introduced by the substitute specification page presented herein.

Should any questions or issues arise concerning this application, the Examiner is encouraged to contact the undersigned at the telephone number provided below.

Dated:  <u>September 22, 2020</u>                 Respectfully submitted,

Electronic signature:  <u>/Judith D. Kuntz/</u>
Judith D. Kuntz, J.D., Ph.D.
Registration No.: 71,649

Novartis Institutes for Biomedical Research, Inc.
700 Main Street
Cambridge, Massachusetts  02139
(617) 871-8034
Attorney For Applicant

Uɴɪᴛᴇᴅ Sᴛᴀᴛᴇs Pᴀᴛᴇɴᴛ ᴀɴᴅ Tʀᴀᴅᴇᴍᴀʀᴋ Oғғɪᴄᴇ

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 15/572,399 | 11/07/2017 | Adel Remond Rizkala | PAT056901-US-PCT | 1063 |

1095        7590        08/03/2020
NOVARTIS PHARMACEUTICAL CORPORATION
INTELLECTUAL PROPERTY DEPARTMENT
ONE HEALTH PLAZA 433/2
EAST HANOVER, NJ 07936-1080

| EXAMINER |
|---|
| DECK, JASON A |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1627 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 08/03/2020 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

phip.patents@novartis.com

PTOL-90A (Rev. 04/07)



UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

Application No. : 15572399
Applicant : Rizkala
Filing Date : 11/07/2017
Date Mailed : 08/03/2020

# NOTICE TO FILE CORRECTED APPLICATION PAPERS

## *Notice of Allowance Mailed*

This application has been accorded an Allowance Date and is being prepared for issuance. The application, however, is incomplete for the reasons below.

**Applicant is given two (2) months from the mail date of this Notice within which to respond.  This time period for reply is extendable under 37 CFR 1.136(a) for only TWO additional MONTHS.**

The informalities requiring correction are indicated in the attachment(s).  If the informality pertains to the abstract, specification (including claims) or drawings, the informality must be corrected with an amendment in compliance with 37 CFR 1.121 (or, if the application is a reissue application, 37 CFR 1.173).  Such an amendment may be filed after payment of the issue fee if limited to correction of informalities noted herein.  See Waiver of 37 CFR 1.312 for Documents Required by the Office of Patent Publication, 1280 Off. Gaz. Patent Office 918 (March 23, 2004).  In addition, if the informality is not corrected until after payment of the issue fee, for purposes of 35 U.S.C. 154(b)(1)(iv), "all outstanding requirements" will be considered to have been satisfied when the informality has been corrected.  A failure to respond within the above-identified time period will result in the application being ABANDONED.

**See attachment(s).**

*A copy of this notice **MUST** be returned with the reply. Please address response to
"Mail Stop Issue Fee, Commissioner for Patents,
P.O. Box 1450, Alexandria, VA 22313-1450".*

/Quang Nguyen/
Publication Branch
Office of Data Management
(571) 272-4200

**Application No. <u>15572399</u>**

## IDENTIFICATION OF SPECIFICATION/DRAWING INCONSISTENCIES

☐  On Page of the specification there is a brief description of FIG. , but the drawings filed  do not include a drawing with that designation.  Applicant must respond either by supplying the omitted drawing or by amending the specification to remove all references to that drawing.

☐  The drawings filed  include FIG. , but the specification's brief description of the drawings does not describe a drawing with that designation.  Applicant must respond either by amending the specification to add a brief description of that drawing or by correcting the drawings to remove the drawing in question.

☒  In the utility application, drawings are present in the application and are referred to in the detailed description of the invention, but the specification does not contain a brief description of the several views as required by 37 CFR 1.74 and 37 CFR 1.77(b)(9).

☐  The design application does not contain a description of the figure or figures of the drawing as required by 37 CFR 1.153(a) and 37 CFR 1.154(b)(4).

☐  In the plant application, the specification does not contain a brief description of the drawing as required by 37 CFR 1.163(c)(8).

☐  Page of the specification refers to FIG. , but no drawing with that designation is described in the brief description of the drawings and no drawing with that designation is present in the application.  Applicant must respond either by amending the specification to remove all references to that drawing, or by supplying that drawing and amending the specification to add a brief description of it.

☐  In the reissue application, FIG. , is labeled as "New" but is not described in the reissue specification's brief description of the drawings.  Applicant must respond by amending the reissue specification's brief description of the drawings to add a brief description of the new drawing.

☐  OTHER:

☐  COMMENTS:

PAT056901-PCT

## NEW PHARMACEUTICAL USE

**Related Applications**

This application is a national stage application, filed under 35 U.S.C. §371, of International Application No. PCT/IB2016/052633, filed May 9, 2016, which claims priority to and the benefit of, U.S. Provisional Application No. 62/159,703, filed May 11, 2015, the entire contents of each of which are incorporated herein by reference in their entireties.

**Field of the Invention**

The present invention relates to novel methods and pharmaceutical compositions for the treatment of heart failure in a patient, in particular to a regimen for treating heart failure which comprises administering to a patient in need thereof a twice-daily target dose of an Angiotensin Receptor Neprilysin inhibitor (ARNi) or of a combination of an Angiotensin Receptor Blocker (ARB) with a Neutral Endopeptidase inhibitor (NEPi) or with a NEPi pro-drug, wherein said target dose is reached after a titration with an initial lower twice-daily dose of said ARNI increasing to the twice daily target dose from about 2 to about 8 weeks.

**Background of the Invention**

Chronic heart failure (CHF) is a major public health problem characterized by significant mortality, frequent hospitalization, and poor quality of life, with an overall prevalence that is increasing throughout the world. In the United States (US) alone, approximately 5 million patients have heart failure (HF) and there are over half a million newly diagnosed cases annually. In Europe, the prevalence of HF is between 2 and 3%, and that in the elderly is estimated between 10 to 20%.

Medical therapies targeted at improving outcomes in HF with a low LVEF have been well studied over the past two decades, leading to an improvement in survival as well as a decrease in morbidity, mostly in the form of decrease in re-hospitalization for HF. These medical therapies include angiotensin converting enzyme (ACE) inhibitors, angiotensin receptor blockers (ARBs), β-blockers and mineralocorticoid antagonists.

However, despite advances in pharmacological (and device therapies), the outlook remains poor. Overall 50% of patients die within 4 years, and 40% of patients admitted to hospital with HF die or are readmitted within 1 year. Thus, HF still represents a major cause of cardiac mortality and morbidity with a clear need for better therapy.

LCZ696 is a first-in-class, angiotensin receptor neprilysin inhibitor (ARNI) being developed for the treatment of CHF. Following ingestion, LCZ696 provides systemic exposure to sacubitril (AHU377; (2R,4S)-5-biphenyl-4-yl-4-(3-carboxy-propionylamino)-2-methyl-pentanoic acid ethyl ester, also named N-(3-carboxy-1-oxopropyl)-(4S)-(p-

PAT056901-PCT

phenylphenylmethyl)-4-amino-2R-methylbutanoic acid ethyl ester), a neprilysin (neutral endopeptidase 24.11, NEP) inhibitor (NEPi) and valsartan, an ARB, in a 1:1 molar ratio. AHU377 is further metabolized via esterases to the active NEPi, LBQ657. Neprilysin degrades biologically active natriuretic peptides (NPs), including atrial natriuretic peptide

5   (ANP), B-type natriuretic peptide (BNP) and C-type natriuretic peptide (CNP). The effects of NEP inhibition are attributed to the enhanced effects of biologically active NPs. NPs, acting through the second messenger cyclic guanosine monophosphate, have potent natriuretic and vasodilator properties, inhibit the activity of the renin-angiotensin-aldosterone system (RAAS), lower sympathetic drive and have anti-fibrotic and anti-

10   hypertrophic effects. Angiotensin receptor blockade is specific and competitive at the angiotensin type 1 (AT1) receptor, which mediates the deleterious effects of angiotensin II on the cardiovascular system. LCZ696, through its dual mode of action, potentiates NPs via NEP inhibition while inhibiting the RAS via AT1 receptor blockade. Both of these mechanisms are considered to act in a complementary and additive manner to improve

15   the morbidity and mortality of HF patients.

The clinical efficacy of LCZ696 in reducing the cardiovascular death and hospitalizations due to HF in HF-rEF patients was assessed in the LCZ696B2314 PARADIGM-HF study. The PARADIGM-HF study incorporated a single-blind, active run-in phase that was designed to assure a large proportion of patients will maintain target dose study drug

20   during the long term study. Patients entered a single-blind active run-in in which they received enalapril 10 mg bid, followed by LCZ696 100 mg bid, and then LCZ696 200 mg bid. Patients must tolerate the study target dose of enalapril (10 mg bid) and the study target dose of LCZ696 (200 mg bid) for at least 2 weeks in order to be randomized. However, the active run-in phase included in the PARADIGM-HF study design (the

25   sequential use of enalapril followed by LCZ696) provided limited information on how the physician should initiate the LCZ696 therapy in clinical practice, in particular for those patients who are currently on the low dose of ACEIs or ARBs, or ACEI/ARB-naïve patients.

Accordingly there was a need to provide guidance on dosing and up-titration of LCZ696

30   (sacubitril and valsartan in a 1:1 molar ratio).

The compounds and pharmaceutical compositions disclosed herein include novel drug candidates potentially useful for the treatment of hypertension and/or heart failure. Such compounds or pharmaceutical compositions have been previously disclosed in WO 2003/059345, WO 2007/056546, WO 2009/061713 as well as WO2014029848,

35   which are herein incorporated by reference.

2

PAT056901-PCT

**Summary of the invention**

Surprisingly, it has been shown with a regimen for treating heart failure which comprises administering to a patient in need thereof a twice-daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio (e.g. LCZ696), wherein said target dose is reached after

5  a titration with an initial twice-daily dose of at least 50 mg of sacubitril and valsartan in a 1:1 molar ratio increasing to the twice daily target dose of 200 mg of from about 2 to about 8 weeks, the target dose can be safely reached in the large majority of the patients.

The treatment success rate with sacubitril and valsartan in a 1:1 molar ratio (e.g. LCZ696) was even more improved if patients taking lower doses of ACEIs/ARBs (i.e., the low

10  RAAS stratum) were up-titrated more gradually than patients who were taking higher doses of ACEIs/ARBs. The treatment success rate was 10% higher (85%) for patients in the low RAAS stratum given gradual up-titration over 6 weeks compared to those given condensed up-titration over 3 weeks. This difference was due to hypotension, hyperkalemia and renal dysfunction in most cases. On the other hand, surprisingly, there

15  was no difference in the treatment success rate for high RAAS stratum patients, regardless of the rate of up-titration (3 weeks vs. 6 weeks).

Accordingly, the present invention, in a first embodiment relates to a regimen for treating heart failure which comprises administering to a patient in need thereof a twice-daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio, wherein said target

20  dose is reached after a titration with an initial twice-daily dose of at least 50 mg of sacubitril and valsartan in a 1:1 molar ratio increasing to the twice daily target dose of 200 mg of from about 2 to about 8 weeks.

In one embodiment thereof, the patient is a human patient.

In another embodiment thereof, the compound of formula (I) is trisodium [3-((1S,3R)-1-

25  biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl)propionate-(S)-3'-methyl-2'-(pentanoyl{2''-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate] hemipentahydrate (LCZ696).

In another embodiment, the present invention relates to a regimen for treating heart failure which comprises administering to a patient in need thereof a twice-daily target dose of 200

30  mg of sacubitril and valsartan in a 1:1 molar ratio, wherein said dose is reached after a titration with a twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by a twice daily dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar

35  ratio thereafter, and wherein the twice daily starting dose of 50 mg of sacubitril and

3

PAT056901-PCT

valsartan in a 1:1 molar ratio is for use in a patient not taking an angiotensin-converting enzyme (ACE) inhibitor or an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

In another embodiment, the present invention relates to a regimen for treating heart failure which comprises administering to a patient in need thereof a twice-daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio, wherein said dose is reached after a titration with a twice daily starting dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter and wherein the twice daily starting dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient taking higher doses of an angiotensin-converting enzyme (ACE) inhibitor or of an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

In another embodiment, the present invention relates to a twice-daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio for use in the treatment of heart failure in a patient, wherein said dose is reached after a titration with an initial twice-daily dose of at least 50 mg of sacubitril and valsartan in a 1:1 molar ratio increasing to the twice daily target dose of 200 mg for from about 2 to about 8 weeks.

In another embodiment, the present invention is directed to the use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient, wherein the medicament comprises a twice-daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio which is reached after a titration with an initial twice-daily dose of at least 50 mg of sacubitril and valsartan in a 1:1 molar ratio increasing to the twice daily target dose of 200 mg for from about 2 to about 8 weeks.

**Brief Description of the Drawings**

**Figure 1** shows the study design for the multi-center, randomized, double-blind, parallel-group study conducted to evaluate the safety and tolerability of LCZ696 comparing two up-titration regimens in both outpatients and hospitalized patients (inpatients) with HFrEF.

**Definitions**

Throughout this specification and in the claims that follow, the following terms are defined with the following meanings, unless explicitly stated otherwise.

The term "prevention" refers to prophylactic administration to a healthy subject to prevent the development of the conditions mentioned herein.  Moreover, the term "prevention"

4

PAT056901-PCT

means prophylactic administration to patients being in a pre-stage of the conditions to be treated.

The term "treatment" is understood the management and care of a patient for the purpose of combating the disease, condition or disorder.

5   The term "therapeutically effective amount" refers to an amount of a drug or a therapeutic agent that will elicit the desired biological and/or medical response of a tissue, system or an animal (including man) that is being sought by a researcher or clinician.

The terms "patient" include, but are not limited to, humans, dogs, cats, horses, pigs, cows, monkeys, rabbits and mice. The preferred patients are humans.

10   The terms "administration of" and or "administering a" compound should be understood to mean providing a compound of the invention or a pharmaceutically acceptable salt or ester thereof, or a pro-drug thereof to a subject in need of treatment. The administration of the composition of the present invention in order to practice the present methods of therapy is carried out by administering a therapeutically effective amount of the

15   compounds in the composition to a subject in need of such treatment or prophylaxis. The need for a prophylactic administration according to the methods of the present invention is determined via the use of well-known risk factors. The effective amount of an individual compound is determined, in the final analysis, by the physician in charge of the case, but depends on factors such as the exact disease to be treated, the severity of the disease

20   and other diseases or conditions from which the patient suffers, the chosen route of administration, other drugs and treatments which the patient may concomitantly require, and other factors in the physician's judgment.

The term "prophylactically effective amount" as used herein means the amount of the active compounds in the composition that will elicit the biological or medical response in a

25   tissue, system, subject, or human that is being sought by the researcher, veterinarian, medical doctor or other clinician, to prevent the onset of a disease characterized and / or manifested by atrial enlargement and/or remodeling.

The term "pharmaceutically acceptable", as used herein, refers to those compounds, materials, compositions and/or dosage forms, which are, within the scope of sound

30   medical judgment, suitable for contact with the tissues of mammals, especially humans, without excessive toxicity, irritation, allergic response and other problem complications commensurate with a reasonable benefit/risk ratio.

The New York Heart Association (NYHA) classification grades the severity of heart failure symptoms as one of four functional classes. The NYHA classification is widely used in

35   clinical practice and in research because it provides a standard description of severity that

5

PAT056901-PCT

can be used to assess response to treatment and to guide management. The New York Heart Association functional classification based on severity of symptoms and physical activity:

Class I: No limitation of physical activity. Ordinary physical activity does not cause undue breathlessness, fatigue, or palpitations.

Class II: Slight limitation of physical activity. Comfortable at rest, but ordinary physical activity results in undue breathlessness, fatigue, or palpitations.

Class III: Marked limitation of physical activity. Comfortable at rest, but less than ordinary physical activity results in undue breathlessness, fatigue, or palpitations.

Class IV: Unable to carry on any physical activity without discomfort. Symptoms at rest can be present. If any physical activity is undertaken, discomfort is increased.

Choice of endpoints: Cardiovascular death and heart failure hospitalization both reflect disease-specific endpoints related to progressive worsening of the heart failure syndrome, and experienced by patients with systolic heart failure.  These endpoints can be modified by treatments improving this condition, which has generally proved to be the case with drugs such as ACEIs, aldosterone antagonists, and β-blockers as well as devices for cardiac resynchronization therapy.

In the context of the present invention, the term "sacubitril and valsartan in a 1:1 molar ratio" refers to an Angiotensin Receptor Neprilysin inhibitor (ARNi) which is

a)   trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl)propionate-(S)-3'-methyl-2'-(pentanoyl{2''-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate] hemipentahydrate (LCZ696), or

b)   a combination comprising a therapeutically effective amount of a 1:1 molar ratio of

   (i)    valsartan or a pharmaceutically acceptable salt thereof; and

   (ii)   sacubitril or a pharmaceutically acceptable salt thereof.

**Detailed Description of the Invention**

This invention has shown based on the clinical trial TITRATION (see Example section) that the large majority of patients initiated on a treatment with sacubitril and valsartan in a 1:1 molar ration achieved and maintained the target dose of 200 mg twice daily without any dose interruption or down-titration over 12 weeks. More patients who were naïve to previous ACE inhibitor or ARB therapy or on low-dose therapy (equivalent to <10 mg enalapril/day) were able to achieve and maintain the 200 mg target dose when up-titrated over 6 weeks versus 3 weeks.

Accordingly, the present invention relates to the following:

PAT056901-PCT

Methods of treatment

Embodiment 1: The invention encompasses a regimen for treating heart failure which comprises administering to a patient in need thereof a twice-daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio, wherein said target dose is reached after a titration with an initial twice-daily dose of at least 50 mg of sacubitril and valsartan in a 1:1 molar ratio increasing to the twice daily target dose of 200 mg of from about 2 to about 8 weeks.

The invention is further described in the following embodiments, numbered 2 to 20:

2. A regimen for treating heart failure according to embodiment 1, wherein said dose is reached after a titration with a twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by a twice daily dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

3. A regimen for treating heart failure according to embodiment 2, wherein said dose is reached after a titration with a twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 3 weeks, followed by a twice daily dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for about 3 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

4. A regimen for treating heart failure according to embodiment 1, wherein said dose is reached after a titration of a twice daily starting dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

5. A regimen for treating heart failure according to embodiment 4, wherein said dose is reached after a titration of a twice daily starting dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for about 2 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

6. A regimen for treating heart failure according to embodiment 2 or 3, wherein the twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient not taking an angiotensin-converting enzyme (ACE) inhibitor or an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

7. A regimen for treating heart failure according to embodiment 2, wherein the twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient

PAT056901-PCT

taking low doses of an angiotensin-converting enzyme (ACE) inhibitor or of an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

8. A regimen for treating heart failure according to embodiment 7, wherein the lower dose of an ACEI or ARB is equivalent to < 10 mg of enalapril per day.

9. A regimen for treating heart failure according to embodiment 1, wherein said titration mitigates a risk selected from hypotension, hyperkalemia, and renal adverse events.

10. A regimen for treating heart failure according to embodiment 4 or 5, wherein the twice daily starting dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient taking higher doses of an angiotensin-converting enzyme (ACE) inhibitor or of an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

11. A regimen for treating heart failure according to embodiment 10, wherein the higher dose of an ACEI or ARB is equivalent to ≥ 10 mg of enalapril per day.

12. A regimen for treating heart failure according to embodiment 1, wherein the patient suffers from chronic systolic heart failure with reduced ejection fraction.

13. A regimen for treating heart failure according to embodiment 1, wherein the patient is a human patient.

14. A regimen for treating heart failure according to embodiment 1, wherein the patient has at least one of the following characteristics

　　　　i) heart failure of NYHA class II, III or IV,

　　　　ii) an elevated plasma BNP or NT-proBNP level, preferably a plasma BNP ≥100 pg/mL (or NT-proBNP ≥400 pg/mL), more preferably a plasma BNP ≥150 pg/mL or NT-proBNP ≥600 pg/mL, and

　　　　iii) a reduced left ventricular ejection fraction (LVEF) of ≤40%, preferably ≤35%.

15. A regimen for treating heart failure according to embodiment 1, wherein the patient suffers from chronic heart failure classified as NYHA class II, III or IV and has systolic dysfunction, preferably wherein the patient has a reduced left ventricular ejection fraction (LVEF) of ≤35%.

16. A regimen for treating heart failure according to embodiment 1, wherein sacubitril and valsartan in a 1:1 molar ratio are delivered in the form of the compound trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl)propionate-(S)-3'-methyl-2''-(pentanoyl{2''-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate] hemipentahydrate (LCZ696).

PAT056901-PCT

17. A regimen for treating heart failure according to embodiment 1, wherein sacubitril and valsartan in a 1:1 molar ratio are delivered in the form of a pharmaceutical composition comprising

    (i)    valsartan or a pharmaceutically acceptable salt thereof; and

    (ii)    sacubitril or a pharmaceutically acceptable salt thereof,

18. A regimen for treating heart failure according to embodiment 1, wherein the patient receives a base treatment with a stable dose of a beta-blocker, an aldosterone antagonists, and/ or a diuretic.

19. A regimen for treating heart failure according to embodiment 1, wherein the patient has to stop taking the angiotensin receptor blocker (ARB) or the ACE inhibitor at least 36 hours prior to taking the medicament.

20. A regimen for treating heart failure according to embodiment 1, wherein

    a) the 50 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 24 mg sacubitril and 26 mg valsartan,

    b) the 100 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 49 mg sacubitril and 51 mg valsartan, and

    c) the 200 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 97 mg sacubitril and 103 mg valsartan.

In another embodiment of the foregoing, the patient is a human patient.

In another embodiment of the foregoing, the patient suffering from chronic systolic heart failure, in particular the patient with chronic systolic heart failure with reduced ejection fraction, has at least one of the following characteristics:

    i) heart failure of NYHA class II, III or IV,

    ii) an elevated plasma BNP or NT-proBNP level, preferably a plasma BNP $\geq 100$ pg/mL (or NT-proBNP $\geq 400$ pg/mL), more preferably a plasma BNP $\geq 150$ pg/mL or NT-proBNP $\geq 600$ pg/mL, and

    iii) a reduced left ventricular ejection fraction (LVEF) of $\leq 40\%$, preferably $\leq 35\%$.

In addition, the patient might be characterized by one or more of the following:

    iv) prior hospitalization for heart failure within the last 12 months,

    v) a stable ACE inhibitor or ARB at dose $\geq$ enalapril 10 mg daily + beta-blocker (unless contraindicated or intolerant) + aldosterone antagonist (as indicated),

    vi) systolic blood pressure $\geq 95$ mm Hg,

    vii) eGFR $\geq 30$ ml/min/1.73 $m^2$ and

PAT056901-PCT

viii) serum K ≤ 5.4 mEq/L.

In another embodiment of the foregoing,, the patient has heart failure classified as NYHA class II, III or IV and has systolic dysfunction. In another embodiment the patient has heart failure classified as NYHA class II. In a further embodiment, the patient has heart failure classified as NYHA class II with systolic dysfunction and has a reduced left ventricular ejection fraction (LVEF) of ≤35%.

All the aforementioned embodiments for the methods of protection and treatment according to the present invention are equally applicable to

- the use of a compound of formula (I) or of the combination (i)/(ii) as defined herein for the manufacture of a medicament for use according to the present invention,

- the use of a compound of formula (I) or of the combination (i)/(ii) as defined herein according to the present invention,

- a compound of formula (I) or of the combination (i)/(ii) as defined herein for use according to the present invention,

- the pharmaceutical compositions comprising a compound of formula (I) or of the combination (i)/(ii) as defined herein for the use according to the present invention,

- the use of the pharmaceutical compositions comprising a compound of formula (I) or of the combination (i)/(ii) as defined herein according to the present invention and

- the use of the pharmaceutical compositions comprising a compound of formula (I) or of the combination (i)/(ii) as defined herein for the manufacture of a medicament for use according to the present invention.

Some of these aspects are further described in more detail below, but this description should not be construed as limiting.

Compound or combination for use

In a separate aspect, the present invention is directed to the following embodiment 20:

A twice-daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio for use in the treatment of heart failure in a patient, wherein said dose is reached after a titration with an initial twice-daily dose of at least 50 mg of sacubitril and valsartan in a 1:1 molar ratio increasing to the twice daily target dose of 200 mg for from about 2 to about 8 weeks.

PAT056901-PCT

The invention is further described in the following embodiments, numbered 22 to 40:

22. The twice-daily target dose of embodiment 21 for use in the treatment of heart failure in a patient, wherein said dose is reached after a titration with a twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by a twice daily dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

23. The twice-daily target dose of embodiment 22 for use in the treatment of heart failure in a patient, wherein said dose is reached after a titration with a twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 3 weeks, followed by a twice daily dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for about 3 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

24. The twice daily target dose of embodiment 21 for use in the treatment of heart failure in a patient, wherein said dose is reached after a titration of a twice daily starting dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

25. The twice daily target dose of embodiment 24 for use in the treatment of heart failure in a patient, wherein said dose is reached after a titration of a twice daily starting dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for about 2 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

26. The twice daily target dose of embodiment 22 or 23 for use in the treatment of heart failure in a patient, wherein the twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient not taking an angiotensin-converting enzyme (ACE) inhibitor or an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

27. The twice daily target dose of embodiment 22 for use in the treatment of heart failure in a patient, wherein the twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient taking low doses of an angiotensin-converting enzyme (ACE) inhibitor or of an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

28. The twice daily target dose of embodiment 27 for use in the treatment of heart failure in a patient, wherein the lower dose of an ACEI or ARB is equivalent to < 10 mg of enalapril per day.

PAT056901-PCT

29. The twice daily target dose of embodiment 21 for use in the treatment of heart failure in a patient, wherein said titration mitigates a risk selected from hypotension, hyperkalemia, and renal adverse events.

30. The twice daily target dose of embodiment 4 or 5 for use in the treatment of heart failure in a patient, wherein the twice daily starting dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient taking higher doses of an angiotensin-converting enzyme (ACE) inhibitor or of an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

31. The twice daily target dose of embodiment 30 for use in the treatment of heart failure in a patient, wherein the higher dose of an ACEI or ARB is equivalent to ≥ 10 mg of enalapril per day.

32. The twice-daily target dose of any one of the preceding embodiments 21 to 31 for use in the treatment of heart failure in a patient, wherein the patient suffers from chronic systolic heart failure with reduced ejection fraction.

33. The twice-daily target dose of any one of the preceding embodiments 21 to 31 for use in the treatment of heart failure in a patient, wherein the patient is a human patient.

34. The twice-daily target dose of any one of the preceding embodiments 21 to 31 for use in the treatment of heart failure in a patient, wherein the patient has at least one of the following characteristics

    i) heart failure of NYHA class II, III or IV,

    ii) an elevated plasma BNP or NT-proBNP level, preferably a plasma BNP ≥100 pg/mL (or NT-proBNP ≥400 pg/mL), more preferably a plasma BNP ≥150 pg/mL or NT-proBNP ≥600 pg/mL, and

    iii) a reduced left ventricular ejection fraction (LVEF) of ≤40%, preferably ≤35%.

35. The twice-daily target dose of any one of the preceding embodiments 21 to 31 for use in the treatment of heart failure in a patient, wherein the patient suffers from chronic heart failure classified as NYHA class II, III or IV and has systolic dysfunction, preferably wherein the patient has a reduced left ventricular ejection fraction (LVEF) of ≤35%.

36. The twice-daily target dose of any one of the preceding embodiments 21 to 31 for use in the treatment of heart failure in a patient, wherein sacubitril and valsartan in a 1:1 molar ratio are delivered in the form of the compound trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl)propionate-(S)-3'-methyl-2'-(pentanoyl{2''-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate] hemipentahydrate (LCZ696).

PAT056901-PCT

37. The twice-daily target dose of any one of the preceding embodiments 21 to 31 for use in the treatment of heart failure in a patient, wherein sacubitril and valsartan in a 1:1 molar ratio are delivered in the form of a pharmaceutical composition comprising

    (i)    valsartan or a pharmaceutically acceptable salt thereof; and

    (ii)    sacubitril or a pharmaceutically acceptable salt thereof,

38. The twice-daily target dose of any one of the preceding embodiments 21 to 31 for use in the treatment of heart failure in a patient, wherein the patient receives a base treatment with a stable dose of a beta-blocker, an aldosterone antagonists, and/ or a diuretic.

39. The twice-daily target dose of any one of the preceding embodiments 21 to 31 for use in the treatment of heart failure in a patient, wherein the patient has to stop taking the angiotensin receptor blocker (ARB) or the ACE inhibitor at least 36 hours prior to taking the medicament.

40. The twice-daily target dose of any one of the preceding embodiments 21 to 31 for use in the treatment of heart failure in a patient, wherein

    a) the 50 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 24 mg sacubitril and 26 mg valsartan,

    b) the 100 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 49 mg sacubitril and 51 mg valsartan, and

    c) the 200 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 97 mg sacubitril and 103 mg valsartan.

Use for the manufacture of a medicament

In a separate aspect, the present invention is directed to the following embodiment 41:

41. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient, wherein the medicament comprises a twice-daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio which is reached after a titration with an initial twice-daily dose of at least 50 mg of sacubitril and valsartan in a 1:1 molar ratio increasing to the twice daily target dose of 200 mg for from about 2 to about 8 weeks.

The invention is further described in the following embodiments, numbered 42 to 61:

42. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to embodiment 41,

PAT056901-PCT

wherein said target dose is reached after a titration with a twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by a twice daily dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

43. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to embodiment 42, wherein said target dose is reached after a titration with a twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 3 weeks, followed by a twice daily dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for about 3 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

44. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to embodiment 41, wherein said target dose is reached after a titration of a twice daily starting dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

45. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to embodiment 44, wherein said target dose is reached after a titration of a twice daily starting dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for about 2 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

46. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to embodiment 42 or 43, wherein the twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient not taking an angiotensin-converting enzyme (ACE) inhibitor or an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

47. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to embodiment 42 or 43, wherein the twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient taking low doses of an angiotensin-converting enzyme (ACE) inhibitor or of an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

48. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to embodiment 47, wherein the lower dose of an ACEI or ARB is equivalent to < 10 mg of enalapril per day.

49. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to embodiment 41, wherein said titration mitigates a risk selected from hypotension, hyperkalemia, and renal adverse events.

50. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to embodiment 44 or 45, wherein the twice daily starting dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient taking higher doses of an angiotensin-converting enzyme (ACE) inhibitor or of an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

51. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to embodiment 50, wherein the higher dose of an ACEI or ARB is equivalent to ≥ 10 mg of enalapril per day.

52. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to any one of the preceding embodiments 41 to 51, wherein the patient suffers from chronic systolic heart failure with reduced ejection fraction.

53. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to any one of the preceding claims 41 to 51, wherein the patient is a human patient.

54. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to any one of the preceding embodiments 41 to 51, wherein the patient has at least one of the following characteristics

　　i) heart failure of NYHA class II, III or IV,

　　ii) an elevated plasma BNP or NT-proBNP level, preferably a plasma BNP ≥100 pg/mL (or NT-proBNP ≥400 pg/mL), more preferably a plasma BNP ≥150 pg/mL or NT-proBNP ≥600 pg/mL, and

　　iii) a reduced left ventricular ejection fraction (LVEF) of ≤40%, preferably ≤35%.

55. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to any one of the

PAT056901-PCT

preceding embodiments 41 to 51, wherein the patient suffers from chronic heart failure classified as NYHA class II, III or IV and has systolic dysfunction, preferably wherein the patient has a reduced left ventricular ejection fraction (LVEF) of ≤35%.

56. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to any one of the preceding embodiments 41 to 51, wherein sacubitril and valsartan in a 1:1 molar ratio are delivered in the form of the compound trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl)propionate-(S)-3'-methyl-2'-(pentanoyl{2''-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate] hemipentahydrate (LCZ696).

57. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to any one of the preceding embodiments 41 to 51, wherein sacubitril and valsartan in a 1:1 molar ratio are delivered in the form of a pharmaceutical composition comprising

> (i)     valsartan or a pharmaceutically acceptable salt thereof; and

> (ii)    sacubitril or a pharmaceutically acceptable salt thereof,

58. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to any one of the preceding embodiments 41 to 51, wherein the patient receives a base treatment with a stable dose of a beta-blocker, an aldosterone antagonists, and/ or a diuretic.

59. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to any one of the preceding embodiments 41 to 51, wherein the patient receives base treatment with a stable dose of a beta-blocker and optionally an aldosterone antagonist.

60. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to any one of the preceding embodiments 41 to 51, wherein the patient has to stop taking the angiotensin receptor blocker (ARB) or the ACE inhibitor at least 36 hours prior to taking the medicament.

61. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to any one of the preceding embodiments 41 to 51,, wherein

> a) the 50 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 24 mg sacubitril and 26 mg valsartan,

PAT056901-PCT

b) the 100 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 49 mg sacubitril and 51 mg valsartan, and

c) the 200 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 97 *mg sacubitril and 103 mg valsartan.*

5

Compounds and combinations and pharmaceutical compositions for use according to the invention

The "sacubitril and valsartan in a 1:1 molar ratio" of the invention used in the aforementioned methods is provided in the form of

10 a)     the compound trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl)propionate-(S)-3'-methyl-2'-(pentanoyl{2''-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate] hemipentahydrate (LCZ696), or

b)     a pharmaceutical composition comprising a 1:1 molar ratio of

(i)     valsartan or a pharmaceutically acceptable salt thereof; and

15 (ii)    of sacubitril or a pharmaceutically acceptable salt thereof.

Sacubitril is the INN for N-(3-carboxy-1-oxopropyl)-(4S)-(p-phenylphenylmethyl)-4-amino-2R-methylbutanoic acid ethyl ester. This is a prodrug for (2R,4S)-5-biphenyl-4-yl-4-(3-carboxy-propionyl amino)-2-methyl-pentanoic acid.

In a preferred embodiment, the compound trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-
20 ethoxycarbonyl-1-butylcarbamoyl)propionate-(S)-3'-methyl-2'-(pentanoyl{2''-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate] hemipentahydrate is present in crystalline form.

In another embodiment, the combination comprises a 1:1 molar ratio

(i)     of valsartan; and

(ii)    of sacubitril or a pharmaceutically acceptable salt thereof, such as sodium or
25 calcium salt.

In a preferred embodiment, the invention encompasses a pharmaceutical composition for use comprising a therapeutically effective amount of trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl)propionate-(S)-3'-methyl-2'-(pentanoyl{2''-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate] hemipentahydrate (Compound
30 LCZ696).  Such compounds and pharmaceutical compositions have been previously disclosed in WO2007/056546 and WO 2009/061713, whose preparative teachings are incorporated herein by reference.

In a further embodiment of the invention, the pharmaceutical compositions for use according to the present invention comprise trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-

PAT056901-PCT

3-ethoxycarbonyl-1-butylcarbamoyl) propionate-(S)-3'-methyl-2'-(pentanoyl{2"-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate] hemipentahydrate (LCZ696) and deliver upon administration the NEP inhibitor pro-drug sacubitril and the angiotensin receptor blocker valsartan together to the patient.

5    In one embodiment of the invention for all of its uses, the pharmaceutical composition comprises the the NEP inhibitor pro-drug sacubitril, namely N-(3-carboxy-1-oxopropyl)-(4S)-p-phenylphenylmethyl)-4-amino-(2R)-methylbutanoic acid ethyl ester or the NEP inhibitor N-(3-carboxy-1-oxopropyl)-(4S)-p-phenylphenylmethyl)-4-amino-(2R)-methylbutanoic acid, or pharmaceutically acceptable salts thereof, and the Angiotensin

10   Receptor Blocker valsartan or a pharmaceutically acceptable salt thereof. Such combinations are for example disclosed within international patent application WO 2003/059345, which is herewith incorporated by reference.

In one embodiment, the pharmaceutical composition comprises the NEP inhibitor pro-drug sacubitril, namely N-(3-carboxy-1-oxopropyl)-(4S)-p-phenylphenylmethyl)-4-amino-(2R)-

15   methylbutanoic acid ethyl ester or the NEP inhibitor N-(3-carboxy-1-oxopropyl)-(4S)-p-phenylphenylmethyl)-4-amino-(2R)-methylbutanoic acid, or pharmaceutically acceptable salts thereof, and the Angiotensin Receptor Blocker valsartan or a pharmaceutically acceptable salt thereof, in a 1:1 molar ratio.

(i) Valsartan or (S)-N-valeryl-N-{[2'-(1H-tetrazole-5-yl)-biphenyl-4-yl]-methyl}-valine) or a

20   pharmaceutically acceptable salt thereof that can be purchased from commercial sources or can be prepared according to known methods, such as described in U.S. Patent No. 5,399,578 and EP 0443983, whose preparative teachings are incorporated by reference herein. Valsartan may be used in certain embodiments of the invention in its free acid form, as well as in any suitable salt form. Depending upon the circumstance, esters or

25   other derivatives of the carboxylic grouping may be employed as well as salts and derivatives of the tetrazole grouping.

(ii) sacubitril, namely N-(3-carboxy-1-oxopropyl)-(4S)-(p-phenylphenylmethyl)-4-amino-2R-methylbutanoic acid ethyl ester, or (2R,4S)-5-biphenyl-4-yl-4-(3-carboxy-propionyl amino)-2-methyl-pentanoic acid can be prepared by known methods such as described in U.S.

30   Patent No. 5,217,996 which is herein incorporated by reference.

The corresponding active ingredient or a pharmaceutically acceptable salt thereof may also be used in the form of a hydrate or include other solvents used for crystallization.

The pharmaceutical compositions according to the invention can be prepared in a manner known per se and are those suitable for enteral, such as oral or rectal, and parenteral

35   administration to mammals (warm-blooded animals), including man, comprising a

PAT056901-PCT

therapeutically effective amount of the pharmacologically active compound, alone or in combination with one or more pharmaceutically acceptable carriers, especially suitable for enteral or parenteral application.

The pharmaceutical preparations of the invention contain, for example, from about 0.1% to about 100%, e. g. 80% or 90%, or from about 1% to about 60%, of the active ingredient. The term "about" or "approximately", as used herein in each instance, shall have the meaning of within 10%, more preferably within 5%, of a given value or range.

Pharmaceutical preparations according to the invention for enteral or parenteral administration are, e.g., those in unit dose forms, such as sugar-coated tablets, tablets, capsules, bars, sachets, granules, syrups, aqueous or oily suspensions or suppositories and furthermore ampoules. These are prepared in a manner known per se, e. g. by means of conventional mixing, granulating, sugar-coating, dissolving or lyophilizing processes. Thus, pharmaceutical preparations for oral use can be obtained by combining the active ingredient with solid carriers, if desired granulating a mixture obtained, and processing the mixture or granules, if desired or necessary, after addition of suitable excipients to give tablets or sugar-coated tablet cores.

Tablets may be formed from the active compound with fillers, for example calcium phosphate; disintegrating agents, for example maize starch, lubricating agents, for example magnesium stearate; binders, for example microcrystalline cellulose or polyvinylpyrrolidone and other optional ingredients known in the art to permit tabletting the mixture by known methods. Similarly, capsules, for example hard or soft gelatin capsules, containing the active compound with or without added excipients, may be prepared by known methods. The contents of the capsule may be formulated using known methods so as to give sustained release of the active compound.

Other dosage forms for oral administration include, for example, aqueous suspensions containing the active compound in an aqueous medium in the presence of a non-toxic suspending agent such as sodium carboxymethylcellulose, and oily suspensions containing the active compounds in a suitable vegetable oil, for example arachis oil.

The active compound may be formulated into granules with or without additional excipients. The granules may be ingested directly by the patient or they may be added to a suitable liquid carrier (e.g. water) before ingestion. The granules may contain disintegrants, e.g. an effervescent pair formed from an acid and a carbonate or bicarbonate salt to facilitate dispersion in the liquid medium.

The dosage of the active ingredient of the composition will, of course, vary with the nature of the severity of the condition to be treated and with the particular compound in the

PAT056901-PCT

composition and its route of administration. It will also vary according to the age, weight and response of the individual patient.

In the embodiments where the pharmaceutical composition comprises trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl) propionate-(S)-3'-
5    methyl-2'-(pentanoyl{2"-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate] hemipentahydrate (LCZ696) in the pharmaceutical compositions for use in the context of the present invention, the unit dose of the therapeutic agents sacubitril and valsartan together will be in the range from about 1 to about 1000 mg, such as 40 mg to 400 mg (e.g., 50 mg, 100 mg, 200 mg, 400 mg) per day. Alternatively lower doses may be given,
10   for example doses of 0.5 to 100 mg; 0.5 to 50 mg; or 0.5 to 20 mg per day. As explanatory note, a unit dose of 100 mg LCZ696 delivering 100 mg of the two agents sacubitril and valsartan corresponds to 113.1 mg of trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl) propionate-(S)-3'-methyl-2'-(pentanoyl{2"-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate]hemipentahydrate. Correspondingly, a unit dose
15   of 200 mg requires 226.2 mg, and a unit dose of 400 mg requires 452.4 mg of trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl) propionate-(S)-3'-methyl-2'-(pentanoyl{2"-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate]hemipentahydrate.

Dosages of the sum of the individual compounds (i)/(ii) in the combination of the
20   pharmaceutical composition will be in the range from about 1 to about 1000 mg, such as 40 mg to 400 mg and include but are not limited to 5 mg, 20 mg, 25 mg, 40 mg, 50 mg, 80 mg, 100 mg, 200 mg, 400 mg, 800 mg and 1000 mg.  Such dosages for compounds (i)/(ii) can be considered therapeutically effective amounts or dosage strengths.  Ratios for the amount of each compound in the pharmaceutical composition are preferably in the about
25   1:1 molar ratio to achieve an optimal renal protection while still providing cardiovascular benefits. In preferred embodiments, the dosages of the individual compounds (i)/(ii) correspond to the same molecular amounts as in a pharmaceutical composition comprising a 50 mg, 100 mg, 200 mg or 400 mg dose of LCZ696. E.g. a 200 mg dose of LCZ696 corresponds approximately to 103 mg valsartan and 97 mg of sacubitril

30   Pharmaceutical compositions containing a compound of formula(I) (such as compound LCZ696), or compounds (i)/(ii) can be administered any number of times per day, i.e. once a day (q.d.), twice (b.i.d.), three times, four time, etc. in an immediate release formation or less frequently as an extended or sustained release formation.  Preferably the pharmaceutical composition is administered twice daily (b.i.d.). Corresponding doses may
35   be taken, for example, in the morning, at mid-day or in the evening.

PAT056901-PCT

The following example is illustrative, but does not serve to limit the scope of the invention described herein.

**Example**

A multicenter, randomized, double-blind, parallel group study to assess the safety and
5    tolerability of initiating LCZ696 in heart failure patients comparing two titration regimens.

STUDY DRUG LCZ696:

LCZ696 refers to the supramolecular complex trisodium [3-((1S,3R)-1-biphenyl-4-
ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl) propionate-(S)-3'-methyl-2'-(pentanoyl{2"-
10   (tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate]hemipentahydrate. This compound
and pharmaceutical compositions thereof have been previously disclosed in
WO2007/056546 and WO 2009/061713, whose preparative teachings are incorporated
herein by reference.

LCZ696 is a first-in-class angiotensin receptor neprilysin inhibitor that comprises the
15   molecular moieties of the NEP (neutral endopeptidase EC 3.4.24.11) inhibitor pro-drug
sacubitril (INN, also known as AHU377 and N-(3-carboxy-1-oxopropyl)-(4S)-p-
phenylphenylmethyl)-4-amino-(2R)-methylbutanoic acid ethyl ester) and the angiotensin
receptor blocker valsartan as a single compound. Sacubitril is metabolized by enzymatic
cleavage to LBQ657 (N-(3-carboxy-1-oxopropyl)-(4S)-p-phenylphenylmethyl)-4-amino-
20   (2R)-methylbutanoic acid), the active inhibitor of neutral endopeptidase, which is the major
enzyme responsible for the breakdown of atrial natriuretic peptides.

OVERALL STUDY DESIGN

This was a multicenter, randomized, double-blind, parallel group study to assess the
safety and tolerability of initiating LCZ696 in heart failure patients (New York Heart
25   Association [NYHA] class II-IV) with reduced ejection fraction defined by a left ventricular
ejection fraction (LVEF) ≤ 35%. Up-titration regimens of 3-weeks or 6-weeks to the
LCZ696 target dose of 200 mg bid were evaluated. The study consisted of two main
phases: (1) open-label LCZ696 run-in phase lasting approximately one week, and (2)
double-blind randomized phase lasting approximately 11 weeks. Patients enrolled were
30   stratified based on the pre-study level of RAAS inhibition (high/low).

STUDY OBJECTIVES

Primary objectives

PAT056901-PCT

To characterize the safety and tolerability of initiating LCZ696 in HFrEF patients with 3-week and 6-week up-titration regimens over 12 weeks based on reported adverse events and laboratory assessments.

<u>Secondary objectives</u>

5   The secondary objectives were:

- To evaluate the proportion of patients in the two treatment groups who achieved treatment success, defined as those achieving and maintaining LCZ696 200 mg bid without any dose interruption or down-titration over 12 weeks.

- To evaluate the proportion of patients who tolerate a regimen of LCZ696 200 mg bid
10   for at least 2 weeks leading to study completion, regardless of previous dose interruption or down-titration.


<u>STUDY DESIGN</u>

This was a multi-center, randomized, double-blind, parallel-group study conducted to
15   evaluate the safety and tolerability of LCZ696 comparing two up-titration regimens in both outpatients and hospitalized patients (inpatients) with HFrEF.

Patients were stratified based on the level of RAAS inhibition as follows:

- **High RAAS stratum**: Patients receiving > 160 mg of valsartan or > 10 mg total daily dose of enalapril, or equivalent doses of other ARBs/ACEIs, respectively, at screening

20   - **Low RAAS stratum**: Patients receiving ≤ 160 mg of valsartan or ≤ 10 mg total daily dose of enalapril, or equivalent doses of other ARBs/ACEIs, respectively, at screening. This stratum also included patients who were not on an ACEI or an ARB 4 weeks prior to screening (i.e., ACEI/ARB-naïve patients)

At least 25% (but not more than 50%) of the randomized patients were planned to be in the
25   low RAAS inhibition stratum. Patients hospitalized for decompensated HF were allowed to enter either the low or high RAAS inhibition stratum, corresponding to the most recent tolerated ACEI or ARB dose they had received during their hospitalization.


This study consisted of three phases: **see Figure 1.**

30       (1) Screening phase lasting approximately one week;

        (2) Open-label LCZ696 run-in phase lasting approximately one week (Day 1 to 5); and

PAT056901-PCT

(3) Randomized phase lasting approximately 11 weeks

Screening phase

At Visit 1, during the screening phase, all patients who had provided their written informed
5   consent were evaluated for eligibility to enter the study. Left ventricular ejection fraction
(LVEF) measurements required for eligibility were based on locally obtained
echocardiograms, MUGA (multi-gated acquisition) scans, CT (computerized tomography)
scans, MRI (magnetic resonance imaging) scans, or ventricular angiographies performed
within the prior 12 months, provided no subsequent measurements were > 35%. If a LVEF
10  measurement from the prior 12 months was not available, the patient could enter the trial
based on a LVEF ≤ 35% obtained during the screening phase, i.e., before start of study
medication intake. If a patient had an implanted cardiac resynchronization therapy (CRT)
device, the LVEF value used to qualify for the study had to be obtained by at least three
months after device implantation.

15  Both inpatients and outpatients were eligible for participation in this study. Patients who met
all the eligibility criteria at screening were eligible to enter the open-label LCZ696 run-in
phase and proceed to Visit 2 to start receiving the study medication. Patients who had been
using ACEIs had to stop these medications under the supervision of the study investigator,
and enter a 36-hour ACEI-free washout period before they attended their Visit 2.

20  Open-label LCZ696 run-in phase

Patients who met all the entry criteria and completed the ACEI-free washout period (if
required) attended Visit 2 within approximately one week after Visit 1. At Visit 2, patients
began taking open-label LCZ696 50 mg bid. Eligible hospitalized patients also took the
study medication while they were still in the hospital and before they were discharged.
25  Patients took the study medication in addition to their background HF therapy, except for
ACEIs and ARBs, which were replaced by the study medication.

Patients were asked to return after 5 ± 2 days to attend Visit 3/777 (Randomization visit).

Randomized phase

At Visit 3/777, safety and tolerability of LCZ696 50 mg bid was assessed (see table below).
30  Patients, who could not tolerate LCZ696 50 mg bid per the criteria listed in the Table, were
to be discontinued from the study and considered as run-in failures.

PAT056901-PCT

*Table: Safety criteria that must be met at Visits 3 to 6 in order to avoid treatment failure*

| Parameter | Requirement |
|---|---|
| Potassium level | ≤ 5.4 mmol/L |
| Kidney function | eGFR ≥ 30 mL/min/1.73m$^2$ |
| | eGFR reduction ≤ 35% compared to Screening value |
| Blood pressure | No symptomatic hypotension and SBP ≥ 95 mmHg |
| Adverse events (AEs) or conditions | No postural symptoms or any AEs that preclude continuation according to the investigator's judgment |

Patients who successfully completed the open-label run-in and tolerated LCZ696 50 mg bid were to be randomized to receive double-blind LCZ696 at one of the two different titration

5    schemes in a 1:1 ratio: they could be up-titrated to 200 mg bid over the following two weeks (Condensed titration) or they could be up-titrated to 200 mg bid over the following five weeks (Conservative titration).

At Visit 3/777, patients randomized to the condensed up-titration arm were up-titrated to LCZ696 100 mg bid, while patients randomized to the conservative up-titration arm

10    continued to receive LCZ696 50 mg bid.

Two weeks after Visit 3/777, at Visit 4, the patients who were judged by the investigator to be tolerant of the study medication per the safety criteria in the Table were up-titrated to the next dose level; those in the condensed up-titration arm received LCZ696 200 mg bid and those in the conservative up-titration arm received LCZ696 100 mg bid.

15    Patients returned three weeks later to attend Visit 5. Patients who were judged by the investigator to be tolerant of the study medication per the safety criteria in the Table further continued on the titration plan as outlined in above; patients in the condensed up-titration arm continued to receive LCZ696 200 mg bid, while patients in the conservative up-titration arm were up-titrated to LCZ696 200 mg bid.

20    Patients returned three weeks later to attend Visit 6. Patients who were judged by the investigator to be tolerant of the study medication per the safety criteria in the Table continued to receive LCZ696 200 mg bid and were asked to return three weeks later to attend Visit 778/End of Study (EoS) to undergo the final safety evaluations.

PAT056901-PCT

Patients who were deemed by the investigator to require dose reduction or interruption in study medication dosing at any post-randomization visit (despite modification of concomitant medications) were considered as treatment failures. They were switched to open-label LCZ696 at a dose level at the discretion of the investigator. Treatment failure patients were expected to attend the remaining study visits according to schedule and their doses were modified based on the investigator's judgment with the overall goal of achieving and maintaining the target dose (LCZ696 200 mg bid) for at least two uninterrupted weeks and until Visit 778/EoS.

Throughout the randomized phase, patients took the study medication in addition to their background HF therapy, except for ACEIs and ARBs, which were replaced by the study medication itself. Every attempt was made to maintain patients on the assigned study medication throughout the trial.

At each visit, the patients' medication compliance as well as safety and tolerability of the study medication was assessed, including, but not limited to, signs and symptoms of hypotension, elevated potassium level, and decreased renal function. If, however, in the opinion of the investigator, the patient could not tolerate the assigned study medication, the investigator could consider if the non-disease-modifying medications (e.g., CCBs, diuretics, nitrates, α-blockers) could be reduced to manage tolerability before declaring the patient to be a treatment failure and subsequently switching him/her to open-label study medication. The investigator was also allowed to adjust doses of other disease-modifying medications if they were believed to be the most likely cause of the adverse effects.


PATIENTS

Written informed consent was obtained before any assessment was performed.

Patients eligible for inclusion in this study must have fulfilled all of the following criteria listed below:

1. Males and/or females of at least 18 years of age, who were either inpatients or outpatients

2. Diagnosis of chronic heart failure (CHF) NYHA class II-IV.

3. Left ventricular ejection fraction (LVEF) ≤ 35% at screening (any local measurement made within the past 12 months using echocardiography, MUGA, CT scanning, MRI, or ventricular angiography was acceptable, provided no subsequent measurement was > 35%).

4. Meeting one of the following criteria:

PAT056901-PCT

- ACEI/ARB naïve patients, i.e., not on an ACEI or ARB for at least 4 weeks before screening.

- For outpatients who were being treated with ACEI or ARB, dose had to be stable dose for at least 2 weeks before screening.

- For hospitalized patients (inpatients), being on no ACEI/ARB or on a tolerated dose of an ACEI or an ARB at screening.

5. Patients treated with a β-blocker, unless contraindicated or not tolerated (reason had to be documented in absence of that medication).

6. An aldosterone antagonist was also to be considered in all patients, taking account of renal function, serum potassium and tolerability. If given, the dose of aldosterone antagonist was to be optimized according to guideline recommendations and patient tolerability. Other evidence-based therapy for HF was also to be considered, e.g., cardiac resynchronization therapy and an implantable cardioverter-defibrillator in selected patients, as recommended by guidelines.

Treatment arms

Patients were assigned to one of the following two treatment arms in a ratio of 1:1 as described below:

- Condensed up-titration: up-titration of LCZ696 from 50 mg bid to 200 mg bid over three weeks (including the run-in phase).

- Conservative up-titration: up-titration of LCZ696 from 50 mg bid to 200 mg bid over six weeks (including the run-in phase).

Reference

The study design and procedures can be found under www.clinicaltrials.gov, study number NCT01922089, which is herewith incorporated by reference.

## RESULTS

SUMMARY:

Among the randomized patients and excluding those who discontinued due to non-AE related reasons, 81% achieved the target LCZ696 200 mg bid dose without any down-titration or dose interruption over the entire 12-week study period, and 85% were on the LCZ696 200 mg bid target dose for at least 2 weeks before study completion. The most

PAT056901-PCT

common reasons for dose adjustment/interruption or permanent discontinuation were AEs related to hypotension, renal dysfunction or hyperkalemia.

During the randomized period, a higher proportion of low RAAS stratum patients achieved the LCZ696 200 mg bid target dose and had no dose adjustment/interruption over 12

5   weeks if they were up-titrated more gradually. Eight-five percent (85%) of patients who were ACEI/ARB naïve or receiving prior low levels of RAAS therapy and up-titrated over 6 weeks achieved the target dose of LCZ696 200 mg bid and had no dose adjustment/interruption over 12 weeks compared with 74% of patients up-titrated over 3 weeks. This difference was due to fewer AEs related to hypotension, renal dysfunction or

10   hyperkalemia. Eighty-three percent (83%) of patients receiving prior high levels of RAAS therapy achieved the LCZ696 200 mg bid target dose without any dose adjustment/interruption over 12 weeks, with no difference due to the rate of up-titration (3 vs. 6 weeks). There was no major difference between the uptitration regimens in the treatment success rate among the ACEI/ARB-naïve patients.

15

CONCLUSION

Across both run-in and randomized periods, the proportion of patients who achieved the target dose of LCZ696 200 mg bid without any dose adjustment or interruption over 12 weeks was 76% if discontinuations due to non-AE reasons are excluded and 70% based

20   on the total number of patients receiving at least one dose of study medication.

In the low dose stratum, the rate of treatment success was higher when LCZ696 was uptitrated more gradually.

PAT056901-PCT

Title of the Invention

## NEW PHARMACEUTICAL USE

Related Applications

This application is a national stage application, filed under 35 U.S.C. §371, of International
Application No. PCT/IB2016/052633, filed May 9, 2016, which claims priority to and the
benefit of U.S. Provisional Application No. 62/159,703, filed May 11, 2015, the entire
contents of each of which are incorporated herein by reference in their entireties.

Field of the Invention

The present invention relates to novel methods and pharmaceutical compositions for the
treatment of heart failure in a patient, in particular to a regimen for treating heart failure
which comprises administering to a patient in need thereof a twice-daily target dose of an
Angiotensin Receptor Neprilysin inhibitor (ARNi) or of a combination of an Angiotensin
Receptor Blocker (ARB) with a Neutral Endopeptidase inhibitor (NEPi) or with a NEPi pro-
drug, wherein said target dose is reached after a titration with an initial lower twice-daily
dose of said ARNI increasing to the twice daily target dose from about 2 to about 8 weeks.

**Background of the Invention**

Chronic heart failure (CHF) is a major public health problem characterized by significant
mortality, frequent hospitalization, and poor quality of life, with an overall prevalence that
is increasing throughout the world. In the United States (US) alone, approximately 5
million patients have heart failure (HF) and there are over half a million newly diagnosed
cases annually. In Europe, the prevalence of HF is between 2 and 3%, and that in the
elderly is estimated between 10 to 20%.

Medical therapies targeted at improving outcomes in HF with a low LVEF have been well
studied over the past two decades, leading to an improvement in survival as well as a
decrease in morbidity, mostly in the form of decrease in re-hospitalization for HF. These
medical therapies include angiotensin converting enzyme (ACE) inhibitors, angiotensin
receptor blockers (ARBs), β-blockers and mineralocorticoid antagonists.

However, despite advances in pharmacological (and device therapies), the outlook
remains poor. Overall 50% of patients die within 4 years, and 40% of patients admitted to
hospital with HF die or are readmitted within 1 year. Thus, HF still represents a major
cause of cardiac mortality and morbidity with a clear need for better therapy.

LCZ696 is a first-in-class, angiotensin receptor neprilysin inhibitor (ARNI) being developed
for the treatment of CHF. Following ingestion, LCZ696 provides systemic exposure to
sacubitril (AHU377; (2R,4S)-5-biphenyl-4-yl-4-(3-carboxy-propionylamino)-2-methyl-

1

PAT056901-PCT

pentanoic acid ethyl ester, also named N-(3-carboxy-1-oxopropyl)-(4S)-(p-phenylphenylmethyl)-4-amino-2R-methylbutanoic acid ethyl ester), a neprilysin (neutral endopeptidase 24.11, NEP) inhibitor (NEPi) and valsartan, an ARB, in a 1:1 molar ratio. AHU377 is further metabolized via esterases to the active NEPi, LBQ657. Neprilysin

5    degrades biologically active natriuretic peptides (NPs), including atrial natriuretic peptide (ANP), B-type natriuretic peptide (BNP) and C-type natriuretic peptide (CNP). The effects of NEP inhibition are attributed to the enhanced effects of biologically active NPs. NPs, acting through the second messenger cyclic guanosine monophosphate, have potent natriuretic and vasodilator properties, inhibit the activity of the renin-angiotensin-

10   aldosterone system (RAAS), lower sympathetic drive and have anti-fibrotic and anti-hypertrophic effects. Angiotensin receptor blockade is specific and competitive at the angiotensin type 1 (AT1) receptor, which mediates the deleterious effects of angiotensin II on the cardiovascular system. LCZ696, through its dual mode of action, potentiates NPs via NEP inhibition while inhibiting the RAS via AT1 receptor blockade. Both of these

15   mechanisms are considered to act in a complementary and additive manner to improve the morbidity and mortality of HF patients.

The clinical efficacy of LCZ696 in reducing the cardiovascular death and hospitalizations due to HF in HF-rEF patients was assessed in the LCZ696B2314 PARADIGM-HF study. The PARADIGM-HF study incorporated a single-blind, active run-in phase that was

20   designed to assure a large proportion of patients will maintain target dose study drug during the long term study. Patients entered a single-blind active run-in in which they received enalapril 10 mg bid, followed by LCZ696 100 mg bid, and then LCZ696 200 mg bid. Patients must tolerate the study target dose of enalapril (10 mg bid) and the study target dose of LCZ696 (200 mg bid) for at least 2 weeks in order to be randomized.

25   However, the active run-in phase included in the PARADIGM-HF study design (the sequential use of enalapril followed by LCZ696) provided limited information on how the physician should initiate the LCZ696 therapy in clinical practice, in particular for those patients who are currently on the low dose of ACEIs or ARBs, or ACEI/ARB-naïve patients.

30   Accordingly there was a need to provide guidance on dosing and up-titration of LCZ696 (sacubitril and valsartan in a 1:1 molar ratio).

The compounds and pharmaceutical compositions disclosed herein include novel drug candidates potentially useful for the treatment of hypertension and/or heart failure. Such compounds or pharmaceutical compositions have been previously disclosed in

35   WO 2003/059345, WO 2007/056546, WO 2009/061713 as well as WO2014029848, which are herein incorporated by reference.

PAT056901-PCT

**Summary of the invention**

Surprisingly, it has been shown with a regimen for treating heart failure which comprises administering to a patient in need thereof a twice-daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio (e.g. LCZ696), wherein said target dose is reached after 5 a titration with an initial twice-daily dose of at least 50 mg of sacubitril and valsartan in a 1:1 molar ratio increasing to the twice daily target dose of 200 mg of from about 2 to about 8 weeks, the target dose can be safely reached in the large majority of the patients.

The treatment success rate with sacubitril and valsartan in a 1:1 molar ratio (e.g. LCZ696) was even more improved if patients taking lower doses of ACEIs/ARBs (i.e., the low 10 RAAS stratum) were up-titrated more gradually than patients who were taking higher doses of ACEIs/ARBs. The treatment success rate was 10% higher (85%) for patients in the low RAAS stratum given gradual up-titration over 6 weeks compared to those given condensed up-titration over 3 weeks. This difference was due to hypotension, hyperkalemia and renal dysfunction in most cases. On the other hand, surprisingly, there 15 was no difference in the treatment success rate for high RAAS stratum patients, regardless of the rate of up-titration (3 weeks vs. 6 weeks).

Accordingly, the present invention, in a first embodiment relates to a regimen for treating heart failure which comprises administering to a patient in need thereof a twice-daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio, wherein said target 20 dose is reached after a titration with an initial twice-daily dose of at least 50 mg of sacubitril and valsartan in a 1:1 molar ratio increasing to the twice daily target dose of 200 mg of from about 2 to about 8 weeks.

In one embodiment thereof, the patient is a human patient.

In another embodiment thereof, the compound of formula (I) is trisodium [3-((1S,3R)-1-25 biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl)propionate-(S)-3'-methyl-2'-(pentanoyl{2''-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate] hemipentahydrate (LCZ696).

In another embodiment, the present invention relates to a regimen for treating heart failure which comprises administering to a patient in need thereof a twice-daily target dose of 200 30 mg of sacubitril and valsartan in a 1:1 molar ratio, wherein said dose is reached after a titration with a twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by a twice daily dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar 35 ratio thereafter, and wherein the twice daily starting dose of 50 mg of sacubitril and

3

PAT056901-PCT

valsartan in a 1:1 molar ratio is for use in a patient not taking an angiotensin-converting enzyme (ACE) inhibitor or an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

In another embodiment, the present invention relates to a regimen for treating heart failure which comprises administering to a patient in need thereof a twice-daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio, wherein said dose is reached after a titration with a twice daily starting dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter and wherein the twice daily starting dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient taking higher doses of an angiotensin-converting enzyme (ACE) inhibitor or of an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

In another embodiment, the present invention relates to a twice-daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio for use in the treatment of heart failure in a patient, wherein said dose is reached after a titration with an initial twice-daily dose of at least 50 mg of sacubitril and valsartan in a 1:1 molar ratio increasing to the twice daily target dose of 200 mg for from about 2 to about 8 weeks.

In another embodiment, the present invention is directed to the use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient, wherein the medicament comprises a twice-daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio which is reached after a titration with an initial twice-daily dose of at least 50 mg of sacubitril and valsartan in a 1:1 molar ratio increasing to the twice daily target dose of 200 mg for from about 2 to about 8 weeks.

Brief Description of the Drawings

Figure 1 shows the study design for the multi-center, randomized, double-blind, parallel-group study conducted to evaluate the safety and tolerability of LCZ696 comparing two up-titration regimens in both outpatients and hospitalized patients (inpatients) with HFrEF.

**Definitions**

Throughout this specification and in the claims that follow, the following terms are defined with the following meanings, unless explicitly stated otherwise.

The term "prevention" refers to prophylactic administration to a healthy subject to prevent the development of the conditions mentioned herein.  Moreover, the term "prevention"

4

PAT056901-PCT

means prophylactic administration to patients being in a pre-stage of the conditions to be treated.

The term "treatment" is understood the management and care of a patient for the purpose of combating the disease, condition or disorder.

5   The term "therapeutically effective amount" refers to an amount of a drug or a therapeutic agent that will elicit the desired biological and/or medical response of a tissue, system or an animal (including man) that is being sought by a researcher or clinician.

The terms "patient" include, but are not limited to, humans, dogs, cats, horses, pigs, cows, monkeys, rabbits and mice. The preferred patients are humans.

10   The terms "administration of" and or "administering a" compound should be understood to mean providing a compound of the invention or a pharmaceutically acceptable salt or ester thereof, or a pro-drug thereof to a subject in need of treatment. The administration of the composition of the present invention in order to practice the present methods of therapy is carried out by administering a therapeutically effective amount of the
15   compounds in the composition to a subject in need of such treatment or prophylaxis. The need for a prophylactic administration according to the methods of the present invention is determined via the use of well-known risk factors. The effective amount of an individual compound is determined, in the final analysis, by the physician in charge of the case, but depends on factors such as the exact disease to be treated, the severity of the disease
20   and other diseases or conditions from which the patient suffers, the chosen route of administration, other drugs and treatments which the patient may concomitantly require, and other factors in the physician's judgment.

The term "prophylactically effective amount" as used herein means the amount of the active compounds in the composition that will elicit the biological or medical response in a
25   tissue, system, subject, or human that is being sought by the researcher, veterinarian, medical doctor or other clinician, to prevent the onset of a disease characterized and / or manifested by atrial enlargement and/or remodeling.

The term "pharmaceutically acceptable", as used herein, refers to those compounds, materials, compositions and/or dosage forms, which are, within the scope of sound
30   medical judgment, suitable for contact with the tissues of mammals, especially humans, without excessive toxicity, irritation, allergic response and other problem complications commensurate with a reasonable benefit/risk ratio.

The New York Heart Association (NYHA) classification grades the severity of heart failure symptoms as one of four functional classes. The NYHA classification is widely used in
35   clinical practice and in research because it provides a standard description of severity that

PAT056901-PCT

can be used to assess response to treatment and to guide management. The New York Heart Association functional classification based on severity of symptoms and physical activity:

Class I: No limitation of physical activity. Ordinary physical activity does not cause undue
5    breathlessness, fatigue, or palpitations.

Class II: Slight limitation of physical activity. Comfortable at rest, but ordinary physical activity results in undue breathlessness, fatigue, or palpitations.

Class III: Marked limitation of physical activity. Comfortable at rest, but less than ordinary physical activity results in undue breathlessness, fatigue, or palpitations.

10   Class IV: Unable to carry on any physical activity without discomfort. Symptoms at rest can be present. If any physical activity is undertaken, discomfort is increased.

Choice of endpoints: Cardiovascular death and heart failure hospitalization both reflect disease-specific endpoints related to progressive worsening of the heart failure syndrome, and experienced by patients with systolic heart failure.  These endpoints can be modified
15   by treatments improving this condition, which has generally proved to be the case with drugs such as ACEIs, aldosterone antagonists, and β-blockers as well as devices for cardiac resynchronization therapy.

In the context of the present invention, the term "sacubitril and valsartan in a 1:1 molar ratio" refers to an Angiotensin Receptor Neprilysin inhibitor (ARNi) which is

20   a)    trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-
        butylcarbamoyl)propionate-(S)-3'-methyl-2'-(pentanoyl{2''-(tetrazol-5-ylate)biphenyl-
        4'-ylmethyl}amino)butyrate] hemipentahydrate (LCZ696), or
      b)    a combination comprising a therapeutically effective amount of a 1:1 molar ratio of
            (i)      valsartan or a pharmaceutically acceptable salt thereof; and
25            (ii)     sacubitril or a pharmaceutically acceptable salt thereof.

**Detailed Description of the Invention**

This invention has shown based on the clinical trial TITRATION (see Example section) that the large majority of patients initiated on a treatment with sacubitril and valsartan in a 1:1 molar ration achieved and maintained the target dose of 200 mg twice daily without
30   any dose interruption or down-titration over 12 weeks. More patients who were naïve to previous ACE inhibitor or ARB therapy or on low-dose therapy (equivalent to <10 mg enalapril/day) were able to achieve and maintain the 200 mg target dose when up-titrated over 6 weeks versus 3 weeks.

Accordingly, the present invention relates to the following:

PAT056901-PCT

Methods of treatment

Embodiment 1: The invention encompasses a regimen for treating heart failure which comprises administering to a patient in need thereof a twice-daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio, wherein said target dose is reached after a titration with an initial twice-daily dose of at least 50 mg of sacubitril and valsartan in a 1:1 molar ratio increasing to the twice daily target dose of 200 mg of from about 2 to about 8 weeks.

The invention is further described in the following embodiments, numbered 2 to 20:

2. A regimen for treating heart failure according to embodiment 1, wherein said dose is reached after a titration with a twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by a twice daily dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

3. A regimen for treating heart failure according to embodiment 2, wherein said dose is reached after a titration with a twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 3 weeks, followed by a twice daily dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for about 3 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

4. A regimen for treating heart failure according to embodiment 1, wherein said dose is reached after a titration of a twice daily starting dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

5. A regimen for treating heart failure according to embodiment 4, wherein said dose is reached after a titration of a twice daily starting dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for about 2 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

6. A regimen for treating heart failure according to embodiment 2 or 3, wherein the twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient not taking an angiotensin-converting enzyme (ACE) inhibitor or an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

7. A regimen for treating heart failure according to embodiment 2, wherein the twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient

PAT056901-PCT

taking low doses of an angiotensin-converting enzyme (ACE) inhibitor or of an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

8. A regimen for treating heart failure according to embodiment 7, wherein the lower dose of an ACEI or ARB is equivalent to < 10 mg of enalapril per day.

9. A regimen for treating heart failure according to embodiment 1, wherein said titration mitigates a risk selected from hypotension, hyperkalemia, and renal adverse events.

10. A regimen for treating heart failure according to embodiment 4 or 5, wherein the twice daily starting dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient taking higher doses of an angiotensin-converting enzyme (ACE) inhibitor or of an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

11. A regimen for treating heart failure according to embodiment 10, wherein the higher dose of an ACEI or ARB is equivalent to ≥ 10 mg of enalapril per day.

12. A regimen for treating heart failure according to embodiment 1, wherein the patient suffers from chronic systolic heart failure with reduced ejection fraction.

13. A regimen for treating heart failure according to embodiment 1, wherein the patient is a human patient.

14. A regimen for treating heart failure according to embodiment 1, wherein the patient has at least one of the following characteristics

    i) heart failure of NYHA class II, III or IV,

    ii) an elevated plasma BNP or NT-proBNP level, preferably a plasma BNP ≥100 pg/mL (or NT-proBNP ≥400 pg/mL), more preferably a plasma BNP ≥150 pg/mL or NT-proBNP ≥600 pg/mL, and

    iii) a reduced left ventricular ejection fraction (LVEF) of ≤40%, preferably ≤35%.

15. A regimen for treating heart failure according to embodiment 1, wherein the patient suffers from chronic heart failure classified as NYHA class II, III or IV and has systolic dysfunction, preferably wherein the patient has a reduced left ventricular ejection fraction (LVEF) of ≤35%.

16. A regimen for treating heart failure according to embodiment 1, wherein sacubitril and valsartan in a 1:1 molar ratio are delivered in the form of the compound trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl)propionate-(S)-3'-methyl-2'-(pentanoyl{2''-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate] hemipentahydrate (LCZ696).

PAT056901-PCT

17. A regimen for treating heart failure according to embodiment 1, wherein sacubitril and valsartan in a 1:1 molar ratio are delivered in the form of a pharmaceutical composition comprising

    (i)     valsartan or a pharmaceutically acceptable salt thereof; and

    (ii)    sacubitril or a pharmaceutically acceptable salt thereof,

18. A regimen for treating heart failure according to embodiment 1, wherein the patient receives a base treatment with a stable dose of a beta-blocker, an aldosterone antagonists, and/ or a diuretic.

19. A regimen for treating heart failure according to embodiment 1, wherein the patient has to stop taking the angiotensin receptor blocker (ARB) or the ACE inhibitor at least 36 hours prior to taking the medicament.

20. A regimen for treating heart failure according to embodiment 1, wherein

    a) the 50 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 24 mg sacubitril and 26 mg valsartan,

    b) the 100 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 49 mg sacubitril and 51 mg valsartan, and

    c) the 200 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 97 mg sacubitril and 103 mg valsartan.

In another embodiment of the foregoing, the patient is a human patient.

In another embodiment of the foregoing, the patient suffering from chronic systolic heart failure, in particular the patient with chronic systolic heart failure with reduced ejection fraction, has at least one of the following characteristics:

    i) heart failure of NYHA class II, III or IV,

    ii) an elevated plasma BNP or NT-proBNP level, preferably a plasma BNP $\geq$100 pg/mL (or NT-proBNP $\geq$400 pg/mL), more preferably a plasma BNP $\geq$150 pg/mL or NT-proBNP $\geq$600 pg/mL, and

    iii) a reduced left ventricular ejection fraction (LVEF) of $\leq$40%, preferably $\leq$35%.

In addition, the patient might be characterized by one or more of the following:

    iv) prior hospitalization for heart failure within the last 12 months,

    v) a stable ACE inhibitor or ARB at dose $\geq$ enalapril 10 mg daily + beta-blocker (unless contraindicated or intolerant) + aldosterone antagonist (as indicated),

    vi) systolic blood pressure $\geq$ 95 mm Hg,

    vii) eGFR $\geq$ 30 ml/min/1.73 m$^2$ and

PAT056901-PCT

viii) serum K ≤ 5.4 mEq/L.

In another embodiment of the foregoing,, the patient has heart failure classified as NYHA class II, III or IV and has systolic dysfunction. In another embodiment the patient has heart failure classified as NYHA class II. In a further embodiment, the patient has heart failure classified as NYHA class II with systolic dysfunction and has a reduced left ventricular ejection fraction (LVEF) of ≤35%.

All the aforementioned embodiments for the methods of protection and treatment according to the present invention are equally applicable to

- the use of a compound of formula (I) or of the combination (i)/(ii) as defined herein for the manufacture of a medicament for use according to the present invention,

- the use of a compound of formula (I) or of the combination (i)/(ii) as defined herein according to the present invention,

- a compound of formula (I) or of the combination (i)/(ii) as defined herein for use according to the present invention,

- the pharmaceutical compositions comprising a compound of formula (I) or of the combination (i)/(ii) as defined herein for the use according to the present invention,

- the use of the pharmaceutical compositions comprising a compound of formula (I) or of the combination (i)/(ii) as defined herein according to the present invention and

- the use of the pharmaceutical compositions comprising a compound of formula (I) or of the combination (i)/(ii) as defined herein for the manufacture of a medicament for use according to the present invention.

Some of these aspects are further described in more detail below, but this description should not be construed as limiting.

Compound or combination for use

In a separate aspect, the present invention is directed to the following embodiment 20:

A twice-daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio for use in the treatment of heart failure in a patient, wherein said dose is reached after a titration with an initial twice-daily dose of at least 50 mg of sacubitril and valsartan in a 1:1 molar ratio increasing to the twice daily target dose of 200 mg for from about 2 to about 8 weeks.

PAT056901-PCT

The invention is further described in the following embodiments, numbered 22 to 40:

22. The twice-daily target dose of embodiment 21 for use in the treatment of heart failure in a patient, wherein said dose is reached after a titration with a twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by a twice daily dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

23. The twice-daily target dose of embodiment 22 for use in the treatment of heart failure in a patient, wherein said dose is reached after a titration with a twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 3 weeks, followed by a twice daily dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for about 3 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

24. The twice daily target dose of embodiment 21 for use in the treatment of heart failure in a patient, wherein said dose is reached after a titration of a twice daily starting dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

25. The twice daily target dose of embodiment 24 for use in the treatment of heart failure in a patient, wherein said dose is reached after a titration of a twice daily starting dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for about 2 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

26. The twice daily target dose of embodiment 22 or 23 for use in the treatment of heart failure in a patient, wherein the twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient not taking an angiotensin-converting enzyme (ACE) inhibitor or an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

27. The twice daily target dose of embodiment 22 for use in the treatment of heart failure in a patient, wherein the twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient taking low doses of an angiotensin-converting enzyme (ACE) inhibitor or of an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

28. The twice daily target dose of embodiment 27 for use in the treatment of heart failure in a patient, wherein the lower dose of an ACEI or ARB is equivalent to < 10 mg of enalapril per day.

PAT056901-PCT

29. The twice daily target dose of embodiment 21 for use in the treatment of heart failure in a patient, wherein said titration mitigates a risk selected from hypotension, hyperkalemia, and renal adverse events.

30. The twice daily target dose of embodiment 4 or 5 for use in the treatment of heart failure in a patient, wherein the twice daily starting dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient taking higher doses of an angiotensin-converting enzyme (ACE) inhibitor or of an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

31. The twice daily target dose of embodiment 30 for use in the treatment of heart failure in a patient, wherein the higher dose of an ACEI or ARB is equivalent to ≥ 10 mg of enalapril per day.

32. The twice-daily target dose of any one of the preceding embodiments 21 to 31 for use in the treatment of heart failure in a patient, wherein the patient suffers from chronic systolic heart failure with reduced ejection fraction.

33. The twice-daily target dose of any one of the preceding embodiments 21 to 31 for use in the treatment of heart failure in a patient, wherein the patient is a human patient.

34. The twice-daily target dose of any one of the preceding embodiments 21 to 31 for use in the treatment of heart failure in a patient, wherein the patient has at least one of the following characteristics

     i) heart failure of NYHA class II, III or IV,

     ii) an elevated plasma BNP or NT-proBNP level, preferably a plasma BNP ≥100 pg/mL (or NT-proBNP ≥400 pg/mL), more preferably a plasma BNP ≥150 pg/mL or NT-proBNP ≥600 pg/mL, and

     iii) a reduced left ventricular ejection fraction (LVEF) of ≤40%, preferably ≤35%.

35. The twice-daily target dose of any one of the preceding embodiments 21 to 31 for use in the treatment of heart failure in a patient, wherein the patient suffers from chronic heart failure classified as NYHA class II, III or IV and has systolic dysfunction, preferably wherein the patient has a reduced left ventricular ejection fraction (LVEF) of ≤35%.

36. The twice-daily target dose of any one of the preceding embodiments 21 to 31 for use in the treatment of heart failure in a patient, wherein sacubitril and valsartan in a 1:1 molar ratio are delivered in the form of the compound trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl)propionate-(S)-3'-methyl-2'-(pentanoyl{2''-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate] hemipentahydrate (LCZ696).

PAT056901-PCT

37. The twice-daily target dose of any one of the preceding embodiments 21 to 31 for use in the treatment of heart failure in a patient, wherein sacubitril and valsartan in a 1:1 molar ratio are delivered in the form of a pharmaceutical composition comprising

    (i)    valsartan or a pharmaceutically acceptable salt thereof; and

    (ii)    sacubitril or a pharmaceutically acceptable salt thereof,

38. The twice-daily target dose of any one of the preceding embodiments 21 to 31 for use in the treatment of heart failure in a patient, wherein the patient receives a base treatment with a stable dose of a beta-blocker, an aldosterone antagonists, and/ or a diuretic.

39. The twice-daily target dose of any one of the preceding embodiments 21 to 31 for use in the treatment of heart failure in a patient, wherein the patient has to stop taking the angiotensin receptor blocker (ARB) or the ACE inhibitor at least 36 hours prior to taking the medicament.

40. The twice-daily target dose of any one of the preceding embodiments 21 to 31 for use in the treatment of heart failure in a patient, wherein

    a) the 50 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 24 mg sacubitril and 26 mg valsartan,

    b) the 100 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 49 mg sacubitril and 51 mg valsartan, and

    c) the 200 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 97 mg sacubitril and 103 mg valsartan.

Use for the manufacture of a medicament

In a separate aspect, the present invention is directed to the following embodiment 41:

41. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient, wherein the medicament comprises a twice-daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio which is reached after a titration with an initial twice-daily dose of at least 50 mg of sacubitril and valsartan in a 1:1 molar ratio increasing to the twice daily target dose of 200 mg for from about 2 to about 8 weeks.

The invention is further described in the following embodiments, numbered 42 to 61:

42. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to embodiment 41,

wherein said target dose is reached after a titration with a twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by a twice daily dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

43. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to embodiment 42, wherein said target dose is reached after a titration with a twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 3 weeks, followed by a twice daily dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for about 3 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

44. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to embodiment 41, wherein said target dose is reached after a titration of a twice daily starting dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for from about 2 weeks to about 4 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

45. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to embodiment 44, wherein said target dose is reached after a titration of a twice daily starting dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio for about 2 weeks, followed by the twice daily target dose of 200 mg of sacubitril and valsartan in a 1:1 molar ratio thereafter.

46. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to embodiment 42 or 43, wherein the twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient not taking an angiotensin-converting enzyme (ACE) inhibitor or an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

47. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to embodiment 42 or 43, wherein the twice daily starting dose of 50 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient taking low doses of an angiotensin-converting enzyme (ACE) inhibitor or of an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

14

PAT056901-PCT

48. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to embodiment 47, wherein the lower dose of an ACEI or ARB is equivalent to < 10 mg of enalapril per day.

49. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to embodiment 41, wherein said titration mitigates a risk selected from hypotension, hyperkalemia, and renal adverse events.

50. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to embodiment 44 or 45, wherein the twice daily starting dose of 100 mg of sacubitril and valsartan in a 1:1 molar ratio is for use in a patient taking higher doses of an angiotensin-converting enzyme (ACE) inhibitor or of an angiotensin II receptor blocker (ARB) before initiating the treatment with sacubitril and valsartan.

51. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to embodiment 50, wherein the higher dose of an ACEI or ARB is equivalent to ≥ 10 mg of enalapril per day.

52. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to any one of the preceding embodiments 41 to 51, wherein the patient suffers from chronic systolic heart failure with reduced ejection fraction.

53. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to any one of the preceding claims 41 to 51, wherein the patient is a human patient.

54. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to any one of the preceding embodiments 41 to 51, wherein the patient has at least one of the following characteristics

   i) heart failure of NYHA class II, III or IV,

   ii) an elevated plasma BNP or NT-proBNP level, preferably a plasma BNP ≥100 pg/mL (or NT-proBNP ≥400 pg/mL), more preferably a plasma BNP ≥150 pg/mL or NT-proBNP ≥600 pg/mL, and

   iii) a reduced left ventricular ejection fraction (LVEF) of ≤40%, preferably ≤35%.

55. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to any one of the

PAT056901-PCT

preceding embodiments 41 to 51, wherein the patient suffers from chronic heart failure classified as NYHA class II, III or IV and has systolic dysfunction, preferably wherein the patient has a reduced left ventricular ejection fraction (LVEF) of ≤35%.

56. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to any one of the preceding embodiments 41 to 51, wherein sacubitril and valsartan in a 1:1 molar ratio are delivered in the form of the compound trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl)propionate-(S)-3'-methyl-2'-(pentanoyl{2''-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate] hemipentahydrate (LCZ696).

57. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to any one of the preceding embodiments 41 to 51, wherein sacubitril and valsartan in a 1:1 molar ratio are delivered in the form of a pharmaceutical composition comprising

      (i)     valsartan or a pharmaceutically acceptable salt thereof; and

      (ii)    sacubitril or a pharmaceutically acceptable salt thereof,

58. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to any one of the preceding embodiments 41 to 51, wherein the patient receives a base treatment with a stable dose of a beta-blocker, an aldosterone antagonists, and/ or a diuretic.

59. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to any one of the preceding embodiments 41 to 51, wherein the patient receives base treatment with a stable dose of a beta-blocker and optionally an aldosterone antagonist.

60. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to any one of the preceding embodiments 41 to 51, wherein the patient has to stop taking the angiotensin receptor blocker (ARB) or the ACE inhibitor at least 36 hours prior to taking the medicament.

61. Use of sacubitril and valsartan in a 1:1 molar ratio for the manufacture of a medicament for the treatment of heart failure in a patient according to any one of the preceding embodiments 41 to 51,, wherein

      a) the 50 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 24 mg sacubitril and 26 mg valsartan,

PAT056901-PCT

b) the 100 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 49 mg sacubitril and 51 mg valsartan, and

c) the 200 mg dose of sacubitril and valsartan in a 1:1 molar ratio corresponds to 97 *mg sacubitril and 103 mg valsartan.*

5

<u>Compounds and combinations and pharmaceutical compositions for use according to the invention</u>

The "sacubitril and valsartan in a 1:1 molar ratio" of the invention used in the aforementioned methods is provided in the form of

10   a)   the compound trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl)propionate-(S)-3'-methyl-2'-(pentanoyl{2''-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate] hemipentahydrate (LCZ696), or

b)   a pharmaceutical composition comprising a 1:1 molar ratio of

(i)   valsartan or a pharmaceutically acceptable salt thereof; and

15   (ii)   of sacubitril or a pharmaceutically acceptable salt thereof.

Sacubitril is the INN for N-(3-carboxy-1-oxopropyl)-(4S)-(p-phenylphenylmethyl)-4-amino-2R-methylbutanoic acid ethyl ester. This is a prodrug for (2R,4S)-5-biphenyl-4-yl-4-(3-carboxy-propionyl amino)-2-methyl-pentanoic acid.

In a preferred embodiment, the compound trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-20   ethoxycarbonyl-1-butylcarbamoyl)propionate-(S)-3'-methyl-2'-(pentanoyl{2''-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate] hemipentahydrate is present in crystalline form.

In another embodiment, the combination comprises a 1:1 molar ratio

(i)   of valsartan; and

(ii)   of sacubitril or a pharmaceutically acceptable salt thereof, such as sodium or 25   calcium salt.

In a preferred embodiment, the invention encompasses a pharmaceutical composition for use comprising a therapeutically effective amount of trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl)propionate-(S)-3'-methyl-2'-(pentanoyl{2''-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate] hemipentahydrate (Compound 30   LCZ696).  Such compounds and pharmaceutical compositions have been previously disclosed in WO2007/056546 and WO 2009/061713, whose preparative teachings are incorporated herein by reference.

In a further embodiment of the invention, the pharmaceutical compositions for use according to the present invention comprise trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-

PAT056901-PCT

3-ethoxycarbonyl-1-butylcarbamoyl) propionate-(S)-3'-methyl-2'-(pentanoyl{2"-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate] hemipentahydrate (LCZ696) and deliver upon administration the NEP inhibitor pro-drug sacubitril and the angiotensin receptor blocker valsartan together to the patient.

5    In one embodiment of the invention for all of its uses, the pharmaceutical composition comprises the the NEP inhibitor pro-drug sacubitril, namely N-(3-carboxy-1-oxopropyl)-(4S)-p-phenylphenylmethyl)-4-amino-(2R)-methylbutanoic acid ethyl ester or the NEP inhibitor N-(3-carboxy-1-oxopropyl)-(4S)-p-phenylphenylmethyl)-4-amino-(2R)-methylbutanoic acid, or pharmaceutically acceptable salts thereof, and the Angiotensin

10   Receptor Blocker valsartan or a pharmaceutically acceptable salt thereof. Such combinations are for example disclosed within international patent application WO 2003/059345, which is herewith incorporated by reference.

In one embodiment, the pharmaceutical composition comprises the NEP inhibitor pro-drug sacubitril, namely N-(3-carboxy-1-oxopropyl)-(4S)-p-phenylphenylmethyl)-4-amino-(2R)-

15   methylbutanoic acid ethyl ester or the NEP inhibitor N-(3-carboxy-1-oxopropyl)-(4S)-p-phenylphenylmethyl)-4-amino-(2R)-methylbutanoic acid, or pharmaceutically acceptable salts thereof, and the Angiotensin Receptor Blocker valsartan or a pharmaceutically acceptable salt thereof, in a 1:1 molar ratio.

(i) Valsartan or (S)-N-valeryl-N-{[2'-(1H-tetrazole-5-yl)-biphenyl-4-yl]-methyl}-valine) or a

20   pharmaceutically acceptable salt thereof that can be purchased from commercial sources or can be prepared according to known methods, such as described in U.S. Patent No. 5,399,578 and EP 0443983, whose preparative teachings are incorporated by reference herein. Valsartan may be used in certain embodiments of the invention in its free acid form, as well as in any suitable salt form. Depending upon the circumstance, esters or

25   other derivatives of the carboxylic grouping may be employed as well as salts and derivatives of the tetrazole grouping.

(ii) sacubitril, namely N-(3-carboxy-1-oxopropyl)-(4S)-(p-phenylphenylmethyl)-4-amino-2R-methylbutanoic acid ethyl ester, or (2R,4S)-5-biphenyl-4-yl-4-(3-carboxy-propionyl amino)-2-methyl-pentanoic acid can be prepared by known methods such as described in U.S.

30   Patent No. 5,217,996 which is herein incorporated by reference.

The corresponding active ingredient or a pharmaceutically acceptable salt thereof may also be used in the form of a hydrate or include other solvents used for crystallization.

The pharmaceutical compositions according to the invention can be prepared in a manner known per se and are those suitable for enteral, such as oral or rectal, and parenteral

35   administration to mammals (warm-blooded animals), including man, comprising a

PAT056901-PCT

therapeutically effective amount of the pharmacologically active compound, alone or in combination with one or more pharmaceutically acceptable carriers, especially suitable for enteral or parenteral application.

The pharmaceutical preparations of the invention contain, for example, from about 0.1% to about 100%, e. g. 80% or 90%, or from about 1% to about 60%, of the active ingredient. The term "about" or "approximately", as used herein in each instance, shall have the meaning of within 10%, more preferably within 5%, of a given value or range.

Pharmaceutical preparations according to the invention for enteral or parenteral administration are, e.g., those in unit dose forms, such as sugar-coated tablets, tablets, capsules, bars, sachets, granules, syrups, aqueous or oily suspensions or suppositories and furthermore ampoules. These are prepared in a manner known per se, e. g. by means of conventional mixing, granulating, sugar-coating, dissolving or lyophilizing processes. Thus, pharmaceutical preparations for oral use can be obtained by combining the active ingredient with solid carriers, if desired granulating a mixture obtained, and processing the mixture or granules, if desired or necessary, after addition of suitable excipients to give tablets or sugar-coated tablet cores.

Tablets may be formed from the active compound with fillers, for example calcium phosphate; disintegrating agents, for example maize starch, lubricating agents, for example magnesium stearate; binders, for example microcrystalline cellulose or polyvinylpyrrolidone and other optional ingredients known in the art to permit tabletting the mixture by known methods. Similarly, capsules, for example hard or soft gelatin capsules, containing the active compound with or without added excipients, may be prepared by known methods. The contents of the capsule may be formulated using known methods so as to give sustained release of the active compound.

Other dosage forms for oral administration include, for example, aqueous suspensions containing the active compound in an aqueous medium in the presence of a non-toxic suspending agent such as sodium carboxymethylcellulose, and oily suspensions containing the active compounds in a suitable vegetable oil, for example arachis oil.

The active compound may be formulated into granules with or without additional excipients. The granules may be ingested directly by the patient or they may be added to a suitable liquid carrier (e.g. water) before ingestion. The granules may contain disintegrants, e.g. an effervescent pair formed from an acid and a carbonate or bicarbonate salt to facilitate dispersion in the liquid medium.

The dosage of the active ingredient of the composition will, of course, vary with the nature of the severity of the condition to be treated and with the particular compound in the

PAT056901-PCT

composition and its route of administration. It will also vary according to the age, weight and response of the individual patient.

In the embodiments where the pharmaceutical composition comprises trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl) propionate-(S)-3'-methyl-2'-(pentanoyl{2"-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate] hemipentahydrate (LCZ696) in the pharmaceutical compositions for use in the context of the present invention, the unit dose of the therapeutic agents sacubitril and valsartan together will be in the range from about 1 to about 1000 mg, such as 40 mg to 400 mg (e.g., 50 mg, 100 mg, 200 mg, 400 mg) per day. Alternatively lower doses may be given, for example doses of 0.5 to 100 mg; 0.5 to 50 mg; or 0.5 to 20 mg per day. As explanatory note, a unit dose of 100 mg LCZ696 delivering 100 mg of the two agents sacubitril and valsartan corresponds to 113.1 mg of trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl) propionate-(S)-3'-methyl-2'-(pentanoyl{2"-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate]hemipentahydrate. Correspondingly, a unit dose of 200 mg requires 226.2 mg, and a unit dose of 400 mg requires 452.4 mg of trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl) propionate-(S)-3'-methyl-2'-(pentanoyl{2"-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate]hemipentahydrate.

Dosages of the sum of the individual compounds (i)/(ii) in the combination of the pharmaceutical composition will be in the range from about 1 to about 1000 mg, such as 40 mg to 400 mg and include but are not limited to 5 mg, 20 mg, 25 mg, 40 mg, 50 mg, 80 mg, 100 mg, 200 mg, 400 mg, 800 mg and 1000 mg.  Such dosages for compounds (i)/(ii) can be considered therapeutically effective amounts or dosage strengths.  Ratios for the amount of each compound in the pharmaceutical composition are preferably in the about 1:1 molar ratio to achieve an optimal renal protection while still providing cardiovascular benefits. In preferred embodiments, the dosages of the individual compounds (i)/(ii) correspond to the same molecular amounts as in a pharmaceutical composition comprising a 50 mg, 100 mg, 200 mg or 400 mg dose of LCZ696. E.g. a 200 mg dose of LCZ696 corresponds approximately to 103 mg valsartan and 97 mg of sacubitril

Pharmaceutical compositions containing a compound of formula(I) (such as compound LCZ696), or compounds (i)/(ii) can be administered any number of times per day, i.e. once a day (q.d.), twice (b.i.d.), three times, four time, etc. in an immediate release formation or less frequently as an extended or sustained release formation.  Preferably the pharmaceutical composition is administered twice daily (b.i.d.). Corresponding doses may be taken, for example, in the morning, at mid-day or in the evening.

PAT056901-PCT

The following example is illustrative, but does not serve to limit the scope of the invention described herein.

**Example**

A multicenter, randomized, double-blind, parallel group study to assess the safety and
5   tolerability of initiating LCZ696 in heart failure patients comparing two titration regimens.

STUDY DRUG LCZ696:

LCZ696 refers to the supramolecular complex trisodium [3-((1S,3R)-1-biphenyl-4-
ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl) propionate-(S)-3'-methyl-2'-(pentanoyl{2"-
10   (tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate]hemipentahydrate. This compound
and pharmaceutical compositions thereof have been previously disclosed in
WO2007/056546 and WO 2009/061713, whose preparative teachings are incorporated
herein by reference.

LCZ696 is a first-in-class angiotensin receptor neprilysin inhibitor that comprises the
15   molecular moieties of the NEP (neutral endopeptidase EC 3.4.24.11) inhibitor pro-drug
sacubitril (INN, also known as AHU377 and N-(3-carboxy-1-oxopropyl)-(4S)-p-
phenylphenylmethyl)-4-amino-(2R)-methylbutanoic acid ethyl ester) and the angiotensin
receptor blocker valsartan as a single compound. Sacubitril is metabolized by enzymatic
cleavage to LBQ657 (N-(3-carboxy-1-oxopropyl)-(4S)-p-phenylphenylmethyl)-4-amino-
20   (2R)-methylbutanoic acid), the active inhibitor of neutral endopeptidase, which is the major
enzyme responsible for the breakdown of atrial natriuretic peptides.

OVERALL STUDY DESIGN

This was a multicenter, randomized, double-blind, parallel group study to assess the
safety and tolerability of initiating LCZ696 in heart failure patients (New York Heart
25   Association [NYHA] class II-IV) with reduced ejection fraction defined by a left ventricular
ejection fraction (LVEF) ≤ 35%. Up-titration regimens of 3-weeks or 6-weeks to the
LCZ696 target dose of 200 mg bid were evaluated. The study consisted of two main
phases: (1) open-label LCZ696 run-in phase lasting approximately one week, and (2)
double-blind randomized phase lasting approximately 11 weeks. Patients enrolled were
30   stratified based on the pre-study level of RAAS inhibition (high/low).

STUDY OBJECTIVES

Primary objectives

PAT056901-PCT

To characterize the safety and tolerability of initiating LCZ696 in HFrEF patients with 3-week and 6-week up-titration regimens over 12 weeks based on reported adverse events and laboratory assessments.

<u>Secondary objectives</u>

5    The secondary objectives were:

- To evaluate the proportion of patients in the two treatment groups who achieved treatment success, defined as those achieving and maintaining LCZ696 200 mg bid without any dose interruption or down-titration over 12 weeks.

- To evaluate the proportion of patients who tolerate a regimen of LCZ696 200 mg bid
10     for at least 2 weeks leading to study completion, regardless of previous dose interruption or down-titration.


<u>STUDY DESIGN</u>

This was a multi-center, randomized, double-blind, parallel-group study conducted to
15   evaluate the safety and tolerability of LCZ696 comparing two up-titration regimens in both outpatients and hospitalized patients (inpatients) with HFrEF.

Patients were stratified based on the level of RAAS inhibition as follows:

- **High RAAS stratum**: Patients receiving > 160 mg of valsartan or > 10 mg total daily dose of enalapril, or equivalent doses of other ARBs/ACEIs, respectively, at screening

20   - **Low RAAS stratum**: Patients receiving ≤ 160 mg of valsartan or ≤ 10 mg total daily dose of enalapril, or equivalent doses of other ARBs/ACEIs, respectively, at screening. This stratum also included patients who were not on an ACEI or an ARB 4 weeks prior to screening (i.e., ACEI/ARB-naïve patients)

At least 25% (but not more than 50%) of the randomized patients were planned to be in the
25   low RAAS inhibition stratum. Patients hospitalized for decompensated HF were allowed to enter either the low or high RAAS inhibition stratum, corresponding to the most recent tolerated ACEI or ARB dose they had received during their hospitalization.


This study consisted of three phases: **see Figure 1.**

30        (1) Screening phase lasting approximately one week;

        (2) Open-label LCZ696 run-in phase lasting approximately one week (Day 1 to 5); and

PAT056901-PCT

(3) Randomized phase lasting approximately 11 weeks

Screening phase

At Visit 1, during the screening phase, all patients who had provided their written informed
5    consent were evaluated for eligibility to enter the study. Left ventricular ejection fraction
(LVEF) measurements required for eligibility were based on locally obtained
echocardiograms, MUGA (multi-gated acquisition) scans, CT (computerized tomography)
scans, MRI (magnetic resonance imaging) scans, or ventricular angiographies performed
within the prior 12 months, provided no subsequent measurements were > 35%. If a LVEF
10   measurement from the prior 12 months was not available, the patient could enter the trial
based on a LVEF ≤ 35% obtained during the screening phase, i.e., before start of study
medication intake. If a patient had an implanted cardiac resynchronization therapy (CRT)
device, the LVEF value used to qualify for the study had to be obtained by at least three
months after device implantation.

15   Both inpatients and outpatients were eligible for participation in this study. Patients who met
all the eligibility criteria at screening were eligible to enter the open-label LCZ696 run-in
phase and proceed to Visit 2 to start receiving the study medication. Patients who had been
using ACEIs had to stop these medications under the supervision of the study investigator,
and enter a 36-hour ACEI-free washout period before they attended their Visit 2.

20   Open-label LCZ696 run-in phase

Patients who met all the entry criteria and completed the ACEI-free washout period (if
required) attended Visit 2 within approximately one week after Visit 1. At Visit 2, patients
began taking open-label LCZ696 50 mg bid. Eligible hospitalized patients also took the
study medication while they were still in the hospital and before they were discharged.
25   Patients took the study medication in addition to their background HF therapy, except for
ACEIs and ARBs, which were replaced by the study medication.

Patients were asked to return after 5 ± 2 days to attend Visit 3/777 (Randomization visit).

Randomized phase

At Visit 3/777, safety and tolerability of LCZ696 50 mg bid was assessed (see table below).
30   Patients, who could not tolerate LCZ696 50 mg bid per the criteria listed in the Table, were
to be discontinued from the study and considered as run-in failures.

PAT056901-PCT

*Table: Safety criteria that must be met at Visits 3 to 6 in order to avoid treatment failure*

| Parameter | Requirement |
|---|---|
| Potassium level | ≤ 5.4 mmol/L |
| Kidney function | eGFR ≥ 30 mL/min/1.73m$^2$ |
| | eGFR reduction ≤ 35% compared to Screening value |
| Blood pressure | No symptomatic hypotension and SBP ≥ 95 mmHg |
| Adverse events (AEs) or conditions | No postural symptoms or any AEs that preclude continuation according to the investigator's judgment |

Patients who successfully completed the open-label run-in and tolerated LCZ696 50 mg bid were to be randomized to receive double-blind LCZ696 at one of the two different titration schemes in a 1:1 ratio: they could be up-titrated to 200 mg bid over the following two weeks (Condensed titration) or they could be up-titrated to 200 mg bid over the following five weeks (Conservative titration).

At Visit 3/777, patients randomized to the condensed up-titration arm were up-titrated to LCZ696 100 mg bid, while patients randomized to the conservative up-titration arm continued to receive LCZ696 50 mg bid.

Two weeks after Visit 3/777, at Visit 4, the patients who were judged by the investigator to be tolerant of the study medication per the safety criteria in the Table were up-titrated to the next dose level; those in the condensed up-titration arm received LCZ696 200 mg bid and those in the conservative up-titration arm received LCZ696 100 mg bid.

Patients returned three weeks later to attend Visit 5. Patients who were judged by the investigator to be tolerant of the study medication per the safety criteria in the Table further continued on the titration plan as outlined in above; patients in the condensed up-titration arm continued to receive LCZ696 200 mg bid, while patients in the conservative up-titration arm were up-titrated to LCZ696 200 mg bid.

Patients returned three weeks later to attend Visit 6. Patients who were judged by the investigator to be tolerant of the study medication per the safety criteria in the Table continued to receive LCZ696 200 mg bid and were asked to return three weeks later to attend Visit 778/End of Study (EoS) to undergo the final safety evaluations.

PAT056901-PCT

Patients who were deemed by the investigator to require dose reduction or interruption in study medication dosing at any post-randomization visit (despite modification of concomitant medications) were considered as treatment failures. They were switched to open-label LCZ696 at a dose level at the discretion of the investigator. Treatment failure patients were expected to attend the remaining study visits according to schedule and their doses were modified based on the investigator's judgment with the overall goal of achieving and maintaining the target dose (LCZ696 200 mg bid) for at least two uninterrupted weeks and until Visit 778/EoS.

Throughout the randomized phase, patients took the study medication in addition to their background HF therapy, except for ACEIs and ARBs, which were replaced by the study medication itself. Every attempt was made to maintain patients on the assigned study medication throughout the trial.

At each visit, the patients' medication compliance as well as safety and tolerability of the study medication was assessed, including, but not limited to, signs and symptoms of hypotension, elevated potassium level, and decreased renal function. If, however, in the opinion of the investigator, the patient could not tolerate the assigned study medication, the investigator could consider if the non-disease-modifying medications (e.g., CCBs, diuretics, nitrates, α-blockers) could be reduced to manage tolerability before declaring the patient to be a treatment failure and subsequently switching him/her to open-label study medication. The investigator was also allowed to adjust doses of other disease-modifying medications if they were believed to be the most likely cause of the adverse effects.


PATIENTS

Written informed consent was obtained before any assessment was performed.

Patients eligible for inclusion in this study must have fulfilled all of the following criteria listed below:

1.  Males and/or females of at least 18 years of age, who were either inpatients or outpatients

2.  Diagnosis of chronic heart failure (CHF) NYHA class II-IV.

3.  Left ventricular ejection fraction (LVEF) ≤ 35% at screening (any local measurement made within the past 12 months using echocardiography, MUGA, CT scanning, MRI, or ventricular angiography was acceptable, provided no subsequent measurement was > 35%).

4.  Meeting one of the following criteria:

25

PAT056901-PCT

- ACEI/ARB naïve patients, i.e., not on an ACEI or ARB for at least 4 weeks before screening.

- For outpatients who were being treated with ACEI or ARB, dose had to be stable dose for at least 2 weeks before screening.

- For hospitalized patients (inpatients), being on no ACEI/ARB or on a tolerated dose of an ACEI or an ARB at screening.

5. Patients treated with a β-blocker, unless contraindicated or not tolerated (reason had to be documented in absence of that medication).

6. An aldosterone antagonist was also to be considered in all patients, taking account of renal function, serum potassium and tolerability. If given, the dose of aldosterone antagonist was to be optimized according to guideline recommendations and patient tolerability. Other evidence-based therapy for HF was also to be considered, e.g., cardiac resynchronization therapy and an implantable cardioverter-defibrillator in selected patients, as recommended by guidelines.

Treatment arms

Patients were assigned to one of the following two treatment arms in a ratio of 1:1 as described below:

- Condensed up-titration: up-titration of LCZ696 from 50 mg bid to 200 mg bid over three weeks (including the run-in phase).

- Conservative up-titration: up-titration of LCZ696 from 50 mg bid to 200 mg bid over six weeks (including the run-in phase).

Reference

The study design and procedures can be found under www.clinicaltrials.gov, study number NCT01922089, which is herewith incorporated by reference.

**RESULTS**

SUMMARY:

Among the randomized patients and excluding those who discontinued due to non-AE related reasons, 81% achieved the target LCZ696 200 mg bid dose without any down-titration or dose interruption over the entire 12-week study period, and 85% were on the LCZ696 200 mg bid target dose for at least 2 weeks before study completion. The most

PAT056901-PCT

common reasons for dose adjustment/interruption or permanent discontinuation were AEs related to hypotension, renal dysfunction or hyperkalemia.

During the randomized period, a higher proportion of low RAAS stratum patients achieved the LCZ696 200 mg bid target dose and had no dose adjustment/interruption over 12

5    weeks if they were up-titrated more gradually. Eight-five percent (85%) of patients who were ACEI/ARB naïve or receiving prior low levels of RAAS therapy and up-titrated over 6 weeks achieved the target dose of LCZ696 200 mg bid and had no dose adjustment/interruption over 12 weeks compared with 74% of patients up-titrated over 3 weeks. This difference was due to fewer AEs related to hypotension, renal dysfunction or

10   hyperkalemia. Eighty-three percent (83%) of patients receiving prior high levels of RAAS therapy achieved the LCZ696 200 mg bid target dose without any dose adjustment/interruption over 12 weeks, with no difference due to the rate of up-titration (3 vs. 6 weeks). There was no major difference between the uptitration regimens in the treatment success rate among the ACEI/ARB-naïve patients.

15

<u>CONCLUSION</u>

Across both run-in and randomized periods, the proportion of patients who achieved the target dose of LCZ696 200 mg bid without any dose adjustment or interruption over 12 weeks was 76% if discontinuations due to non-AE reasons are excluded and 70% based

20   on the total number of patients receiving at least one dose of study medication.

In the low dose stratum, the rate of treatment success was higher when LCZ696 was uptitrated more gradually.

Docket No.: PAT056901-US-PCT
(PATENT)

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent Application of:
Adel Remond RIZKALA

Application No.: 15/572,399                    Confirmation No.: 1063

Filed:  November 7, 2017                       Art Unit: 1627

For:  SACUBITRIL-VALSARTAN DOSAGE              Examiner: Jason A. Deck
       REGIMEN FOR TREATING HEART FAILURE

*VIA EFS*
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

## STATEMENT OF THE SUBSTANCE OF THE APPLICANT-INITIATED INTERVIEW

This communication is submitted in response to the Examiner's Summary of the Applicant-Initiated Interview ("Interview Summary") mailed on September 16, 2020.  Without extension, this response is due on or before October 16, 2020. Applicant believes no fee is due. However, the Commissioner is hereby authorized to charge any additional fees that may be due or credit any overpayment of same to Deposit Account No. 50-4409, Attorney Reference No. PAT056901-US-PCT.

Applicant would like to thank Examiner Jason Deck ("Examiner") for the Applicant-Initiated interview on September 11, 2020. Examiner and Applicant's Representative Judith D. Kuntz ("Applicant's Representative") discussed potential amendments to the allowed claims for the above-referenced application to be submitted via a 37 C.F.R. 1.312 amendment based on the draft that was provided to the Examiner before the interview and is appended to the aforementioned Interview Summary. During the interview, Applicant's Representative explained that the proposed amendments were intended to clarify the claims but since they were fairly extensive it was easiest to discuss with the Examiner prior to submission. Applicant's Representative did not mention that the proposed amendments would be "without broadening the claims".  The Examiner stated that he had briefly perused the proposed claim amendments and commented that while they would require in depth analysis when ultimately submitted, the claim amendments appeared to be fine and would likely be entered.

Application No.: 15/572,399                    2                    Docket No.: PAT056901-US-PCT

Should any questions or issues arise concerning this application, the Examiner is encouraged to contact the undersigned at the telephone number provided below.

Dated: <u>September 22, 2020</u>                    Respectfully submitted,

Electronic signature:  <u>/Judith D. Kuntz/</u>
Judith D. Kuntz, J.D., Ph.D.
Registration No.: 71,649

Novartis Institutes for Biomedical Research, Inc.
700 Main Street
Cambridge, Massachusetts  02139
(617) 871-8034
Attorney For Applicant

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 15/572,399 | 11/07/2017 | Adel Remond Rizkala | PAT056901-US-PCT | 1063 |

1095            7590            09/28/2020
NOVARTIS PHARMACEUTICAL CORPORATION
INTELLECTUAL PROPERTY DEPARTMENT
ONE HEALTH PLAZA 433/2
EAST HANOVER, NJ 07936-1080

| EXAMINER |
|---|
| DECK, JASON A |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1627 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 09/28/2020 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

phip.patents@novartis.com

PTOL-90A (Rev. 04/07)

| *Corrected* *Notice of Allowability* | **Application No.** 15/572,399 | **Applicant(s)** Rizkala et al. | |
|---|---|---|---|
| | **Examiner** JASON A DECK | **Art Unit** 1627 | **AIA (FITF) Status** Yes |

**-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--**

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☑ This communication is responsive to 9/11/20.

    ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

3. ☑ The allowed claim(s) is/are See Continuation Sheet. As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see **http://www.uspto.gov/patents/init_events/pph/index.jsp** or send an inquiry to **PPHfeedback@uspto.gov**.

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    **Certified copies:**

    a) ☐All    b) ☐ Some    *c) ☐ None of the:

        1. ☐ Certified copies of the priority documents have been received.

        2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

        3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

        * Certified copies not received: _____ .

    Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ CORRECTED DRAWINGS (as "replacement sheets") must be submitted.

    ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____ .

    **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☐ Notice of References Cited (PTO-892)

2. ☐ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date _____.

3. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material

4. ☐ Interview Summary (PTO-413), Paper No./Mail Date. _____.

5. ☐ Examiner's Amendment/Comment

6. ☑ Examiner's Statement of Reasons for Allowance

7. ☑ Other PTO-271.

| /Jason Deck/ Examiner, Art Unit 1627 | /SARAH PIHONAK/ Primary Examiner, Art Unit 1627 |
|---|---|

Continuation of 3. The allowed claim(s) is/are: 62-63,66-69,73,75-87 and 89-95

### Notice of Pre-AIA or AIA Status

The present application, filed on or after March 16, 2013, is being examined under the first inventor to file provisions of the AIA.

## DETAILED ACTION

### Status of the Application

This Office Action is in response to Applicant's arguments filed on 9/11/20. Claim(s) 1-61, 64, 65, 70-72, 74, and 88 are cancelled.  Claim(s) 89-95 are new. Claim(s) 62, 63, 66-69, 73, 75-87, and 89-95 are pending.

The amendment filed on 9/11/20 under 37 CFR 1.312 has been entered.  The amendment clarifies the claims, adds narrower dependencies that are proper, and only minimally expands the scope of the claims.

The reasons for allowance are the same as in the prior Office action.

### Conclusion

Claim(s) 1-61, 64, 65, 70-72, 74, and 88 are cancelled.  Claim(s) 62, 63, 66-69, 73, 75-87, and 89-95 are allowed.

Any inquiry concerning this communication or earlier communications from the examiner should be directed to JASON A DECK whose telephone number is (571)270-5753.  The examiner can normally be reached on M-F 10-6.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, SREENIVASAN (PADDY) PADMANABHAN can be reached on (571)272-

Application/Control Number: 15/572,399                                         Page 3
Art Unit: 1627

0629.  The fax phone number for the organization where this application or proceeding

is assigned is 571-273-8300.

      Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system. Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov.  Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free).  If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/JASON A DECK/
Examiner, Art Unit 1627

/SARAH PIHONAK/
Primary Examiner, Art Unit 1627

PAT056901-US-PCT

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

IN RE APPLICATION OF                    Art Unit:  1627

RIZKALA, Adel Remond, et al.            Examiner:  DECK, Jason A.

APPLICATION NO:  15/572,399             Conf. No:  1063

FILED:  07 November 2017                Customer No: 1095

FOR:  SACUBITRIL-VALSARTAN DOSAGE REGIMEN FOR TREATING HEART FAILURE

Commissioner for Patents
PO Box 1450
Alexandria, VA 22313-1450

### AMENDMENT AFTER ALLOWANCE UNDER 37 CFR §1.312

This paper is submitted after Notice of Allowance mailed on April 12, 2021, in the above-identified application.

Please amend the above-identified application as follows:

**Amendments to the Claims** begin on page **2**.

**Remarks** begin on page **8**.

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 42561533 |
| **Application Number:** | 15572399 |
| **International Application Number:** | |
| **Confirmation Number:** | 1063 |
| **Title of Invention:** | SACUBITRIL-VALSARTAN DOSAGE REGIMEN FOR TREATING HEART FAILURE |
| **First Named Inventor/Applicant Name:** | Adel Remond Rizkala |
| **Customer Number:** | 1095 |
| **Filer:** | Meghan S Adams/Maria Johnson |
| **Filer Authorized By:** | Meghan S Adams |
| **Attorney Docket Number:** | PAT056901-US-PCT |
| **Receipt Date:** | 27-APR-2021 |
| **Filing Date:** | 07-NOV-2017 |
| **Time Stamp:** | 16:20:16 |
| **Application Type:** | U.S. National Stage under 35 USC 371 |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | PAT056901-US-PCT-312amdt.pdf | 181652<br><br>302a2e7880300ae99d104dfe2d0859a93da5c0b5 | yes | 9 |

**Multipart Description/PDF files in .zip description**

| Document Description | Start | End |
|---|---|---|
| Applicant Arguments/Remarks Made in an Amendment | 8 | 9 |
| Claims | 2 | 7 |
| Amendment after Notice of Allowance (Rule 312) | 1 | 1 |

| Warnings: | |
|---|---|
| Information: | |

| **Total Files Size (in bytes):** | 181652 |
|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

<u>New Applications Under 35 U.S.C. 111</u>
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.
<u>National Stage of an International Application under 35 U.S.C. 371</u>
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.
<u>New International Application Filed with the USPTO as a Receiving Office</u>
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

PAT056901-US-PCT
U.S. Application No. 15/572,399

## REMARKS

Claims 62, 63, 66-69, 73, 75-87 and 89-95 were allowed in the Notice of Allowance mailed on April 12, 2021 and are pending in the current application.

Submitted herewith is an amendment under 37 C.F.R § 1.312. Claims 66-69, 80-82, and 86 are cancelled without prejudice or disclaimer. The dependencies of claims 75-77 and 83-85 are amended in view of the cancelled claims. Claims 62, 63, 73, 75-79, 83-85, 87, and 89-95 are amended to provide further clarification and to improve their form. For example, throughout the claims, "patient" is replaced with "human patient" and "heart failure" is replaced with "chronic heart failure", as was recited in, *e.g.*, cancelled claims 66, 67, 80, and 81. Claims 62, 78, 89, and 91 are amended to include the phrase "or the pharmaceutically acceptable salt thereof" as appropriate after recitations of sacubitril and valsartan. Claim 62 is further amended to correct an obvious typographical error. Claim 63 is further amended to specify that the "twice daily dose" is the "twice daily target dose" of claim 62 from which claim 63 depends. Claims 73, 87, 89, and 91 are amended to replace "angiotensin-converting enzyme (ACE)" and/or "angiotensin II receptor blocker (ARB)" with "ACE inhibitor" and "ARB inhibitor", respectively, for consistency with the use of these terms in other dependent claims. Claims 73 and 87 are amended to replace the phrase "prior to taking the medication" with "before initiating the treatment with sacubitril or the pharmaceutically acceptable salt thereof and valsartan or the pharmaceutically acceptable salt thereof" to improve consistency with the language of the independent claims from which claims 73 and 87 depend. Support for these amendments can be found throughout the originally-filed claims and specification.

Upon entry of the amendments, claims 62, 63, 73, 75-79, 83-85, 87, and 89-95 will be pending in this application. No new matter is believed to be introduced. Applicant submits that the claims as amended herewith do not require an additional search or examination and respectfully requests entry of the instant amendments.

If there are any questions regarding these amendments and remarks, the Examiner is encouraged to contact the undersigned.

PAT056901-US-PCT
U.S. Application No. 15/572,399

No fee is believed to be due with this filing. However, the Commissioner is authorized to charge any fees that may be due in connection with this filing, or credit any overpayment of same, to Deposit Account No. 50-4409, Reference No.: PAT056901-US-PCT.


Dated:   April 27, 2021                         Respectfully submitted,


<u>Electronic signature:  /Meghan S. Adams/</u>
Meghan S. Adams
Reg. No. 75,685
Attorney for Applicant
Novartis Institutes for Biomedical
    Research, Inc.
700 Main Street
Cambridge, MA 02139
+16179096873

## AMENDMENTS TO THE CLAIMS

This listing of claims will replace all prior versions of the claims and listing of the claims in the application:

**Listing of Claims:**

1-61.   (Cancelled)

62.   (Currently Amended) A regimen for treating <u>chronic</u> heart failure with reduced ejection fraction, which comprises administering to a <u>human</u> patient in need thereof a twice-daily target dose of 200 mg of sacubitril or a pharmaceutically acceptable salt thereof together with valsartan or a pharmaceutically acceptable salt thereof, which are provided to the <u>human</u> patient in a 1:1 molar ratio, wherein the twice daily target dose of 200 mg corresponds to 97 mg of sacubitril and 103 mg of valsartan[[)]];

wherein the twice daily target dose of 200 mg is reached after a titration with a twice daily starting dose of 50 mg of sacubitril or the pharmaceutically acceptable salt thereof together with valsartan or the pharmaceutically acceptable salt thereof, which are provided to the <u>human</u> patient in a 1:1 molar ratio, for from about 3 weeks to about 4 weeks, wherein the twice daily starting dose of 50 mg corresponds to 24 mg of sacubitril and 26 mg of valsartan, followed by a twice daily dose of 100 mg of sacubitril or the pharmaceutically acceptable salt thereof together with valsartan or the pharmaceutically acceptable salt thereof, which are provided to the <u>human</u> patient in a 1:1 molar ratio, for from about 3 weeks to about 4 weeks, wherein the twice daily dose of 100 mg corresponds to 49 mg of sacubitril and 51 mg of valsartan, followed by the twice daily target dose of 200 mg thereafter; and

wherein:

(i) the twice daily starting dose of 50 mg is for use in a <u>human</u> patient neither taking an angiotensin-converting enzyme (ACE) inhibitor nor taking an angiotensin II receptor blocker (ARB) before initiating ~~the~~ treatment with sacubitril <u>or the pharmaceutically acceptable salt thereof</u> and valsartan <u>or the pharmaceutically acceptable salt thereof</u>, or

(ii) the twice daily starting dose of 50 mg is for use in a <u>human</u> patient taking a low dose of an angiotensin-converting enzyme (ACE) inhibitor or a low dose of an angiotensin II

receptor blocker (ARB) before initiating ~~the~~ treatment with sacubitril <u>or the pharmaceutically acceptable salt thereof</u>  and valsartan <u>or the pharmaceutically acceptable salt thereof</u>, wherein the low dose of the ACE inhibitor or <u>the low dose of the</u> ARB is equivalent to a dose of ≤ 10 mg of enalapril per day.

63.     (Currently Amended) The regimen for treating <u>chronic</u> heart failure according to claim 62, wherein the twice daily <u>target</u> dose of 200 mg is reached after the titration with the twice daily starting dose of 50 mg for about 3 weeks, followed by the twice daily dose of 100 mg for about 3 weeks, followed by the twice daily target dose of 200 mg thereafter.

64-72.  (Cancelled)

73.     (Currently Amended) The regimen for treating <u>chronic</u> heart failure according to claim 62, wherein the <u>human</u> patient has to stop taking the ~~angiotensin receptor blocker (ARB)~~ <u>ARB</u> or the ACE inhibitor at least 36 hours <u>before initiating the treatment with sacubitril or the pharmaceutically acceptable salt thereof and valsartan or the pharmaceutically acceptable salt thereof</u>~~prior to taking the medicament~~.

74.     (Cancelled)

75.     (Currently Amended) The regimen for treating <u>chronic</u> heart failure according to claim [[68]] <u>62</u>, wherein the <u>human</u> patient has an elevated plasma BNP of ≥100 pg/mL or NT-proBNP of ≥400 pg/mL.

76.     (Currently Amended) The regimen for treating <u>chronic</u> heart failure according to claim [[68]] <u>62</u>, wherein the <u>human</u> patient has an elevated plasma BNP of ≥150 pg/mL or NT-proBNP of ≥600 pg/mL.

77.     (Currently Amended) The regimen for treating <u>chronic</u> heart failure according to claim [[68]] <u>62</u>, wherein the <u>human</u> patient has a reduced left ventricular ejection fraction (LVEF) of ≤35%.

78.    (Currently Amended)  A regimen for treating <u>chronic</u> heart failure with reduced ejection fraction, which comprises administering to a <u>human</u> patient in need thereof a twice-daily target dose of 200 mg of sacubitril or a pharmaceutically acceptable salt thereof together with valsartan or a pharmaceutically acceptable salt thereof, which are provided to the <u>human</u> patient in a 1:1 molar ratio, wherein the twice daily target dose of 200 mg corresponds to 97 mg of sacubitril and 103 mg of valsartan;

wherein the twice daily target dose of 200 mg is reached after a titration with a twice daily starting dose of 50 mg of sacubitril or the pharmaceutically acceptable salt thereof together with valsartan or the pharmaceutically acceptable salt thereof, which are provided to the <u>human</u> patient in a 1:1 molar ratio, for from about 2 weeks to about 4 weeks, wherein the twice daily starting dose of 50 mg corresponds to 24 mg of sacubitril and 26 mg of valsartan, followed by a twice daily dose of 100 mg of sacubitril or the pharmaceutically acceptable salt thereof together with valsartan or the pharmaceutically acceptable salt thereof, which are provided to the <u>human</u> patient in a 1:1 molar ratio, for from about 2 weeks to about 4 weeks, wherein the twice daily dose of 100 mg corresponds to 49 mg of sacubitril and 51 mg of valsartan, followed by the twice daily target dose of 200 mg thereafter, and wherein said titration to the target dose occurs over a period of at least about 6 weeks; and

wherein:

(i) the twice daily starting dose of 50 mg is for use in a <u>human</u> patient neither taking an angiotensin-converting enzyme (ACE) inhibitor nor taking an angiotensin II receptor blocker (ARB) before initiating ~~the~~ treatment with sacubitril <u>or the pharmaceutically acceptable salt thereof</u> and valsartan <u>or the pharmaceutically acceptable salt thereof</u>, or

(ii) the twice daily starting dose of 50 mg is for use in a <u>human</u> patient taking a low dose of an angiotensin-converting enzyme (ACE) inhibitor or a low dose of an angiotensin II receptor blocker (ARB) before initiating ~~the~~ treatment with sacubitril <u>or the pharmaceutically acceptable salt thereof</u> and valsartan <u>or the pharmaceutically acceptable salt thereof</u>, wherein the low dose of the ACE inhibitor or <u>the low dose of the ARB</u> is equivalent to a dose of $\leq 10$ mg of enalapril per day.

79.     (Currently Amended) The regimen for treating <u>chronic</u> heart failure according to claim 78, wherein the twice daily target dose is reached after <u>the</u> [[a]] titration with the twice daily starting dose of 50 mg for about 3 weeks, followed by the twice daily dose of 100 mg for about 3 weeks, followed by the twice daily target dose of 200 mg thereafter.

80-82. (Cancelled)

83.     (Currently Amended) The regimen for treating <u>chronic</u> heart failure according to claim [[82]] <u>78</u>, wherein the <u>human</u> patient has an elevated plasma BNP of ≥100 pg/mL or NT-proBNP of ≥400 pg/mL.

84.     (Currently Amended) The regimen for treating <u>chronic</u> heart failure according to claim [[82]] <u>78</u>, wherein the <u>human</u> patient has an elevated plasma BNP of ≥150 pg/mL or NT-proBNP of ≥600 pg/mL.

85.     (Currently Amended) The regimen for treating <u>chronic</u> heart failure according to claim [[82]] <u>78</u>, wherein the <u>human</u> patient has a reduced left ventricular ejection fraction (LVEF) of ≤35%.

86.     (Cancelled)

87.     (Currently Amended) The regimen for treating <u>chronic</u> heart failure according to claim 78, wherein the <u>human</u> patient has to stop taking the ~~angiotensin receptor blocker (ARB)~~ <u>ARB</u> or the ACE inhibitor at least 36 hours <u>before initiating the treatment with sacubitril or the pharmaceutically acceptable salt thereof and valsartan or the pharmaceutically acceptable salt thereof</u>~~prior to taking the medicament~~.

88.     (Cancelled)

89.     (Currently Amended) The regimen for treating <u>chronic</u> heart failure according to claim 62, wherein the twice daily starting dose of 50 mg is for use in the <u>human</u> patient taking the low

dose of the ~~angiotensin-converting enzyme (ACE)~~ ACE inhibitor or the low dose of ~~an angiotensin II receptor blocker (ARB)~~ the ARB before initiating the treatment with sacubitril or the pharmaceutically acceptable salt thereof and valsartan or the pharmaceutically acceptable salt thereof~~, and wherein the patient is a human patient~~.

90.     (Currently Amended) The regimen for treating chronic heart failure according to claim 89, wherein the low dose of the ACE inhibitor or the low dose of the ARB is equivalent to the dose of < 10 mg of enalapril per day.

91.     (Currently Amended) The regimen for treating chronic heart failure according to claim 78, wherein the twice daily starting dose of 50 mg is for use in the human patient taking the low dose of the ~~angiotensin-converting enzyme (ACE)~~ ACE inhibitor or the low dose of ~~an angiotensin II receptor blocker (ARB)~~ the ARB before initiating the treatment with sacubitril or the pharmaceutically acceptable salt thereof and valsartan or the pharmaceutically acceptable salt thereof~~, and wherein the patient is a human patient~~.

92.     (Currently Amended) The regimen for treating chronic heart failure according to claim 91, wherein the low dose of the ACE inhibitor or the low dose of the ARB is equivalent to the dose of < 10 mg of enalapril per day.

93.     (Currently Amended) The regimen for treating chronic heart failure according to claim 78, wherein a first week of the at least about 6 weeks is 5±2 days.

94.     (Currently Amended) The regimen for treating chronic heart failure according to claim 62, wherein sacubitril or the pharmaceutically acceptable salt thereof together with valsartan or the pharmaceutically acceptable salt thereof are provided to the human patient in a 1:1 molar ratio by administering to the human patient a compound trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl)propionate-(S)-3'-methyl-2'-(pentanoyl{2''-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate] hemipentahydrate (LCZ696).

PAT056901-US-PCT
U.S. Application No. 15/572,399

95.    (Currently Amended) The regimen for treating <u>chronic</u> heart failure according to claim 78, wherein sacubitril or the pharmaceutically acceptable salt thereof together with valsartan or the pharmaceutically acceptable salt thereof are provided to the <u>human</u> patient in a 1:1 molar ratio by administering to the <u>human</u> patient a compound trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl)propionate-(S)-3'-methyl-2'-(pentanoyl{2''-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate] hemipentahydrate (LCZ696).

### UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 15/572,399 | 11/07/2017 | Adel Remond Rizkala | PAT056901-US-PCT | 1063 |

1095          7590          06/14/2021

NOVARTIS PHARMACEUTICAL CORPORATION
INTELLECTUAL PROPERTY DEPARTMENT
700 Main Street
Cambridge, MA 02139

| EXAMINER |
|---|
| DECK, JASON A |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1627 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 06/14/2021 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

novartis_pair@firsttofile.com
phip.patents@novartis.com

| *Corrected* *Notice of Allowability* | Application No. 15/572,399 | Applicant(s) Rizkala et al. | |
|---|---|---|---|
| | Examiner JASON A DECK | Art Unit 1627 | AIA (FITF) Status Yes |

**-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--**

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☑ This communication is responsive to <u>4/27/21</u>.

    ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

3. ☑ The allowed claim(s) is/are <u>62-63,73,75-79,83-85,87 and 89-95</u> . As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see **http://www.uspto.gov/patents/init_events/pph/index.jsp** or send an inquiry to **PPHfeedback@uspto.gov**.

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    **Certified copies:**

        a) ☐All    b) ☐ Some    *c) ☐ None of the:

            1. ☐ Certified copies of the priority documents have been received.

            2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

            3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

        * Certified copies not received: _____ .

    Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ CORRECTED DRAWINGS (as "replacement sheets") must be submitted.

    ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____ .

    **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☐ Notice of References Cited (PTO-892)

2. ☐ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date _____

3. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material _____

4. ☐ Interview Summary (PTO-413), Paper No./Mail Date. _____ .

5. ☐ Examiner's Amendment/Comment

6. ☑ Examiner's Statement of Reasons for Allowance

7. ☐ Other _____ .

| /Jason Deck/ Examiner, Art Unit 1627 | /SARAH PIHONAK/ Primary Examiner, Art Unit 1627 |
|---|---|

Application/Control Number: 15/572,399                                    Page 2
Art Unit: 1627

### Notice of Pre-AIA or AIA Status

The present application, filed on or after March 16, 2013, is being examined under the first inventor to file provisions of the AIA.

## DETAILED ACTION

### Status of the Application

This Office Action is in response to Applicant's arguments filed on 4/27/21. Claim(s) 1-61, 64-72, 74, 80-82, 86, and 88 are cancelled.  Claim(s) 62, 63, 73, 75-79, 83-85, 87, and 89-95 are allowed.

The reasons for allowance are the same as in previous Office actions.

### Conclusion

Claim(s) 1-61, 64-72, 74, 80-82, 86, and 88 are cancelled.  Claim(s) 62, 63, 73, 75-79, 83-85, 87, and 89-95 are allowed.

Any inquiry concerning this communication or earlier communications from the examiner should be directed to JASON A DECK whose telephone number is (571)270-5753.  The examiner can normally be reached on M-F 10-6.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Mark Shibuya can be reached on (571) 272-0806.  The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Application/Control Number: 15/572,399                                              Page 3
Art Unit: 1627

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system. Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


/JASON A DECK/
Examiner, Art Unit 1627

/SARAH PIHONAK/
Primary Examiner, Art Unit 1627

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

IN RE APPLICATION OF

 Adel Remond RIZKALA et al.

PATENT NO:  11,058,667

ISSUE DATE:  July 13, 2021

FOR:  SACUBITRIL-VALSARTAN DOSAGE REGIMEN FOR TREATING HEART FAILURE

Attention: Certificate of Correction Branch
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

**REQUEST FOR CERTIFICATE OF CORRECTION UNDER 37 C.F.R. §§ 1.322 and 1.323**

The Patentee of the above-referenced patent hereby respectfully requests that a Certificate of Correction be issued in accordance with the attached form (PTO/SB/44).  This request is made to correct Patent Office printing errors, which appear in the printed patent, and to correct an error of a clerical, typographical, or minor character, which was not the fault of the Patent and Trademark Office.

The fee set forth in 37 C.F.R. § 1.20(a) is being paid with this request.

Patentee respectfully submits that the requested corrections are in compliance with 37 C.F.R. §§ 1.322 and 1.323 and requests expedient issuance of the Certificate of Correction.

The Director is hereby authorized to charge any deficiency in the fees filed, asserted to be filed or which should have been filed herewith to our Deposit Account No. 50-4409, under Order No. PAT056901-US-PCT.

Respectfully submitted,

Date:  August 5, 2021          Electronic Signature:  /Elizabeth T. Karnas/

Elizabeth T. Karnas, Ph.D.
Reg. No 75,872
Attorney for Applicant
Novartis Pharmaceuticals Corp.
One Health Plaza, Bldg. 345
East Hanover, New Jersey 07936
+1(862)778-7914

1

UNITED STATES PATENT AND TRADEMARK OFFICE
## CERTIFICATE OF CORRECTION

PATENT NO.         : 11,058,667
APPLICATION NO.    : 15/572399
ISSUE DATE         : July 13, 2021
INVENTOR(S)        : Adel Remond Rizkala et al.                          Page 1 of 1

It is certified that error appears in the above-identified patent and that said Letters Patent is hereby corrected as shown below:


On the Title Page, Item [56] REFERENCES CITED:
"WO-2014029848" should read --WO 2014/029848--; and
"aomparison" should read --comparison--.

Column 5:
Line 20, "3-blockers" should read --β-blockers--.

Column 15:
Line 67, "sacubitril Pharmaceutical" should read –sacubitril. ¶Pharmaceutical--.

Column 19:
Line 14, "a-blockers)" should read --α-blockers)--.

Column 20:
Line 46, "thereof with" should read --thereof together with--; and
Line 50, "dose 200" should read --dose of 200--.

Column 21:
Line 16, "< 10 mg" should read --≤ 10 mg--; and
Line 62 "twice daily target dose of 100 mg" should read --twice daily dose of 100 mg--.

Column 22:
Line 16, "< 10 mg" should read --≤ 10 mg--.

MAILING ADDRESS OF SENDER (Please do not use Customer Number below):
Novartis Pharmaceuticals Corp.
One Health Plaza, Bldg. 345
East Hanover, New Jersey 07936

Form PTO/SB/44 (09-07)

U̲NITED S̲TATES P̲ATENT AND T̲RADEMARK O̲FFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 15/572,399 | 11/07/2017 | Adel Remond Rizkala | PAT056901-US-PCT | 1063 |

1095          7590          08/17/2021
NOVARTIS PHARMACEUTICAL CORPORATION
INTELLECTUAL PROPERTY DEPARTMENT
700 Main Street
Cambridge, MA 02139

| EXAMINER |
|---|
| DECK, JASON A |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1627 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 08/17/2021 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

novartis_pair@firsttofile.com
phip.patents@novartis.com

PTOL-90A (Rev. 04/07)

| **Response to the Request for Certificate of Correction** | **Patent No.**<br>11058667 | **Applicant(s)**<br>Rizkala et al. |
|---|---|---|
| | **Issue Date**<br>07/13/2021 | **Docket No.**<br>PAT056901-US-PCT |

This is in response to the request for a Certificate of Correction filed <u>05 August 2021</u>

☑ **Request Approval- In- Part** - Consideration has been given to your request for the issuance of a Certificate of Correction under the provisions of 37 CFR 1.322 and/or 37 CFR 1.323. The Request is improper and approved in part for the reason(s) below:

☐ **Supersede/Vacate** - The Certificate of Correction issued in error, in that error(s) was made in identifying the patent number and/or keying text/corrections. See Other Comments below:

1.  ☐ Assignees' names and addresses (assignment data) printed in a patent, are based solely on information supplied in the appropriate space for identifying the assignment data on the Issue Fee Transmittal Form (PTOL-85b). Any request for a patent to be corrected to state the name of the assignee, must state that the assignment was submitted for recordation as set forth in in 37 CFR 3.11 before issuance of the patent. Petition under 3.81 is to be filed for consideration of correction to assignee. The petition fee set forth in 37 CFR 1.17(i)(1) (currently $140, $70, $35 for large, small and micro entities, respectively.

2.  ☐ The alleged error in _____, is in fact an Amendment and/or Change made by the examiner and considered to be in accordance with the permissible amendments enumerated in the Manual of Patent Examining Procedure (MPEP) Section 1302.04. Applicant did not file objection or amendment under 37 CFR 1.312 prior to payment of the issue fee.

3.  ☐ A petition under CFR 1.182 is required to correct the alleged errors in spelling or order of inventor's names, since inventor's names are printed solely in accordance with the type-written names, and in the order of the type-written names on the Application Data Sheet (ADS). The required fee currently under rule 1.17(f) (small entity $200, large entity $400, micro entity fee $100).

4.  ☐ With respect to the alleged error in changing the inventor name on the patent due to clerical error in ADS/OATH of related patents. The inventors name is printed in accordance with the OATH/ADS submitted at the time of filing the application. However, your attention is directed to C.F.R. 1.324, wherein a request is being made to change, add or delete inventor(s), after issuance of the patent.

5.  ☑ With respect to the alleged error in <u>See Continuation Sheet</u>, comparison of the printed patent with the corresponding location in the application file reveals that there is no discrepancy.

6.  ☐ With respect to 37 CFR 1.72, the title should be brief but technically accurate and descriptive and should contain fewer than 500 characters. Inasmuch as the words new, improved, improvement of, and improvement in are not considered as part of the title of an invention, these words should not be included at the beginning of the title of the invention and will be deleted when the Office enters the title into the Offices computer records, and when any patent issues.

7.  ☐ The fee for correction under 37 CFR 1.323 is set forth in 37 CFR 1.20(a). ☐Partial fee ☐No fee was received with your request. Full fee payment is required before further action is taken on this request.

8.  ☐ With respect to the request for corrected Letters Patent (Grant), corrections to the original Letters Patent are made under the provisions of Rule 1.322(b), not Rule1.323, unless a petition is granted.

9.  ☑ Other Comments: _____

*Further correspondence concerning this matter should be filed and directed to the Certificates of Correction Branch.*

Legal Instrument Examiner:  <u>/VALERIE JACKSON/</u>                     Phone:  <u>(571)272-3423</u>
LIE, ODM

Certificates of Correction Branch email:<u>CustomerServiceCoC@uspto.gov</u>      CoC Central Phone Number: (703)756-1814

*If applicable, information regarding a petition under 37 CFR 1.183 should be directed to the attention of the Commissioner for Patents using the FAX number (571) 273-8300*

**Continuation Sheet (PTO-999)**

**Patent No.** 11058667

Continuation of 5: item (56) the word "aomparison" can not be found in the printed patent. A certificate of correction will be issued to correct the remaining errors noted in your request.

UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

PATENT NO.        : 11,058,667 B2                                 Page 1 of 1
APPLICATION NO.  : 15/572399
DATED             : July 13, 2021
INVENTOR(S)      : Rizkala et al.

It is certified that error appears in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

On the Title Page

Item [56] REFERENCES CITED:
"WO-2014029848" should read --WO 2014/029848--.

In the Specification

Column 5:
Line 20, "3-blockers" should read --β-blockers--.

Column 15:
Line 67, "sacubitril Pharmaceutical" should read --sacubitril. ¶Pharmaceutical--.

Column 19:
Line 14, "a-blockers)" should read --α-blockers)--.

In the Claims

Column 20:
Line 46, "thereof with" should read --thereof together with--; and
Line 50, "dose 200" should read --dose of 200--.

Column 21:
Line 16, "< 10 mg" should read --≤ 10 mg--; and
Line 62, "twice daily target dose of 100 mg" should read --twice daily dose of 100 mg--.

Column 22:
Line 16, "< 10 mg" should read --≤ 10 mg--.

Signed and Sealed this
Thirty-first Day of August, 2021

Drew Hirshfeld
*Performing the Functions and Duties of the*
*Under Secretary of Commerce for Intellectual Property and*
*Director of the United States Patent and Trademark Office*