# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE ENTRESTO (SACUBITRIL/VALSARTAN) PATENT LITIGATION | ) ) ) ) ) |
| | MDL No. 20-2930-RGA |
| | ▮▮▮▮▮▮▮▮▮▮ |
| NOVARTIS PHARMACEUTICALS CORPORATION, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| AUROBINDO PHARMA USA INC., AUROBINDO PHARMA LTD., CRYSTAL PHARMACEUTICAL (SUZHOU) CO., LTD., TORRENT PHARMA INC., TORRENT PHARMACEUTICALS LTD., | ) ) ) ) ) ) ) |
| Defendants. | ) ) |

PUBLIC VERSION FILED: March 3, 2023

C.A. No. 19-1979-RGA

▮▮▮▮▮▮▮▮▮▮

**PLAINTIFF'S REPLY POST-TRIAL BRIEF ON
CRYSTAL PHARMACEUTICAL (SUZHOU) CO., LTD.'S
INFRINGEMENT OF U.S. PATENT NOS. 8,877,938 AND 9,388,134**

## TABLE OF CONTENTS

I.      Introduction ..................................................................................................... 1

II.     Crystal's New Claim Construction Arguments Should Be Rejected ................................. 2

III.    Crystal Failed to Rebut Dr. Matzger's Testing Demonstrating that
        Crystal's API Is a Hemipentahydrate ................................................................. 5

IV.     Crystal's DVS and TGA Testing Do Not Support Crystal's Non-
        Infringement Arguments .................................................................................. 8

V.      Novartis's Assertion of the Separate '918 Patent Is Not Inconsistent with
        Dr. Matzger's Testing Methodology ................................................................. 8

VI.     Crystal Failed to Rebut the Substance of Dr. Rogers's Single Crystal
        Analysis of Form II ........................................................................................ 9

        a.      Dr. Rogers's Chemically Correct Hemipentahydrate Model Is Not
                Statistically Different from Crystal's Model ............................................ 11

        b.      Crystal's Fact Testimony About Dr. Sun's Work Deserves Little to
                No Weight ....................................................................................... 12

VII.    Crystal's '087 Patent Does Not Change that Form II Is a
        Hemipentahydrate .......................................................................................... 13

VIII.   Novartis Applied the Same Standard to Both LCZ696 and Form II ............................... 13

IX.     Form II Is Not a 2.67 Hydrate ......................................................................... 15

X.      Crystal Failed to Rebut Dr. Matzger's ATR-FTIR Testing Demonstrating
        that Crystal Infringes the '938 Patent Claim 3 and '134 Patent Claim 6 ....................... 15

XI.     Conclusion .................................................................................................. 15

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abbott Labs. v. Baxter Pharm. Prods., Inc.*,
   334 F.3d 1274 (Fed. Cir. 2003)................................................................................4

*Biogen Idec., Inc. v. GlaxoSmithKline LLC*,
   713 F.3d 1090 (Fed. Cir. 2013)................................................................................3

*Hoechst Celanese Corp. v. BP Chems. Ltd.*,
   78 F.3d 1575 (Fed. Cir. 1996)................................................................................13

*Omaha Steaks Int'l v. Greater Omaha Packing Co.*,
   908 F.3d 1315 (Fed. Cir. 2018)................................................................................8

*Retractable Techs., Inc. v. Becton, Dickinson & Co.*,
   653 F.3d 1296 (Fed. Cir. 2011)................................................................................2

*Seachange International, Inc. v. C-COR, Inc.*,
   413 F.3d 1361 (Fed. Cir. 2005)................................................................................2

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| '938 patent | U.S. Patent No. 8,877,938 |
| '134 patent | U.S. Patent No. 9,388,134 |
| ANDA | abbreviated new drug application |
| API | active pharmaceutical ingredient |
| Asserted Claims | claims 1, 3, and 11 of the '938 patent and claims 5 and 6 of the '134 patent |
| ATR-FTIR | attenuated total reflection Fourier transform infrared |
| Crystal | Crystal Pharmaceutical (Suzhou) Co., Ltd. |
| Crystal's ANDA | ANDA No. 213605 |
| Crystal's ANDA Products | generic sacubitril/valsartan tablets, 24 mg/26 mg, 49 mg/51 mg, and 97 mg/103 mg described in Crystal's ANDA |
| DFOF | Crystal's Proposed Findings of Fact Regarding Non-Infringement of the '938 and '134 Patents (C.A. No. 20-md-2930-RGA, D.I. 952) |
| D.I. | Docket entries in C.A. No. 20-md-2930-RGA |
| DVS | dynamic vapor sorption |
| FDA | Food and Drug Administration |
| Hi-res TGA | high resolution thermogravimetric analysis |
| NDA | new drug application |
| Novartis | Novartis Pharmaceuticals Corporation |
| Op. Br. | Plaintiff's Opening Post-Trial Brief on Crystal Pharmaceutical (Suzhou) Co., Ltd.'s Infringement of U.S. Patent Nos. 8,877,938 and 9,388,134 (C.A. No. 20-md-2930-RGA, D.I. 918) |
| PFOF | Plaintiff's Proposed Findings of Fact on Crystal Pharmaceutical (Suzhou) Co., Ltd.'s Infringement of U.S. Patent Nos. 8,877,938 and 9,388,134 (C.A. No. 20-md-2930-RGA, D.I. 917) |
| POSA | person of ordinary skill in the art |
| Resp. Br. | Crystal's Responsive Post-Trial Brief Regarding Non-Infringement of the '938 and '134 Patents (C.A. No. 20-md-2930-RGA, D.I. 951) |
| RH | relative humidity |
| TGA | thermogravimetric analysis |
| Tr. | October 12-14 & 17, 2022 trial transcripts (C.A. No. 20-md-2930-RGA, D.I. 909-912, respectively) |
| TSVH | trisodium[3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl)propionate-(S)-3′-methyl-2′-(pentanoyl{2″-(tetrazol-5-ylate)biphenyl-4′-ylmethyl}amino)butyrate] hemipentahydrate |
| | trisodium [sacubitril-valsartan] hemipentahydrate |
| UF | Joint Statement of Uncontested Facts to the Joint Pretrial Order (C.A. No. 20-md-2930-RGA, D.I. 737) |
| w/w | by weight |
| XRPD | X-ray powder diffraction |

ME1 44262038v.1

I.    **Introduction**

Novartis's experts Dr. Matzger and Dr. Rogers demonstrated through direct analytical testing and detailed crystal structure analysis that Crystal's API, called Form II, is a hemipentahydrate. Form II thus infringes the '938 and '134 patents because the Asserted Claims are not limited to one specific crystalline form of TSVH and Crystal does not dispute that Form II meets all the other elements of the Asserted Claims. In a new effort to avoid infringement, Crystal's brief raises arguments seeking to limit the Asserted Claims to only the crystalline form LCZ696. *See* Resp. Br. 37-45; DFOF ¶¶ 15-22. But those attorney arguments do not rebut the strong presumption of claim differentiation, the intrinsic evidence, or Dr. Matzger's testimony from the perspective of a POSA demonstrating that the Asserted Claims are not so limited.

None of Crystal's criticisms of Dr. Matzger's testing rebuts the strong evidence proving that Form II is a hemipentahydrate. Assertions that Dr. Matzger's DVS and TGA "lack [] precision" or are flawed are contradicted by Crystal's and Dr. Friscic's admissions that a combination of these techniques can provide "a good estimate" of the bound water in Crystal's API. Tr. 418:18-419:2 (Friscic); JTX 646 at 3. And Crystal's arguments focusing on the total water content and/or surface water in Crystal's API are irrelevant to whether Crystal's API itself contains 2.5 bound waters.

Crystal also fails to rebut Dr. Rogers's detailed analysis based on known chemistry proving that the only chemically correct structure of Form II is as a hemipentahydrate. Crystal instead focuses on certain statistics in Dr. Rogers's hemipentahydrate model of Form II to argue that it is flawed. But the statistical differences between Crystal's own internal model and Dr. Rogers's model are insignificant and do not rebut the strong evidence that Form II indeed contains 2.5 bound waters.

1

As explained below, none of Crystal's remaining scattershot arguments rebuts the conclusion that Form II is an infringing hemipentahydrate.

## II.   Crystal's New Claim Construction Arguments Should Be Rejected

The weakness of Crystal's non-infringement case is evidenced by its belated post-trial arguments that the Asserted Claims are limited to one specific polymorph. Resp. Br. 37; DFOF ¶¶ 15-22. Having not raised this issue during the claim construction phase of the case without a valid excuse (Tr. 568:2-570:2), and having failed to prove its claim construction through cross-examination of Novartis's expert Dr. Matzger as represented during its opening statement (Tr. 21:10-13), Crystal now relies on attorney arguments that are unsupported.

Crystal does not dispute that the doctrine of claim differentiation strongly indicates that the Asserted Claims are not limited to one specific crystalline form of TSVH. Op. Br. 6. *Seachange* and *Retractable Techs.* on which Crystal relies are inapposite. Resp. Br. 42. In those cases, the patentees themselves limited the claim terms at issue by distinguishing their inventions from the prior art. *Seachange Int'l, Inc. v. C-COR, Inc.* 413 F.3d 1361, 1374 (Fed. Cir. 2005); *Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1305 (Fed. Cir. 2011). Here, Crystal has pointed to no statement in the specification or prosecution histories of the '938 and '134 patents where Novartis argued that the Asserted Claims should be so limited.

Crystal's new argument that the Asserted Claims should be limited in view of the specification's single statement that the invention "can be in the crystalline … or polymorphous form" is wholly unsupported. Resp. Br. 38 (quoting JTX 5 at 16:60-64); DFOF ¶¶ 15-17. No expert testified from the perspective of the POSA in support of Crystal's argument. To the contrary, Dr. Matzger explained that a POSA would recognize that, in both the claims and specification, when Novartis sought to limit TSVH to one specific crystalline form, the patents do so by referencing data specific to that crystalline form. *See* Op. Br. 5-6; PFOF ¶¶ 16, 27-28.

That such data is not recited in the Asserted Claims clearly shows that those claims are not limited to one specific crystalline form. Op. Br. 6.

Crystal's argument based on the specification's statement that "the invention **relates to** [TSVH], a crystalline solid which is characterized by [specific single crystal and XRPD data]" fails for the same reason. Resp. Br. 38 (quoting JTX 5 at 18:37-43) (emphasis added). Judge Stark previously rejected the argument that the "relates to" passage above limits the claims of the '134 patent, finding that passage is neither a definition of TSVH nor, in "the view of a POSA," a disclaimer. D.I. 294 at 9-10. Indeed, no expert testified that a POSA would read that passage to limit the Asserted Claims to one specific crystalline form.

Crystal's citations to the restriction requirement in the '134 prosecution history (Resp. Br. 39-45) do not fare better, as they were rebutted by Dr. Matzger during his cross-examination. Dr. Matzger explained that the Examiner's references to "LCZ696" during the '134 patent prosecution would be understood by a POSA as shorthand for the **compound** TSVH, not the specific crystalline form of LCZ696. Op. Br. 7; PFOF ¶ 30.[1] Consistent with Dr. Matzger's testimony, the Examiner repeatedly referenced the "**compound** LCZ-696," not the "crystalline form" LCZ696. JTX 8 at 3793 ("[TSVH] (i.e., the **compound** LCZ-696)"), 3794 ("The **compound** claimed is narrow, drawn to a single supramolecular **compound**, LCZ-696 ....") (emphases added). Because the Examiner did not limit the claims to the specific "crystalline form" of LCZ696, Novartis had no reason to contest the Examiner's characterization of the claimed "compound." Crystal's reliance on *Biogen Idec., Inc. v. GlaxoSmithKline LLC*, 713 F.3d 1090, 1095 (Fed. Cir. 2013), a case in which "it [was] clear that [the applicants] were limiting

---

[1] Crystal itself refers to "LCZ696 Form II," demonstrating that POSAs sometimes use "LCZ696" as shorthand for a compound, and not a specific crystalline form. Tr. 162:3–11 (Matzger).

their invention" in response to the examiner's rejection (*id.* at 1096), thus is inapposite. Resp. Br. 41-42.

Crystal also takes Novartis's response to the Examiner's restriction requirement in the '134 patent prosecution out of context. Resp. Br. 39-40. Novartis stated that the "forms [identified by the Examiner] all represent the ***same compound***" and "do not represent ***distinct*** forms" in response to the Examiner's requirement that Novartis elect "***patentably indistinct*** species." JTX 8 at 3718, 3769 (emphases added). That the claims recite "patentably indistinct species" is not a clear disavowal limiting "the claims … all to a single form" as Crystal asserts. Resp. Br. 40; *see* Op. Br. 7.

Further, Crystal asserts for the first time that the Karpinski Declaration in the prosecution histories "related only to, LCZ696, not to polymorphic forms." Resp. Br. 41. But no expert testified that a POSA would understand the Declaration that way. And contrary to Crystal's assertion (Resp. Br. 41), Novartis does dispute Crystal's characterization of the Declaration because the Declaration refers only to the "compound" TSVH; it nowhere refers to a crystalline form. *See* Tr. 139:19-140:6 (Matzger) (explaining that the Karpinski Declaration referred only to "compounds"); PTX 6A at 2611.

In a final attempt to limit the Asserted Claims to one specific crystalline form, Crystal cites for the first time a European Patent Office submission, which was filed with an information disclosure statement ("IDS") during the '134 patent prosecution. Resp. Br. 43-44 (citing JTX 8 at 3508-16). No expert has addressed this European submission. Contrary to Crystal's assertion, "mere submission of an IDS to the USPTO does not constitute the applicant's admission that any reference in the IDS is material …." *Abbott Labs. v. Baxter Pharm. Prods., Inc.*, 334 F.3d 1274, 1278-79 (Fed. Cir. 2003). But even if the Court were to consider the European submission,

Novartis therein stated only that it believed "LCZ696 … is monomorphic" because at that time it had not observed LCZ696 converting to other polymorphs. JTX 8 at 3511-12. The bare statement that LCZ696 does not convert to a different polymorph, *e.g.*, during manufacture, does not justify narrowing the Asserted Claims, particularly in view of the robust intrinsic evidence to the contrary and when Crystal has presented no expert testimony as to how a POSA would understand Novartis's statement in foreign prosecution.

### III.    Crystal Failed to Rebut Dr. Matzger's Testing <u>Demonstrating that Crystal's API Is a Hemipentahydrate</u>

Crystal's criticisms do not undercut the validity and weight of Dr. Matzger's testing showing that Form II is a hemipentahydrate.

*First*, Crystal asserts that "TGA and DVS lack the precision" to distinguish between 2.5 and 2.6 or 2.67 waters (Resp. Br. 28) even though Dr. Matzger's controlled humidity TGA and DVS results are within less than 0.1% of the theoretical 4.7% for a hemipentahydrate. Op. Br. 12-14. But the scientific literature and Dr. Friscic agree that amounts measured by TGA within about 0.2% of the theoretical 4.7% correspond to a hemipentahydrate. PFOF ¶ 110; *see also* DFOF ¶ 63 (concluding that amounts measured by TGA within ± 0.3% of the theoretical value are "consistent with the water content of a trihydrate"). For Dr. Matzger's results to support Crystal's alleged 2.67 waters, Crystal would need proof that TGA has an error range up to 0.4%, which is not supported by any literature. Resp. Br. 28; DFOF ¶ 143. Further, Dr. Matzger explained that 2.6 waters would not be "particularly sensible from a whole number standpoint," which testimony was unrebutted. Tr. 34:20-35:3, 201:18-202:24 (Matzger).

*Second*, contrary to Crystal's assertion that bound water was lost above 2% RH in Dr. Matzger's DVS or controlled humidity TGA (Resp. Br. 32-33), Crystal did not dispute that its own documents report that 2% RH is the point with "***all the bound water*** and without adsorbed

[or surface] water." JTX 646 at 3 (emphasis added); JTX 617 at 1, 3; PFOF ¶¶ 65, 101-02. Dr.

Friscic's assertion that the total weight loss at each decreasing RH percentage would decrease if

only surface water is removed is not supported by any scientific literature. *Contra* DFOF ¶ 170.

Even if a small amount of bound water (less than 0.03% w/w) is lost above 2% RH, Crystal did

not dispute that such a small amount has no impact on the calculation of bound water. PFOF ¶

105. Crystal's further assertion that Dr. Matzger's DVS is unreliable—because his instrument

allegedly was not at 2% RH, and water was still being lost after two minutes during the 2% RH

step—is unsupported by any expert testimony or evidence and was rebutted by Dr. Matzger on

cross-examination. Resp. Br. 32; *see* Tr. 207:2-15 (Matzger) (explaining the DVS manufacturer

advises using the RH set by the instrument, not the sensor, at low RH), 210:1-20 (Matzger)

(explaining there is "some delay between changing the humidity and then observing the change"

in RH).

   *Third*, Crystal's assertions that Dr. Matzger allegedly mishandled the API samples due to

differences in **total** water (Resp. Br. 29-30, 32-33) are unsupported because the differences in

total water were due to differences in **surface** water, which can vary by up to about 1.7% w/w

between 2% and 50% RH. PFOF ¶ 45. Those assertions also are irrelevant because bound water,

not total water, is what matters to this infringement inquiry. *See* Op. Br. 7-8; PFOF ¶ 13. Dr.

Matzger demonstrated, and Dr. Friscic admitted, that no significant bound water is lost above 2%

RH. Op. Br. 12-14, 17-18; PFOF ¶¶ 101-02; *see also* PFOF ¶¶ 80, 104 (explaining Crystal's API

does not gain or lose bound water under normal laboratory conditions, *i.e.*, between about 20%

to 40% RH); Tr. 219:7-221:21 (Matzger) (explaining that in his controlled humidity TGA

experiments, the samples had less surface water and thus less total water because those

6

experiments used an open pan where "there can be some dehydration of the sample prior to collecting the data").

*Fourth*, Crystal's assertion that bound water was lost during the isothermal period of Dr. Matzger's Hi-res TGA ignores the data. Resp. Br. 31. Crystal did not dispute that only a single water loss event was observed during the isothermal period. PFOF ¶ 96. That single water loss event corresponded to surface water because the microenvironment inside the pinhole pan was humidified, *i.e.*, it was not at 0% RH. PFOF ¶ 98. Contrary to Crystal's assertion that there is no evidence that the RH in the pinhole pan "was at a level where bound water was not lost" (Resp. Br. 31), Dr. Matzger's controlled humidity TGA and DVS confirm that no bound water was lost during the Hi-res TGA isothermal period. PFOF ¶ 100. As Dr. Friscic admitted, no significant bound water is lost above 2% RH, and below 2% RH only about 4.7% w/w bound water is lost corresponding to a hemipentahydrate. PFOF ¶¶ 62-66, 73, 101-02.

*Fifth*, contrary to Crystal's assertion that Dr. Matzger "did not analyze the actual raw data" (Resp. Br. 28-29), Dr. Matzger explained that the charts and graphs he prepared and analyzed "are the data." Tr. 210:21-23 (Matzger). Crystal has shown no difference between the data in Dr. Matzger's charts or graphs and the "raw data" for his TGA and DVS tests.

*Sixth*, faced with Dr. Matzger's compelling test results, Crystal resorts to complaining about Dr. Matzger conducting expert testing during the expert discovery period. Resp. Br. 27. Crystal waived any complaint about timing by not raising this allegation earlier, and the timing of Dr. Matzger's testing is irrelevant to the fact that it shows that Form II is a hemipentahydrate.

*Last*, Dr. Matzger did not ignore the single crystal data. Resp. Br. 26. He relied on Dr. Rogers's analysis of that data, which demonstrated that Crystal's API is a hemipentahydrate consistent with Dr. Matzger's own testing. Tr. 38:24-39:20, 122:15-24 (Matzger); Op. Br. 22-30.

IV.     **Crystal's DVS and TGA Testing Do Not**
        **Support Crystal's Non-Infringement Arguments**

Crystal failed to rebut the flaws in its own DVS and TGA testing. *Contra* Resp. Br. 6-7.

Neither Crystal nor Dr. Friscic disputed that: (1) failing to properly equilibrate the samples that

Crystal tested by DVS and TGA would lead to an overestimate of bound water; (2) the water loss

in Dr. Matzger's DVS using a more stringent equilibration criteria was greater than in Crystal's

DVS; (3) Crystal exposed its TGA samples to laboratory conditions where the samples could

take on more surface water than the DVS samples; or (4) the total amount of water lost by TGA

was consistent with Crystal's samples being exposed to 25% to 40% RH, not 5% RH. Op. Br.

20-21. These undisputed facts demonstrate the flaws in Crystal's tests, which, accordingly, do

not support the conclusion that Form II is a trihydrate, as opposed to a hemipentahydrate.

V.      **Novartis's Assertion of the Separate '918 Patent Is Not**
        **Inconsistent with Dr. Matzger's Testing Methodology**

Crystal reaches beyond the bounds of judicial notice by making new, unsupported

arguments based on Novartis's assertion of the '918 patent in a separate case. Resp. Br. 34-35;

*see Omaha Steaks Int'l v. Greater Omaha Packing Co.*, 908 F.3d 1315, 1323-24 (Fed. Cir. 2018)

(holding that factual assertions based on complaints filed in other cases do not meet the

requirements for judicial notice). The Court should not consider them. These arguments also lack

any factual basis. Contrary to Crystal's assertion that Novartis has alleged "up to 10%

amorphous material" is present in its API (DFOF ¶¶ 186-190), ███████████████████████

████████████████████████████████████████████ *See also* C.A. No. 22-

1395-RGA, D.I. 1, ¶ 126 (asserting that amorphous API is present in Crystal's ANDA Products

in "an amount ***less*** than 10% by weight of the total amount of API" (emphasis added)). Even if

████████████████ were also present in Crystal's API samples that Dr. Matzger tested, those

amounts would not change Dr. Matzger's determination of bound water (*e.g.*, ███████████

8

████████████████████████████████ Novartis's '918 patent

allegations are not inconsistent with and do not absolve Crystal of its infringement of the '938

and '134 patents.

## VI.    Crystal Failed to Rebut the Substance of Dr. Rogers's Single Crystal Analysis of Form II

In the field of crystallography, if there is disagreement between a single crystal structure

and chemistry, chemistry prevails. PFOF ¶¶ 136, 152. Crystal has failed to rebut Dr. Rogers's

chemistry-based explanations for why the OW1, OW3 and OW8 water molecules in Form II are

each at half occupancy, thereby making Form II a hemipentahydrate. PFOF ¶ 147.

Dr. Rogers provided two independent explanations for why **OW1** is at half occupancy.

*First*, OW1 is at half occupancy because it is hydrogen-bonded to OW7 only in 50% of

the asymmetric units in which OW7 is at position OW7A. Op. Br. 25-26; PFOF ¶ 164. There is

no reason for OW7 to be disordered, and at position OW7B, if OW1 were present at full

occupancy. Op. Br. 25-26; PFOF ¶ 164. Crystal does not mention—much less rebut—this

explanation of OW1's half occupancy. And Crystal's arguments about Na-O bond distances and

Gagné (Resp. Br. 18-20) are irrelevant to this explanation, which is based on hydrogen bonds,

not Na-O bonds.

*Second*, OW1 is at half occupancy because it cannot be present in 50% of the asymmetric

units in which the sodium atom Na8 is at position Na8A. Op. Br. 24-25; PFOF ¶¶ 154-156.

Although Crystal notes that the Cambridge Structural Database and Inorganic Crystal Structure

Database include Na-O bonds of 1.8-2.2 Å, similar to the 2.080 Å distance between OW1 and

Na8A (Resp. Br. 18-20), Crystal does not dispute that such bonds are outliers, which the

literature indicates are not reasonable, and Crystal failed to demonstrate the existence of any 1.8-

2.2 Å Na-O bond in any crystal structure resembling Form II. PFOF ¶¶ 159-161.

Dr. Rogers explained that **OW3** is at half occupancy because there is no other nearby sodium atom to bind OW3 when Na8 is at position Na8A in 50% of the asymmetric units. Op. Br. 26; PFOF ¶ 168. Crystal does not dispute that Na8 at position Na8A is too far to bind OW3, and Crystal does not identify any atom that binds OW3 when Na8 is at position Na8A. Crystal instead speculates that when Na8 is at position Na8A, OW3 "sit[s] in a cavity within the structure held in place by other weaker interactions" and "wiggle[s]" there. Resp. Br. 20. But that speculation only serves to emphasize Crystal's failure to identify any atom that binds, or forms a "weaker interaction" with, OW3 when Na8 is at position Na8A. Put simply, Crystal all but agrees with Dr. Rogers that OW3 is ***not*** bound within the structure of Form II when Na8 is at position Na8A. As a result, OW3 must be present at half occupancy.

Dr. Rogers provided two independent explanations for why **OW8** is at half occupancy.

*First*, OW8 must be at half occupancy because if it were at full occupancy, the OW8 water molecules in adjacent asymmetric units would be only 3.002 Å apart, leaving insufficient room for the hydrogen atoms of those adjacent OW8 water molecules. PFOF ¶ 174. Crystal instead asserts that an "OW8-O329" distance of "3.002 Å" is not unrealistically short for the "hydrogen bonds associated with OW8." Resp. Br. 21. However, there is no OW8-O329 distance of 3.002 Å. 3.002 Å is the distance between adjacent OW8 water molecules at full occupancy (PFOF ¶ 174), and Crystal does not dispute that 3.002 Å is insufficient to accommodate the hydrogen atoms of adjacent OW8 water molecules if OW8 were present at full occupancy.[2] Crystal has no rebuttal for this explanation for why OW8 must be at half occupancy.

---

[2] Crystal's assertion that 3.002 Å can accommodate two adjacent oxygen atoms (Resp. Br. 21; DFOF ¶ 121) ignores that each OW8 water molecule consists also of two hydrogen atoms, in addition to an oxygen atom.

*Second*, OW8 is at half occupancy because OW8 at full occupancy gives rise to a chemically impossible configuration in which Na10 blocks the hydrogen bond between OW8 and the O329 oxygen atom. PFOF ¶ 175. Crystal does not dispute that OW8 at full occupancy gives rise to a configuration in which Na10 blocks the OW8-O329 hydrogen bond. Crystal instead speculates that hydrogen bonds can "ben[d]" around obstacles like Na10 (Resp. Br. 21), without explanation or citing any literature to show this is possible. By contrast, Dr. Rogers detailed how Na10 at full occupancy blocks the OW8-O329 hydrogen bond and why that configuration is chemically impossible, supporting his conclusion that OW8 must be at half occupancy. PFOF ¶ 175.

### a.    Dr. Rogers's Chemically Correct Hemipentahydrate Model Is Not Statistically Different from Crystal's Model

In attempting to denigrate Dr. Rogers's chemically correct model of Form II, Crystal improperly elevates statistics over chemistry. PFOF ¶¶ 177, 152. Crystal persists in arguing that the statistics for Dr. Rogers's model are significantly worse than those for Crystal's model. Resp. Br. 23-25. But as Crystal itself observes, the only change Dr. Rogers made to Crystal's model was to correct the occupancies of three water molecules out of the 400-plus atoms in Form II.[3] Resp. Br. 12-13. That change did not significantly alter the statistics, which is why the R-factor (0.12, rounded to two decimal places) and goodness-of-fit (2.1, rounded to one decimal place) statistics for both Dr. Rogers's and Crystal's models are essentially the same. PFOF ¶¶ 178-182; *see also* Tr. 381:21-382:4 (Friscic) (admitting that the differences in the R-factor and goodness-of-fit can be "ignore[d]"). Dr. Friscic admits an R-factor of 0.12 is "extremely reasonable" for

---

[3] Crystal faults Dr. Rogers for "manually" determining the occupancies of OW1, OW3 and OW8, rather than letting the software do so. Resp. Br. 3, 8, 14-16, 21-22. But the job of the crystallographer is not simply to run software; the crystallographer must ensure that the structure generated by the software is chemically correct. Tr. 445:5-22, 485:18-486:6 (Rogers); JTX 736 at 52; JTX 708 at 234. That is what Dr. Rogers did.

11

Form II. PFOF ¶ 180.

Crystal leans heavily on the max shift/esd statistic to argue that Dr. Rogers's model failed to fully refine. Resp. Br. 23-25. But Crystal admits that the max shift/esd statistic in Dr. Rogers's model is attributable to just one thermal parameter for just one carbon atom, C374, out of 400-plus atoms. *Id.* at 24. Dr. Rogers testified that that one thermal parameter for that one carbon atom is unrelated to the occupancies of OW1, OW3, and OW8 in Form II. PFOF ¶ 184. And Dr. Rogers further testified that the ***mean*** shift/esd statistic for his model—which averages all shift/esd values for all 400-plus atoms and 1100-plus parameters in Form II—is only 0.016, thus indicating that his model is fully refined. PFOF ¶ 183. Crystal does not mention—much less rebut—Dr. Rogers's mean shift/esd testimony.

Crystal also wrongly asserts that Dr. Rogers admitted that the thermal parameter statistics for OW1 and OW8 and the associated thermal ellipsoids "worsened" in his model. Resp. Br. 15-17. To the contrary, Dr. Rogers testified that the overall $U_{eq}$ thermal parameters for OW1 and OW8 in his model "did get better," and that the reason the thermal ellipsoids became more cigar- or disc-shaped in his model was because the thermal parameters for OW1 and OW8 improved in his model. Tr. 515:11-18 (Rogers); PFOF ¶ 189.[4]

**b.    Crystal's Fact Testimony About
        Dr. Sun's Work Deserves Little to No Weight**

To counter Dr. Rogers's expert testimony, Crystal invokes the fact testimony of its corporate witness, Mr. Wang, concerning Dr. Sun's work on Form II. Resp. Br. 7-10, DFOF ¶¶

---

[4] Crystal argues that, because reducing occupancy always reduces thermal parameters, the reduction in Dr. Rogers's model of OW1's and OW8's thermal parameters does not signal improvement. Resp. Br. 15-16. Crystal misses the point. Chemistry dictates that OW1 and OW8 be at half occupancy and Dr. Rogers reduced the occupancy of OW1 and OW8 to match chemistry, which in turn had the effect of reducing their thermal parameters. Tr. 497:5-19, 512:5-25 (Rogers). Contrary to Crystal's suggestion, Dr. Rogers did not arbitrarily reduce the occupancies of OW1 and OW8 with the aim of reducing their thermal parameters.

12

70-78. But Dr. Wang's testimony about Dr. Sun's work is hearsay, non-expert testimony about expert subject matter. Even if the Court were to overlook those limitations, the substance of the testimony casts doubt on the reliability of Dr. Sun's work. Mr. Wang admitted that Crystal's single crystal reports, based on Dr. Sun's work, contain multiple inconsistencies. Tr. 257:6-259:4, 263:1-13, 264:6-265:2 (Wang). Dr. Rogers explained that those inconsistencies are precisely why a crystallographer would not accept, at face value, their conclusion that Form II is a trihydrate. Tr. 446:18-448:5 (Rogers). Moreover, there is no evidence that Dr. Sun—like Dr. Rogers—analyzed the effects of the disorder of OW7, Na8 and Na10 on the occupancies of OW1, OW3 and OW8. Thus, Dr. Wang's testimony about Dr. Sun's work should be accorded little to no weight and does not rebut Dr. Rogers's explanations for why OW1, OW3 and OW8 are at half occupancy in Form II.

### VII.   Crystal's '087 Patent Does Not Change that Form II Is a Hemipentahydrate

That Crystal obtained a patent on Form II by representing to the Patent Office that Form II is a trihydrate is irrelevant. Resp. Br. 9; Tr. 335:23-338:5 (Court) (noting the likely lack of relevance of whether the Patent Office allowed the '087 patent); *see also Hoechst Celanese Corp. v. BP Chems. Ltd.*, 78 F.3d 1575, 1582 (Fed. Cir. 1996) ("The fact of separate patentability presents no legal or evidentiary presumption of noninfringement ...."). The Examiner of the '087 patent did not have the benefit of Dr. Matzger's TGA and DVS data, the single crystal data, or Dr. Rogers's analysis.

### VIII.   Novartis Applied the Same Standard to Both LCZ696 and Form II

Crystal asserts that Novartis applied "completely different" standards to determine the hydrate water content of LCZ696 and Form II. Resp. Br. 2, 13-14, 35-37. While Novartis's internal testing of LCZ696 is irrelevant to whether Form II is a hemipentahydrate, that testing is consistent with Novartis's proof that Form II is a hemipentahydrate. For both LCZ696 and Form

13

II, Novartis relied on TGA and single crystal data to determine bound water content. JTX 355 at 22; PFOF ¶¶ 47-78, 131-189. Novartis concluded that its LCZ696 TGA data support the crystallographic finding that LCZ696 is a hemipentahydrate. JTX 355 at 22. Likewise, Dr. Matzger's Form II TGA data here support Dr. Rogers's crystallographic finding that Form II is a hemipentahydrate. PFOF ¶¶ 47-78, 131-189. And the R-factor for the solved LCZ696 hemipentahydrate single crystal structure is 0.12. JTX 355 at 20. Here, the R-factor for Dr. Rogers's chemically correct Form II hemipentahydrate single crystal structure also is 0.12. PFOF ¶ 179. Novartis thus applied the same standards to both LCZ696 and Form II.

If there has been any inconsistency in the treatment of LCZ696 and Form II, it instead lies with Crystal. Dr. Rogers showed in detail how the large ellipsoids and incorrect bond distances and angles in Form II affect the bound water content of Form II and compel the conclusion that Form II is a hemipentahydrate. PFOF ¶¶ 149, 156-157, 168-169, 174-175. By contrast, Crystal's expert failed to show how such large ellipsoids and incorrect bond distances and angles in LCZ696 (JTX 355 at 19-20) would compel a conclusion that LCZ696 is not a hemipentahydrate.[5] Rather, it is undisputed that LCZ696 is a hemipentahydrate. UF at 21, ¶ 38.

Last, contrary to Crystal's suggestion (Resp. Br. 12-13), the fact that LCZ696 and Form II are different polymorphs does not mean that Form II cannot also be a hemipentahydrate. Dr. Rogers explained, with examples from scientific literature, that different polymorphs with different unit cells can have the same hydrate water content. PFOF ¶ 190; JTX 731 at 958; *see also* Tr. 42:8-14 (Matzger). And Crystal agrees that hydrates can have different crystalline arrangements, yet contain the same amount of hydrate water. DFOF ¶ 25.

---

[5] Novartis attributed the presence of large ellipsoids and incorrect bond distances and angles in LCZ696 to the disorder in the five-carbon side chain of valsartan (JTX 355 at 19-20)—not to the occupancies of LCZ696's water molecules.

## IX.    Form II Is Not a 2.67 Hydrate

In a final attempt to avoid infringement, Crystal argues that Form II may be a 2.67 hydrate. Resp. Br. 1, 11, 27-28. That argument should be rejected. *First*, there is no expert testimony that Form II is a 2.67 hydrate. *Second*, Mr. Wang's fact testimony that Form II readily loses one water molecule—OW7—to form a 2.67 hydrate did not go "unchallenged." Resp. Br. 8; DFOF ¶ 78. That testimony was squarely rebutted by Dr. Rogers's expert testimony that OW7 is locked in place by three hydrogen bonds and therefore is strongly held. PFOF ¶ 166. *Third*, Drs. Matzger and Rogers have proven by a preponderance of evidence that Form II is a hemipentahydrate, not a 2.67 hydrate.

## X.    Crystal Failed to Rebut Dr. Matzger's ATR-FTIR Testing Demonstrating that Crystal Infringes the '938 Patent Claim 3 and '134 Patent Claim 6

Crystal's reliance on the FTIR testing in the Form II DMF is misplaced because it is undisputed that the DMF reports KBr-FTIR, which is a different IR technique than ATR-FTIR and leads to a shift in bands. Tr. 148:11-149:12 (Matzger); PTX 717A at 2; JTX 691 at 2. Crystal also did not dispute that Dr. Friscic applied a correction to his ATR-FTIR results, which Dr. Matzger explained causes a shift in bands. PFOF ¶ 194. Whether Dr. Matzger alleged Mylan's or Zydus's API, which came from different defendants packaged under different conditions, is characterized by the claimed ATR-FTIR bands does not negate Dr. Matzger's ATR-FTIR results on Crystal's API. *Contra* Resp. Br. 45. Crystal thus has failed to rebut infringement of '938 patent claim 3 and '134 patent claim 6.

## XI.    Conclusion

For the foregoing reasons, Novartis has proven by preponderance of the evidence that Crystal's API is a hemipentahydrate and Crystal will infringe each of the Asserted Claims.

McCarter & English, LLP

Dated: February 24, 2023

/s/ Daniel M. Silver
Daniel M. Silver (#4758)
Alexandra M. Joyce (#6423)
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, Delaware 19801
(302) 984-6300
dsilver@mccarter.com
ajoyce@mccarter.com

Nicholas N. Kallas
Christina Schwarz
Jared L. Stringham
Christopher E. Loh
Susanne L. Flanders
Shannon Clark
Laura Fishwick
Gregory J. Manas
Venable LLP
1290 Avenue of the Americas
New York, New York 10104
(212) 218-2100
nkallas@venable.com
cschwarz@venable.com
jlstringham@venable.com
cloh@venable.com
slflanders@venable.com
skclark@venable.com
lfishwick@venable.com
gjmanas@venable.com

*Attorneys for Plaintiff Novartis*
*Pharmaceuticals Corporation*

16

## <u>CERTIFICATE OF SERVICE</u>

The undersigned counsel hereby certifies that true and correct copies of the foregoing document were caused to be served on February 24, 2023 on the following counsel in the manner indicated below.

### <u>VIA EMAIL:</u>

Dominick T. Gattuso
HEYMAN ENERIO GATTUSO & HIRZEL LLP
300 Delaware Ave., Suite 200
Wilmington DE, 19801
302-472-7311
dgattuso@hegh.law

Scott A. Cunning II
Elizabeth M. Crompton
PARKER POE ADAMS & BERNSTEIN, LLP
1400 K Street NW, Suite 1000
Washington, DC 20005
(202) 434-9100
scottcunning@parkerpoe.com
elizabethcrompton@parkerpoe.com

C. Kyle Musgrove
PARKER POE ADAMS & BERNSTEIN, LLP
620 South Tryon Street, Suite 800
Charlotte, NC 28202
(704) 372-9000
kylemusgrove@parkerpoe.com

*Attorneys for Defendant Crystal Pharmaceutical (Suzhou) Co., Ltd.*

Dated: February 24, 2023

*/s/ Daniel M. Silver*
Daniel M. Silver (#4758)

ME1 44262105v.1