IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re Entresto (Sacubitril/Valsartan) Patent Litigation | C.A. No. 20-2930-RGA |
| NOVARTIS PHARMACEUTICALS CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> CRYSTAL PHARMACEUTICAL (SUZHOU) CO., LTD., <br><br> Defendant. | C.A. No. 21-1452-RGA |
| NOVARTIS PHARMACEUTICALS CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> HETERO USA INC., HETERO LABS LIMITED, HETERO LABS LIMITED UNIT III, <br><br> Defendants. | C.A. No. 21-1760-RGA |
| NOVARTIS PHARMACEUTICALS CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> MYLAN PHARMACEUTICALS INC., <br><br> Defendant. | C.A. No. 22-451-RGA |

| | |
|---|---|
| NOVARTIS PHARMACEUTICALS CORPORATION,<br><br>       Plaintiff,<br><br>       v.<br><br>TORRENT PHARMA INC., TORRENT PHARMACEUTICALS LTD.,<br><br>       Defendants. | C.A. No. 21-1794-RGA |

**DEFENDANTS' NOTICE OF DEPOSITION TO PLAINTIFF NOVARTIS PHARMACEUTICALS CORPORATION PURSUANT TO FED. R. CIV. P. 30(b)(6)**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, the applicable Local Civil Rules of the United States District Court for the District of Delaware, and the Court's Scheduling Order (ECF No. 749 in C.A. No. 20-2930), Defendants Crystal Pharmaceutical (Suzhou) Co., Ltd. ("Crystal Pharma"); Hetero USA Inc., Hetero Labs Limited, and Hetero Labs Limited Unit III (collectively, "Hetero"); Mylan Pharmaceuticals Inc. ("Mylan"); and Torrent Pharma Inc. and Torrent Pharmaceuticals Ltd. (collectively, "Torrent" and collectively with Crystal Pharma, Hetero, and Mylan "Defendants") by and through their attorneys, will take the deposition upon oral examination of Plaintiff Novartis Pharmaceuticals Corporation ("Novartis") at a mutually agreed upon date, time, and location by the parties and continuing from day to day thereafter until completed. The deposition will be recorded by stenographic means, videotaped, and transcribed using real time interactive transcription such as LiveNote. The deposition will be taken for the purposes of discovery, for use at trial in these actions, and for any

2

purposes permitted under the Federal Rules of Civil Procedure. You are invited to attend and participate as provided by the Federal Rules of Civil Procedure.

Pursuant to Fed. R. Civ. P. 30(b)(6), Novartis shall designate one or more knowledgeable persons to testify on its behalf with respect to the matters set forth in Schedule A attached hereto, and the person(s) so designated shall be required to testify as to those matters known or reasonably available to Novartis. Novartis shall identify in writing each deponent who shall be designated to testify on its behalf at least ten (10) business days in advance of the deposition, including which portion(s) of this Notice each deponent is prepared to address.

Dated: May 5, 2023

/s/ Dominick T. Gattuso
Dominick T. Gattuso (#3630)
HEYMAN ENERIO GATTUSO & HIRZEL LLP
300 Delaware Avenue, Suite 200
Wilmington, DE 19801
(302) 472-7311
dgattuso@hegh.law

OF COUNSEL:

Elizabeth M. Crompton
Scott A. Cunning, II
PARKER POE ADAMS & BERNSTEIN, LLP
1400 K Street, NW
Suite 1000
Washington, DC 20005
(202) 434-9100
elizabethcrompton@parkerpoe.com
scottcunning@parkerpoe.com

C. Kyle Musgrove
PARKER POE ADAMS & BERNSTEIN, LLP
620 South Tryon Street, Suite 800
Charlotte, NC 28202
(704) 372-9000
kylemusgrove@parkerpoe.com

/s/ David A. Taylor
Neal C. Belgam (#2721)
Daniel A. Taylor (# 6934)
SMITH, KATZENSTEIN, & JENKINS LLP
1000 West Street, Suite 1501
Wilmington, DE 19801
(302) 652-8400
nbelgam@skjlaw.com
dtaylor@skjlaw.com

OF COUNSEL:

Dmitry V. Shelhoff
Kenneth S. Canfield
Edward D. Pergament
PERGAMENT & CEPEDA LLP
89 Headquarters Plaza
North Tower, 14th Floor
Morristown, NJ 07960
(973) 998-7722
kcanfield@pergamentcepeda.com
dshelhoff@pergamentcepeda.com
epergament@pergamentcepeda.com

*Attorneys for Defendants Hetero USA Inc., Hetero Labs Limited, Hetero Labs Limited*

*Attorneys for Defendant Crystal Pharmaceutical (Suzhou) Co., Ltd.*

*Unit III, Torrent Pharma Inc. and Torrent Pharmaceuticals Ltd.*

*/s/ David Ellis Moore*
David Ellis Moore (#3983)
Bindu Ann George Palapura (#5370)
POTTER ANDERSON & CORROON, LLP
1313 N. Market St., Hercules Plaza, 6th Flr.
P.O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com

OF COUNSEL:

Robert L. Florence
PARKER POE ADAMS & BERNSTEIN LLP
1075 Peachtree Street, N.E.
Suite 1800
Atlanta, GA 30309
(678) 690-5750
robertflorence@parkerpoe.com

Tasneem A. Dharamsi
PARKER POE ADAMS & BERNSTEIN LLP
110 East Street, Suite 200
Greenville, SC 29601 (864) 577-6370
tasneemdharamsi@parkerpoe.com

*Attorneys for Defendant Mylan Pharmaceuticals Inc.*

# SCHEDULE A

## DEFINITIONS

Defendants incorporate by reference the Definitions set forth in Defendants' First Set of Joint Requests for the Production of Documents and Things (Nos. 1-108) to Plaintiff, dated September 17, 2020, in MDL No. 20-2930-RGA. Defendants also incorporate by reference, as if fully set forth herein, the Definitions set forth in Defendants' First Set of Joint Requests for the Production of Documents and Things (Nos. 1-44) to Plaintiff, dated November 14, 2022, in MDL No. 20-2930-RGA, and in Defendants' Second Set of Joint Requests for the Production of Documents and Things (Nos. 45-56) to Plaintiff, dated April 11, 2023, in MDL No. 20-2930-RGA.

In addition, Defendants further define the following terms:

1. "DMF" means Drug Master File.

2. The term "This Lawsuit" or "Present Lawsuit" means the cases captioned above.

## DEPOSITION TOPICS

1. Novartis's IND, Novartis's NDA, and all DMFs referenced therein, and all communications with FDA or any other government or regulatory agency regarding the foregoing.

2. All facts relating to the filing and prosecution of the '667 patent and Related Applications or Patents, including any communications with USPTO regarding the foregoing.

3. Identification of the facts, including the date, location, and circumstances, surrounding the alleged conception, the reduction to practice, and the alleged diligence in reducing to practice each of the alleged inventions claimed in the '667 patent, including the identification of all corroborating evidence of such alleged conception, reduction to practice, and diligence.

4. The specifications of the '667 patent, including the text, figures, tables, data, examples, and experiments contained or referred to therein, including the experimental conditions, testing methodology, and the preparation of samples, and the underlying documents that relate to these items in the specifications.

5. Research, development, and testing of any alleged invention claimed in the '667 patent, and all related documents and communications, including but not limited to: research and/or development agreements and contracts, research notebooks, laboratory notebooks, correspondence, invention disclosures, minutes of technical meetings, analyses, studies, experiments, tests, reports, sketches, interview reports or summaries, any description of tests, any preclinical work, any clinical data, and any summaries, results, or conclusions reached from such tests.

6. Research and development conducted by Novartis related to developing dosing regimens of a combination of valsartan and sacubitril and/or sacubitril/valsartan that involves dose titration, including at least all work performed in relation to the clinical trial study number NCT01922089, titled "Safety and Tolerability of Initiating LCZ696 in Heart Failure Patients (TITRATION)"; and clinical trial study number NCT00887588, titled "LCZ696 Compared to Valsartan in Patients With Chronic Heart Failure and Preserved Left-ventricular Ejection Fraction."

7. Clinical studies, including titration studies, conducted by or on behalf of Novartis in which sacubitril and valsartan (or their salts or complexes) were administered other than as LCZ696, including as physical combinations in the same or separate dosage forms, and as complexes.

8. The analytical or solid state characteristics that a person of ordinary skill in the art (POSA) would have relied on to distinguish LCZ696 in the claims of the '667 patent from any other solid form of sacubitril and valsartan, or pharmaceutically acceptable salts, solvates, and/or hydrates thereof, including supramolecular complexes, co-crystals, amorphous forms, and dual-acting compounds as well as any physical combinations of sacubitril and valsartan, or pharmaceutically acceptable salts, solvates, and/or hydrates thereof.

9. Chemical, physical, and quantitative differences between the LCZ696 complex recited in the claims of the '667 patent and the data and measurements included in the prior art references identified in Defendants' invalidity contentions that disclose and/or characterize LCZ696.

10. All complexes of sacubitril and valsartan, including all salts, hydrates, and/or solvates thereof, that were known to Novartis as of the filing date of the '667 patent.

11. All complexes of sacubitril and valsartan, including all salts, hydrates, and/or solvates thereof, that are currently known to Novartis.

12. All sacubitril-valsartan hemipentahydrates that are currently known to Novartis.

13. Novartis's Citizen Petition FDA-2019-P-1893-0001, posted April 19, 2019, and the arguments and information discussed and references cited therein.

14. All facts and circumstances concerning (i) the date of first public use; (ii) the date of first disclosure; (iii) the date of first offer for sale; (iv) the date of first sale; and (v) the date of any license or any licensing offer for any product embodying the subject matter of any claim of the '667 patent.

15. Identification of all persons involved in any of the work that led to the alleged inventions claimed in the '667 patent, including but not limited to the decision to list or not to list

those persons as inventors on the '667 patent and the contribution of each person to the conception and/or reduction to practice (actual or constructive) of the alleged inventions claimed in the '667 patent.

16. Research, analyses, opinions, and any other activities Novartis undertook to determine the scope, infringement, validity, and/or enforceability of the '667 patent.

17. Any potential or actual prior art to the '667 patent or to the Related Applications or Patents, even if you dispute that the material constitutes or discloses prior art, including but not limited to art cited during prosecution of the '667 patent and the Related Applications or Patents, and art disclosed by any third parties (including in any litigation involving the patents in suit or in licensing discussions), and any searches for prior art.

18. Novartis's decision to list the '667 patent in the Orange Book.

19. The facts, circumstances, and correspondence concerning any agreements relating to sacubitril/valsartan, Entresto, the '667 patent and any Related Applications or Patents, and/or this Lawsuit.

20. Communications between Novartis, on one hand, and any of the inventors named on the face of the '667 patent, on the other, concerning the subject matter of the '667 patent, including but not limited to communications concerning ownership or assignment of the '667 patent, development strategies, R&D budgets, prior art, and/or validity, invalidity, enforceability, scope and/or infringement of the claims of the patents in suit.

21. The assignment and chain of ownership of the '667 patent and any Related Applications or Patents, including the facts, correspondence, and circumstances relating to the assignment or transfer of any rights in the '667 patent and any Related Applications or Patents.

22. Communications with third parties concerning a dosages and administration of a combination of valsartan and sacubitril and/or sacubitril/valsartan, including but not limited to Entresto.

23. The marketing of Entresto, including but not limited to marketing plans, promotional materials, sales and sales forecasts for Entresto in the United States and elsewhere, pricing for Entresto, and the number of sales representatives responsible for marketing, selling, or offering for sale Entresto in the United States.

24. Compensation to and communications with doctors, researchers, thought leaders, and/or any other third parties in connection with the sales and marketing of Entresto, including but not limited to costs associated with (a) funding research related to valsartan and sacubitril and/or sacubitril/valsartan, (b) publishing results of the same, (c) attending and speaking at conferences and (d) being appointed to, and/or participating in, advisory boards.

25. Business plans regarding Entresto, including but not limited to marketing plans, market forecasts, sales forecasts, manufacturing, packaging and/or distribution plans, and pricing plans, including the use of discounts and/or rebates.

26. All valuations of the Orange Book Patents.

27. Any and all publications, advertisements, or other marketing materials concerning Entresto that Novartis has funded, created, contributed to, provided material or interviews for, or consented to, or about which it has knowledge, including but not limited to news articles, journal articles, and news releases.

28. All licenses, offers to license, development agreements, sales agreements, advertising agreements, royal arrangements or payments, and marketing agreements relating to

5

Entresto and/or the '667 patent or any Orange Book Patents, and all communications concerning the same.

29. Comparisons of the safety and efficacy of Entresto or any subject matter claimed in the patents in suit, on one hand, and other treatments for a cardiovascular condition or disease, on the other.

30. All facts relating to any statements concerning alleged drawbacks of Entresto and/or sacubitril/valsartan.

31. Off-label use of Entresto.

32. Market research regarding Entresto, or any subject matter claimed in the patents in suit, and any competitor products, including but not limited to Novartis's identification of any relevant market(s) for Entresto.

33. The revenues or profits generated for Novartis by Entresto or any product that embodies the subject matter of the '667 patent, including but not limited to:

(a) the monthly, quarterly, or annual amounts of revenue from sales of Entresto or any product that embodies the subject matter of the '667 patent;

(b) the monthly, quarterly, or annual number of prescriptions for Entresto or any product that embodies the subject matter of the '667 patent;

(c) the monthly, quarterly, or annual gross profits from sales of Entresto or any product that embodies the subject matter of the '667 patent;

(d) the monthly, quarterly, or annual net profits from sales of Entresto or any product that embodies the subject matter of the '667 patent, together with all expenses, deductions, allowances, or other adjustments used to calculate net profits;

(e) the monthly, quarterly, or annual amounts spent on marketing, advertising, promoting, selling, and providing samples of Entresto or any product that embodies the subject matter of the '667 patent, both in the aggregate and based on the particular type of expense; and

(f) the identity of each claimed invention that contributed to the revenue, prescriptions, gross profits, net profits, and expenditures identified in the categories above, and the amount contributed by each claimed invention to each category.

34. Financial data, performance, predictions, and analyses for Entresto, including without limitation, the prescriptions, sales, projected sales (in units and dollars), costs (including research and development costs), pricing, profits or margin, marketing, market share, sales volume, market projections or analyses, sales and profit projections, market definition, or consumer profiles concerning Entresto, including but not limited to forecasts and budgets.

35. All analysis, opinions, and documentary evidence supporting Novartis's contentions that the '667 patent is valid and enforceable.

36. The identity, role and responsibilities of each employee or representative of Plaintiff who has or had primary responsibility for the research, development, manufacture, clinical trials, licensing, marketing, sales, patent protection, or FDA regulatory affairs (e.g., approval of indications, Orange Book patent listings, exclusivities) for any sacubitril/valsartan product or any combination product or kit comprising sacubitril and valsartan.

37. Novartis's life cycle management strategy for any product containing sacubitril/valsartan, including but not limited to Entresto, or any combination product or kit comprising sacubitril and valsartan.

38. Novartis's policies, procedures, and/or other rules concerning the presentation, publication, use, sale, or disclosure of intellectual property, and all documents concerning the same.

39. Any and all efforts by Novartis to prevent, delay, minimize, and/or evaluate generic competition to Entresto.