# Exhibit A



Ronald M. Daignault  |  Partner<br>Direct 646.292.8775  |  rdaignault@goldbergsegalla.com

September 17, 2019

*Via FEDERAL EXPRESS*

Novartis Pharmaceuticals Corporation        Novartis AG
Attn: Amol Parekh, PharmD                    Forum 1
One Health Plaza – Building 100              CH-4056 Basel
East Hanover, NJ 07936-1080                  Switzerland

## <u>HIGHLY CONFIDENTIAL NOTICE LETTER</u>

**This Notice Letter contains highly confidential and proprietary information. You are not authorized to append this Notice Letter or the attached Detailed Statement to any court pleading or submission or any other public disclosure. Any public disclosure of the proprietary information contained in this Notice Letter or the attached Detailed Statement may be subject to court imposed penalties.**

**Re:    Notice of Paragraph IV Certification Under 21 U.S.C. § 355(j)(2)(B) (§ 505(j)(2)(B)) of Federal Food, Drug and Cosmetic Act) and 21 C.F.R. § 314.95 of U.S. Patent Nos. 7,468,390, 8,101,659, 8,404,744, 8,796,331, 8,877,938 and 9,388,134  covering Abbreviated New Drug Application No. 213748 (Sacubitril and Valsartan Tablets, 24 mg/26 mg, 49 mg/51 mg, and 97 mg/103 mg)**

Dear Sir or Madam:

We represent MSN Pharmaceuticals Inc., U.S. Agent for MSN Laboratories Private Limited ("MSN"), 20 Duke Road, Piscataway, NJ 08854-3714, in various patent matters and write, pursuant to Sections 505(j)(2)(B)(i), (ii), (iii), and (iv) of the Federal Food, Drug, and Cosmetic Act and 21 C.F.R. § 314.95, to give notice to Novartis Pharmaceuticals Corporation, as the NDA holder for the referenced drug, ENTRESTO® (NDA No. 207620), and Novartis AG (collectively "Novartis") as the owners/assignees of the patents listed below that the FDA has received an Abbreviated New Drug Application ("ANDA") for Sacubitril and Valsartan Tablets in 24 mg/26 mg, 49 mg/51 mg, and 97 mg/103 mg dosage strengths.

I.      Pursuant to 21 U.S.C. § 355(j)(2)(B)(iv)(I) and 21 C.F.R. § 314.95(c)(1), we advise you that the FDA has received an Abbreviated New Drug Application ("ANDA") from MSN for Sacubitril and Valsartan Tablets, 24 mg/26 mg, 49 mg/51 mg, and 97 mg/103 mg. The ANDA contains the required bioavailability and/or

September 17, 2019
Page 2

bioequivalence data from studies on the Sacubitril and Valsartan Tablets that are the subject of the ANDA. The ANDA was submitted under 21 U.S.C. § 355(j)(1) and (2)(A), and includes a paragraph IV certification to obtain approval to engage in the commercial manufacture, use or sale of Sacubitril and Valsartan Tablets, in 24 mg/26 mg, 49 mg/51 mg, and 97 mg/103 mg dosage strengths, before the expiration of U.S. Patent Nos. 7,468,390, 8,101,659, 8,404,744, 8,796,331, 8,877,938 and 9,388,134, which are listed in the Patent and Exclusivity Information Addendum of the FDA's publication, *Approved Drug Products with Therapeutic Equivalence Evaluations* (commonly known as "the Orange Book").

II.     Pursuant to 21 C.F.R. § 314.95(c)(2), we advise you that the FDA has assigned MSN's ANDA the number 213748.

III.     Pursuant to 21 C.F.R. § 314.95(c)(3), we advise you that MSN received a Paragraph IV acknowledgement letter for ANDA number 213748, dated August 30, 2019.

IV.     Pursuant to 21 C.F.R. § 314.95(c)(4), we advise you that the established name of the proposed drug product that is the subject of MSN's ANDA is Sacubitril and Valsartan ("MSN's ANDA product").  Novartis markets Sacubitril and Valsartan under the brand name ENTRESTO®.

V.     Pursuant to 21 C.F.R. § 314.95(c)(5), we advise you that active ingredient, strength and dosage form of the product are Sacubitril and Valsartan, 24 mg/26 mg, 49 mg/51 mg, and 97 mg/103 mg tablets.

VI.     Pursuant to 21 C.F.R. § 314.95(c)(6), we advise you that the patents alleged to be invalid, unenforceable and/or not infringed in the paragraph IV certification are U.S. Patent Nos. 7,468,390, 8,101,659, 8,404,744, 8,796,331, 8,877,938 and 9,388,134, which are listed in the Orange Book in connection with NDA No. 207620 for ENTRESTO® (Sacubitril and Valsartan), 24 mg/26 mg, 49 mg/51mg, and 97 mg/103 mg.  According to information published in the Orange Book, the patents will expire as follows:

| Patent No. | Patent Owner | Patent Expiry |
| --- | --- | --- |
| 7,468,390 | Novartis AG | 11/27/2023 |
| 8,101,659 | Novartis AG | 1/14/2023 |
| 8,404,744 | Novartis AG | 1/14/2023 |
| 8,796,331 | Novartis AG | 1/14/2023 |

September 17, 2019
Page 3

| | | |
|---|---|---|
| 8,877,938 | Novartis Pharmaceuticals Corporation | 5/27/2027 |
| 9,388,134 | Novartis AG | 11/08/2026 |

VII.     It has now been certified to the FDA, that in MSN's opinion and to the best of their knowledge, U.S. Patent Nos. 7,468,390, 8,101,659, 8,404,744, 8,796,331, 8,877,938 and 9,388,134 are invalid, unenforceable and/or will not be infringed by the commercial manufacture, use or sale of the drug product described in MSN's ANDA. Therefore, pursuant to 21 U.S.C. § 355(j)(2)(B)(iv)(II) and 21 C.F.R. § 314.95(c)(7), a detailed statement of the legal and factual bases of MSN's position for the paragraph IV certification set forth in MSN's ANDA is attached hereto and made a part hereof. MSN reserves the right to develop additional grounds, reasons, or authorities that any or all of the claims of U.S. Patent Nos. 7,468,390, 8,101,659, 8,404,744, 8,796,331, 8,877,938 and 9,388,134 are invalid or not infringed and/or unenforceable.

VIII.    Please be warned of the following. It is an antitrust violation to assert a patent known to be invalid. *Handgards v. Ethicon*, 601 F.2d 986 (9th Cir. 1979). If you launch any patent infringement lawsuit, either now or later, MSN may pursue the appropriate remedies against you, including seeking fees, costs, and sanctions for potential violations of Rule 11 of the Federal Rules of Civil Procedure, exceptional case and frivolous suit statutes under the patent laws, and for violations of the antitrust laws, as well as any other remedy the court deems fit to award.

IX.     Pursuant to 21 U.S.C. § 355(j)(5)(C), this notice letter includes an Offer of Confidential Access to Application. As required by § 355(j)(5)(C)(i)(III), MSN offers to provide confidential access to certain information from its ANDA number 212772 for the sole and exclusive purpose of determining whether an infringement action referred to in § 355(j)(5)(B)(iii) can be brought.

Section 355(j)(5)(C)(i)(III) allows MSN to impose restrictions "as to persons entitled to access, and on the use and disposition of any information accessed, as would apply had a protective order been entered for the purpose of protecting trade secrets and other confidential business information." That provision also grants MSN the right to redact its ANDA in response to a request for Confidential Access under this offer.

As permitted by statute, MSN imposes the following terms and restrictions on its Offer of Confidential Access:

September 17, 2019
Page 4

## OFFER OF CONFIDENTIAL ACCESS
## TO MSN'S ANDA NO. 213748

(1)    MSN will permit confidential access to certain information from its proprietary ANDA No. 213748 to attorneys from one outside law firm representing Novartis, provided, however, that such attorneys do not engage, formally or informally, in any patent prosecution for Novartis or any FDA counseling, litigation or other work before or involving the FDA. Such information (hereinafter, "Confidential MSN Information") shall be marked with the legend "CONFIDENTIAL."

(2)    The attorneys from the outside law firm representing Novartis shall not disclose any Confidential MSN Information to any other person or entity, including Novartis employees, outside scientific consultants, and/or other outside counsel retained by Novartis, without the prior written consent of MSN.

(3)    As provided by Section 355(j)(5)(C)(i)(III), Novartis's outside law firm shall make use of the Confidential MSN Information for the sole and exclusive purpose of determining whether an action referred to in Section 355(j)(5)(B)(iii) can be brought and for no other purpose. By way of example only, the Confidential MSN Information shall not be used to prepare or prosecute any future or pending patent application; in connection with any filing to, or communication with the FDA relating to MSN's ANDA No. 213748; or in connection with any filing to, or communication with, the United States Pharmacopeia or any similar organization. Novartis's outside law firm agrees to take all measures necessary to prevent unauthorized disclosure or use of the Confidential MSN Information, and that all Confidential MSN Information shall be kept confidential and not disclosed in any manner inconsistent with this Offer of Confidential Access.

(4)    The Confidential MSN Information disclosed is, and remains, the property of MSN. By providing the Confidential MSN Information, MSN does not grant Novartis and/or their outside law firm any interest in or license for the Confidential MSN Information.

(5)    Novartis's outside law firm shall, within thirty-five (35) days from the date that it first receives the Confidential MSN Information, return to MSN all Confidential MSN Information and any copies thereof. Novartis's outside law firm shall return all Confidential

September 17, 2019
Page 5

MSN Information to MSN before any infringement suit is filed by Novartis, if suit is commenced before this 35-day period expires. In the event that Novartis opts to file suit, none of the information contained in or obtained from any Confidential MSN Information that MSN provides shall be included in any publicly available complaint or other pleading.

(6)     Nothing in this Offer of Confidential Access shall be construed as an admission by MSN regarding the validity, enforceability, and/or infringement of any U.S. patent. Further, nothing herein shall be construed as an agreement or admission by MSN with respect to the competency, relevance, or materiality of any such Confidential MSN Information, document, or thing. The fact that MSN provides Confidential MSN Information upon request of Novartis, shall not be construed as an admission by MSN that such Confidential MSN Information is relevant to the disposition of any issue relating to any alleged infringement of any patent, or to the validity or enforceability of any patent.

(7)     The attorneys from Novartis's outside law firm shall acknowledge in writing their receipt of a copy of these terms and restrictions prior to production of any Confidential MSN Information. Such written acknowledgement shall be provided to MSN's undersigned counsel.

(8)     This Offer of Confidential Access shall be governed by the laws of the State of New Jersey.

Section 355(j)(5)(C)(i)(III) provides that any request for access that Novartis makes under this Offer of Confidential Access "shall be considered acceptance of the offer of confidential access with the restrictions as to persons entitled to access, and on the use and disposition of any information accessed, contained in [this] offer of confidential access" and that the "restrictions and other terms of [this] offer of confidential access shall be considered terms of an enforceable contract." Thus, to the extent that Novartis requests access to Confidential MSN Information, it necessarily accepts the terms and restrictions outlined above.  Requests for access under this Offer of Confidential Access should be made to:

Ronald M. Daignault
Goldberg Segalla LLP
711 Third Avenue – Suite 1900
New York, NY 10017

September 17, 2019
Page 6

>       646.292.8775
>       rdaignault@goldbergsegalla.com

By providing this Offer of Confidential Access to Application, MSN maintains the right and ability to bring and maintain a Declaratory Judgment action under 28 U.S.C. § 2201 *et seq.*, pursuant to 21 U.S.C. § 355(j)(5)(C).

X.      This letter, including the offer of confidential access and the attached detailed statement, are being sent by a designated delivery service, as defined in 21 C.F.R. 314.95(g).

Nothing in this notice letter or the attached factual and legal bases shall be construed as a waiver of the attorney-client privilege or the work-product doctrine.

The name and address of the agent authorized to accept service of process for MSN, limited to commencement of a patent infringement suit based on this notice of certification, is as follows:

>       Ronald M. Daignault
>       Goldberg Segalla LLP
>       711 Third Avenue – Suite 1900
>       New York, NY 10017
>       646.292.8775
>       rdaignault@goldbergsegalla.com

Very truly yours,

Ronald M. Daignault
Goldberg Segalla LLP

Attachments:

Detailed Statements as to Non-infringement and Invalidity of U.S. Patent Nos. 7,468,390, 8,101,659, 8,404,744, 8,796,331, 8,877,938 and 9,388,134.

**THIS DETAILED STATEMENT MAY NOT BE ATTACHED TO**
**ANY COMPLAINT OR OTHER PUBLICLY AVAILABLE DOCUMENT**

**MSN'S DETAILED STATEMENT OF THE FACTUAL AND**
**LEGAL BASES FOR ITS OPINION THAT THE MANUFACTURE,**
**USE, IMPORTATION, SALE, AND OFFER FOR SALE OF ITS**
**SACUBITRIL-VALSARTAN PRODUCTS WILL NOT INFRINGE**
**U.S. PATENT NOS. 8,877,938 AND 9,388,134**

The following constitutes MSN's detailed statement of the factual and legal bases for its belief that the manufacture, use, importation, sale, and offer for sale of MSN's Sacubitril-Valsartan Product does not and will not infringe any claims of U.S. Patent Nos. 8,877,938 ("the '938 patent") and 9,388,134 ("the '134 patent")(collectively the "polymorph patents"). This detailed statement does not preclude MSN from advancing any other grounds for non-infringement, invalidity, and/or unenforceability, or any other claim construction, as to the '938 and '134 patents in the event of litigation.

Please be advised that MSN considers the information in this statement to be confidential, is disclosing this information solely to comply with 21 U.S.C. § 355(j)(2)(B) and 21 C.F.R. § 314.95, and requests that this information be protected from disclosure to third parties by means consistent with Novartis Pharmaceuticals Corp.'s ("Novartis") own standards for protecting their own confidential information. THIS CONFIDENTIALITY APPLIES TO THIS DETAILED STATEMENT, WHICH MAY NOT, AND SHOULD NOT, BE ATTACHED TO ANY COMPLAINT OR OTHER PUBLICLY AVAILABLE DOCUMENT. *See Biovail Labs., Inc. v. Anchen Pharms., Inc.*, 463 F. Supp. 2d 1073, 1083 (C.D. Cal. 2006).

## I.   THE MSN PRODUCT

As set forth in MSN's ANDA No. 213748, MSN seeks approval for a generic sacubitril-valsartan product that is a combination of sacubitril, a neprilysin inhibitor, and valsartan, an angiotensin II receptor blocker, indicated to reduce the risk of cardiovascular death and hospitalization for heart failure in patients with chronic heart failure (NYHA Class II-IV) and reduced ejection fraction ("MSN's Sacubitril-Valsartan Product"). MSN's Sacubitril-Valsartan Product is an oral tablet available in 24 mg/26 mg, 49 mg/51 mg, and 97 mg/103 mg dosage strengths.

## II.   LEGAL STANDARDS

### A.   Infringement

Under well-established law, a two-step process is used to determine whether an accused product infringes a valid patent claim.  *See Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997); *Markman v. Westview Inst. Inc.*, 517 U.S. 370, 384 (1996); *Intellectual Science and Technology, Inc. v. Sony Electronics, Inc.*, 589 F.3d 1179, 1183 (Fed. Cir. 2009). First, the claims must be construed to determine their proper scope and meaning.  *See Markman v. Westview Inst. Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc)

THIS DETAILED STATEMENT MAY NOT BE ATTACHED TO
ANY COMPLAINT OR OTHER PUBLICLY AVAILABLE DOCUMENT

aff'd 517 U.S. 370 (1996). Second, after a claim is properly construed, a patentee has the burden of showing that each and every element recited in the claim is found in the accused product, either literally or equivalently, to establish that the claim is infringed. *Southwall Technologies, Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995). The absence of any one claim element in the accused device will preclude a finding of infringement, since each claim element is material and essential. *Wolverine World Wide, Inc. v. Nike, Inc.*, 38 F.3d 1192, 1199 (Fed. Cir. 1994).

## B.    Claim Construction

The claims define the metes and bounds of the patent rights.  *Graver Tank & Mfg. Co. v. Lined Air Prods. Co.,* 339 U.S. 605 (1950).  Claim construction is a matter of law for the court.  *Markman,* 517 U.S. at 372.  In interpreting a claim, a court must look to the intrinsic evidence of record—namely, the language of the claim, the specification, and, if available, the prosecution history.  *Philips v. AWH Corp.*, 415 F.3d 1303, 1313-14, 1317 (Fed. Cir. 2005) (*en banc*).  Although a court may consider extrinsic evidence, such as expert testimony, to understand the technology at issue, extrinsic evidence may never be used to vary or contradict the meaning of the claim terms discerned from the intrinsic evidence.  *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 981 (Fed. Cir. 1995), *aff'd,* 517 U.S. 370 (1996); *Karlin Tech. Inc. v. Surgical Dynamics, Inc.,* 177 F.3d 968, 971 (Fed. Cir. 1999).  Competitors are entitled to rely on the public record, and to allow the public record to be altered by extrinsic evidence, such as expert testimony, would eviscerate that right. *Philips,* 415 F.3d at 1319.

The starting point in claim interpretation is the language of the claim itself. *Philips*, 415 F.3d at 1312. Claims are construed from the vantage point of the ordinary skilled artisan *at the time of the invention. Markman*, 52 F.3d at 986 (emphasis added).  It is improper to apply with hindsight the knowledge of those skilled in the art today if to do so would result in a different claim construction from what would have been reached at the time of the invention. *See id.*

There is a heavy presumption that a claim term carries its ordinary and customary meaning.  *CCS Fitness, Inc. v. Brunswick Corp.,* 288 F.3d 1359, 1366 (Fed. Cir. 2002).  The language of the claims is interpreted in light of the claims themselves, the specification, and the patent's prosecution history, as understood by a person of ordinary skill in the relevant art.  *Markman*, 52 F.3d at 979-80; *see Philips v. AWH Corp.*, 415 F.3d 1303, 1320-21 (Fed. Cir. 2005) (*en banc*) (holding that courts, when interpreting claims, should rely more on intrinsic evidence, in particular, the specification rather than extrinsic evidence such as dictionaries, treatises, and encyclopedias).

The patent specification must also be considered because it "is always highly relevant to the claim construction analysis [and] is the single best guide to the meaning of a disputed term."  *Philips,* 415 F.3d at 1315.  One purpose of examining the specification is to determine if the patentee has limited the scope of the claims. *Watts v.*

*XL Sys., Inc.,* 232 F.3d 877, 882 (Fed. Cir. 2002).  That is, the language of the claims should be read in the context of the specification.  The specification may be used to reveal special meanings of words used in the claims or to reveal intentional disclaimer of claim scope.  *See Philips,* 415 F.3d at 1316.  For example, an inventor may choose to be his own lexicographer if he defines the specific terms used to describe the invention with reasonable clarity, deliberateness, and precision.  *In re Paulson*, 30 F.3d 1475, 1480 (Fed. Cir. 1994).  Such a definition may appear in the written description or in the prosecution history.  *See Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582 (Fed. Cir. 1996) (citing *Hoechst Celanese Corp. v. BP Chems. Ltd.,* 78 F.3d 1575, 1578 (Fed. Cir. 1996)).

The prosecution history is also intrinsic evidence that must be considered when construing claim language.  *Philips,* 415 F.3d at 1317.  The prosecution history of the patent application may inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention during the course of prosecution, making the claim scope narrower than it might otherwise be.  *Id.*  Because the prosecution history "contains the complete record of all the proceedings before the Patent and Trademark Office, including any express representations made by the Applicants regarding the scope of the claims, [it] is often of critical significance in determining the meaning of the claims."  *Id.*  Indeed, the prosecution history is important for determining what the claims cover, and specifically what they do not: the prosecution history (or file wrapper) limits the interpretation of claims so as to exclude an interpretation that may have been disclaimed or disavowed during prosecution in order to obtain claim allowance.  *Id.*

Moreover, a court must also view the prosecution history from the perspective of a reasonable competitor since competitors are "entitled to rely on [a patentee's] representations [to the patent office] when ascertaining the degree of lawful conduct, such as designing around the claimed invention."  *See Hockerson-Halberstadt, Inc. v. Avia Group Int'l., Inc.,* 222 F.3d 951, 956–57 (Fed. Cir. 2000); *Digital Biometrics, Inc. v. Identix, Inc.,* 149 F.3d, 1335, 1347 (Fed. Cir. 1998).  Competitors are entitled to rely on the statements in the prosecution history of the patent, which includes those related patents in the chain.  *See Digital Biometrics,* 149 F.3d at 1347 ("The public has a right to rely on such definitive statements made during prosecution history.  Notice is an important function of the patent prosecution process…").

In view of all intrinsic evidence, the Federal Circuit routinely states that "'[t]he construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.'" *Shire Dev., LLC v. Watson Pharms., Inc.*, 746 F.3d 1326, 1330 (Fed.Cir.2014) (quoting *Phillips*, 415 F.3d at 1316). So, when the specification describes a single embodiment to enable the invention, a court may limit the claims to that embodiment if "the patentee has demonstrated a clear intention to limit the claim scope using 'words or expressions of manifest exclusion or restriction.' " *Liebel–Flarsheim Co. v. Medrad, Inc., 358* F.3d 898, 906 (Fed.Cir.2004) To wit, a "Court may reach a narrower construction, limited to the

3

embodiment(s) disclosed in the specification, when the claims themselves, the specification, or the prosecution history clearly indicate that the invention encompasses no more than that confined structure or method." Abbott Labs. v. Sandoz, Inc., 566 F.3d 1282, 1288 (Fed. Cir. 2009).

### C.    Infringement under the Doctrine of Equivalents

Under the doctrine of equivalents there are some circumstances where a product or process can be held to infringe a claim even where one or more of the recitations in the claim are not literally met. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997); *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608-09 (1950). The doctrine of equivalents is intended to reach those who make "unimportant and insubstantial changes and substitutions in the patent" that add nothing to the invention, but serve only to evade the literal scope of the claim language. *Graver Tank*, 339 U.S. at 607.

A number of different tests have been used for determining whether there is infringement under the doctrine of equivalents. For instance, some courts have used the so-called "triple identity" or "function-way-result" test where the issue is whether the element in the accused product or process performs substantially the same function in substantially the same way to achieve substantially the same result as the claimed element. *See Warner-Jenkinson*, 520 U.S. at 29, 40. Other courts have used the "insubstantial differences" test where the issue is whether the differences between the element in the accused product or process and the claimed element are insubstantial. *Graver Tank,* 339 U.S. at 610-12. The Supreme Court recognized that these different tests may be more or less suitable to different cases depending upon their particular facts, and indicated that the proper analysis involves using the test that is more probative of the basic inquiry: "Does the accused product or process contain elements identical or equivalent to each claimed element of the patented invention?" *Warner-Jenkinson*, 520 U.S. at 40. *See also Mylan Institutional LLC v. Aurobindo Pharma Ltd.*, 857 F.3d 858, 865-870 (Fed. Cir. May 19, 2017).

Though these tests exist, "application of the doctrine of equivalents is the exception, however, not the rule, for if the public comes to believe (or fear) that the language of patent claims can never be relied on, and that the doctrine of equivalents is simply the second prong of every infringement charge, regularly available to extend protection beyond the scope of the claims, then claims will cease to serve their intended purpose. Competitors will never know whether their actions infringe a granted patent. . . . [T]he claims mean what they say. Their effectiveness cannot be extended to cover . . . devices . . ., which do not meet the claim limitations." *Warner-Jenkinson Co., Inc.*, 520 U.S. at  29. Accordingly, "for a patentee who has claimed an invention narrowly, there may not be infringement under the doctrine of equivalents in many cases, even though the patentee might have been able to claim more broadly." *Sage Products, Inc. v. Devon Industries, Inc.*, 126 F.3d 1420, 44 U.S.P.Q.2d 1103 (Fed. Cir. 1997); *See also Bicon, Inc. v.*

4

THIS DETAILED STATEMENT MAY NOT BE ATTACHED TO
ANY COMPLAINT OR OTHER PUBLICLY AVAILABLE DOCUMENT

*Straumann Co.*, 441 F.3d 945, 955–56, 78 U.S.P.Q.2d 1267, 1276 (Fed. Cir. 2006) ("A claim that contains a detailed recitation of structure is properly accorded correspondingly limited recourse to the doctrine of equivalents.").

## I.      NON-INFRINGEMENT ANALYSIS

### A.      Summary

MSN's Sacubitril-Valsartan Product does not infringe claims 1-14 of the '938 patent and claims 1-15 of the '134 patent because MSN's Sacubitril-Valsartan Product

### B.      MSN's Sacubitril-Valsartan Product.



THIS DETAILED STATEMENT MAY NOT BE ATTACHED TO
ANY COMPLAINT OR OTHER PUBLICLY AVAILABLE DOCUMENT



**C.      The claims and specification of the polymorph patents**

      **1.      The independent claims of the polymorph patents.**

The '938 patent contains fourteen claims, of which, claim 1 is independent and reads as follows:

      Trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-
      butylcarbamoyl)propionate-(S)-3'-methyl-2'-(pentanoyl{2''-(tetrazol-5-

ylate)biphenyl-4'-ylmethyl}amino)butyrate] hemipentahydrate in crystalline form.

Similarly, the '134 patent contains 15 claims, of which, claim 1 is independent and reads as follows:

> A method for treatment of a cardiovascular condition or disease, wherein the cardiovascular condition or disease is heart failure or hypertension, in a patient in need thereof comprising administering to the patient a therapeutically effective amount of trisodium[3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl)propionate-(S)-3'-methyl-2'-(pentanoyl{2″-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate]hemipentahydrate.

### 2.  Dependent claims 2-14 of the '938 patent.

Dependent claims 2-14 of the '938 patent contain additional limitations requiring specific peaks in a XRPD, attenuated Total Reflection Fourier Transform Infrared (ATR-FTIR) spectrum, specific structures of the sacubitril/valsartan complex and combination pharmaceutical formulations. Specifically, dependent claims 2-10 cover the compound of claim 1 characterized by an ATR-FTIR spectrum, and a specific XRPD pattern having a specific formula in a monoclinic unit cell. Likewise, dependent claims 11-14 cover a pharmaceutical formulation having the compound plus an additional active infringement.

### 3.  Dependent claims 2-15 of the '134 patent.

Dependent claims 2-15 of the '134 patent all depend from claim 1 and further require that the method of treatment use a sacubitril/valsartan complex having specific XRPD peaks, attenuated Total Reflection Fourier Transform Infrared (ATR-FTIR) spectrum, specific structures of the sacubitril/valsartan complex and combination pharmaceutical formulations. Specifically, claims 2 and 3 cover usage of the combination for treatment of heart failure or hypertension, while claim 4 covers administration in a pharmaceutical composition. Likewise, claims 5-15 cover a particular form of the sacubitril/valsartan complex characterized by XRPD, ATR-FTIR, and having specific unit cell composition.

### 4.  The claims of the polymorph patents should be limited to a single crystalline form of a sacubitril/valsartan complex.

All of the claims of the polymorph patents include the phrase "Trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl)propionate-(S)-3'-methyl-2'-(pentanoyl{2″-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate] hemipentahydrate." Based on the claim language, specification, and prosecution history, this complex will be limited, and construed to mean a single crystalline form

characterized by the sole X-ray Powder Diffraction ("XRPD") pattern set forth in the patent. Specifically, the claims will require a crystalline form of an XRPD pattern having average values 2θ (± 0.2) at: 4.5, 5.5, 5.6, 9.9, 12.8, 15.7, 17.0, 17.1, 17.2, 18.3, 18.5, 19.8, 21.5, 21.7, 23.2, 23.3, 24.9, 25.3, 27.4, 27.9, 28.0, 30.2.

As a threshold matter, the plain meaning of this claim language "Trisodium [3-((1S,3R)-1-biphenyl-4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl)propionate-(S)-3'-methyl-2'-(pentanoyl{2''-(tetrazol-5-ylate)biphenyl-4'-ylmethyl}amino)butyrate] hemipentahydrate," explicitly requires a crystalline form of the sacubitril and valsartan complex, because a person of ordinary skill in the art would generally understand that a "hydrate" is a compound in crystalline form. This form should be further limited to a crystalline form having an XRPD pattern with average values 2θ (± 0.2) at: 4.5, 5.5, 5.6, 9.9, 12.8, 15.7, 17.0, 17.1, 17.2, 18.3, 18.5, 19.8, 21.5, 21.7, 23.2, 23.3, 24.9, 25.3, 27.4, 27.9, 28.0, 30.2 because that is the only form properly disclosed and enabled.

In particular, the specifications of the polymorph patents, which are substantially the same, states, "[t]he invention relates to trisodium 3-((1S,3R)-1-biphenyl 4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl)propionate-(S)-3'-methyl-2'-(pentanoyl{2''-(tetrazol-5-ylate)biphenyl-4-ylmethylamino)butyrate hemipentahydrate, **a crystalline solid** which is characterized by the data and parameters obtained from single crystal X-ray analysis and X-ray powder patterns." *See, e.g.,* '938 patent, 18:37-43. This statement confirms that the claimed compound should be limited to the sole crystalline form disclosed in the patent. *See Abbott Labs. v. Andrx Pharms., Inc.,* 473 F.3d 1196, 1210-11 (Fed. Cir. 2007) (explaining that a patentee may expressly define certain claims' terms through the use of quotation marks and phrases like "as used herein"). Indeed, throughout the specification, only a single crystalline form is contemplated. *See, e.g.,* '938 patent, 7:12-14 ("As a preferred embodiment of the invention, the complex is crystalline and in this case is preferably a mixed crystal or co-crystal." Moreover, the examples lay out three separate means of preparing the present invention, and "[c]haracterization [of the examples] revealed the same product as in Example 1." *Id.* 28:48-49 and 29:40-41. Thus, the creation of only one form of the crystalline complex is taught.

Thus, this case is similar to *Abbott Labs. v. Sandoz, Inc.,* where the patentee was limited to a single crystalline form, in part because they "refer[red] several times to "Crystal A of the compound (I) of the present invention," and offered no suggestion that the recited process could lead to anything other than Crystal A compounds, even though other were known in the art. *Abbott Labs. v. Sandoz, Inc.,* 566 F.3d 1282, 1289-90 (Fed. Cir. 2009).

The prosecution history confirms this limitation, as during the prosecution of the '134 patent, the examiner issued a restriction requiring the patentee to select a "trisodium 3-((1S,3R)-1-biphenyl 4-ylmethyl-3-ethoxycarbonyl-1-butylcarbamoyl)propionate-(S)-3'-methyl-2'-(pentanoyl{2''-(tetrazol-5-ylate)biphenyl-4-

**THIS DETAILED STATEMENT MAY NOT BE ATTACHED TO
ANY COMPLAINT OR OTHER PUBLICLY AVAILABLE DOCUMENT**

THIS DETAILED STATEMENT MAY NOT BE ATTACHED TO
ANY COMPLAINT OR OTHER PUBLICLY AVAILABLE DOCUMENT



THIS DETAILED STATEMENT MAY NOT BE ATTACHED TO
ANY COMPLAINT OR OTHER PUBLICLY AVAILABLE DOCUMENT



###### E.   MSN's Sacubitril-Valsartan Product does not infringe dependent claims 2-14 of the '938 patent or dependent claims 2-15 of the '134 patent.

Under well-established patent law, because MSN's Sacubitril-Valsartan Product will not infringe independent claim 1 of the '938 patent, it cannot infringe dependent claims 2-14 as well. Likewise, because it does not infringe claim 1 of the '134 patent, it cannot infringement dependent claims 2-15 as well.

###### F.   MSN's Sacubitril-Valsartan Product does not infringe the '938 patent claims under the doctrine of equivalents.

As a threshold matter, the differences between the claimed sacubitril-valsartan and MSN's Sacubitril-Valsartan Product are substantial, and thus the doctrine of equivalents does not apply. Specifically,



*See, e.g., Abbott Labs. v. Sandoz, Inc.*, 566 F.3d at 1297. Finding that MSN's Sacubitril-Valsartan Product infringes under the doctrine of equivalents would vitiate those claim elements.  *Sanofi-Aventis Deutschland GmbH v. Genentech, Inc.*, 2012 WL 1178059, *7 (Fed. Cir. 2012) ("Patentees may not assert a theory of equivalence [that] would entirely vitiate a particular claim element.").

Moreover, permitting the doctrine of equivalents to cover any other different crystalline form of sacubitril-valsartan would expand the scope of claims of the polymorph patents well beyond the scope of what the patentee described and claimed. *Novartis Pharmaceuticals Corp. v. Abbott Laboratories*, 375 F.3d 1328, 1339 (Fed. Cir. 2004)( "When the substitution of one feature, however, for another into an element of the accused product places it outside the scope of the recited claim element, the doctrine of equivalents may not be applied. Permitting such an element in the accused product to

11

**THIS DETAILED STATEMENT MAY NOT BE ATTACHED TO**
**ANY COMPLAINT OR OTHER PUBLICLY AVAILABLE DOCUMENT**

come within the bounds of the claimed element would impermissibly extend the scope of the claim language beyond what the patentee actually claimed.") The patentee was or should have been aware of other forms of sacubitril-valsartan, such as other polymorphic forms or an amorphous form, but chose not to describe or claim them. The doctrine of equivalents cannot now be used to recapture all crystalline forms.

For all of the above reasons, under controlling Federal Circuit precedent, MSN's Sacubitril-Valsartan Product does not infringe any claims of the polymorph patents, literally or under the doctrine of equivalents.

# Exhibit B

**Sent:** Friday, January 22, 2021 4:45 PM
**To:** rjuang@goldbergsegalla.com; Pampinella, Cathy <cpampinella@goldbergsegalla.com>; Lehnert, Lynn <llehnert@goldbergsegalla.com>
**Cc:** Stamatios Stamoulis <stamoulis@swdelaw.com>; Stringham, Jared L. <JLStringham@Venable.com>; Borriello, Jessica M. <JBorriello@Venable.com>; Manas, Gregory J. <GJManas@Venable.com>; Silver, Daniel <DSilver@McCarter.com>; Joyce, Alexandra <ajoyce@mccarter.com>
**Subject:** RE: In re Entresto (Sacubitril/Valsartan) Patent Litigation MDL No. 20-2930-LPS

Dear Richard,

Thank you for your email confirming the status of MSN's samples.

With respect to MSN's ESI, Novartis proposes the following additional ESI search term.  Please confirm that MSN will also search for and produce ESI using the following term, in addition to the ESI search terms proposed commonly with the other defendants on November 11, 2020.

- (DMF OR "Drug Master File") w/5 (033398 or 33398)

Kind regards,

Christopher E. Loh, Esq. | Venable LLP
212.218.2206
1290 Avenue of the Americas, 20th Floor, New York, NY 10104
CLoh@Venable.com | www.Venable.com

---

**From:** Juang, Richard <rjuang@goldbergsegalla.com>
**Sent:** Friday, January 22, 2021 3:34 PM
**To:** Stringham, Jared L. <JLStringham@Venable.com>; Stamatios Stamoulis <stamoulis@swdelaw.com>; Manas, Gregory J. <GJManas@Venable.com>; Silver, Daniel <DSilver@McCarter.com>; Joyce, Alexandra <ajoyce@mccarter.com>
**Cc:** Daignault, Ronald M. (Ron) <rdaignault@goldbergsegalla.com>; Pampinella, Cathy <cpampinella@goldbergsegalla.com>; Borriello, Jessica M. <JBorriello@Venable.com>; Lehnert, Lynn <llehnert@goldbergsegalla.com>
**Subject:** RE: In re Entresto (Sacubitril/Valsartan) Patent Litigation MDL No. 20-2930-LPS

**Caution: External Email**

Hi Jared,

The first of two shipments has been sent via World Carrier. We are sending in two shipments because of the different storage and shipping conditions for the tablets and API. I've attached the tracking details to this email. The second shipment should follow shortly. Please let me know if you have any questions.

Also, circling back on document collection, MSN does not have any unique codes or names for its product. With that in mind please confirm that you have no further objections to the defendant's proposed search terms, so that we can finalize our document collection and production. Thanks a lot.

Best Regards,

Richard.

---

**From:** Stringham, Jared L. <JLStringham@Venable.com>
**Sent:** Tuesday, January 19, 2021 2:15 PM
**To:** Juang, Richard <rjuang@goldbergsegalla.com>; Stamatios Stamoulis <stamoulis@swdelaw.com>; Manas, Gregory J. <GJManas@Venable.com>; Silver, Daniel <DSilver@McCarter.com>; Joyce, Alexandra <ajoyce@mccarter.com>
**Cc:** Daignault, Ronald M. (Ron) <rdaignault@goldbergsegalla.com>; Pampinella, Cathy <cpampinella@goldbergsegalla.com>; Borriello, Jessica M. <JBorriello@Venable.com>; Lehnert, Lynn <llehnert@goldbergsegalla.com>
**Subject:** RE: In re Entresto (Sacubitril/Valsartan) Patent Litigation MDL No. 20-2930-LPS

**ATTENTION: This email came from an external source. Do not open attachments or click on links from unknown senders or unexpected emails.**

Hi Richard,

Following up on your voicemail this afternoon, please use the following email and phone number for Dr. Matzger for MSN's shipment of samples:

    matzger@umich.edu
    734-904-4637

Please also provide tracking information for the shipment once available.

Kind regards,
Jared

Jared L. Stringham, Esq.
Venable | Fitzpatrick
| 212.218.2523
Venable LLP, 1290 Avenue of the Americas, 20th Floor
New York, NY 10104

JLStringham@Venable.com | www.Venable.com

**From:** Stringham, Jared L. <JLStringham@Venable.com>
**Sent:** Thursday, January 14, 2021 11:15 AM
**To:** Juang, Richard <rjuang@goldbergsegalla.com>; Stamatios Stamoulis <stamoulis@swdelaw.com>; Manas, Gregory J. <GJManas@Venable.com>; Silver, Daniel <DSilver@McCarter.com>; Joyce, Alexandra <ajoyce@mccarter.com>
**Cc:** Daignault, Ronald M. (Ron) <rdaignault@goldbergsegalla.com>; Pampinella, Cathy <cpampinella@goldbergsegalla.com>; Borriello, Jessica M. <JBorriello@Venable.com>; Lehnert, Lynn <llehnert@goldbergsegalla.com>
**Subject:** RE: In re Entresto (Sacubitril/Valsartan) Patent Litigation MDL No. 20-2930-LPS

Hi Richard,

# Exhibit C

| Sacubitril and Valsartan Tablets 24 mg/ 26 mg, 49 mg / 51 mg and 97 mg/ 103 mg |  |
|---|---|
| ANDA # 213748 | |
| 3.2.S.4.1 Specification | Module 3: Quality |

**3.2.S.4 - Control of Drug Substance**
**3.2.S.4.1 Specification**

MASTER COPY



MSN Life Sciences Private Limited, Unit-II

MASTER COPY



MSN Life Sciences Private Limited, Unit-II

SQ/AP                                                     3.2.S.4.1 Page No. 2



MASTER COPY



MSN Life Sciences Private Limited, Unit-II

MASTER COPY



MSN Life Sciences Private Limited, Unit-II

MASTER COPY



MSN Life Sciences Private Limited, Unit-II

MASTER COPY



MSN Life Sciences Private Limited, Unit-II

SQ/AP                                                      3.2.S.4.1 Page No. 7



MASTER COPY



MSN Life Sciences Private Limited, Unit-II









MASTER COPY



MSN Life Sciences Private Limited, Unit-II

MASTER COPY



MSN Life Sciences Private Limited, Unit-II

| Sacubitril and Valsartan Tablets, 24 mg/ 26 mg, 49 mg / 51 mg and 97 mg/ 103 mg |  |
|---|---|
| ANDA # 213748 | |
| 3.2.P.2 Pharmaceutical Development | Module 3: Quality |





MSN Laboratories Private Limited
R&D Center. Formulation Division.

**Sacubitril and Valsartan Tablets 24/26 mg, 49/51 mg and 97/103 mg**
**3.2. P.2 Pharmaceutical Development Report**







MSN Laboratories Private Limited
R&D Center, Formulation Division.

Sacubitril and Valsartan Tablets 24/26 mg, 49/51 mg and 97/103 mg
3.2. P.2 Pharmaceutical Development Report







MSN Laboratories Private Limited
R&D Center. Formulation Division.

Sacubitril and Valsartan Tablets 24/26 mg, 49/51 mg and 97/103 mg
3.2. P.2 Pharmaceutical Development Report







MSN Laboratories Private Limited
R&D Center. Formulation Division.

Sacubitril and Valsartan Tablets 24/26 mg, 49/51 mg and 97/103 mg
3.2. P.2 Pharmaceutical Development Report






MSN Laboratories Private Limited
R&D Center. Formulation Division.

Sacubitril and Valsartan Tablets 24/26 mg, 49/51 mg and 97/103 mg
3.2. P.2 Pharmaceutical Development Report







MSN Laboratories Private Limited
R&D Center. Formulation Division.

Sacubitril and Valsartan Tablets 24/26 mg, 49/51 mg and 97/103 mg
3.2. P.2 Pharmaceutical Development Report





MSN Laboratories Private Limited
R&D Center. Formulation Division.

Sacubitril and Valsartan Tablets 24/26 mg, 49/51 mg and 97/103 mg
3.2. P.2 Pharmaceutical Development Report





MSN Laboratories Private Limited
R&D Center. Formulation Division.

Sacubitril and Valsartan Tablets 24/26 mg, 49/51 mg and 97/103 mg
3.2. P.2 Pharmaceutical Development Report





MSN Laboratories Private Limited
R&D Center. Formulation Division.

Sacubitril and Valsartan Tablets 24/26 mg, 49/51 mg and 97/103 mg
3.2. P.2 Pharmaceutical Development Report





MSN Laboratories Private Limited
R&D Center. Formulation Division.

Sacubitril and Valsartan Tablets 24/26 mg, 49/51 mg and 97/103 mg
3.2. P.2 Pharmaceutical Development Report





MSN Laboratories Private Limited
R&D Center. Formulation Division.

Sacubitril and Valsartan Tablets 24/26 mg, 49/51 mg and 97/103 mg
3.2. P.2 Pharmaceutical Development Report





MSN Laboratories Private Limited
R&D Center. Formulation Division.

Sacubitril and Valsartan Tablets 24/26 mg, 49/51 mg and 97/103 mg
3.2. P.2 Pharmaceutical Development Report







MSN Laboratories Private Limited
R&D Center, Formulation Division.

Sacubitril and Valsartan Tablets 24/26 mg, 49/51 mg and 97/103 mg
3.2. P.2 Pharmaceutical Development Report







MSN Laboratories Private Limited
R&D Center. Formulation Division.

Sacubitril and Valsartan Tablets 24/26 mg, 49/51 mg and 97/103 mg
3.2. P.2 Pharmaceutical Development Report