# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re Entresto (Sacubitril/Valsartan) Patent Litigation | C.A. No. 20-md-2930-RGA<br><br>**REDACTED PUBLIC VERSION** |
| NOVARTIS PHARMACEUTICALS CORPORATION,<br><br>    Plaintiff,<br><br>    v.<br><br>HETERO USA INC., HETERO LABS LIMITED, HETERO LABS LIMITED UNIT III, TORRENT PHARMA INC., TORRENT PHARMACEUTICALS LTD.,<br><br>    Defendants. | C.A. No. 21-1330-RGA<br><br>**REDACTED PUBLIC VERSION** |

**DEFENDANTS' LETTER TO THE HONORABLE RICHARD G. ANDREWS OPPOSING NOVARTIS'S MOTION TO STRIKE PARAGRAPH 8 FROM DR. STEED'S SUR-SURREPLY REPORT**

Page 1
December 13, 2023

Dear Judge Andrews:

Novartis's motion to strike, or for alternative relief, (D.I. 1217)[1] should be denied. Dr. Steed's sur-surreply was served, by agreement of the parties, after Novartis repeatedly gamed the expert-report schedule by serving untimely and extra reports from Dr. Park. Paragraph 8 of Dr. Steed's sur-surreply is within the scope of the parties' agreement, because it relates to invalidity.

## I. NOVARTIS HAS CONTINUALLY GAMED THE EXPERT-REPORT SCHEDULE

The Scheduling Order permitted three rounds of expert reports: (1) opening reports by "side who has the initial burden of proof," (2) responsive or "supplemental" reports "to contradict or rebut evidence on the same matter identified by another side," and (3) "[r]eply reports" from the side with the initial burden of proof. (D.I. 748 at 14; D.I. 1102 (extending deadlines).) By the time of opening expert reports, the issues in dispute were Novartis's contention that Hetero infringes (Novartis's burden), and Hetero and Torrent's contentions that the '918 claims are invalid (defendants' burden). Among other defenses, defendants assert lack of enablement, including that the '918 patent does not disclose how to make and use claimed amorphous TVS. During discovery, Novartis flatly asserted that an intermediate in middle of Example 1 of the '918 patent, termed a "glassy solid"/"glassy solid residue" therein, is amorphous TVS (*see* D.I. 1217 at 1), but disclosed no supporting evidence, let alone testing.

Despite invalidity being defendants' burden, Novartis served on Hetero an out-of-sequence opening report from Dr. Park providing analytical testing (IR, Raman, NMR) and opining that the "glassy solid [residue]" intermediate of Example 1 is amorphous TVS—in support of Plaintiff's enablement position, an invalidity issue. (Ex. 2.)[2] Dr. Park did not provide any testing of defendants' accused products. Novartis also submitted a report from another expert, Dr. Matzger, opining that Hetero infringes. Dr. Matzger cites Dr. Park's report but only he, not Dr. Park, tested and opined about infringement.

Defendants objected to Dr. Park's report as an out-of-sequence invalidity report that should have been submitted as a responsive report in response to defendants' invalidity expert (Dr. Steed)'s opening report. (Ex. 3, 7/31/23 Shelhoff email.) In response, Novartis conceded Hetero and Torrent would serve a reply in response to Dr. Park on November 3 (the final round); however, to the extent Hetero contested Dr. Park's data on which Dr. Matzger relied for his opinion that Hetero infringes, Hetero was to respond on September 8 (the middle round). (*Id.* at 8/3/23 emails.)

In accordance with that agreement, Hetero served a responsive report from Dr. Steed, responding to Dr. Matzger—but not to Dr. Park—relating to Hetero's noninfringement. In one section, titled "Dr. Matzger's IR and Raman Testing Is Inaccurate and Inconsistent with Dr. Park's Testing," Dr. Steed responded to Dr. Matzger's reliance on Dr. Park. (Ex. 4 ¶¶ 37-43.)  But Dr. Steed did not respond to Dr. Park directly because she did not provide any opinions relating to Hetero's alleged infringement. Dr. Steed observed that "Dr. Matzger makes no attempt to control

---

[1] All D.I. citations are to 20-md-2930.

[2] Exhibits A-D were filed with Novartis's letter (D.I. 1217). Exhibits 1-7 are filed herewith.

for or even measure the water content of the various samples." (*Id.* ¶ 37 (citing Perrin article).)

Novartis did not serve a response from Dr. Park to Dr. Steed's opening invalidity report, but it did serve one from Dr. Trout. Dr. Trout relied on Dr. Park's opening report throughout his responsive report, evidencing that Dr. Park's opening report was related to invalidity. (Ex. 5.)

On November 3, Hetero and Torrent served a reply from Dr. Steed to Dr. Park's and Dr. Trout's invalidity opinions. They also served a reply from Dr. Atwood, providing responsive analytical testing to Dr. Park's testing. This should have concluded expert reports on invalidity.

However, also on November 3, Novartis served a reply from Dr. Park (Ex. 6), responding to Dr. Steed's responsive report, even though Dr. Steed was responding to Dr. Matzger's opening infringement report (and not to Dr. Park's opening report). In one section, Dr. Park responded to Dr. Steed's opinion that Dr. Matzger's data is inconsistent with Dr. Park's—an issue relating to infringement and generally appropriate for a reply report from Novartis. (*Id.* § V (¶¶ 25-30) "MY IR DATA FOR AMORPHOUS TVS ARE CONSISTENT WITH DR. MATZGER'S IR DATA FOR HETERO'S API.") However, the remainder of her report did not even mention Hetero but related to her invalidity opinion that the "glassy solid" of Example 1 is amorphous TVS. (*See generally id.*) This includes section III, ¶¶ 8-16, "THE ALLEGED BACKGROUND PROBLEMS IN MY IR ARE IRRELEVANT TO THE CONCLUSION THAT THE GLASSY SOLID OF EXAMPLE 1 IS AMORPHOUS TVS." There, she discussed the Perrin article cited by Dr. Steed in response to Dr. Matzger in connection with Dr. Matzger's data. (*Id.*) But Dr. Park discusses Perrin in connection with her testing, not Dr. Matzger's. (*Id.*) Thus, this was an improper attempt by Novartis to get a final word on an invalidity issue in the reply round, made possible by Novartis's inappropriate service of Dr. Park's invalidity testing and opinions in an opening report.

Defendants presumed expert reports were done and were ready to proceed with depositions. However, on November 10, Novartis baselessly objected to Drs. Steed's and Atwood's replies and stated its intent to serve a Dr. Park surreply. (Ex. B, 11/10/23 Loh email.) Defendants disagreed with the objections and appropriateness of the surreply, but, compromising, stated they would consider the surreply and reserved the right to have Drs. Steed and Atwood respond because defendants are entitled to the last reports on invalidity. (*Id.*, 11/10/23 Shelhoff email.)

On November 14, Novartis served surreplies from Drs. Park and Trout. (*Id.*, 11/14/23 Loh email.) Defendants objected that Dr. Park's surreply went beyond Novartis's objections to Drs. Atwood's and Steed's replies and requested Novartis withdraw those paragraphs. (*Id.*, 11/14/23 Shelhoff email.) Defendants stated they would otherwise accept service if Novartis accepted short sur-surreplies from Drs. Steed and Atwood, who, again, are entitled to the last word on invalidity. Novartis refused to withdraw the paragraphs at issue, but defendants, again compromising, agreed to accept Dr. Park's surreply in exchange for defendants serving sur-surreplies. (*Id.*, 11/15/23 emails.) On November 22, defendants served Dr. Steed's sur-surreply at issue.

As can be seen, throughout the expert-report process, Novartis evaded the schedule and served additional reports, including opening, reply, and surreply reports from Dr. Park relating to invalidity, even though Novartis's only invalidity reports should have come in the responsive round. Defendants lodged certain objections but continuously attempted to resolve disputes through compromise without involving the Court. Still unsatisfied, Novartis filed its motion.

## II.   DR. STEED'S SUR-SURREPLY ¶ 8 IS WITHIN THE PARTIES' AGREEMENT

As its target, Novartis plucks paragraph 8 from three in which Dr. Steed (Ex. 7 ¶¶ 7-9) discusses "water" as a continuing theme. But in line with the agreement, Dr. Steed replies to Dr. Park's opinions (Ex. C ¶¶ 6-7) on Dr. Atwood's data on the "glassy solid" and a physical mixture of sacubitril and valsartan that are squarely directed to non-enablement. In paragraph 7, Dr. Steed explains that any experimental difference alleged by Dr. Park "is likely … due to hydrogen bonding to water because of differing moisture content in the samples." (Ex. 7.) Novartis does not object. In paragraph 8, he continues to discuss the water issue, referencing Dr. Park's discussion of water in paragraphs 8-16 of her reply. (*Id.* ¶ 8.) His opinions in paragraph 8 relating to water, including Chambers 2022, are exactly in the context of non-enablement and Dr. Park's *surreply* to Dr. Atwood's data. (*See id.*) Dr. Steed points out deficiencies in Dr. Park's *surreply* consistent with a similar failure in her reply; it does not respond directly to her reply. And Steed continues in paragraph 9 in which he again harps on "hydrogen bonding to adventitious water," the same theme to which Novartis is not objecting. Moreover, the portion of Dr. Park's reply cited by Dr. Steed relates to invalidity, on which Novartis was not entitled to serve a reply report to begin with.

Had Novartis complied with the schedule, and served Dr. Park's initial invalidity opinions in the second round, the parties would not be here. Instead, Dr. Park has served *three* invalidity reports, *all* at the wrong time, necessitating Dr. Steed's sur-surreply. Regardless, paragraph 8 of Dr. Steed's sur-surreply is within the scope of the parties' agreement.

## III.   THE *PENNYPACK* FACTORS FAVOR DEFENDANTS

*Bad Faith/Willfulness.* Novartis engaged in a pattern of untimely reports, disrupting the schedule, and obstructing defendants' right to the final word on invalidity. Defendants acted in good faith, continuously compromising., and Dr. Steed's report is within the parties' agreement.

*Prejudice, Ability to Cure.* Defendants were not obligated to question Dr. Park on Dr. Steed's paragraph 8 at her deposition and thereby provide her a chance to supplement her opinions. Novartis also chose not to redirect her on the issue, even though the reliability of her testing was squarely at issue at her deposition. Thus, Novartis did not attempt to avail itself of a potential cure. Dr. Steed is entitled to the last word. That does not prejudice Novartis. But Dr. Park getting the last word would prejudice defendants. Novartis also still has the opportunity to depose Dr. Steed.

*Importance of the evidence*. The reliability of Dr. Park's testing is critical. Novartis criticizes Dr. Steed for not responding sooner (D.I. 1217 at 2-3), but Dr. Park's improper surreply brought the water issue to the forefront. Defendants should not be penalized for not serving an untimely surreply from Dr. Steed to Dr. Park's reply.

Novartis's motion to strike, and alternative relief, should be denied. If Novartis's request of yet another invalidity report from Dr. Park is granted, that report, which is responding to *one paragraph*, should be limited to one page (not five). Dr. Steed should be permitted to respond (one page), and defendants to a short (less than 1 hour) additional deposition of Dr. Park. Novartis's second alternative that Dr. Park be permitted to testify at trial without disclosing her opinions beforehand should be rejected.

Page 4<br>
December 13, 2023

Respectfully submitted,

<u>/s/ Daniel A. Taylor</u>

Daniel A. Taylor (No. 6934)

**SMITH, KATZENSTEIN & JENKINS, LLP**
1000 West Street, Suite 1501
Wilmington, DE 19801
(302) 652-8400
dtaylor@skjlaw.com

*Counsel for Defendants Torrent Pharma Inc., Torrent Pharmaceuticals Ltd., Hetero USA, Inc., Hetero Labs Limited, and Hetero Labs Limited Unit III*

cc: Counsel of Record for Novartis Pharmaceuticals Corporation (via E-Mail)