# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re Entresto (Sacubitril/Valsartan) Patent Litigation | ) ) ) ) | C.A. No. 20-2930-RGA |
| NOVARTIS PHARMACEUTICALS CORPORATION, | ) ) ) ) | PUBLIC VERSION FILED: February 21, 2024 |
| Plaintiff, | ) ) | |
| v. | ) ) ) | C.A. No. 21-1330-RGA |
| HETERO USA INC., HETERO LABS LIMITED, HETERO LABS LIMITED UNIT III, TORRENT PHARMA INC., TORRENT PHARMACEUTICALS LTD., | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**JOINT BRIEF ON NOVARTIS'S MOTION *IN LIMINE* TO PRECLUDE DR. STEED FROM CONTRADICTING INVENTOR AND NOVARTIS FACT TESTIMONY CONCERNING POSSESSION OF THE INVENTION**

i

# TABLE OF CONTENTS

I.    Novartis's Opening Brief in Support of Its Motion *in Limine* ............................................ 1

II.    Defendants' Brief Opposing Novartis's Motion .................................................................. 3

III.   Novartis's Reply Brief in Support of Its Motion ................................................................. 6

I.     **Novartis's Opening Brief in Support of Its Motion *in Limine***

Novartis moves under Fed. R. Evid. 702 (improper expert testimony) to preclude Defendants' expert Dr. Steed from contradicting the fact deposition testimony of '918 patent inventor Dr. Piotr Karpinski and Novartis's Rule 30(b)(6) deponent Dr. Mike Motto concerning Dr. Karpinski's and Novartis's possession of the claimed invention of the '918 patent.

At their depositions, Drs. Karpinski and Motto repeatedly testified to facts establishing that Dr. Karpinski and Novartis had possession of, and appreciated that they had possession of, the claimed invention of the '918 patent: an amorphous solid form of a compound comprising anionic valsartan, anionic sacubitril and sodium cations in a 1:1:3 molar ratio ("amorphous TVS" or "amorphous TSV").  In his expert reports, however, Dr. Steed contradicts that testimony and invents his own counterfactual narrative to opine that Dr. Karpinski and Novartis did not possess, and did not appreciate that they possessed, amorphous TVS.  *See* Steed July 28, 2023 opening report ¶ 169 (citing Karpinski's testimony to assert that "Novartis ***abandoned*** its failed attempts to obtain an amorphous sacubitril valsartan complex"); ¶¶ 173–178 (asserting that "Novartis Never ***Knowingly*** Synthesized Amorphous TSV"); ¶¶ 187–189, 228–229 (disparaging Drs. Karpinski's and Motto's testimony that Dr. Karpinski and Novartis knew they were in possession of amorphous TVS as a "***theory***" and a "***guess***") (emphases added).  *See also* Steed November 3, 2023 reply report ¶¶ 76–77 (characterizing Dr. Motto's testimony that the inventors made amorphous TVS as a "***wish*** of Dr. Motto for the inventors.  This is something he ***wishes*** they should have done" and "***post-fact speculation***"); ¶¶ 33, 80–81 (dismissing Drs. Karpinski's and Motto's testimony that Novartis had possession of amorphous TVS as a "***litigation-inspired***" "***theory***"); ¶ 113 (wrongly asserting that "there is no corroborative evidence that the inventors ***knowingly***" made amorphous TVS); ¶¶ 151–152 (dismissing Dr. Karpinski's testimony that he was "certain" and "believe[d]" that Novartis had made amorphous TVS as a "***casual response***"

1

and as "*litigation-inspired*") (emphases added).

In offering those opinions, Dr. Steed apparently has seen fit to read the minds of Drs. Karpinski and Motto to contradict their sworn fact testimony that Dr. Karpinski and Novartis had possession of, and appreciated that they had possession of, amorphous TVS.  Dr. Steed did so despite the fact that Dr. Steed is not a fact witness, is not an inventor of the '918 patent or a Novartis 30(b)(6) representative, and has no knowledge of Dr. Karpinski's or Novartis's states of mind regarding their possession of amorphous TVS.

Dr. Steed's opinions contradicting Drs. Karpinski's and Motto's fact testimony regarding their possession of amorphous TVS are improper under Fed. R. Evid. 702, at least because they invade the province of the fact finder and are not helpful to the Court.  "Expert witnesses are not 'permitted to testify . . . regarding [a party's] intent, motive, or state of mind, or evidence by which such state of mind may be inferred.'" *AstraZeneca LP v. TAP Pharm. Prod, Inc.*, 444 F. Supp. 2d 278, 293 (D. Del. 2006) (*quoting Oxford Gen Tech., Ltd. v. Mergen Ltd.*, 345 F. Supp. 2d 431, 443 (D. Del. 2004)).  Indeed, Dr. Steed recently was precluded from offering state-of-mind testimony in a recent Delaware patent case. *W. R. Grace & Co. Conn. v. Elysium Health, Inc.*, 20-cv-1098-GBW, D.I. 291 at 7–8 (August 10, 2023 memorandum order).

Thus, insofar as Dr. Steed at trial tries to contradict Drs. Karpinski's and Motto's fact testimony regarding Dr. Karpinski's and Novartis's possession of amorphous TVS—including offering the opinions set forth in Dr. Steed's July 28, 2023 opening report at ¶¶ 169, 173–178, 187–189, and 228–229 and in his November 3, 2023 reply report at ¶¶ 33, 76–77, 80–81, 113, and 151–152—such "expert" testimony is improper and should be precluded.

2

II.     **Defendants' Brief Opposing Novartis's Motion**

Dr. Steed does not opine on the state of mind of Drs. Karpinski and Motto. He instead opines on a POSA's understanding as to how Novartis's documents and Drs. Karpinski's and Motto's testimony illuminate a POSA's understanding that Novartis did not possess amorphous TSV as of the priority date. *See Centocor Ortho Biotech, Inc. v. Abbott Labs.*, 636 F.3d 1341, 1348 (Fed Cir. 2011) ("To satisfy the written description requirement, the applicant must convey with reasonable clarity to those skilled in the art that, as of the filing date sought, he or she was in possession of the invention … ." (internal quotation marks omitted)); *Nuvo Pharma. Co. v. Dr. Reddy's Labs, Inc.*, 923 F.3d 1368, 1381 (Fed. Cir. 2019) ("Although inventor testimony cannot establish written description support where none exists in the four corners of the specification, it [can] illuminate[] the absence of critical description … .").[1] Dr. Steed is entitled to provide that opinion and to discuss the supporting evidence, as he does in the opinions at issue.

Novartis's motion lacks context. Defendants contend that Novartis did not possess amorphous TSV as of the priority date, and, thus, the '918 patent does not describe amorphous TSV. Novartis responds that a "glassy solid [residue]" in the middle of '918 Example 1 (which has a different final product) is amorphous TSV, even though the patent does not identify it as such. Novartis also relies on a lab notebook from named inventor Dr. Feng describing an experiment similar to, but not exactly the same as, Example 1 that also does not identify any compound as amorphous TSV. Contrary to Novartis's contention, a contemporaneous report from Dr. Karpinski concludes that "differentiation" of an amorphous material "from a physical mixture of amorphous salts of individual active principals appeared to be an ***insurmountable task***." (D.I. 202, Ex. 1, at 11-12 (emphasis added).) To identify the "glassy solid" as amorphous

---

[1] Dr. Steed's opinions at issue are also relevant to non-enablement, but their relevance to lack of written description is sufficient to deny Novartis's motion.

TSV (as opposed to a physical mixture of its components), Novartis devised a "backtracking" theory, whereby it concludes the "glassy solid" intermediate is amorphous TSV based on knowledge of Example 1's actual final product. (*E.g.*, Ex. 1, Karpinski Tr. 186:7-18; Ex. 2, Motto 2023 Tr. 85:2-86:4, 89:3-12, 91:2-7.)

Unsurprisingly then, Novartis couches Dr. Steed's opinions from the perspective of a POSA that are contrary to Drs. Karpinski and Motto testimony on possession of amorphous TSV as of the priority date as a "counterfactual narrative" and "state of mind" opinion. Indeed, Novartis provides ***no*** support for its bold assertion that "Drs. Karpinski and Motto repeatedly testified to facts establishing that Dr. Karpinski and Novartis had possession of, and appreciated that they had possession of [amorphous TSV]." Novartis also ignores that Dr. Motto testified that that he was not aware whether Novartis put into writing that the glassy material was amorphous TSV before the present litigation (Ex. 2 at 101:4-102:7, 148:20-149:4), had any discussions not involving attorneys about the glassy material being amorphous TSV (*id.* at 102:9-12), ever obtained amorphous TSV as an end product (*id.* at 80:19-22), or ever stored amorphous TSV (*id.* at 84:18-22). Novartis further ignores that Dr. Karpinski testified that "2005 is the year in which amorphous-marketed materials were not pursued. Crystalline materials were pursued." (Ex. 1 at 182:10-183:21.) This testimony undermines Novartis's assertion that Drs. Karpinski and Motto's testimony "establish[e]s" possession, and Dr. Steed is entitled to rely on this testimony in opining that a POSA would conclude that Novartis did not have possession.

The opinions at issue are Dr. Steed's scientific opinions as to how a POSA would conclude from, *inter alia*, the above documents and testimony that Novartis did not possess amorphous TSV, and that the '918 patent thus cannot—and does not—disclose amorphous TSV.

4

*See Boston Scientific Corp. v. Johnson & Johnson Inc.*, 679 F. Supp. 2d 539, 555 (D. Del. 2010) ("Logically, the inventors could not have described a knowledge that they did not possess."). For example, in his opening report (Ex. 3) ¶ 169, Dr. Steed explains how Dr. Karpinski's contemporaneous report and testimony evidence abandonment of efforts at developing an amorphous complex in favor of a crystalline one. At ¶¶ 173-77, Dr. Steed explains, e.g., how the Feng notebook fails to identify any substance as amorphous TSV and how the Feng experiment differs from '918 Example 1. In ¶ 178, he discusses Dr. Motto's testimony cited above. His section title for ¶¶ 173-78 that "Novartis Never Knowingly Synthesized Amorphous TSV" is his resulting opinion that the documents and testimony fail to show that the inventors did so. With respect to Novartis's backtracking theory, Dr. Steed's paragraphs at issue explain his scientific disagreement, justifying him calling it a "theory" or "guess." (Ex. 3 at ¶¶ 187-89, 228-29; Ex. 4, reply report ¶¶ 33, 76-77, 80-81.) And his opinion that the theory was "litigation-inspired" is supported by Dr. Motto's testimony described above. Dr. Steed is not attempting to read minds when he rebuts Novartis's expert Dr. Trout's opinions of Novartis's deposition testimony any more than Dr. Trout was doing so in discussing that testimony. (*E.g.*, Ex. 4 ¶¶ 81-82, 151-52)

  In sum, Dr. Steed is not opining on "intent, motive, or state of mind." He is opining that, based on the '918 patent, Novartis's contemporaneous documents, and Novartis's deposition testimony, a POSA would conclude that Novartis did not possess amorphous TSV, and, therefore, could not have described it. Novartis's motion should be denied. Should the Court nonetheless decide to exclude any testimony, the exclusion should be limited to specific portions of the identified paragraphs the Court concludes relate to "state of mind," and not to the paragraphs as a whole, which contain scientific opinions. *See W.R. Grace*, slip op. at 8 n.2.

### III.  Novartis's Reply Brief in Support of Its Motion

Defendants do not dispute that Dr. Steed should be precluded from testifying about the state of mind of Novartis's witnesses.  Instead, Defendants take statements out of context to argue that Novartis was not in possession of amorphous TVS.  But the '918 patent expressly discloses amorphous TVS.  *See* Ex. 5, '918 patent, col. 16, ll. 40-55, col. 17, ll. 41-45.  That disclosure alone disposes of Defendants' written description arguments.  *See United Therapeutics Corp. v. Liquidia Techs., Inc.*, 624 F. Supp. 3d 436, 459 n. 17, 470 n. 20 (D. Del. 2022) (Andrews, J.), *aff'd*, 74 F.4th 1360 (Fed. Cir. 2023) (no need to consider extrinsic evidence on written description if specification already reasonably conveys possession).

Moreover, the factual record proves that the inventors had possession of amorphous TVS, and appreciated they did:

- Example 1 of the '918 patent discloses a process for making a "glassy solid," and then a "crystalline solid" (LCZ696) from the glassy solid.  Ex. 5, col. 28, ll. 38-67.

- Inventor Feng's lab notebook records her making, on January 27, 2006, a "glassy state" using the process that became Example 1.  Ex. 6, NPC-VS-016637309.

- Inventor Karpinski testified he was "certain" that amorphous TVS had been made, and that he understood the glassy material in Example 1 to be an amorphous TVS complex and not a physical mixture because the crystalline solid (LCZ696) made from that glassy material is complexed.  Ex. 7, Karpinski Dep. Tr. 36:13-37:11; 185:19-186:15; *see also* Ex. 8, Motto Dep. Tr. 81:2-84:7 (testifying consistently with Dr. Karpinski).

Dr. Steed cannot rewrite facts or read minds.  He is not a fact witness or a Novartis insider, and no amount of expertise qualifies him to contradict what Novartis's inventors did (*i.e.*, make amorphous TVS) and understood (*i.e.*, that amorphous TVS is a complex and not a physical mixture).  Dr. Steed's testimony on those topics is not Rule 702 "expert" testimony and does not help to the Court.  It is improper state-of-mind testimony and should be precluded.

6

Dated: January 29, 2024

| MCCARTER & ENGLISH, LLP | SMITH, KATZENSTEIN & JENKINS LLP |
|---|---|
| */s/ Daniel M. Silver* | */s/ Daniel Taylor* |
| Daniel M. Silver (#4758) | Neal C. Belgam (#2721) |
| Alexandra M. Joyce (#6423) | Daniel Taylor (#6934) |
| 405 N. King Street, 8th Floor | 1000 West Street, Suite 1501 |
| Wilmington, DE 19801 | Wilmington, DE 19801 |
| (302) 984-6300 | (302) 652-8400 |
| dsilver@mccarter.com | nbelgam@skjlaw.com |
| ajoyce@mccarter.com | dat@skjlaw.com |
| | |
| Nicholas N. Kallas | Dmitry V. Shelhoff |
| Christina Schwarz | Kenneth S. Canfield |
| Jared L. Stringham | Edward D. Pergament |
| Christopher E. Loh | PERGAMENT & CEPEDA LLP |
| Susanne L. Flanders | 25A Hanover Road, Suite 104 |
| Shannon Clark | Florham Park, NJ 07932 |
| Laura Fishwick | (973) 998-7722 |
| Gregory J. Manas | dshelhoff@pergamentcepeda.com |
| VENABLE LLP | kcanfield@pergamentcepeda.com |
| 1290 Avenue of the Americas | epergament@pergamentcepeda.com |
| New York, New York 10104 | |
| (212) 218-2100 | *Attorneys for Defendants Hetero USA Inc.,* |
| nkallas@venable.com | *Hetero Labs Limited, Hetero Labs Limited* |
| cschwarz@venable.com | *Unit III, Torrent Pharma Inc. and Torrent* |
| jlstringham@venable.com | *Pharmaceuticals Ltd.* |
| cloh@venable.com | |
| slflanders@venable.com | |
| skclark@venable.com | |
| lfishwick@venable.com | |
| gjmanas@venable.com | |

*Attorneys for Plaintiff*
*Novartis Pharmaceuticals Corporation*