# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re Entresto (Sacubitril/Valsartan) Patent Litigation | ) ) ) ) | C.A. No. 20-2930-RGA |
| NOVARTIS PHARMACEUTICALS CORPORATION, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | |
| MSN PHARMACEUTICALS INC., MSN LABORATORIES PRIVATE LIMITED, MSN LIFE SCIENCES PRIVATE LIMITED, NANJING NORATECH PHARMACEUTICAL CO., LIMITED, | ) ) ) ) ) | C.A. No. 22-1395-RGA |
| Defendants. | ) ) ) ) | |

**DEFENDANT MSN's DISCOVERY DISPUTE LETTER REGARDING NOVARTIS TESTING**

Over three years ago, Novartis conducted tests of MSN's ANDA products and determined that the novel crystalline form of sacubitril valsartan that MSN uses in its ANDA products did not infringe United States patent nos. 8,877,938 and 9,388,134, both of which claimed a different crystalline compound of sacubitril and valsartan. As a result, Novartis provided MSN with a covenant not to sue on January 4, 2022 and dismissed its prior case against MSN. (C.A. No. 1:19-cv-2053-LPS (D. Del.), D.I. 223, and "SO ORDERED" on Feb. 3. 2022). Over eight months later, looking to find a way to keep MSN's generic products off the market, Novartis sued MSN for infringement of U.S. patent no. 11,096,918 even though it knew that MSN's sacubitril valsartan products are a novel crystalline form but the '918 patent claims recite an amorphous form. As the Court is aware based on the claim construction hearing and briefing in this case, Novartis contends that the '918 patent claims reciting "an amorphous solid form of a compound of [sacubitril valsartan]" include both crystalline and amorphous forms of sacubitril valsartan. Novartis holds this position even though four solid forms of sacubitril valsartan are disclosed in the specification, C.A. No. 22-1395-RGA (D. Del.), D.I. 147-2, Ex. 1, ('918 patent) at 17:41–45 ("In the solid state [the compound] can be in the crystalline, partially crystalline, *amorphous*, or polymorphous form, preferably in the crystalline form." (emphasis added), and the claim only identifies *one* of those solid forms – "amorphous."[1] Novartis contends that MSN's crystalline API includes a trace amount of amorphous sacubitril valsartan and so MSN's products supposedly infringe the '918 patent because, according to Novartis, the '918 patent claims should be construed to cover compounds comprising both crystalline and amorphous forms. But as mentioned above, Novartis conducted tests of MSN's ANDA products in the earlier litigation between the parties that are directly relevant to this '918 patent case. Those tests likely contradict Novartis' position here, and show that MSN's sacubitril valsartan is crystalline, and not amorphous.

Despite repeated requests, Novartis refuses, on the basis of privilege and work product, to produce this earlier testing, which ostensibly includes x-ray powder diffraction results ("XRPD"), Differential Scanning calorimetry ("DSC" result), Thermogravimetric analysis ("TGA"), and potentially any other testing that demonstrates the polymorphic form of MSN's ANDA products. And though Novartis refuses to produce these previous test records and results, Novartis is willing to produce some Raman spectroscopy tests that allegedly support its infringement allegations in the present case. In short, by refusing to produce testing that is likely detrimental to its allegations of infringement, Novartis is using privilege and work product as a shield while selectively producing test results as a sword to supports its case.

MSN respectfully requests the Court to compel production of all analytical results and relevant test notebooks generated in connection with Novartis's testing on MSN's ANDA products, regardless of whether those tests were conducted during the earlier litigation. Indeed, Novartis has relied on that testing to make affirmative decisions regarding its positions against MSN and which patent(s) to assert, withdraw or grant a covenant not to sue.

---

[1] Novartis' proposed construction is a litigation-inspired construction that it adopted to protect its market share because MSN's ANDA products do not contain amorphous sacubitril valsartan.

I. **Under the applicable legal standards, Novartis should be compelled to produce earlier unfavorable testing.**

Novartis has not specifically identified the type of privilege that allegedly shields its testing from production. But ultimately, neither the attorney client privilege nor the work product doctrine should bar the production of test results from the earlier litigation that are clearly relevant here and bear directly on the credibility of Novartis' infringement case.

First, it is well established that "[i]n the context of an assertion of privilege, . . . [i]t would be manifestly unfair to allow a party to use the privilege to shield information which it deliberately chose to use offensively . . . . Hence the truism that a privilege cannot be used as both a shield and a sword." *Advanced Micro Devices, Inc. v. Intel Corp. (In re Intel Corp. Microprocessor Antitrust Litig.),* 2008 U.S. Dist. LEXIS 125410, at *28 (D. Del. Mar. 6, 2008).

Likewise, the work product doctrine does not apply if "the party seeking discovery has (1) 'substantial need for the materials' and (2) 'cannot, without undue hardship, obtain their substantial equivalent by other means.'" *Ansell Healthcare Prods. LLC v. Reckitt Benckiser LLC,* Civil Action No. 15-cv-915-RGA, 2017 U.S. Dist. LEXIS 202842, at *12 (D. Del. Dec. 11, 2017). Under both standards, it is clear that Novartis should be compelled to produce all of its tests, not a cherry-picked few.

The disclosures and specifications in MSN's ANDA show that its ANDA products are crystalline forms of sacubitril valsartan, which means MSN necessarily cannot infringe the '918 patent because the '918 patent claims only the "amorphous" form. Novartis' infringement theory is based on its testing that apparently contradicts MSN's ANDA and the information known to MSN. As such, Novartis should be ordered to produce its testing since it is at odds with MSN's ANDA. All of the tests that either support or undermine Novartis' '918 patent infringement claim against MSN should be produced and not selectively withheld as privileged.

II. **The attorney client privilege and work product doctrine do not bar disclosure of Novartis' earlier tests because Novartis is improperly shielding those tests, which are highly relevant to this case, while also disclosing some other testing.**

Novartis' earlier testing of MSN's products, including the XRPD data, is highly relevant to this case. In fact, as this Court is well aware from the recent trial, Novartis alleges that Example 1 of the '918 patent is an amorphous product, and it says that this Example 1 product was shown to be amorphous by XRPD, IR and Raman spectroscopy. *See generally, In re Entresto*, C.A. No. 1:20-md-2930-RGA (D. Del.), D.I. 1326, at 897:24-898:2 ("Dr. Park's XRPD shows that the glassy solid is amorphous."). Indeed, the '918 specification notes that "[s]ignificant spectral peaks for the complex are observed e.g. in the XRPD, IR, and Raman spectroscopy." *See, e.g.,* '918 patent, 28:64-66. The '918 patent further notes "[t]he sample is amorphous by X-ray powder diffraction." *Id*. at 32:12-13. Thus, XRPD testing is relevant and can conclusively demonstrate whether a product is amorphous.

Further, Novartis has actively relied on this earlier testing during the course of its litigations against MSN. Indeed, Novartis withdrew allegations of infringement based on the

results of that testing; permitting Novartis to feign "privilege" and shield it from producing the results of that testing because the results contradict its infringement allegations here is unjust and should not be permitted. Novartis' previous tests in the earlier case established that MSN's ANDA products are a novel crystalline form of sacubitril valsartan, but now Novartis asserts a patent claim that only recites an amorphous compound (i.e., not crystalline). This is similar to the type of "gamesmanship" that Chief Judge Connolly identified when stating "You know, you've alleged the absence of phenol . . . and it strikes me that this phenol is a game, that it's a gamesmanship that you came in with a position and it strikes me, after claim construction, you did a 180"and "I just think people need to start paying a penalty for the gamesmanship." *Novo Nordik, Inc. v. Mylan Pharmaceuticals, Inc.*, Case 1:23-cv-00101-CFC, D.I. 131, p. 14, l. 21 - p. 16, l. 17.

Indeed, despite the clear relevance of the tests it conducted, Novartis has not identified any of its earlier testing, including XRPD testing, in its infringement contentions. Instead, Novartis points only to Raman spectroscopy testing. As a result, the most reasonable conclusion is that this earlier testing, at best, fails to support its infringement allegations, and at worst, actively refutes its infringement allegations. More importantly, Novartis will rely on its Raman testing for its expert report, but it continues to refuse to produce XRPD testing. This selective production is a clear assertion of privilege as a sword and a shield.

"Courts in this circuit have noted that privilege cannot be used both as a sword and a shield." *Ansell Healthcare Prods. LLC v. Reckitt Benckiser LLC,* Civil Action No. 15-cv-915-RGA, 2017 U.S. Dist. LEXIS 202842, at *13-14 (D. Del. Dec. 11, 2017). In fact, in *Graco, Inc. v. PMC Glob., Inc*., the district court granted a motion to compel production of "testing of material involved in litigation, notes of any such testing, communications with anyone other than Graco's counsel about the opinions expressed, alternative analyses, testing methods, or approaches to the issues proffered, whether or not considered in forming the opinions expressed" because Graco had affirmatively relied upon those facts during the course of litigation. Civil Action No. 08-1304 (FLW), 2011 U.S. Dist. LEXIS 14717, at *39 (D.N.J. Feb. 14, 2011). This mirrors the situation here, where Novartis has previously relied on its testing data to evaluate its position against MSN and drop its infringement allegations, but now refuses to produce the same testing under the attorney client privilege and work product doctrine.

Thus, for similar reasons, the Court should compel production of this testing despite the assertions of attorney-client privilege because Novartis is now using privilege as an improper sword and a shield. *See also, Tetris Holding, LLC v. Xio Interactive,* Civil Action No. 09-6115 (FLW), 2011 U.S. Dist. LEXIS 160871, at *54 (D.N.J. June 20, 2011) ("[L]itigant cannot at one and the same time make use of those privileged communications which support his position while hoping to maintain the privilege as to those communications which undercut his legal position.").

For the reasons stated above, Novartis should be ordered to produce immediately all records of tests it conducted on MSN's ANDA products to date, including from the previous C.A. No. 19-2053 litigation and including all documents and electronic records and files of test results, test methodologies and protocols, and notebooks.

Dated: May 6, 2024

                                          STAMOULIS & WEINBLATT LLC

                                          */s/ Richard C. Weinblatt*
                                          Stamatios Stamoulis (#4606)
                                          Richard C. Weinblatt (#5080)
                                          800 N. West Street, Third Floor
                                          Wilmington, DE 19801
                                          (302) 999-1540
                                          stamoulis@swdelaw.com
                                          weinblatt@swdelaw.com

                                          Ronald M. Daignault*
                                          Richard Juang*
                                          DAIGNAULT IYER LLP
                                          8618 Westwood Center Drive, Suite 150
                                          Vienna, VA 22182
                                          rdaignault@daignaultiyer.com
                                          rjuang@daignaultiyer.com
                                          *Not admitted in Virginia*

                                          *Attorneys for Defendants MSN*
                                          *Pharmaceuticals Inc., MSN Laboratories*
                                          *Private Limited, and MSN Life Sciences*
                                          *Private Limited*