**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re Entresto (Sacubitril/Valsartan) Patent Litigation | ) ) ) ) | C.A. No. 20-2930-RGA<br>**PUBLIC VERSION** |
| NOVARTIS PHARMACEUTICALS CORPORATION,<br><br>       Plaintiff,<br><br>       v.<br><br>MSN PHARMACEUTICALS INC., MSN LABORATORIES PRIVATE LIMITED, MSN LIFE SCIENCES PRIVATE LIMITED, NANJING NORATECH PHARMACEUTICAL CO., LIMITED,<br>       Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | C.A. No. 22-1395-RGA<br>**PUBLIC VERSION** |

**DEFENDANTS' LETTER REGARDING
EXPIRATION OF ORDER (D.I. 83, C.A. NO. 22-1395)**

We write this letter on behalf of the MSN and Noratech defendants. As explained below, the Court's order requiring advance notice of an anticipated generic launch should be allowed to expire. Indeed, that the notice order is set to expire on August 12, 2024 indicates that it is not meant to be presumptively renewed. To that end, the circumstances meriting advance notice of an anticipated generic launch no longer exist. MSN and Noratech are the only defendants remaining in active litigation in this Court; fifteen other generic defendants have settled and their cases have been dismissed.

After nearly five years of litigation, and with no thirty-month stay in effect, MSN has just received final FDA approval last week and is in the process of considering its business options going forward.[1] If MSN decides to launch its generic product, it should be not be required to announce its intentions ahead of time. Doing so would prejudice MSN because (1) it serves as a de facto injunction against MSN's potential launch, and (2) ████████████████████████████████████████████████████████████████████████. But for Novartis, allowing the advance notice order to terminate is not prejudicial since Novartis would not be waiving any right to relief. Moreover, MSN respectfully submits that allowing MSN to launch without notice and Novartis then proceeding with a motion it may file lessens the burden on the Court because it provides the Court with more flexibility. The Court could set a schedule to resolve the motion without needing to drop everything and focus its immediate attention and resources under the pressure of MSN's impending launch.

Advance notice made sense when there was a potential for injunctive actions against multiple defendants at multiple stages of litigation, but now the situation is markedly different, as MSN is now the sole defendant with FDA approval and not subject to any settlement agreements barring launch. Indeed, when the Court entered the notice order last year, the present litigation involving the '918 patent against MSN and Noratech had only just started in October 2022, and the Court had yet to issue its decision finding the '659 patent invalid for lack of written description. And multiple other defendants were involved in separate waves of litigations caused by Novartis' assertion of the same patents against different parties at different times; this resulted in a quagmire of potential launch scenarios. This muddle of pending and on-going litigations meant that it was reasonable for this Court to require advance notice of an anticipated launch date to ensure the orderly resolution of any potential at-risk launch by any one defendant that could impact another. This complex situation no longer exists.

In this simpler world, if a launch were to occur, Novartis could file for a preliminary injunction, and if it were successful, it could obtain both money damages for sales that have occurred and injunctive relief. Indeed, just yesterday, Novartis filed a complaint and an emergency TRO motion against the FDA in the United States District Court for the District of Columbia

---

[1] Defendant Noratech ████████████████████████████████████ but joins this letter. Because MSN is the sole defendant with FDA approval and complete discretion at this time to launch or not launch, this letter is written primarily in the context of MSN's unique status. Noratech also notes that there is no need to extend the order at issue for the additional reason that the Court has separately ordered Noratech to provide copies of FDA correspondence (which includes approval letters) to Novartis within 14 days of delivery.

seeking to reverse MSN's final approval,[2] and in its TRO motion papers, Novartis' sole identified harm is ultimately monetary damages. Yet, the availability of monetary damages ensures no prejudice to Novartis.[3] A party confronted with the potential loss in sales does not face irreparable harm because the mere loss of money can be compensated by a damages award. *Sampson v. Murray,* 415 U.S. 90 (1974*);* see also *Teva Pharm. USA, Inc. v. Sandoz, Inc.,* 572 U.S. 1301 (2014). The Federal Circuit has rejected the argument that "the sharp economic consequences of open competition from generic drugs establish the inadequacy of monetary damages and irreparable harm." *Abbott Labs. v. Andrx Pharm., Inc.*, 452 F.3d 1331, 1347 (Fed. Cir. 2006); *see also id.* at 1348 ("[W]e do not doubt that generic competition will impact [plaintiff's] sales . . . , but that alone does not establish that [its] harm will be irreparable."). In the context of imminent generic competition in a multi-billion dollar branded drug market, injunctive relief is "unwarranted" where patent damages are available. *Teva*, 572 U.S. at 1302. There are no special Hatch-Waxman rules for preliminary injunctions that undermine this well-settled law.

On the other hand, the continuation of the stipulation creates significant prejudice to MSN. First, MSN's confidential business strategy would be disclosed to Novartis and the fifteen competitors that have settled. MSN complied with the rigorous FDA and statutory requirements to gain final FDA approval and earned the right to provide the public with MSN's sacubitril-valsartan product. Under normal settings, MSN's decision to launch would be privy only to MSN without an obligation to notify any third party. Thus, the advanced notice order disturbs what should be the ordinary course and places a heightened burden and intrusion on MSN's business operations.

Second, it is Novartis who created the prejudice against MSN and Noratech by delaying the filing of the present litigation. As the Court will recall, there has already been a trial on the '918 patent against other defendants. The only reason the present situation exists is because Novartis waited nine months to file a suit against MSN and Noratech, necessitating a second trial on the same patents even though all of the defendants filed their ANDAs at the same time. This deliberate delay has unfairly burdened the Court with a second round of trials and prejudiced MSN and Noratech by forcing them to litigate the '918 patent in a meritless second wave of litigation.[4]

---

[2] *See Novartis v. Becerra et al.*, Case No. 24-cv-02234, D.I. 1, (D.D.C. July 30, 2024).

[3] The filing of Novartis' TRO in the D.C. district court is an obvious end run around this Court. It further suggests that extending this stipulation is unnecessary because Novartis is fully capable of availing itself of all available remedies. And it has also likely been filed because Novartis knows that its "trace amount" '918 patent infringement theory is baseless following this Court's claim construction.

[4] Of note, in view of the Court's recent claim construction order, Defendants are likely to prevail on non-infringement of the '918 patent. With respect to MSN's, its ANDA product contains a novel crystalline form of the sacubitril and valsartan compound proved by unrebutted XRPD testing. At best, Novartis relies on flawed and inconclusive Raman testing, and therefore, it cannot establish infringement of the '918 patent. But even if Novartis' Raman testing were credited in some way, Dr. Matzger concedes that he has only found "small amounts" of amorphous TSV in MSN's ANDA products and Noratech's ANDA Products. Because this Court construed the term "amorphous solid form of a compound" to mean "solid form of a compound in which the amorphous form of the

Novartis has never explained this delay, and Novartis should not be entitled to benefit from its own delay by renewing the advance notice order and effectively delaying and interfering with MSN's confidential business plans and potential launch strategy.

Third, the advance notice order prejudices MSN because it deprives MSN ███
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
███

Last, the advance notice order harms the public. Novartis wants to extend the advance notice order because it operates as a potential delay mechanism and because Novartis then becomes privy to MSN's confidential launch plan and market timing. But delaying MSN's launch hurts patients by depriving them of immediate access to a lower-cost generic alternative and goes against the intended goal of the Hatch-Waxman Act.

In view of the significant prejudice to defendants MSN and Noratech and the lack of any actual irreparable harm to Novartis, the Court should decline to extend the stipulation as the current circumstances and complexity of the litigation has now rendered any type of advanced notice moot.

| Dated: July 31, 2024 | Respectfully submitted |
|---|---|
| /s/ Dominick T. Gattuso_____ | /s/ Richard C. Weinblatt_____ |
| HEYMAN ENERIO GATTUSO & HIRZEL LLP | STAMOULIS & WEINBLATT LLC |
| Dominick T. Gattuso (#3630) | Stamatios Stamoulis (#4606) |
| Denise S. Kraft (#2778) | Richard C. Weinblatt (#5080) |
| 300 Delaware Ave., Suite 200 | 800 N. West Street, Third Floor |
| Wilmington, DE 19801 | Wilmington, DE 19801 |
| (302) 472-7300 | (302) 999-1540 |
| dgattuso@hegh.law | stamoulis@swdelaw.com |
| dkraft@hegh.law | weinblatt@swdelaw.com |
| Don J. Mizerk | Ronald M. Daignault* |
| Matthew M. Kamps | Richard Juang* |
| HUSCH BLACKWELL LLP | DAIGNAULT IYER LLP |
| 120 South Riverside Plaza, Suite 2200 | 8229 Boone Boulevard - Suite 450 |

compound **predominates**," it is clear that MSN and Noratech cannot infringe, as their respective ANDA Products use non-amorphous APIs.

3

| | |
|---|---|
| Chicago, IL 60606 | Vienna, VA 22182 |
| (312) 655-1500 | rdaignault@daignaultiyer.com |
| don.mizerk@huschblackwell.com | rjuang@daignaultiyer.com |
| matt.kamps@huschblackwell.com | *\*Not admitted in Virginia* |
| | |
| Thomas P. Heneghan | *Attorneys for Defendants MSN* |
| HUSCH BLACKWELL LLP | *Pharmaceuticals Inc., MSN Laboratories* |
| 33 East Main Street, Suite 300 | *Private Limited, and MSN Life Sciences* |
| Madison, WI 53703 | *Private Limited* |
| (606) 234-6032 | |
| tom.heneghan@huschblackwell.com | |

*Attorneys for Defendant Nanjing Noratech
Pharmaceutical Co., Limited*

4

**CERTIFICATE OF SERVICE**

I hereby certify that on July 31, 2024, I caused a copy of the foregoing document to be served by e-mail to the following counsel listed below.

Daniel M. Silver
Alexandra M. Joyce
MCCARTER & ENGLISH, LLP
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, Delaware 19801
dsilver@mccarter.com
ajoyce@mccarter.com

Nicholas N. Kallas
Christina Schwarz
Christopher E. Loh
Susanne L. Flanders
Jared L. Stringham
Shannon K. Clark
Laura K. Fishwick
Gregory J. Manas
VENABLE LLP
1290 Avenue of the Americas
New York, New York 10104
nkallas@venable.com
cschwarz@venable.com
cloh@venable.com
slflanders@venable.com
jlstringham@venable.com
skclark@venable.com
lfishwick@venable.com
gjmanas@venable.com

*/s/ Richard C. Weinblatt*
Richard C. Weinblatt (#5080)

5