# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re Entresto (Sacubitril/Valsartan) Patent Litigation | C.A. No. 20-2930-RGA |
| NOVARTIS PHARMACEUTICALS CORPORATION,  Plaintiff,  v.  HETERO USA INC., HETERO LABS LIMITED, HETERO LABS LIMITED UNIT III, MSN PHARMACEUTICALS INC., MSN LABORATORIES PRIVATE LIMITED, MSN LIFE SCIENCES PRIVATE LIMITED,  Defendants. | PUBLIC VERSION FILED: August 20, 2024  C.A. No. 19-2053-RGA |

**PLAINTIFF'S APPENDIX IN SUPPORT OF**
**NOVARTIS'S MOTION FOR A RULE 62(d) INJUNCTION PENDING APPEAL AND**
**TEMPORARY RESTRAINING ORDER PENDING RESOLUTION OF THIS MOTION**

**VOLUME 1 of 1**
**EXHIBITS 18-20**

Dated: August 2, 2024

OF COUNSEL:

Nicholas N. Kallas
Christina Schwarz
Christopher E. Loh
Jared L. Stringham
VENABLE LLP
151 West 42nd Street
New York, New York 10036
(212) 307-5500
nkallas@venable.com
cschwarz@venable.com

Daniel M. Silver (#4758)
Alexandra M. Joyce (#6423)
McCARTER & ENGLISH, LLP
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, Delaware 19801
(302) 984-6300
dsilver@mccarter.com
ajoyce@mccarter.com

*Attorneys for Plaintiff Novartis Pharmaceuticals Corporation*

cloh@venable.com
jlstringham@venable.com

# EXHIBIT 18

NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| ELI LILLY AND COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>ACTAVIS ELIZABETH LLC, GLENMARK PHARMACEUTICALS INC., SUN PHARMACEUTICAL INDUSTRIES LTD., SANDOZ INC., MYLAN PHARMACEUTICALS INC., APOTEX INC., AUROBINDO PHARMA LTD., TEVA PHARMACEUTICALS USA, INC., SYNTHON LABORATORIES, INC., ZYDUS PHARMACEUTICALS, USA, INC.,<br><br>Defendants. | **Hon. Dennis M. Cavanaugh**<br><br>**ORDER**<br><br>Civ. No. 07-cv-3770 (DMC) (JAD) |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion of Plaintiff Eli Lilly and Company ("Lilly") for a Temporary Injunction pursuant to Fed. R. Civ. P. 62(c), and the Court, having considered the submissions of the parties:

**WHEREFORE** Lilly asks this Court to "enjoin the Defendants from launching at risk to permit the Federal Circuit time to determine whether an interim injunction is warranted in this case";

**WHEREFORE** this Court has, on multiple occasions, acknowledged the significant and uncertain legal question relating to enablement that is dispositive as to the enforceability of Plaintiff's patent;

**WHEREFORE** this Court recognizes the attendant price and market share effects that will immediately take place upon entry of Defendants' generic products into the market;

**WHEREFORE** the Court may fashion limited relief to permit the Federal Circuit to have the opportunity to consider Lilly's request for injunctive relief in this matter;[1]

IT IS on this ___18th___ day of August, 2010;

**ORDERED** that Lilly's Motion for a Temporary Injunction pending the resolution of the appeal in this case is hereby **denied**; and it is further,

**ORDERED** that Lilly's Motion for a Temporary Injunction while Lilly seeks injunctive relief from the Federal Circuit is hereby **granted in part**; and it is further,

**ORDERED** that Defendants will be enjoined for a period of (14) days from the date of entry of the Final Judgment in this matter from launching in the U.S. a generic version of Strattera®, for the purpose of permitting Lilly to seek injunctive relief with the Federal Circuit; and it is further

**ORDERED** that Lilly must post security in the value of $10,000,000, in the form of a bond or corporate undertaking.

          S/ Dennis M. Cavanaugh
          Dennis M. Cavanaugh, U.S.D.J.

Orig.:    Clerk
cc:       All Counsel of Record
          Hon. Joseph A. Dickson, U.S.M.J.
          File

---

[1] Absent the limited relief granted herein, the Federal Circuit would not have a meaningful opportunity to consider granting the relief sought by Lilly, as the Defendant generic drug manufacturers will be permitted to enter the market regardless of the ultimate determination made as to the enforceability of the patent-in-issue. Sanofi Aventis U.S. LLC v. Sandoz, Inc., Nos. 2009-1427,-1444, slip op. at 3- 5 (Fed. Cir. Aug. 13, 2009); *FDA Guidance for Industry: Court Decisions, ANDA Approvals, and 180-Day Exclusivity Under the Hatch-Waxman Amendments to the Federal Food, Drug, and Cosmetic Act*, 65 Fed. Reg. 16,922 (Mar. 30, 2000) ("Neither a stay nor a reversal of a district court decision finding the patent invalid, unenforceable, or not infringed will have an effect on the approval of the ANDA . . . .").

# EXHIBIT 19

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| GALDERMA LABORATORIES, L.P., <br> GALDERMA S.A. and <br> NESTLÉ SKIN HEALTH S.A., <br><br> Plaintiffs, <br><br> v. <br><br> TEVA PHARMACEUTICALS USA, INC., <br><br> Defendant. | § § § § § § § § § § § § | C.A. No. 17-1783 (RGA) |

**[PROPOSED] ORDER GRANTING INJUNCTION PENDING APPEAL**

WHEREAS, Plaintiffs Galderma Laboratories, L.P., Galderma S.A., and Nestlé Skin Health S.A. (now known as Galderma Skin Health S.A.) (collectively, "Galderma") having moved this Court for an injunction pending appeal [D.I. 264] (the "Motion");

WHEREAS, the Court having considered the Motion and the parties' submissions and arguments in support and opposition thereto;

WHEREAS, the Court set forth its findings of fact and conclusions of law in support of the injunction during the hearing on October 31, 2019 [D.I. 296], which are incorporated herein; and

WHEREAS, this Order memorializes the Court's oral order set forth during the hearing on October 31, 2019 [D.I. 296].

IT IS HEREBY ORDERED that Galderma's Motion is GRANTED as follows:

1.  Defendant Teva Pharmaceuticals USA, Inc., its officers, agents, servants, employees, attorneys, and any other persons who are in privity, active concert, or participation with them (collectively, "Teva") are enjoined from engaging in the commercial use, offering to sell, shipment, or the sale of the generic 1% ivermectin product described in Teva's Abbreviated Drug Application ("ANDA") No. 210019 (the "Accused Product").

1

2. Galderma, its officers, agents, servants, employees, attorneys, and any other persons who are in privity, active concert, or participation with them, are enjoined from engaging in the commercial use, offering to sell, shipment, or the sale of its authorized generic of Soolantra (ivermectin) Cream, 1% ("Authorized Generic") and will instruct Prasco, its authorized generic partner, to cease offering to sell, shipping, or selling, the Authorized Generic.

3. This injunction shall not prohibit a pharmacy or other third party who is not in privity with Teva, Galderma, or Prasco from selling any Accused Product or Authorized Generic that was released by Teva, Galderma, or Prasco, on or before October 31, 2019.

4. Galderma shall post a bond of $40,000,000.

5. Galderma shall seek to expedite its appeal of the Court's judgment [D.I. 260].

6. This injunction shall remain in full force and effect until the earliest of: (a) further orders of this Court concerning this injunction; (b) further orders of the United States Court of Appeals for the Federal Circuit concerning this injunction; (c) or an opinion is issued from the United States Court of Appeals for the Federal Circuit disposing of Galderma's appeal, No. 19-2396. Should the United States Court of Appeals for the Federal Circuit reverse or vacate the Court's judgment [D.I. 260], then Galderma may seek preliminary injunctive relief in the District Court.

SO ORDERED this __5__ day of __November__ 2019.

*/s/ Richard G. Andrews*
The Honorable Richard G. Andrews
United States District Judge

# EXHIBIT 20

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NOVARTIS PHARMACEUTICALS CORPORATION, : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> ACCORD HEALTHCARE INC., et al., : <br> : <br> Defendants. : | C.A. No. 18-1043-LPS |

## **MEMORANDUM ORDER**

Having considered the parties' briefing (D.I. 358, 458, 514) and having conducted an evidentiary hearing and heard oral argument on June 21, 2019, **IT IS HEREBY ORDERED THAT** Plaintiff's motion for a preliminary injunction (D.I. 357) is **GRANTED**.

**IT IS FURTHER ORDERED THAT** the parties shall submit a joint status report by Friday, June 28, 2019. That status report shall address, in addition to anything else the parties wish to raise, (a) whether the trial date should be accelerated; (b) how long the parties are likely to need for their trial presentations; (c) the amount of bond the Court should require Plaintiff to post; and (d) whether any discovery disputes remain ripe and require judicial attention.

The Court's decision to grant the preliminary injunction was, as stated as the conclusion of the hearing, for the following reasons:

> First I want to note I carefully considered all the materials that were in the record, including the voluminous record that you all created before today and, of course, everything that was cited in court today. That includes, but is not limited to, the various declarations of the witnesses, the deposition testimony, many documents, and the testimony that I got to hear live today.

1

The legal standards I think are not disputed, but let me just try to quickly note them for the record.

A preliminary injunction, of course, is an extraordinary remedy that should be granted only in limited circumstances. Deciding whether to grant a preliminary injunction requires consideration of whether the moving party can prove the following. A reasonable likelihood of success on the merits, irreparable harm if the injunction is not granted, a balance of hardship tipping in its favor, and the injunction's favorable impact on the public interest. Although the factors are not applied mechanically, a movant must establish the existence of both of the first two factors to be entitled to a preliminary injunction.

In the context of this suit, which is a patent infringement action, with respect to the likelihood of success on the merits, Novartis as the moving party must show both, one, it is likely to prove that the proposed generic product will infringe the asserted patent claim on which the motion is based, and, two, that defendants' challenges to the validity of the patent lack[] substantial merit.

Having applied that law to the facts as best as I could, my decision is to grant the motion for a preliminary injunction. Let me try to explain why.

First, turning to likelihood of success on the merits, I find that Novartis has met its burden to demonstrate a likelihood of success on the merits. Infringement is not contested for purposes of the preliminary injunction motion, so I need not address it any further. The issue, of course, is invalidity, and on invalidity, I have made a preliminary assessment as I'm required to do on defendants' three challenges. Anticipation by Kappos 2006, lack of adequate written description, and lack of enablement or utility.

At one level I think it is fair to say that there is a "substantial question of patentability." [But] I don't think that that is a fair description when that phrase is used in the manner that I understand it to be pertinent to the preliminary injunction analysis. That is, I don't think that defendants' invalidity contentions as argued here today are frivolous. If I were to permit summary judgment practice in this case, the defendants' invalidity defenses might very well survive a summary judgment motion. It's even possible, despite what I'm about to say, that defendants might prevail on one or more of their invalidity theories after trial, but having considered the evidence and the arguments before me at

2

this stage, my finding is that defendants are not at all likely to prevail at trial on invalidity.

That is, I am persuaded by Novartis that at trial, defendants will likely fail to persuade me by clear and convincing evidence that the asserted claims of the '405 patent are invalid due to anticipation by Kappos 2006, or due to lack of adequate written description, or due to lack of enablement and utility.

Having made that finding, I believe that plaintiff has done what the law requires it to do on likelihood of success on the merits when confronted with a challenge to the validity of its patent at the preliminary injunction stage. That's my understanding of what the Federal Circuit has told us is the legal standard at this stage. For instance, in the *Titan Tire* decision, 566 F.3d at page 1372, a 2009 decision,[1] the Federal Circuit told us that what the Court must do is "determine whether it is more likely than not that the patent challenger will be able to prove at trial by clear and convincing evidence that the patent is invalid." And, again, my finding for reasons I'm going to now try to explain is for the plaintiff, applying that standard.

Highly relevant to my finding on likelihood of success on the merits is that the defendants have proposed the wrong person of ordinary skill in the art, the wrong POSA. I am persuaded instead by plaintiff that the PTAB's definition of a POSA is correct here. It is a team that includes not just a clinician, but also a pharmacologist. I've been using a shorthand here, as I hope you will appreciate. As a formal matter, I'm adopting the specific definition of a POSA proposed by the plaintiff.

I've reached this conclusion for at least the following reasons. The patent contains parts that would be best understood by a pharmacologist even though the claims are principally directed to treatment and therefore to a clinician.

For instance, a pharmacologist is needed to understand the link between the EAE discussion of the specification and human dosing. Some of the prior art listed on the face of the patent and considered by the PTO is . . . pharmacological work relating to fingolimod. The invention as a whole is directed to a team which would necessarily include a pharmacologist for all the reasons that plaintiff has given, which are all well supported in the record.

---

[1] *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1379 (Fed. Cir. 2009).

Defendants did not present any evidence from a pharmacologist or from the perspective of a pharmacologist. Therefore, they did not provide any evidence from the perspective of a POSA. Their expert, Dr. Hoffman, candidly admitted he doesn't know how a pharmacologist would interpret the patent. This alone I think is likely a sufficient basis to find that defendants are not likely to prevail on their invalidity challenges at trial. But I am not resting my decision solely or even principally on my finding regarding a POSA.

I will now turn to the three specific invalidity defenses that defendants have argued, and I find again that defendants are likely to fail on all three of them at trial.

First, anticipation by Kappos 2006.

In order for Kappos 2006 to anticipate the claims of the '405 patent, it must contain every element of the claims, either expressly or inherently. Also, Kappos 2006 must be enabled.

The Court agrees with Novartis that defendants are unlikely to persuade the Court at trial that Kappos 2006 discloses the '405 claim limitations of treatment and no loading dose.

First regarding treatment, Kappos 2006 is a test, not a method of treatment. At its publication date, the .5 milligram dose of fingolimod had never been used on a human MS patient. Nobody knew it would be an effective treatment, and no clinician would have prescribed it for an RRMS patient, including candidly defendants' clinical expert, Dr. Hoffman.

Kappos 2006 was a test. It was a hypothesis. It does not disclose and does not anticipate the treatment limitations of the asserted claims of the '405 patent.

This is reflected in a great deal of evidence about, for example, ethical concerns and even opposition to testing such a low dose on human RRMS patients, including Dr. Lublin's own hospital refusing to participate in the study and the unusual futility analysis required after six months of the test.

All of this would in one form or another have been part of what a POSA knew about fingolimod and would be part of why a POSA would read Kappos 2006 as something other than a method of treatment.

4

So that limitation is missing and that's enough to defeat the Kappos 2006 anticipation defense, but I also agree that Kappos 2006 also does not exclude an immediately preceding loading dose, which is an express limitation of the asserted claims of the '405 patent.

It is undisputed that Kappos 2006 is silent on the matter of a loading dose. I am persuaded on the present record that . . . Defendants will fail to persuade me at trial by clear and convincing evidence that a POSA, that is the properly defined POSA, which includes a pharmacologist, would read the one-page, approximately 600-word abstract as inherently and necessarily excluding a loading dose.

. . .

Given my conclusions on Kappos 2006 not containing all of the limitations of the asserted claims, I don't need to decide today if Kappos 2006 is enabling. All I would say on that is that my sense at the moment is that plaintiff's analogy to our *GSK* case is a persuasive comparison, and [D]efendants' efforts to distinguish *GSK*, which only came up today, appear likely to fail.[2]

Turning next to the written description defense. Under 35 U.S.C., Section 112, a patent must convey with reasonable clarity to a POSA that the inventor was in possession of the claimed invention at the time of the application.

The Court agrees with Novartis, that defendants are unlikely to persuade the Court at trial that the inventors of the '405 patent were not in possession of the claimed invention at the time of the application.

The properly defined POSA would read the '405 patent to have an adequate written description. That POSA is again a team that includes a pharmacologist, and I am persuaded, it is unlikely defendants will persuade me that a pharmacologist would fail to understand what the inventors invented and what the inventors were disclosing.

---

[2] *See GlaxoSmithKline LLC v. Glenmark Pharm. Inc., USA*, 2017 WL 8944995 (D. Del. May 2, 2017), *report and recommendation adopted*, 2017 WL 2290141 (D. Del. May 25, 2017); *see also GlaxoSmithKline LLC v. Teva Pharm. USA, Inc.*, 313 F. Supp. 3d 582, 598 (D. Del. 2018).

5

Although not necessary, the parties today both introduced evidence of what the inventors themselves testified to, and this evidence on the whole supports plaintiff's view that the inventors had possession of their invention.

A patent does not need to tell the full story or really even any story about how the inventors came to their invention, and it need not state things that a POSA would already know, including the prior art. Much of the defendants' attack on the supposed lack of adequate written description is really legal irrelevancies, therefore.

And the third defense, turning to that, the lack of enablement or utility defense. Very little was said about this defense in court today. It is addressed a little bit in the briefing.

To be enabling, a specification of a patent must teach those skilled in the art how to make and use the full scope of the claimed invention without undue experimentation. It must have utility as well.

Although not entirely clear, it may be in this context that defendants are arguing. "If Kappos does not disclose the absence of a loading dose, neither does the patent, and thus, Novartis did not describe any method supporting of possession of a claim." To the extent defendants are making that argument either in this or any other context, I find that plaintiff has adequately demonstrated, as the Patent Office similarly found, that when read in its full context, a person of skill does understand the patent to preclude a loading dose.

The Court is persuaded by the evidence that a POSA may well read an abstract differently than they read a patent. While far from dispositive, I think it's worth noting that the title of the patent includes, "treating RRMS" while the abstract is called "design of a randomized placebo-controlled study," and then it goes on, but that's the end of the part I'm quoting.

Lastly, defendants argue, "Novartis and its expert cannot point to any portion of the specification that contains actual information supporting the claimed utility in human patients." This I disagree with. It is contradicted and persuasively so by the testimony of Dr. Jusko. That is, that a pharmacologist would, in fact, understand how the EAE studies relate to the stated human doses.

6

So that takes care of likelihood of success on the merits. Turning next to irreparable harm.

Novartis has [met] its burden to show that there's a reasonable likelihood that in the absence of a preliminary injunction, one or more and up to six generics will undertake an [at-risk] launch in August of this year, and as a result, Novartis will suffer immediate and substantial harm that cannot be remedied by money damages even if Novartis ultimately prevails at trial and obtains a permanent injunction. These harms include the likely massive and immediate price erosion in the market for oral treatment of RRMS.

After what might be as long as a year of generic competition by the time we get to trial and I get a post-trial opinion done, Novartis will not be able to raise the price back to where it is now, or to where it would have been at that post-trial date in the absence of defendants' at-risk infringement.

Therefore, even assuming the amount of what would by that point . . . be the amount of past damages . . . could, with some difficulty, . . . be calculated, future damages beyond that date would also have to be calculated. That may be impossible. And then at that point, defendants will argue that they should not have to compensate Novartis for those future damages, i.e., the damages following the permanent injunction for the life of the patent.

Novartis has also proven that the relevant market will be condensed for [reasons] including issues relating to the requirement of FDO and the potential impact an at-risk launch might have on the availability of FDO.

I'm also persuaded that Novartis will suffer an irreparable injury to its goodwill from an at-risk launch for reasons including that to try to make itself whole [(or as whole as possible should it prevail at trial after an at-risk launch)], Novartis would have to raise Gilenya prices back to the pre-infringement level. [B]ut if Novartis tries to do that, Novartis would [(in this scenario[,] unfairly)], be widely criticized, thereby suffering irreparable harm to its goodwill.

. . . I'm not going to go into any further detail about the evidence on irreparable harm. We discussed most of that. That's highly confidential evidence and the courtroom was closed. I've considered all of that and I am largely persuaded by all of the arguments that the plaintiff has made on irreparable harm, but I'm

7

not going to go into further detail on that. Instead I will just discuss some of the defendants' arguments against irreparable harm.

Defendants' principal argument against finding irreparable harm is that Novartis has brought the harm on itself and that it has within its control the ability to mitigate or prevent these harms. I am not persuaded by these arguments. . . . [D]efendants did not unreasonably delay bringing suit on the '405 patent. Novartis did nothing inequitable in waiting to bring suit until after it received all of the many paragraph 4 certifications and after the IPR was completed, especially because the '405 patent was one that was never eligible to trigger a 30-month stay under the Hatch-Waxman Act and because pediatric exclusivity on the '229 patent protected Novartis from any potentially infringing competition until August of 2019.

Now, Novartis's course of action was not the only reasonable course of action. It may not even have been the most reasonable course of action.

For instance, it's far from clear to me that I would have necessarily stayed proceedings on the '405 patent during the pendency of the IPR if I had been asked, but I was never asked. But the important point for today is that there was nothing wrong with what Novartis did. Novartis's actions and failure to sue sooner do[] not undermine its showing of irreparable harm. I entirely disagree with defendants' contention that none of us should be here today.

I also do think that defendants may well have been able to force the issue of the validity of the '405 patent earlier through a declaratory action. It may be that it would have been dismissed for lack of standing. I don't have to decide that now. Again, nobody asked me. But I think it is pertinent that defendants did not try.

Defendants have also contended that Novartis itself believes the '405 patent is invalid and had planned for and prepared to deal with event[ual] generic competition.

I'm not persuaded that Novartis believes the '405 patent is invalid, or that this belief somehow explains how Novartis has approached litigating the '405 patent[.] [A]nd the fact that Novartis is preparing, as best as it can, to deal with legitimate generic competition when it arrives does not mean that Novartis

8

should be confronted with premature [(likely infringing)] generic competition.

That's all I have to say on irreparable harm.

Turning, finally, to balance of harms and the public interest. I find again that Novartis has met its burden. Both of these factors, too, favor the relief that I am granting.

Defendants stand to lose the opportunity to earn on the order of $50 million collectively by not being able to compete over approximately the next year whereas Novartis will irreparably lose a market in which they sell approximately $1.8 billion of drugs [each] year. To me, that balance clearly favors Novartis under the circumstances.

I also think that while consumers would, of course, benefit from lower prices, there may be a corresponding harm in this particular market given the possible adverse impact on FDO services.

Further, the public has an interest in protecting valid patent rights and in maintaining incentives for the massive investments required for drug development.

Under the circumstances here, I think the balance of harms and the public interest favor the relief I am granting. Therefore, and for those reasons, I am granting the motion for a preliminary [injunction].

June 24, 2019  
Wilmington, Delaware

HONORABLE LEONARD P. STARK  
UNITED STATES DISTRICT JUDGE

9

## **CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that true and correct copies of the foregoing document were caused to be served on August 2, 2024 on the following counsel in the manner indicated below.

### **VIA EMAIL:**

Stamatios Stamoulis
Richard C. Weinblatt
STAMOULIS & WEINBLATT LLC
800 N. West Street, Third Floor
Wilmington, DE 19801
(302) 999-1540
stamoulis@swdelaw.com
weinblatt@swdelaw.com

Ronald M. Daignault
Richard Juang
DAIGNAULT IYER LLP
8618 Westwood Center Drive, Suite 150
Vienna, VA 22182

*Attorneys for Defendants MSN Pharmaceuticals Inc., MSN Laboratories Private Limited, and MSN Life Science Private Limited*

Dated: August 2, 2024                                           */s/ Daniel M. Silver*
                                                               Daniel M. Silver (#4758)