# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| In re Entresto (Sacubitril/Valsartan) Patent Litigation | C.A. No. 20-2930-RGA<br>**PUBLIC VERSION** |
| NOVARTIS PHARMACEUTICALS CORPORATION,<br><br>      Plaintiff,<br><br>      v.<br><br>MSN PHARMACEUTICALS INC., MSN LABORATORIES PRIVATE LIMITED, MSN LIFE SCIENCES PRIVATE LIMITED, GERBERA THERAPEUTICS, INC., NANJING NORATECH PHARMACEUTICAL CO., LIMITED,<br><br>      Defendants. | C.A. No. 22-1395-RGA<br>**PUBLIC VERSION** |

**DEFENDANTS' MOTION TO STRIKE PORTIONS OF DECLARATION OF ADAM J. MATZGER, PH.D. ON INFRINGEMENT IN SUPPORT <u>OF NOVARTIS'S MOTION FOR A PRELIMINARY INJUNCTION</u>**

**TABLE OF CONTENTS**

I.     Introduction. ........................................................................................................................ 1

II.    Legal Standard. .................................................................................................................. 2

III.   Argument. .......................................................................................................................... 3

       A.     Novartis's failure to disclose Dr. Matzger's experiment is severely prejudicial to
              MSN. ....................................................................................................................... 3

       B.     Novartis's failure to disclose Dr. Matzger's experiment cannot be cured prior to
              deciding Novartis's motion for preliminary injunction and disrupts an orderly and
              efficient determination. .......................................................................................... 6

       C.     Novartis's failure to disclose Dr. Metzger's experiment represents willfulness and
              bad faith. ................................................................................................................. 7

       D.     Novartis's failure to disclose Dr. Metzger's experiment indicates that it is not an
              important disclosure to outweigh prejudice, willfulness, and bad faith. ................ 7

       E.     Novartis should not be rewarded for using privilege as a sword and a shield to
              selective disclose only beneficial XRPD testing. ................................................... 8

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ansell Healthcare Prods. LLC v. Reckitt Benckiser LLC*,
  Civil Action No. 15-cv-915-RGA, 2017 U.S. Dist. LEXIS 202842
  (D. Del. Dec. 11, 2017) ...................................................................................................... 8

*AVM Techs., LLC v. Intel Corp.*,
  2013 U.S. Dist. LEXIS 66604 (D. Del. Mar. 29, 2013) ...................................................... 8

*Tetris Holding, LLC v. Xio Interactive*,
  Civil Action No. 09-6115 (FLW), 2011 U.S. Dist. LEXIS 160871
  (D.N.J. June 20, 2011) ....................................................................................................... 9

*TQ Delta, LLC v. Adtran, Inc.*,
  2020 WL 4529865 (D. Del. July 31, 2020) ............................................................. 2, 3, 4, 6

*TQ Delta v. Adtran, Inc.*,
  2019 WL 4346530 (D. Del. Sept. 12, 2019) .................................................................. 6, 7

*Vectura Ltd. v. GlaxoSmithKline LLC*,
  2019 WL 143629 (D. Del. April 1, 2019) .......................................................................... 4

*ViaTech Techs. Inc. v. Microsoft Corp.*,
  2021 WL 663057 (D. Del. Feb. 19, 2021) .......................................................................... 3

*Williams v. City of York*,
  2018 U.S. Dist. LEXIS 132404 (M.D. Pa. Aug. 7, 2018) ................................................... 2

*Withrow v. Spears*,
  967 F. Supp. 2d 982 (D. Del. Aug. 22, 2013) ..................................................................... 7

**Rules**

Fed. R. Civ. P. 26(a)(1)(A) ........................................................................................................ 2, 4

Fed. R. Civ. P. 26(a)(2)(B)(i) ......................................................................................................... 3

Fed. R. Civ. P. 26(e)(1)(A) ........................................................................................................ 2, 4

I. **Introduction.**

On August 2, 2024, Novartis Pharmaceuticals Corporation ("Novartis" or "Plaintiff") filed its opening brief in support of its motion for preliminary injunction against MSN Pharmaceuticals Inc., et al ("MSN" or "Defendants"). In a last-ditch effort to demonstrate Novartis is likely to succeed on its patent infringement claims, Novartis for the first time cites to Raman mapping and X-ray microdiffraction newly conducted by Dr. Matzger on MSN's Form-S API. Br. at 4.[1] Having *never* previously disclosed this testing during the course of this litigation, and springing it on MSN now, is highly prejudicial. MSN respectfully requests the Court to strike any reliance on Dr. Matzer's belated testing.

Dr. Matzger never disclosed his Raman mapping and X-ray microdiffraction experiment in his expert reports. Novartis also failed to disclose Dr. Matzger's experiments, or accompanying results, in both its preliminary and final infringement contentions. Novartis failed to disclose Dr. Matzger's experiments in its Rule 26 disclosures. Instead, Dr. Matzger's experiments are revealed *for the first time in this litigation* in Novartis's motion for preliminary injunction and Dr. Matzger's accompanying declaration. This is in direct violation of the Federal Rules of Civil Procedure, the Federal Rules of Evidence, and highly prejudicial to MSN for both Novartis's patent infringement claims and the pending motion for preliminary injunction.

Accordingly, MSN respectfully requests that the Court strike ¶¶ 34-52 of Dr. Matzger's declaration, and strike any portion of Novartis's motion for preliminary injunction that cites to or relies on such information, including as it relates to Novartis's arguments regarding any likely

---

[1] MSN appreciates that such a motion may not be decided before the Court's August 9, 2024 hearing, but MSN files this motion to both raise the issue before the Court and to preserve its rights. Novartis only provided its response on August 7, 2024 (*see* Ex. E), and MSN filed its response shortly thereafter. Novartis has also indicated that it would not file a response to the motion prior to the hearing in view of the timing.

1

success of its patent infringement claims. MSN further requests that the Court strike as untimely any and all evidence, testimony, or documents related to Dr. Matzger's undisclosed Raman mapping and X-ray microdiffraction experiments in Novartis's patent infringement allegations.

## II.     Legal Standard.

Federal Rule of Civil Procedure 26(a)(1)(A) requires that: a party must, without awaiting a discovery request, provide to the other parties: (i) the name . . . of each individual likely to have discoverable information – along with the subjects of that information – *that the disclosing party may use to support its claims or defenses*, unless the use would be solely for impeachment; (ii) a copy – or a description by category and location – of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody or control and may *use to support its claims or defenses*, unless the use would be solely for impeachment. *See* Fed. R. Civ. P. 26(a)(1)(A) (emphasis added).[2]

Furthermore, a disclosing party must supplement or correct its disclosure in a timely manner "if the additional or corrective information *has not otherwise been made known to the other parties during the discovery process or in writing*." Fed. R. Civ. P. 26(e)(1)(A); *see also Williams v. City of York*, 2018 U.S. Dist. LEXIS 132404, at *3-4 (M.D. Pa. Aug. 7, 2018).

Separately, "[t]he Federal Rules of Civil Procedure require an expert witness to provide a written report containing 'a complete statement of *all opinions* the witness will address and the reasons for them." *TQ Delta, LLC v. Adtran, Inc.*, 2020 WL 4529865, at *4-5 (D. Del. July 31, 2020) (citing Fed. R. Civ. P. 26(a)(2)(B)(i)). "If a party fails to provide this information, 'the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at

---

[2] Unless otherwise indicated, all emphasis is added.

trial, unless the failure was substantially justified or is harmless.'" *Id*. (citing Fed. R. Civ. P. 37(c)(1)).

"To determine whether a failure to disclosure was harmless, courts in the Third Circuit consider the *Pennypack* factors: (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the possibility of curing the prejudice; (3) the potential disruption of an orderly and efficient trial; (4) the presence of bad faith or willfulness in failing to disclose the evidence; and (5) the importance of the information withheld." *Id*. (citing *Konstantopoulos v. Westvaco Corp*., 112 F. 3d 710, 719 (3d. Cir. 1997).

### III.  Argument.

Novartis's willful failure to disclose Dr. Matzger's experiment until filing its motion for preliminary injunction causes both extreme surprise *and* prejudice to MSN. Novartis's willful failure cannot be cured prior to briefing, oral argument, or consideration of the motion for preliminary injunction. Additionally, waiting until the last moment to conduct and disclose this testing, even after MSN has consistently offered the same theory, is evidence of bad faith and significantly disrupts the case. Accordingly, for the foregoing reasons, Novartis's failure to disclose Dr. Matzger's experiment is harmful, and the information should be stricken.

####    A.  Novartis's failure to disclose Dr. Matzger's experiment is severely prejudicial to MSN.

Dr. Metzger did not disclose his Raman mapping and X-ray microdiffraction experiments in his expert reports. Fed. R. Civ. P. 26(a)(2)(B)(i) ("a complete statement of *all opinions* the witness will address and the reasons for them."); *ViaTech Techs. Inc. v. Microsoft Corp.*, 2021 WL 663057, at *6 (D. Del. Feb. 19, 2021) ("excluding expert report and finding violation of the court's scheduling order when presenting new evidence and theories after the close of fact

3

discovery and "well after" the deadline for disclosure of infringement contentions "based on core technical documents").

Novartis did not disclose Dr. Metzger's experiments, nor any related results, in its preliminary or final infringement contentions. *TQ Delta*, 2020 WL 4529865, at *5 ("The Federal Circuit has held that even if a scheduling order is silent on the required contents of infringement contentions, that 'does not mean that [the plaintiff] can choose to disclose nothing about its [] theory.'") (finding prejudice under the first *Pennypack* factor when newly disclosed information was "not a mere correction of information, but instead, create[d] a new ballgame," which would require new defenses) (citation omitted); *Vectura Ltd. v. GlaxoSmithKline LLC*, 2019 WL 143629, at *5 (D. Del. April 1, 2019) ("holding the first *Pennypack* factor weighs in favor of exclusion when "new opinions were first disclosed when they were filed concurrently with Plaintiffs" brief in the late-stages of litigation).

Novartis did not disclose Dr. Metzger's experiments, nor any related results, in its Rule 26 disclosures. Fed. R. Civ. P. 26(a)(1)(A) ("all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody or control and may *use to support its claims or defenses*."); Fed. R. Civ. P. 26(e)(1)(A) ("if the additional or corrective information *has not otherwise been made known to the other parties during the discovery process or in writing*.").

Novartis argues that this testing is in rebuttal to testing disclosed in MSN's responsive expert reports. This is simply wrong. This is not testing that could have only occurred in response to MSN's responsive expert reports, as Novartis suggests. *See* Ex. E. Instead, MSN has always maintained that its ANDA product contains crystalline Form-S only and that there is no amorphous TVS as confirmed by XRPD testing-conducting by MSN during manufacturing and

4

development. *See* Exhibit A (MSN's October 8, 2021 Interrogatory Responses) ("XRD, DSC, TGA, ATR-FTIR, and other testing will confirm that MSN's product does not have the requisite $H_2O$ content, XRD diffraction patterns/peaks, molecular mass, and crystal properties necessary to infringe.") and Exhibit B (MSN's April 4, 2024 Interrogatory Responses) ("MSN further states that the drug substance in MSN's ANDA Products is the novel crystalline Form-S of Sacubitril and Valsartan"). Indeed, MSN has pointed to its ANDA in these interrogatory responses, and noted that it had certified to the FDA:

> MSN Life Sciences Private Limited provides the API which is Crystalline Form-S. Since it is the most stable form, any phase transformation during the manufacturing process is not expected. Though the API is supplied in its most stable form, we wanted to ensure that **it remains the same during manufacturing process and stability**. To evaluate whether processing conditions would affect the polymorphic form, the final drug product was evaluated by PXRD. During the study we observed that the characteristics 2 theta peaks of the API were retained in the final drug product

Ex. B at 4.

Even after MSN provided this information as recently as April 4, 2024 in response to interrogatories, Novartis's opening expert reports relied only on preliminary Raman testing on MSN's ANDA product from July 2023. *See* Ex. C (Matzger Lab Notebooks) and *see* Ex. D (April 5, 2024 Supplemental Infringement Contentions) ("Based on expert testing by Raman mapping, MSN's ANDA Products contain amorphous solid form of [TVS], in small amounts. Novartis's investigation is ongoing, and Novartis reserves the right to conduct additional expert testing, including using other spectral techniques."). In fact, though Novartis reserved the right to conduct additional testing in its infringement contentions, it never indicated that it was challenging the polymorphic form of MSN's API.

Importantly, Novartis could have run any number of tests during this time to meet ***its burden,*** yet it failed to do so. Novartis has had MSN's samples for nearly 4 years and known

5

MSN's infringement theories all the while. It did nothing in this period. It focused entirely on testing MSN's finished ANDA product, *not* MSN's Form-S API. It then waited until its emergency injunction motion to produce suspect testing on the API for the very first time to rebut a theory that it had known about for months if not years. At best, this is a lack of diligence on Novartis's part, and at worst, it is deliberate sandbagging to prevent MSN from properly responding to Novartis's API theory and new evidence. Either way, Novartis's failure to disclose should not be rewarded, and the testing should be stricken.

> **B.     Novartis's failure to disclose Dr. Matzger's experiment cannot be cured prior to deciding Novartis's motion for preliminary injunction and disrupts an orderly and efficient determination.**

Novartis filed its motion for preliminary injunction on August 2. MSN responded on August 6. The Court's hearing on Novartis's motion for preliminary injunction is August 9. There is simply no time and no discovery mechanism available to MSN that would cure Novartis's failure to disclose Dr. Metzger's experiment prior to the Court adjudicating Novartis's motion for preliminary injunction. More importantly, given that Novartis has had nearly two years to develop its infringement theories, the delay is simply unacceptable.

Any potential cure for Novartis's willful late disclosure would create significant prejudice for MSN because of the emergency nature of the injunctive motions pending before the Court. *TQ Delta*, 2020 WL 4529865, at *6-7 (weighing the second and third *Pennypack* factors in favor of exclusion when "re-opening discovery to give Defendant an opportunity to cure the prejudice" would disrupt the schedule); *TQ Delta v. Adtran, Inc.*, 2019 WL 4346530, at *6 (D. Del. Sept. 12, 2019) ("To properly cure the prejudice, [the hearing] would need to be delayed."). Novartis suggests that its information will be provided in the forthcoming reply reports, which are due on August 12. If that is the case, then those sections should also be stricken. This is a new theory based on new evidence. And Novartis fails to justify its delays. Indeed, Novartis's

6

delays appear to be a deliberate attempt to further block MSN's ability to launch its product. This last second disclosure should not be rewarded.

### C. Novartis's failure to disclose Dr. Metzger's experiment represents willfulness and bad faith.

Novartis's repeated failure to disclose Dr. Metzger's Raman mapping and X-ray microdiffraction experiments across its Rule 26 disclosures, preliminary and final infringement contentions, and within Dr. Metzger's multiple expert reports represents willful behavior and bad faith. *Id*. at *7 (holding that purposeful "omission" was a "willful" decision); *Withrow v. Spears*, 967 F. Supp. 2d 982 (D. Del. Aug. 22, 2013) ("The Third Circuit has found a party to have violated a scheduling order willfully or in bad faith where the violation at issue was *one in a line of violations by the non-moving party*") (collecting cases).

This litigation is in a mature phase—fact discovery closed April 5, expert discovery is in progress and runs through September 27, and trial is five months away on December 9. And Novartis is now seeking resolution of a preliminary injunction on an expedited basis. Novartis had ample opportunity to properly conduct and disclose Dr. Metzger's experiments in the ordinary course of litigation. It did not do so. Again, Novartis merely relied on its July 7, 2023, testing for its opening expert reports despite MSN's clear disclosure of the theories and testing that it would rely upon. *See* Exhibit C. Novartis willfully chose not to test and disclose the experiment and related results until its last-ditch effort for a preliminary injunction. Novartis's willful omission across several discovery deadlines, expert reports, and disclosures represents a "line of violations" equating to bad faith. *Id*.

### D. Novartis's failure to disclose Dr. Metzger's experiment indicates that it is not an important disclosure to outweigh prejudice, willfulness, and bad faith.

Novartis's willful failure to disclose Dr. Metzger's experiment across multiple discovery deadlines and disclosures indicates that Dr. Metzger's experiment *cannot* have outweighed

importance. Rather, Novartis willfully chose *not* to conduct and disclose Dr. Metzger's experiment until its last-ditch effort for preliminary injunction—indicating that Novartis intends to throw any and all evidence (whether or not properly disclosed) into the Court's view to block MSN's at-risk launch. *AVM Techs., LLC v. Intel Corp.*, 2013 U.S. Dist. LEXIS 66604, at *5 (D. Del. Mar. 29, 2013) (excluding late-disclosed evidence "particularly because this situation is of [Plaintiff's] own making").

Novartis has provided its final invalidity contentions, invalidity expert reports, and non-infringement expert reports *without* Dr. Metzger's experiment or related results contained within. Thus, Novartis has (and may continue to) litigate its position without Dr. Matzger's late-disclosed experiment. Novartis cannot argue in good faith that Dr. Matzger's experiment is of paramount importance that it outweighs the severe prejudice to MSN because Novartis chose not to rely on this information during this case. This is simply a last-ditch effort to prevent MSN from its at-risk launch.

   **E.** **Novartis should not be rewarded for using privilege as a sword and a shield to selective disclose only beneficial XRPD testing.**

In addition to the reasons discussed above, the Court should strike the evidence because Novartis has consistently refused to produce earlier exculpatory XRPD testing. *See* No. 20-2930, D.I. 1354, 1358, and 1367). This situation is now markedly different from when the Court issued its earlier ruling. Novartis claimed that it was not relying on XRPD testing and that "the purpose of the prior testing was to determine whether MSN's ANDA Product contained crystalline TVSH. The purpose of the current testing is to determine whether MSN's ANDA Products contain a different material: amorphous TVS." (D.I. 1358 at 4). Novartis's present actions have shown that this statement is wrong. Thus, Novartis cannot now pick and choose the evidence that supports it case. "Courts in this circuit have noted that privilege cannot be used

8

both as a sword and a shield." *Ansell Healthcare Prods. LLC v. Reckitt Benckiser LLC,* Civil Action No. 15-cv-915-RGA, 2017 U.S. Dist. LEXIS 202842, at *13-14 (D. Del. Dec. 11, 2017); *See also, Tetris Holding, LLC v. Xio Interactive,* Civil Action No. 09-6115 (FLW), 2011 U.S. Dist. LEXIS 160871, at *54 (D.N.J. June 20, 2011) ("[L]itigant cannot at one and the same time make use of those privileged communications which support his position while hoping to maintain the privilege as to those communications which undercut his legal position."). Given the late state of this litigation, and Novartis's apparent 180 on the relevance of XRPD testing, the only proper recourse should be to strike this testing.

### IV.     Conclusion.

For the reasons stated above, MSN respectfully requests that the Court strike ¶¶ 34-52 of Dr. Matzger's declaration as well as striking any portion of Novartis's motion for preliminary injunction that cites to or relies on such information, including as it relates to Novartis's arguments regarding any likely success of its patent infringement claims.

MSN further requests that the Court strike as untimely any and all evidence, testimony, or documents related to Dr. Matzger's undisclosed Raman mapping and X-ray microdiffraction experiment in Novartis's patent infringement allegations.

Dated: August 8, 2024

Respectfully submitted,

STAMOULIS & WEINBLATT LLC

*/s/ Richard C. Weinblatt*
Stamatios Stamoulis (#4606)
Richard C. Weinblatt (#5080)
800 N. West Street, Third Floor
Wilmington, DE 19801
(302) 999-1540
stamoulis@swdelaw.com
weinblatt@swdelaw.com

Of counsel:
Ronald M. Daignault*

9

Richard Juang*
DAIGNAULT IYER LLP
8229 Boone Blvd., Suite 450
Vienna, VA 22182
rdaignault@daignaultiyer.com
rjuang@daignaultiyer.com
*Not admitted in Virginia

*Attorneys for Defendants MSN Pharmaceuticals Inc., MSN Laboratories Private Limited, and MSN Life Sciences Private Limited*

RULE 7.1.1 CERTIFICATION

Pursuant to D. Del. LR 7.1.1, counsel for Defendants *MSN Pharmaceuticals Inc., MSN Laboratories Private Limited, and MSN Life Sciences Private Limited* certifies that counsel for the parties, including Delaware Counsel, discussed the subject matter of the foregoing motion and the relief sought, and that the parties have been unable to reach agreement.

    Respectfully submitted,

    */s/ Richard C. Weinblatt*
    Richard C. Weinblatt (#5080)

    Dated: August 8, 2024

**CERTIFICATE OF SERVICE**

   I hereby certify that on August 8, 2024, I caused a copy of the foregoing document(s) to be served by e-mail to the following counsel listed below.

| | |
|---|---|
| Daniel M. Silver<br>Alexandra M. Joyce<br>MCCARTER & ENGLISH, LLP<br>Renaissance Centre<br>405 N. King Street, 8th Floor<br>Wilmington, Delaware 19801<br>dsilver@mccarter.com<br>ajoyce@mccarter.com | Nicholas N. Kallas<br>Christina Schwarz<br>Christopher E. Loh<br>Susanne L. Flanders<br>Jared L. Stringham<br>Shannon K. Clark<br>Laura K. Fishwick<br>Gregory J. Manas<br>VENABLE LLP<br>1290 Avenue of the Americas<br>New York, New York 10104<br>nkallas@venable.com<br>cschwarz@venable.com<br>cloh@venable.com<br>slflanders@venable.com<br>jlstringham@venable.com<br>skclark@venable.com<br>lfishwick@venable.com<br>gjmanas@venable.com |

                */s/ Richard C. Weinblatt*
                Richard C. Weinblatt (#5080)