# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re Entresto (Sacubitril/Valsartan) Patent Litigation | C.A. No. 20-2930-RGA |
| NOVARTIS PHARMACEUTICALS CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> MSN PHARMACEUTICALS INC., MSN LABORATORIES PRIVATE LIMITED, MSN LIFE SCIENCES PRIVATE LIMITED, <br><br> Defendants. | C.A. No. 19-2053-RGA |
| NOVARTIS PHARMACEUTICALS CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> MSN PHARMACEUTICALS INC., MSN LABORATORIES PRIVATE LIMITED, MSN LIFE SCIENCES PRIVATE LIMITED, GERBERA THERAPEUTICS, INC., NANJING NORATECH PHARMACEUTICAL CO., LIMITED, <br><br> Defendants. | C.A. No. 22-1395-RGA |

**JOINT LETTER TO THE HONORABLE RICHARD G. ANDREWS ON BEHALF OF NOVARTIS AND MSN REGARDING A BOND PENDING APPEAL**

Dear Judge Andrews,

We write on behalf of Novartis and MSN regarding the Court's September 12, 2024 Oral Order directing the parties to provide a joint submission addressing the order of the United States Court of Appeals for the Federal Circuit "to file a bond in the district court in an amount, and subject to the terms and conditions, deemed appropriate by the district court" pending resolution of the appeals from the above-captioned cases.  20-2930-RGA, D.I. 1537.

Novartis and MSN agree that a single, unsecured bond is sufficient for both Appeal No. 23-2218 directed to the '659 patent and Appeal No. 24-2211 directed to the '918 patent.  *See* Appeal No. 23-2218, ECF No. 79-1 at 3 n.1.  The parties, however, dispute the amount and length of that bond.

**Novartis's Position**

Novartis agrees to post a single, unsecured bond of $▮ million covering the period of ▮ 2024 to ▮ 2024, *i.e.*, $▮ per day.[1]  Novartis is agreeing to the ***exact amount and time period*** MSN requested in the Federal Circuit. Ex. B, Novartis's Response to Bond Request at 1-2; Ex. C, MSN's '659 Patent Opp. Br. at 22 (MSN requesting a bond of "$▮ dollars a day" or "$▮ million through the end of 2024").  This amount and time period are based on MSN's own assumptions that it would have commercially launched its products on ▮, and would achieve ▮ market penetration. Ex. C, MSN's '659 Patent Opp. Br. at 19-20.  These same assumptions were the basis for MSN representing to this Court and the Federal Circuit that MSN's launch would not irreparably harm Novartis.  *See* 20-2930-RGA, D.I. 1440 at 19 (citing McDuff Decl. (20-2930-RGA, D.I. 1446) ¶¶ 21-23 (representing that "MSN expects market penetration of around ▮"); Chintapally Decl. (20-2930-RGA, D.I. 1447) ¶ 8 (representing that MSN estimates ▮ market penetration)); Ex. C, MSN's '659 Patent Opp. Br. at 19-20.  In finding no irreparable harm, this Court further relied on MSN's representations that MSN would "limit the amount/volume of generic sacubitril-valsartan product it manufactures and distributes in the United States," thus suggesting that MSN may have even lower market penetration than ▮.  *See* 20-2930-RGA, D.I. 1457 at 7-8 (citing McDuff Decl. ¶¶ 21-26).

Despite MSN's prior representations to this Court and the Federal Circuit, and after Novartis had agreed to MSN's bond request on appeal, MSN sought to increase both the amount ($▮ million or $▮ per day) and time period (starting on ▮ 2024 and extending until ▮) for the bond based on a new calculation for market penetration.  Ex. D, MSN's Reply in Support of Its Bond Request at 1-2 (requesting "a bond of $▮ million for the period between ▮ 2024 through ▮ 2024, which equates to $▮ per day"); Ex. E at 3.  And today, MSN once again increased its requested bond amount to $▮

---

[1] A proposed bond order and Novartis's accompanying proposed bond are attached hereto as Exhibit A.  While Novartis agrees to post a bond, Novartis reserves all rights to contest the existence, amount, and type of any damage MSN alleges in any appropriate proceedings by MSN to collect under the bond.

1

million or $▮ per day. Ex. E at 1-2. MSN's shifting positions on the amount and duration of the requested bond should be rejected.

MSN now alleges that "it will likely capture ▮ of the Entresto® market and not a ▮ market share as it originally thought." Ex. D, MSN's Reply in Support of Its Bond Request at 2; Ex. E at 1. MSN provides no credible explanation why its new ▮ figure is correct or why its original ▮ figure (which it provided only a month ago) is now wrong. And MSN's self-serving increase in market share to increase the bond amount should not be permitted when MSN previously represented to this Court and the Federal Circuit that the lower ▮ figure was an accurate representation of Novartis's estimated harm from MSN's generic entry. Similarly, with respect to MSN's new ▮ 2024 start date for the bond, MSN previously asserted it would not have launched its products before ▮ 2024. Ex. C, MSN's '659 Patent Opp. Br. at 19-20. Indeed, MSN could not have launched its products before ▮ 2024, because as of ▮ 2024, MSN had not provided Novartis with the required 15 days' advance notice of any anticipated commercial launch. 20-2930-RGA, D.I. 1091 at ¶ 1.b. (requiring MSN to provide 15 days' advance notice of the anticipated launch date). Contrary to MSN's assertion below, the order requiring MSN to provide notice of an anticipated launch was not dissolved; the Court only declined to extend the order beyond August 12, 2024. *See* Ex. F, August 1, 2024 Oral Order.

Oral argument for the appeals from these cases is scheduled for November 13, 2024.

For the foregoing reasons, a single, unsecured bond of $▮ million covering the period of ▮ 2024 to ▮ 2024, *i.e.*, $▮ per day, is sufficient to bond any alleged harms to MSN pending resolution of the appeals from these cases.

**MSN's Position**

MSN respectfully submits that Novartis should be required to post a bond in the amount of $▮ million, without surety, for the period between ▮, 2024 and ▮ 2024. This equates to $▮ per day.

Novartis argues that MSN's bond calculations have changed from what it submitted in the Federal Circuit to what it submitted to the DC Circuit and what MSN is now submitting before this Court. The simple fact is that the appeals in both the Federal Circuit and the DC Circuit have been proceeding on a highly expedited schedule and MSN's analysis of the bond issue has become more informed as the cases proceeded. In fact, the primary differences between the bond amounts in the Federal Circuit and the DC Circuit turn on MSN's expected market share and time period for launch. MSN initially proposed ▮ 2024 as a potential launch date, but after considering further this Court's denial of Novartis's preliminary-injunction motions on August 12, 2024, MSN believes that it is more accurate to use ▮ 2024 as MSN's expected launch date. But for this Court's August 12 stay order and the Federal Circuit's

2

stay order on August 14, it is MSN's estimation that it would have been prepared to launch on ▇▇▇▇ shortly after this Court's decision.[2] Chintapally Decl. at ¶5

Another difference is MSN's expected market capture of generic sacubitril-valsartan sales. MSN based its initial bond calculation on ▇▇ market penetration but then when MSN re-considered the bond issue in the DC Circuit, MSN reached the conclusion that a ▇▇ market penetration was more accurate and reflects better its prior experiences with at-risk launches and its launch of generic Roflumilast in a single-entry market, where MSN captured ▇▇ of generic Roflumilast sales as the sole generic. Further, it is important to note that MSN did not shy away from the differences in the bond amounts before the Federal Circuit and the DC Circuit. MSN apprised the Federal Circuit of the differences in its reply brief, and now the Federal Circuit has asked this Court to enter a bond in an amount it believes is appropriate and supported.

As explained in the attached sworn declarations of Bharat Reddy Chintapally and DeForest McDuff, MSN's requested bond amount is supported by, among other things:

(1) Novartis's estimated ENTRESTO® sales from ▇▇▇▇ 2024 through ▇▇▇▇ 2024[3] of ▇▇▇▇ – see Chintapally Decl. at ¶5; McDuff Decl. ¶¶ 7-8 and Exhibit B-1;

(2) MSN's projected ▇▇ market capture and sales at a ▇▇ discount in price to ENTRESTO® during that time period, which is an estimated total of $▇▇ million in discounted sales – see Chintapally Decl. at ¶¶7-8; McDuff Decl. ¶¶ 8-9 and Exhibit B-1; and

(3) MSN's projected profit of $▇▇ million -- see McDuff Decl. ¶9 and Exhibit B-1.

In fact, as Dr. McDuff explains, MSN's estimated bond calculations are consistent with published academic and economics literature (McDuff Decl. ¶¶8-9 and fn. 7, Ex. C-1), Novartis's own expert's use of a ▇▇ discounted price (McDuff Decl. ¶9 and fn. 9), and MSN's considerable experience with at-risk launches and the planning required and strategies behind such launches, as well as MSN's experience with single-entry and multi-entry markets during 180-day exclusivity periods. In that regard, MSN recently launched its generic Roflumilast product in October, 2022 with one-hundred-eighty day exclusivity and during that time period where it was the sole generic in the market, it captured over ▇▇ market share. Here, however, MSN would have launched at-risk, and to mitigate its financial exposure, it would have limited

---

[2] Novartis argues that MSN could not have launched before ▇▇▇▇ 2024 because of the Court's order regarding notice of launch date. This Court, however, dissolved that order and then proceeded to schedule dates for resolving Novartis's preliminary-injunction motion where the critical issue was Novartis's request to block MSN's immediate market entry. MSN submits that notice was no longer required. The entire focus became enjoining MSN's launch, and the Court denied Novartis's motion.

[3] This time period is based on an ▇▇▇▇ 2024 date when MSN would have been prepared to launch its product (Chintapally Decl. ¶5) and ▇▇▇▇ 2024, which is based on the Federal Circuit considering Novartis's appeals on an expedited basis, setting November 13, 2024 as the date to hear oral argument in the pending '918 and '659 patent appeals, and the Federal Circuit issuing its decisions shortly thereafter.

3

the production, distribution and sale of its generic sacubitril-valsartan product so as to only capture a ▆▆▆ generic market share. Chintapally Decl. at ¶¶4, 6-7, and see D.I. 1456 at p. 8. Accordingly, MSN's estimated ▆▆▆ market penetration is supported with MSN's own market experience and launch strategy, and consistent with published literature. Indeed, manufacturing, distributing and selling generic drug products *is* MSN's business and it is one of the fastest-growing generic drug companies in the industry and has twenty manufacturing facilities and about twenty-thousand employees around the world. Chintapally Decl. at ¶¶2-4.

To the extent that Novartis argues that the bond amount should be reduced based on other generic competitors launching at risk, MSN submits that the entry of other generics in the market is speculative. There is speculation on the number of potential entrants, whether they are even able to launch, and would have made the decision to launch in the first place. And it is speculative and unknown as to timing, pricing and volume. See also McDuff Decl. ¶10. Indeed, this Court already expressed its skepticism regarding the speculative effect of other generic competitors entering the market. D.I. 1456 at pp. 6-7.

Accordingly, for the reasons above and those set forth in the accompanying Chintapally and McDuff declarations, MSN requests the Court to order Novartis to post a bond of $▆▆▆ million, without surety, for the period between ▆▆▆▆▆▆▆ 2024 and ▆▆▆▆▆▆▆ 2024.

Date: September 13, 2024

| | |
|---|---|
| /s/ *Daniel M. Silver* | /s/ *Richard C. Weinblatt* |
| Daniel M. Silver (#4758) | Stamatios Stamoulis |
| Alexandra M. Joyce (#6423) | Richard C. Weinblatt |
| MCCARTER & ENGLISH, LLP | STAMOULIS & WEINBLATT LLC |
| 405 N. King Street, 8th Floor | 800 N. West Street, Third Floor |
| Wilmington, DE 19801 | Wilmington, DE 19801 |
| (302) 984-6300 | (302) 999-1540 |
| dsilver@mccarter.com | stamoulis@swdelaw.com |
| ajoyce@mccarter.com | weinblatt@swdelaw.com |
| | |
| Nicholas N. Kallas | Ronald M. Daignault |
| Christina Schwarz | Richard Juang |
| Jared L. Stringham | DAIGNAULT IYER LLP |
| Christopher E. Loh | 8618 Westwood Center Drive, Suite 150 |
| VENABLE LLP | Vienna, VA 22182 |
| 151 West 42nd Street | (314) 446-3367 |
| New York, New York 10036 | rdaignault@daignaultiyer.com |
| (212) 218-2100 | rjuang@daignaultiyer.com |
| nkallas@venable.com | |
| cschwarz@venable.com | *Attorneys for Defendants MSN* |
| jlstringham@venable.com | *Pharmaceuticals Inc., MSN Laboratories* |
| cloh@venable.com | *Private Limited, and MSN Life Sciences* |
| | *Private Limited* |
| *Attorneys for Plaintiff* | |
| *Novartis Pharmaceuticals Corporation* | |

ME1 49814709v.1